# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

NEW YORK STATE RIFLE AND PISTOL
ASSOCIATION, INC. and ROBERT NASH,

*Plaintiffs*,

v.

GEORGE P. BEACH II, in his official capacity as
Superintendent of the New York State Police and
RICHARD J. MCNALLY, in his official capacity
as Justice of the New York State Supreme Court,
Third Judicial District, and Licensing Officer for
Rensselaer County,

*Defendants*.

Civil Action No.
1:18-CV-0134 (BKS/ATB)

## MEMORANDUM OF EVERYTOWN FOR GUN SAFETY
## AS AMICUS CURIAE IN SUPPORT OF DEFENDANTS

Ilann M. Maazel
O. Andrew F. Wilson
EMERY CELLI BRINCKERHOFF &
ABADY LLP
600 Fifth Avenue, 10th Floor
New York, NY 10020
(212) 763-5000
*imaazel@ecbalaw.com*

Eric Tirschwell
Mark Anthony Frassetto
EVERYTOWN FOR GUN SAFETY
SUPPORT FUND
132 E. 43rd Street, # 657
New York, NY 10017

April 2, 2018

*Counsel for Amicus Curiae*
*Everytown for Gun Safety*

## CORPORATE DISCLOSURE STATEMENT

Everytown for Gun Safety has no parent corporations. It has no stock and hence no publicly held company owns 10% or more of its stock.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................................. i

TABLE OF CONTENTS.................................................................................................II

TABLE OF AUTHORITIES ........................................................................................ III

INTEREST OF AMICUS CURIAE ............................................................................. 1

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................. 3

      A.    "Longstanding" laws are deemed constitutional under *Heller* because they are consistent with our "historical tradition." .................................. 4

      B.    New York's public-carry regime is a "longstanding" and constitutional regulation under *Heller*. ........................................................................... 5

            1. English History ........................................................................................ 5

            2. Founding-Era American History........................................................... 7

            3. Early-19th-Century American History................................................ 11

            4. Mid-to-Late-19th-Century American History................................... 17

CONCLUSION............................................................................................................ 20

CERTIFICATE OF SERVICE ................................................................................... 1

# TABLE OF AUTHORITIES

<u>Cases</u>

*Andrews v. State,*
    50 Tenn. 165 (1871)......................................................................................................16

*Avitabile v. Cuomo,*
    No. 16-cv-01447 (N.D.N.Y.) ..........................................................................................1

*Chune v. Piott,*
    80 Eng. Rep. 1161 (K.B. 1615) ......................................................................................8

*District of Columbia v. Heller,*
    554 U.S. 570 (2008)................................................................................................passim

*Edwards v. Aguillard,*
    482 U.S. 578 (1987)......................................................................................................14

*English v. State,*
    35 Tex. 473 (1871).................................................................................................15, 16

*Flanagan v. Becerra,*
    No. 16-cv-06164 (C.D. Cal.) ..........................................................................................1

*Fyock v. Sunnyvale,*
    779 F.3d 991 (9th Cir. 2015) ..........................................................................................4

*Kachalsky v. County of Westchester,*
    701 F.3d 81 (2d Cir. 2012) .....................................................................................passim

*King v. Hutchinson,*
    168 Eng. Rep. 273 (1784) ...............................................................................................9

*McDonald v. City of Chicago,*
    561 U.S. 742 (2010)......................................................................................................14

*Miller v. Texas,*
    153 U.S. 535 (1894)......................................................................................................16

*N.Y. State Rifle & Pistol Ass'n v. City of New York,*
    883 F.3d 45 (2d Cir. 2018) .........................................................................................2, 4

*N.Y. State Rifle & Pistol Ass'n v. Cuomo,*
    804 F.3d 242 (2d Cir. 2015) ............................................................................................4

*NRA v. BATF*,
   700 F.3d 185 (5th Cir. 2012) ................................................................................5

*Nunn v. State*,
   1 Ga. 243 (1846) ...............................................................................................17

*Payton v. New York*,
   445 U.S. 573 (1980) ............................................................................................8

*Peruta v. California*,
   137 S. Ct. 1995 (2017) ........................................................................................5

*Peruta v. County. of San Diego*,
   824 F.3d 919 (9th Cir. 2016) (en banc) ...............................................................5

*Peruta v. County of San Diego*,
   No. 10–56971 (9th Cir.) ......................................................................................1

*State v. Barnett*,
   34 W. Va. 74 (1890) ....................................................................................16, 18

*State v. Duke*,
   42 Tex. 455 (1874) ............................................................................................15

*State v. Smith*,
   11 La. Ann. 633 (1856) ......................................................................................17

*State v. Workman*,
   35 W. Va. 367 (1891) ........................................................................................16

*United States v. Marzzarella*,
   614 F.3d 85 (3d Cir. 2010) ..................................................................................4

*United States v. Skoien*,
   614 F.3d 638 (7th Cir. 2010) (en banc) ..............................................................5

*Wrenn v. District of Columbia*,
   864 F.3d 650 (D.C. Cir. 2017) ..........................................................................13

*Wrenn v. District of Columbia*,
   No. 16–7025 (D.C. Cir.) .........................................................................1, 16, 17

## American Statutes

1686 N.J. Laws 289, ch. 9 ........................................................................................8

1694 Mass. Laws 12, no. 6. ......................................................................................9

1699 N.H. Laws 1 ...................................................................................... 10

1786 Va. Laws 33, ch. 21 .................................................................... 10, 15

1792 N.C. Laws 60, ch. 3 ......................................................................... 10

1795 Mass. Laws 436, ch. 2 ..................................................................... 10

1801 Tenn. Laws 710, § 6 ......................................................................... 10

1821 Me. Laws 285, ch. 76, § 1 ............................................................... 10

1838 Wisc. Laws 381, § 16 ....................................................................... 12

1841 Me. Laws 709, ch. 169, § 16 ........................................................... 12

1846 Mich. Laws 690, § 16 ...................................................................... 12

1847 Va. Laws 127, 129, ch. 14, § 16 ..................................................... 12

1847 Va. Laws at 129, § 16 ............................................................... 12, 13

1851 Minn. Laws at 527–28, §§ 2, 17, 18 .............................................. 12

1852 Del. Laws 330, ch. 97, § 13 ........................................................... 10

1853 Or. Laws 218, ch. 16, § 17 ............................................................. 12

1854 Ala. Laws 588, § 3272 .................................................................... 13

1859 N.M. Laws 94, § 2 ........................................................................... 17

1861 Ga. Laws 859, § 4413 ..................................................................... 13

1861 Pa. Laws 248, § 6 ........................................................................... 12

1869 N.M. Laws 312, § 1 ......................................................................... 19

1870 S.C. Laws 403, no. 288, § 4 .......................................................... 15

1870 W. Va. Laws 702, 703, ch. 153, § 8 ......................................... 15, 18

1871 Tex. Laws 1322, art. 6512 ........................................................ 15, 18

1873 Minn. Laws. 1025, § 17 .................................................................. 13

1875 Wyo. Laws 352, § 1 ......................................................................... 19

1889 Ariz. Laws 16, § 1 ........................................................................... 19

1889 Idaho Laws 23, § 1 ............................................................................................19

1890 Okla. Laws 495, art. 47, §§ 2, 5 ........................................................................19

1891 W. Va. Laws 915, ch. 148, § 7 ...........................................................................18

1901 Mich. Laws 687, § 8 ..........................................................................................20

1903 Okla. Laws 643, ch. 25, art. 45, § 584 ..............................................................19

1909 Ala. Laws 258, no. 215, §§ 2, 4 ........................................................................18

1909 Tex. Laws 105 ...................................................................................................20

1913 Haw. Laws 25, act 22, § 1 .................................................................................18

1913 N.Y. Laws 1627 .................................................................................................18

1925 W. Va. Laws 25 .................................................................................................19

Mass. Gen. Laws ch. 275, § 4....................................................................................11

New York Penal Law § 400.00(2)(f) .............................................................................1

<u>American Municipal Ordinances</u>

Checotah, Okla., Ordinance no. 11 (1890) ..................................................................20

Dallas, Tex., Ordinance (1887) ...................................................................................20

La Crosse, Wis., Ordinance no. 14, § 15 (1880)..........................................................20

Los Angeles, Cal., Ordinance nos. 35–36 (1878)........................................................20

Nebraska City, Neb., Ordinance no. 7 (1872)..............................................................20

New Haven, Conn., Ordinances § 192 (1890) .............................................................20

Rawlins, Wyo., Ordinances art. 7 (1893).....................................................................20

Salina, Kan., Ordinance no. 268 (1879) ......................................................................20

San Antonio, Tex., Ordinance ch. 10 (1899)................................................................20

Syracuse, N.Y., Ordinances ch. 27 (1885)...................................................................20

Washington, D.C., Ordinance ch. 5 (1857)...................................................................20

Wichita, Kan., Ordinance no. 1641 (1899)...................................................................20

English Statutes and Royal Proclamations

20 Ric. 2, 93, ch. 1 (1396) ................................................................................6

25 Edw. 3, 320, ch. 2, § 13 (1351). ....................................................................6

7 Ric. 2, 35, ch. 13 (1383) .................................................................................6

English Bill of Rights of 1689, 1 W. & M. st. 2. ch. 2 .........................................7

Statute of Northampton, 2 Edw. 3, 258, ch. 3 (1328) .........................................5

Books and Articles

A Bill for the Office of Coroner and Constable (Mar. 1, 1682), reprinted in *Grants, Concessions & Original Constitutions* 251 .............................................10

Bishop, *Commentaries on the Law of Statutory Crimes(1873)* ..................9, 11

Blocher,
*Firearm Localism*, 123 Yale L.J. 82 (2013) .....................................20

Bond,
*A Compleat Guide for Justices of the Peace* 181 (1707). .........................9

Charles,
*The Faces of the Second Amendment Outside the Home*,
60 Clev. St. L. Rev. 1, (2012) ......................................................6, 9, 10

Charles,
*The Statute of Northampton by the Late Eighteenth Century*,
41 Fordham Urb. L.J. City Square 10 (2013) .........................................8

City Intelligence, Boston Courier (Boston, Mass.), Mar. 7, 1853 .......................13

City Items, Richmond Whig (Richmond, Va.), Sept. 25, 1860.............................13

Cornell,
*The Right to Carry Firearms Outside of the Home*,
39 Fordham Urb. L.J. 1695 (2012) ......................................................12

Cramer,
*Concealed Weapon Laws of the Early Republic* (1999) ...................13, 14

Dunlap,
*The New York Justice* 8 (1815) ............................................................10

Elliot Shepard,
  *Ordinances of the City of New York* 214 (1881) ...................................................... 19

Ewing,
  *A Treatise on the Office & Duty of a Justice of the Peace* (1805) ............................ 11

Hammond,
  *A Practical Treatise; Or an Abridgement of the Law Appertaining to the Office of*
  *Justice of the Peace* (1841) ..................................................................................... 12

Hawkins,
  *Treatise of the Pleas of the Crown* 665 ...................................................................... 9

Haywood,
  *A Manual of the Laws of North-Carolina* (1814) ...................................................... 10

Haywood,
  *The Duty and Authority of Justices of the Peace, in the State of Tennessee*  (1810) ............... 11

Haywood,
  *The Duty and Office of Justices of the Peace, and of Sheriffs, Coronoers,*
  *Constables* (1800) ....................................................................................................... 11

Keble,
  *An Assistance to the Justices of the Peace, for the Easier Performance of Their*
  *Duty* 224 (1683) ............................................................................................................ 7

Meltzer,
  *Open Carry for All*, 123 Yale L.J. 1486 (2014) ........................................................... 9

Niles,
  *The Connecticut Civil Officer* (1823) ......................................................................... 10

Recorders Court, Oregonian (Portland, Or.), Aug. 6, 1867 ............................................. 13

Russell,
  *Treatise on Crimes & Misdemeanors* 124 .................................................................... 9

*Vermont Telegraph*, Feb. 7, 1838 .................................................................................. 10

Wharton,
  *A Treatise on the Criminal Law of the United States* (1846) ..................................... 11

*When and Where May a Man Go Armed*, S.F. Bulletin, Oct. 26, 1866 ......................... 20

Winkler, *Gunfight* 165 (2011) ...................................................................................... 20

Constitutional Provisions

Md. Const. of 1776, art. III, § 1 ........................................................................................................ 10

## INTEREST OF AMICUS CURIAE

Everytown for Gun Safety ("Everytown") is the largest gun-violence-prevention organization in the country. It was founded in 2014 as the combined effort of Mayors Against Illegal Guns, a national, bipartisan coalition of mayors combating illegal guns and gun trafficking, and Moms Demand Action for Gun Sense in America, an organization formed in the wake of the murder of twenty children and six adults in an elementary school in Newtown, Connecticut. Everytown's mission includes defending gun laws through the filing of amicus briefs and memoranda providing historical context, social science and public policy research, and doctrinal analysis that might otherwise be overlooked.

Everytown has drawn on its substantial research on historical firearms laws to file briefs and memoranda in several recent Second Amendment cases, including cases involving public-carry licensing regimes. *See Wrenn v. District of Columbia*, No. 16–7025 (D.C. Cir.); *Peruta v. County of San Diego,* No. 10–56971 (9th Cir.); *Flanagan v. Becerra,* No. 16-cv-06164 (C.D. Cal.).[1] As in those cases, Everytown seeks to assist this Court by providing relevant historical materials.[2]

## INTRODUCTION

The present motion to dismiss does not present a difficult question for the Court. Plaintiffs' challenge here is precluded by the Second Circuit's decision in *Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012), which upheld the "proper cause" licensing requirement in New York Penal Law § 400.00(2)(f) against an identical Second Amendment challenge. *See*

[1] Everytown also has recently filed an amicus memorandum in a Second Amendment case in this district. *See Avitabile v. Cuomo*, No. 16-cv-01447 (N.D.N.Y.).

[2] An appendix of historical gun laws accompanies this memorandum. In addition, all parties consent to the filing of this memorandum, and no counsel for any party authored it in whole or part. Apart from amicus curiae, no person contributed money to fund this memorandum.

Complaint (Dkt. No. 1) ¶ 6 ("Plaintiffs acknowledge that the result they seek is contrary to *Kachalsky v. County of Westchester . . . .*"). This binding precedent standing alone obligates the court to grant the State's motion. *See N.Y. State Rifle & Pistol Ass'n v. City of New York*, 883 F.3d 45, 56 n.5 (2d Cir. 2018) (reaffirming the holding in *Kachalsky*, "by which th[e] panel [wa]s, in any event, bound").

While *Kachalsky* directs the ultimate result of the State's motion to dismiss, Everytown files this memorandum to provide the court with additional historical analysis supporting the State's motion.  Since the Second Circuit's decision in *Kachalsky*, in which the court found the history presented was "highly ambiguous," and "d[id] not directly address the specific question before [the Court]," 701 F.3d at 91, historians and legal scholars have produced a substantial amount of historical research which reinforces the constitutionality of New York's law.[3] This history shows that laws like New York's, rather than representing regulatory outliers, are consistent with a historical tradition of regulating the carrying of firearms and other weapons in public going back centuries. This memorandum provides an account of that tradition. In so doing, it provides significant additional support for the result already reached by the Second Circuit, and, we submit, should assist this Court in issuing an opinion consistent with *Kachalsky*, dismissing Plaintiffs' challenge here.

For centuries, English law broadly prohibited anyone from carrying a dangerous weapon in public, beginning with the Statute of Northampton in 1328, and continuing after the English Bill of Rights of 1689. This tradition took hold in America in the 17th and 18th centuries when

---

[3]     The State has already addressed the new and extremely compelling social science research showing laws like New York's result in a significant reduction in gun homicide, gun assaults and violent crime. Mem. of Law in Support of Defendants' Motion to Dismiss (Dkt. No. 19-1) at 7-9.

several colonies enacted similar restrictions. It continued in the 19th century, when many states and municipalities broadly prohibited public carry in cities, towns, and villages, while many others did what New York does today: allow public carry by those with "proper cause." Although a more permissive approach to public carry began emerging in the South around that time, these antebellum Southern laws were motivated largely by the ever-present fear of slave rebellions, and they did not represent a majority approach. Altogether, by the end of the 19th century, nearly 20 states and many cities had enacted laws that either entirely prohibited public carry in urban areas or required "good reason" to publicly carry a firearm.

New York's law carries forward this longstanding tradition. It is clearly constitutional under *District of Columbia v. Heller*, 554 U.S. 570 (2008). Such a robust historical pedigree is not necessary to satisfy the Second Amendment, but it is sufficient to do so. Whatever the Amendment's precise contours, there can be no doubt that a law that has its roots in 14th-century England, and is *more* permissive of public carry than dozens of American laws that existed from the founding era through the 19th century, is consistent with our "historical tradition," *id.* at 627, and thus constitutional.

## ARGUMENT

The question in this case is not whether the Second Amendment—which the Supreme Court held in *Heller* protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home," *id.* at 635—has any application outside the home. Rather, the question is whether New York's public-carry regime is consistent with the Amendment's protections (as applied to the states by the 14th Amendment).

To answer that question, the Second Circuit, like other courts, has established a "two-step inquiry," first asking whether the challenged law burdens conduct within the scope of the

Second Amendment right and then, if it does, "determin[ing] and apply[ing] the appropriate level of scrutiny." *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 254 (2d Cir. 2015) (citing cases); *accord N.Y. State Rifle & Pistol Ass'n v. City of N.Y.*, 883 F.3d at 55.  Although, as the Second Circuit held in *Kachalsky*, and reaffirmed in *New York State Rifle & Pistol Association v. City of New York*, New York's public-carry regime satisfies the appropriate level of intermediate scrutiny, this memorandum shows that the analysis need not get that far: this law survives at step one, which provides a sufficient and additional ground to uphold it.

A.    **"Longstanding" laws are deemed constitutional under *Heller* because they are consistent with our "historical tradition."**

One way to determine whether a law burdens the Second Amendment right is to assess the law based on a "historical understanding of the scope of the right," *Heller*, 554 U.S. at 625, and consider whether the law is within "the history and tradition of firearm regulation" that was left intact by the Second Amendment and by *Heller*. *Kachalsky*, 701 F.3d at 101. *Heller* identified several "examples" of such regulations, including "prohibitions on the possession of firearms by felons and the mentally ill" and "laws imposing conditions and qualifications on the commercial sale of arms," which are "presum[ed]" not to violate the Second Amendment right because of their historical acceptance as consistent with its protections. 554 U.S. at 626-27 & n.26.  Such "longstanding" laws, the Supreme Court explained, are treated as tradition-based "exceptions" by virtue of their "historical justifications." *Id.* at 626, 635; *see Fyock v. Sunnyvale*, 779 F.3d 991, 996-7 (9th Cir. 2015) ("longstanding prohibitions" are "traditionally understood to be outside the scope of the Second Amendment"); *United States v. Marzzarella*, 614 F.3d 85, 91 (3d Cir. 2010) ("longstanding limitations are exceptions to the right to bear arms").

While neither the Supreme Court, nor the Second Circuit (or any circuit) has established a precise standard for what is required for a law to be found longstanding, most courts to

4

consider the issue have found it does not require that a law "mirror limits that were on the books in 1791." *United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) (en banc). To the contrary, laws may qualify as longstanding even if they "cannot boast a precise founding-era analogue," *NRA v. BATF*, 700 F.3d 185, 196 (5th Cir. 2012)—as was the case with the "early twentieth century regulations" prohibiting firearm possession by felons and the mentally ill and regulating the commercial sale of arms deemed longstanding in *Heller*, *see Kachalsky*, 701 F.3d at 90 n.11. But New York's law is no 20th-century creation; it embodies a tradition of regulation stretching back seven centuries, with antecedents in the founding era. This centuries-long pedigree in Anglo-American history clearly makes New York's law "longstanding" and constitutional under *Heller*.

**B.    New York's public-carry regime is a "longstanding" and constitutional regulation under *Heller*.**

The tradition of restricting the public carrying of firearms that underpins New York's public carry law traces its origins to the fourteenth century in England through this country's founding era and up to today.

**1.    English History**

**Beginning in 1328, England broadly restricts public carry in populated areas.**
Because "the Second Amendment" protects a "right inherited from our English ancestors," *Peruta v. County of San Diego*, 824 F.3d 919, 927 (9th Cir. 2016) (en banc), *cert. denied sub nom. Peruta v. California*, 137 S. Ct. 1995 (2017), we start with the English history. This history stretches back to at least 1328, when England enacted the Statute of Northampton, providing that "no Man great nor small" shall "go nor ride armed by night nor by day, in Fairs, Markets, nor in the presence of the Justices or other Ministers, nor in no part elsewhere." 2 Edw. 3, 258, ch. 3 (1328). After this statute was enacted, King Edward III and his successors directed sheriffs and

bailiffs to arrest "all those whom [they] shall find going armed." Charles, *The Faces of the Second Amendment Outside the Home*, 60 Clev. St. L. Rev. 1, 13–25 (2012).

Over the ensuing decades, England repeatedly reenacted the Statute of Northampton's public-carry restriction. *See, e.g.*, 7 Ric. 2, 35, ch. 13 (1383); 20 Ric. 2, 93, ch. 1 (1396). Because this restriction carried misdemeanor penalties, violators were usually required to forfeit their weapons and pay a fine. *Id.* A separate law went further, outlawing "rid[ing] armed covertly or secretly with Men of Arms against any other." 25 Edw. 3, 320, ch. 2, § 13 (1351). This law had heavier penalties, *id.*, because it regulated threatening behavior rather than simply carrying weapons in public—the conduct prohibited by the Statute of Northampton.

By the 16th century, firearms had become increasingly accessible in England, and the possibility that they would be carried in public had become increasingly threatening to public safety. To guard against this threat, Queen Elizabeth I in 1579 called for strict enforcement of the Statute of Northampton's prohibition on carrying "Daggers, Pistols, and such like, not only in Cities and Towns, [but] in all parts of the Realm in common high[ways], whereby her Majesty's good quiet people, desirous to live in [a] peaceable manner, are in fear and danger of their lives." Charles, *Faces*, 60 Clev. St. L. Rev. at 21 (spelling modernized). The carrying of "such offensive weapons" (like "Handguns"), she elaborated, and "the frequent shooting [of] them in and near Cities, Towns corporate, [and] the Suburbs thereof where [the] great multitude of people do live, reside, and trav[el]," had caused "great danger" and "many harms [to] ensue." *Id.* at 22 (spelling modernized). Fifteen years later, she reaffirmed that publicly carrying pistols—whether "secretly" or in the "open"—was "to the terrour of all people professing to travel and live peaceably." *Id.*

To carry out the Statute of Northampton's prohibition, British constables, magistrates, and justices of the peace were instructed to "Arrest all such persons as they shall find to carry

Daggers or Pistols" publicly. Keble, *An Assistance to the Justices of the Peace, for the Easier Performance of Their Duty* 224 (1683). This mandate was unmistakably broad: "[I]f any person whatsoever . . . shall be so bold as to go or ride Armed, by night or by day, in Fairs, Markets, or any other places . . . then any Constable . . . may take such Armor from him for the Kings use, and may also commit him to the Gaol." *Id.*

     **The Statute of Northampton's public-carry restriction remains fully in effect following the English Bill of Rights of 1689.** In the late 17th century, William and Mary enshrined the right to have arms in the Declaration of Rights, later codified in the English Bill of Rights in 1689. This right—which "has long been understood to be the predecessor to our Second Amendment," *Heller*, 554 U.S. at 593—ensured that subjects "may have arms for their defence suitable to their conditions, and as allowed by law." 1 W. & M. st. 2. ch. 2. As Blackstone later wrote, this right was considered "a public allowance, under due restrictions[,] of the natural right of resistance and self-preservation, when the sanctions of society and laws are found insufficient to restrain the violence of oppression." 1 Blackstone, *Commentaries on the Laws of England* 144 (1769). One such "due restriction" was the Statute of Northampton, which remained in effect after the right to bear arms was codified in 1689. *See* 4 Blackstone, *Commentaries* 148–49; Gardiner, *The Compleat Constable* 18 (1692); *Middlesex Sessions* (reporting 1751 conviction under law).

     **2.   Founding-Era American History**

     **The legal authorities most influential to the founding generation understood the Statute of Northampton to restrict public carry in populated areas.** The general understanding of the Statute of Northampton as broadly prohibiting public carry in populated places existed in England throughout the 17th and 18th centuries and was adopted by the legal authorities whose views were most influential to the Framers. *See* Charles, *The Statute of*

*Northampton by the Late Eighteenth Century*, 41 Fordham Urb. L.J. City Square 10 (2013). In 1644, for example, Lord Coke—"widely recognized by the American colonists as the greatest authority of his time on the laws of England," *Payton v. New York*, 445 U.S. 573, 593–94 (1980) (internal quotation marks omitted)—described the Statute of Northampton as making it unlawful "to goe nor ride armed by night nor by day . . . in any place whatsoever." Coke, *The Third Part of the Institutes of the Laws of England* 160 (1817 reprint).

One century later, Blackstone—"the preeminent authority on English law for the founding generation," *Heller*, 554 U.S. at 593–94—described the statute similarly: "The offence of riding or going armed with dangerous or unusual weapons is a crime against the public peace, by terrifying the good people of the land; and is particularly prohibited by the statute of Northampton." 4 Blackstone, *Commentaries* 148–49. In other words, because carrying a dangerous weapon (such as a firearm) in populated public places naturally terrified the people (particularly if done openly), it was a crime against the peace—even if unaccompanied by a threat, violence, or any additional breach of the peace. *See Chune v. Piott*, 80 Eng. Rep. 1161, 1162 (K.B. 1615) ("Without all question, the sheriffe hath power to commit . . . if contrary to the Statute of Northampton, he sees any one to carry weapons in the high-way, in terrorem populi Regis; he ought to take him, and arrest him, notwithstanding he doth not break the peace.").

**The colonies begin adopting England's tradition of public-carry regulation.** Around the time that the English Bill of Rights was adopted, America began its own tradition of regulating public-carry. The first step was a 1686 New Jersey law that sought to prevent the "great fear and quarrels" induced by "several persons wearing swords, daggers, pistols," and "other unusual or unlawful weapons." 1686 N.J. Laws 289, 289–90, ch. 9. To combat this "great abuse," the law provided that no person "shall presume privately to wear any pocket pistol" or

"other unusual or unlawful weapons," and "no planter shall ride or go armed with sword, pistol, or dagger," except for "strangers[] travelling" through. *Id.* This was only the start of a long history of regulation "limiting gun use for public safety reasons"—especially public carry in populated areas. Meltzer, *Open Carry for All*, 123 Yale L.J. 1486, 1523 (2014). As against this history, "there are no examples from the Founding era of anyone espousing the concept of a general right to carry." *Id.*

**Many states enact laws mirroring the Statute of Northampton both before and after the Constitution's adoption.** Eight years after New Jersey's law, Massachusetts enacted its own version of the Statute of Northampton, authorizing justices of the peace to arrest anyone who "shall ride or go armed Offensively before any of Their Majesties Justices, or other [of] Their Officers or Ministers doing their Office, or elsewhere." 1694 Mass. Laws 12, no. 6.

By using the word "offensively," Massachusetts ensured that this prohibition applied only to "offensive weapons," as it had in England—not *all* arms. Constable oaths of the 18th century described this law with similar language. *See* Charles, *Faces*, 60 Clev. St. L. Rev. at 34 n.178. One treatise, for example, explained that "[a] person going or riding with offensive Arms may be arrested." Bond, *A Compleat Guide for Justices of the Peace* 181 (1707). Thus, under the law, a person could publicly carry a hatchet or horsewhip, but not a pistol. *See* Hawkins, *Treatise of the Pleas of the Crown* 665 (explaining that hatchets and horsewhips were not "offensive weapons," while "guns, pistols, daggers, and instruments of war" were); *King v. Hutchinson*, 168 Eng. Rep. 273, 274 (1784) (explaining that firearms are offensive weapons).[4]

---

[4]     American treatises said the same. *See* Bishop, *Commentaries on the Law of Statutory Crimes* 214 (1873); Russell, *Treatise on Crimes & Misdemeanors* 124

One century later, Massachusetts reenacted its law, this time as a state. 1795 Mass. Laws 436, ch. 2. Because the law had been in effect for so long, it was "well known to be an offence against law to ride or go with . . . firelocks, or other dangerous weapons," as one newspaper later reported, so it "[could not] be doubted that the vigilant police officers" would arrest violators. Charles, *Faces*, 60 Clev. St. L. Rev. at 33 n.176 (quoting *The Salem Gazette*, June 2, 1818, at 4).

Following Massachusetts' lead, additional states enacted similar laws, including founding-era statutes in Virginia and North Carolina, a New Hampshire law passed five years after Massachusetts' first enactment, and later enactments in states ranging from Maine to Tennessee. *See* 1699 N.H. Laws 1; 1786 Va. Laws 33, ch. 21; 1792 N.C. Laws 60, 61, ch. 3; 1801 Tenn. Laws 710, § 6; 1821 Me. Laws 285, ch. 76, § 1; 1852 Del. Laws 330, 333, ch. 97, § 13. Other states, such as New York, incorporated the Statute of Northampton through their common law. *See* Dunlap, *The New York Justice* 8 (1815) (prohibiting "a man to arm himself with dangerous and unusual weapons, in such manner as will naturally cause terror to the people").[5]

To ensure that these laws were enforced, the constables, magistrates, and justices of the peace in these jurisdictions were required to "arrest all such persons as in your sight shall ride or go armed." Haywood, *A Manual of the Laws of North-Carolina* pt. 2 at 40 (1814) (N.C. constable oath). That was because, as constables were informed, "riding or going armed with dangerous or unusual weapons, is a crime against the public peace, by terrifying the good people

---

[5]    *See* A Bill for the Office of Coroner and Constable (Mar. 1, 1682), reprinted in *Grants, Concessions & Original Constitutions* 251 (N.J. constable oath) ("I will endeavour to arrest all such persons, as in my presence, shall ride or go arm'd offensively."); Niles, *The Connecticut Civil Officer* 154 (1823) (noting crime of "go[ing] armed offensively," even without threatening conduct); *Vermont Telegraph*, Feb. 7, 1838 (observing that "[t]he laws of New England" provided a self-defense right "to individuals, but *forb[ade] their going armed* for the purpose"). Northampton also applied in Maryland. Md. Const. of 1776, art. III, § 1.

of the land, and is prohibited by statute." Haywood, *The Duty and Office of Justices of the Peace, and of Sheriffs, Coroners, Constables* 10 (1800); *see also* Haywood, *The Duty and Authority of Justices of the Peace, in the State of Tennessee* 176 (1810).

As with the English statute, prosecution under these laws did not require a "threat[] [to] any person in particular" or "any particular act of violence." Ewing, *A Treatise on the Office & Duty of a Justice of the Peace* 546 (1805); *see also* Bishop, *Commentaries on the Law of Statutory Crimes* (noting that there was no requirement that "peace must actually be broken, to lay the foundation for a criminal proceeding"). Nor did these laws have a self-defense exception: No one could "excuse the wearing [of] such armor in public, by alleging that such a one threatened him." Wharton, *A Treatise on the Criminal Law of the United States* 527–28 (1846).

### 3. Early-19th-Century American History

**Many states enact a variant of the Statute of Northampton, allowing public carry with "reasonable cause to fear an assault."** In 1836, Massachusetts amended its public-carry prohibition to provide a narrow exception for those having "reasonable cause to fear an assault or other injury, or violence to his person, or to his family or property." 1836 Mass. Laws 748, 750, ch. 134, § 16. Absent such "reasonable cause," no person could "go armed with a dirk, dagger, sword, pistol, or other offensive and dangerous weapon." *Id.* Those who did so could be punished by being made to pay sureties for violating the statute, *id.*; if they did not do so, they could be imprisoned. *See id.* at 749.[6]

---

[6]    Sureties were a form of criminal punishment, like a bond. *See* Punishments, The Proceedings of the Old Bailey, London's Central Criminal Court, 1674 to 1913, http://bit.ly/1ED5tC2; 34 Edw. 3, 364, ch. 1 (1360). They continue to exist as a form of criminal punishment in some states, including Massachusetts. *See* Mass. Gen. Laws ch. 275, § 4. The criminal nature of the surety-based historical laws, moreover, is confirmed by the legislatures that enacted them. The Massachusetts legislature placed its restriction in Title II of the Code

Although the legislature chose to trigger these penalties using a citizen-complaint mechanism (allowing "any person having reasonable cause to fear an injury, or breach of the peace" to file a complaint, *id.* at 750, § 16), the law was understood to prohibit carrying a firearm in public without good cause. This was so even when the firearm was not used in any threatening or violent manner: The legislature placed the restriction in a section entitled "Persons who go armed may be required to find sureties for the peace," and expressly cited the state's previous criminal law enactment of the Statute of Northampton. *Id.* And elsewhere in the same statute the legislature separately punished "any person [who] threatened to commit an offence against the person or property of another." *Id.* at 749, § 2. Thus, as one judge explained in a grand jury charge appearing in the contemporary press in 1837, there was little doubt at the time that "no person may go armed with a dirk, dagger, sword, pistol, or other offensive and dangerous weapon, without reasonable cause to apprehend an assault or violence to his person, family, or property." Cornell, *The Right to Carry Firearms Outside of the Home*, 39 Fordham Urb. L.J. 1695, 1720 & n.134 (2012); *see* Hammond, *A Practical Treatise; Or an Abridgement of the Law Appertaining to the Office of Justice of the Peace* 184–86 (1841).

Within a few decades, many states (all but one outside the slaveholding South) had adopted nearly identical laws.[7] Most copied the Massachusetts law verbatim—enforcing the public-carry prohibition through a citizen-complaint provision and permitting a narrow self-defense exception. *See, e.g.*, 1851 Minn. Laws at 527–28, §§ 2, 17, 18 (section entitled "Persons

---

entitled "Of Proceedings in Criminal Cases." 1836 Mass. Laws 748, 750, ch. 134, § 16. Others did likewise. *See* 1851 Minn. Laws at 527–28, §§ 2, 17, 18 ("Persons carrying offensive weapons, how punished."); 1846 Mich. Laws 690, ch. 162 § 16 ("Of Proceedings in Criminal Cases"); 1847 Va. Laws 127, ch. 14, § 16 (same).

[7]      *See, e.g.*, 1838 Wisc. Laws 381, § 16; 1841 Me. Laws 709, ch. 169, § 16; 1846 Mich. Laws 690, 692, ch. 162, § 16; 1847 Va. Laws 127, 129, ch. 14, § 16; 1851 Minn. Laws 526, 528, ch. 112, § 18; 1853 Or. Laws 218, 220, ch. 16, § 17; 1861 Pa. Laws 248, 250, § 6

carrying offensive weapons, how punished"); 1873 Minn. Laws. 1025, § 17 (same after 14th Amendment's ratification). At least one state (Virginia) used slightly different language. 1847 Va. Laws at 129, § 16 ("If any person shall go armed with any offensive or dangerous weapon, without reasonable cause to fear an assault or other injury, or violence to his person, or to his family or property, he may be required to find sureties for keeping the peace."). Semantic differences aside, these laws were understood to do the same thing: broadly restrict public carry, while establishing a limited exception for those with a particular need for self-defense.[8]

**Taking a different approach, many Southern states elect to permit public carry, while regulating the manner of carry.** In contrast to the Northampton model and its good-cause variant, many—but not all—states in the slaveholding South were more permissive of public carry. They generally allowed white citizens to carry firearms in public so long as the weapons were not concealed. *See, e.g.*, 1854 Ala. Laws 588, § 3272; 1861 Ga. Laws 859, § 4413; *see generally* Cramer, *Concealed Weapon Laws of the Early Republic* (1999). It is this alternative (and minority) tradition on which a divided panel relied in *Wrenn v. District of Columbia*, 864 F.3d 650, 658 (D.C. Cir. 2017), the case now relied upon by the plaintiffs here. *See* Complaint ¶ 6.

This tradition owes itself to the South's peculiar history and the prominent institution of slavery. *See generally* Ruben & Cornell, *Firearm Regionalism and Public Carry: Placing*

---

[8]    Newspaper articles from the 19th century describe criminal prosecutions under these laws even when the person was carrying a concealed weapon—a form of public carry that, by itself, does not indicate menacing conduct beyond bare carry. *See, e.g.*, City Intelligence, Boston Courier (Boston, Mass.), Mar. 7, 1853, at 4 (reporting arrest and charge against person for "carrying a concealed weapon," a "loaded pistol"); City Items, Richmond Whig (Richmond, Va.), Sept. 25, 1860, at 3 (reporting that person was "arraigned" for "carrying a concealed weapon" and "required [to] give security"); Recorders Court, Oregonian (Portland, Or.), Aug. 6, 1867, at 4 (reporting conviction for "carrying a concealed weapon," resulting in two-day imprisonment).

*Southern Antebellum Case Law in Context*, 125 Yale L.J. Forum 121 (Sept. 25, 2015, https://goo.gl/3pUZHB). It reflects "a time, place, and culture where slavery, honor, violence, and the public carrying of weapons were intertwined." *Id.* at 125. Frederick Law Olmsted, for example, "attributed the need to keep slaves in submission as the reason that 'every white stripling in the South may carry a dirk-knife in his pocket, and play with a revolver before he has learned to swim.'" *Id.* at 21 (internal quotation marks omitted); *cf. McDonald v. City of Chicago*, 561 U.S. 742, 844 (2010) (Thomas, J., concurring) ("[I]t is difficult to overstate the extent to which fear of a slave uprising gripped slaveholders and dictated the acts of Southern legislatures."). And historians agree that "the South was substantially more violent than the North." Cramer, *Concealed Weapon Laws* 18. This view was shared by Massachusetts Senator Charles Sumner, whose "Bleeding Kansas" speech was cited at length in *Heller*, at 609, who addressed the disparate weapon cultures of the North and South.

> In those portions of our country where it is supposed essential to personal safety to go armed with pistols and bowie-knives mortal affrays are so frequent as to excite but little attention, and secure, with exceedingly rare exceptions, perfect impunity to the murderer; whereas at the North and East, where we are unprovided with such facilities for taking life, comparatively few murders of the kind are perpetrated. Charles Sumner," *"The Grandeur of Nations"* July 4, 1845 (quoting Judge William Jay, *"Address Before the American Peace Society"* (Boston, 1845)).

Even within the South, however, courts and legislatures took varying stances toward public carry. Virginia, for instance, "home of many of the Founding Fathers," *Edwards v. Aguillard*, 482 U.S. 578, 605 (1987) (Powell, J., concurring), prohibited public carry (with an exception for good cause) before ratification of the Fourteenth Amendment, after enacting a Northampton-style prohibition at the founding. 1847 Va. Laws at 129, § 16 (making it illegal to "go armed with any offensive or dangerous weapon, without reasonable cause to fear an assault

14

or other injury, or violence to his person, or to his family or property"); 1786 Va. Laws 33, ch. 21. South Carolina enacted a Northampton-style law during Reconstruction. 1870 S.C. Laws 403, no. 288, § 4. Around the same time, Texas prohibited public carry with an exception for good cause—a prohibition enforced with possible jail time, and accompanied by narrow exceptions that confirmed the law's breadth. 1871 Tex. Laws 1322, art. 6512 (prohibiting public carry absent an "immediate and pressing" self-defense need, while exempting one's "own premises" and "place of business, and travelers "carrying arms with their baggage"). And West Virginia, added to the Union during the Civil War, similarly allowed public carry only upon a showing of good cause. 1870 W. Va. Laws 702, 703, ch. 153, § 8.

Southern case law, too, reveals a lack of uniformity. Although a few pre-Civil War decisions interpreted state constitutions in a way that can be read to support a right to carry openly, even in populated public places without good cause, several post-War cases held the opposite. The Texas Supreme Court, for instance, twice upheld that state's good-cause requirement. *English v. State*, 35 Tex. 473 (1871); *State v. Duke*, 42 Tex. 455 (1874). The court remarked that the law—which prohibited carrying "any pistol" in public without good cause, 1871 Tex. Laws 1322, art. 6512—"is nothing more than a legitimate and highly proper regulation" that "undertakes to regulate the place where, and the circumstances under which, a pistol may be carried; and in doing so, it appears to have respected the right to carry a pistol openly when needed for self-defense or in the public service, and the right to have one at the home or place of business," *Duke*, 42 Tex. at 459. The court explained that the law thus made "all necessary exceptions," and noted that it would be "little short of ridiculous" for a citizen to "claim the right to carry" a pistol in "place[s] where ladies and gentlemen are congregated together." *English*, 35 Tex. at 477–79. Further, the court observed, the good-cause requirement

15

was "not peculiar to our own state," for nearly "every one of the states of this Union ha[d] a similar law upon their statute books," and many had laws that were "more rigorous than the act under consideration." *Id.* at 479.

When the U.S. Supreme Court considered Texas's law in 1894, it took a similar view. After noting that the law "forbid[s] the carrying of weapons" absent good cause and "authoriz[es] the arrest, without warrant, of any person violating [it]," the Court determined that a person arrested under the law is not "denied the benefit" of the right to bear arms. *Miller v. Texas*, 153 U.S. 535, 538 (1894). Other courts upheld similar good-cause laws against constitutional attacks. *See, e.g.*, *State v. Workman*, 35 W. Va. 367, 367 (1891) (upholding West Virginia's good-cause requirement after previously interpreting it, in *State v. Barnett*, 34 W. Va. 74 (1890), to require specific, credible evidence of an actual threat of violence, not an "idle threat"). And even when a law wasn't directly challenged as unconstitutional, like in Virginia, courts "administered the law, and consequently, by implication at least, affirmed its constitutionality." *Workman*, 35 W. Va. At 367 (referring to Virginia and West Virginia courts).

By contrast, there is no historical case (Southern or otherwise) striking down a good-cause requirement as unconstitutional.[9] To be sure, a couple of cases, in the course of upholding

---

[9]     Even *Andrews v. State*, 50 Tenn. 165 (1871), cited in *Wrenn*, does not go so far. There, the court invalidated what "in effect [was] an absolute prohibition" on carrying a weapon "for any and all purposes," whether "publicly or privately, without regard to time or place, or circumstances." *Id.* at 187. "Under this statute," the court explained, "if a man should carry such a weapon about his own home, or on his own premises, or should take it from his home to a gunsmith to be repaired, or return with it, should take it from his room into the street to shoot a rabid dog that threatened his child, he would be subjected to the severe penalties of fine and imprisonment prescribed in the statute." *Id.* In striking down that prohibition, the court did not cast doubt on the constitutionality of a law like the one at issue here, which does not prohibit carrying a firearm in all places, but requires only a showing of good cause to carry a handgun *publicly*, in populated areas other than one's place of business. If anything, the court did the opposite: It reaffirmed that the legislature may "regulate the carrying of this weapon publicly."

concealed-carry prohibitions, expressed the view that the right to bear arms protects the right, under some circumstances, to openly carry a weapon in public. *See Nunn v. State*, 1 Ga. 243 (1846) (striking down the open-carry portion of a statewide prohibition on openly carrying weapons based on the erroneous view that the Second Amendment applied to the states before 1868). But even within the South, open carry was rare: The Louisiana Supreme Court, for example, referred to "the extremely unusual case of the carrying of such weapon in full open view." *State v. Smith*, 11 La. Ann. 633, 634 (1856). And New York's law, of course, does not go nearly as far as the one struck down in *Nunn*, which prohibited *any* form of public carry, and banned most handguns. At any rate, isolated snippets from a few state-court decisions issued decades after the Framing cannot trump the considered judgments of countless courts and legislatures throughout our nation's history.

### 4.  Mid-to-Late-19th-Century American History

**States continue to restrict public carry both before and after the 14th Amendment's ratification.** As America entered the second half of the 19th century, additional jurisdictions began enacting laws broadly restricting public carry, often subject to limited self-defense exceptions. Before the Civil War, New Mexico passed *An Act Prohibiting The Carrying Of Weapons, Concealed Or Otherwise*, making it unlawful for "any person [to] carry about his person, either concealed or otherwise, any deadly weapon," and requiring repeat offenders to serve a jail term "of not less than three months." 1859 N.M. Laws 94, § 2.

---

*Id.* at 187–88. And although the court suggested that, under Tennessee law, the right to bear arms might protect public carry "where it was clearly shown that [the arms] were worn *bona fide* to ward off or meet imminent and threatened danger to life or limb, or great bodily harm," *id.* at 192, New York's "proper cause" requirement allows for just that.

After the Civil War, several other states enacted similar laws notwithstanding the recent passage of the 14th Amendment. West Virginia and Texas enacted laws that broadly prohibited public carry without good cause. West Virginia's law made clear that "[i]f any person go armed with a deadly or dangerous weapon, without reasonable cause to fear violence to his person, family, or property, he may be required to give a recognizance." 1870 W. Va. Laws 702, 703, ch. 153, § 8.[10] Courts construed this self-defense exception narrowly to require specific evidence of a concrete, serious threat. *See, e.g.*, *Barnett*, 34 W. Va. 74. 1871 Tex. Laws 1322, art. 6512 (Prohibiting carry without "reasonable grounds for fearing an unlawful attack on his person.").

And then there are the early-20th-century laws, also deemed "longstanding" under *Heller*, 554 U.S. at 626. *See Kachalsky*, 701 F.3d at 90 n. 11 (noting that the laws deemed longstanding in *Heller* "were not enacted until the early twentieth century"). In 1906, Massachusetts enacted a modernized version of its 1836 law, by prohibiting carry without a license which could only be issued after a showing of "good reason to fear an injury to his person or property." 1906 Mass. Laws 150. In 1909, Alabama made it a crime for anyone "to carry a pistol about his person on premises not his own or under his control," but allowed a defendant to "give evidence that at the time of carrying the pistol he had good reason to apprehend an attack." 1909 Ala. Laws 258, no. 215, §§ 2, 4. In 1913, New York prohibited all public carry without a permit, which required a showing of "proper cause," the standard challenged in this case. 1913 N.Y. Laws 1627.[11]  A

---

[10]    A later version reaffirmed the law's breadth by clarifying that it did not "prevent any person from keeping or carrying about his dwelling house or premises, any such revolver or other pistol, or from carrying the same from the place of purchase to his dwelling house, or from his dwelling house to any place where repairing is done, to have it repaired and back again." 1891 W. Va. Laws 915, 915–16, ch. 148, § 7. Violators could be fined or jailed. *Id.*

[11]    *See also* 1913 Haw. Laws 25, act 22, § 1 (Barring public carry without "good cause"); In the late nineteenth, century New York City had prohibited carrying concealed weapons unless

decade later, in 1923, the U.S. Revolver Association published a model law, which several states adopted, requiring a person to demonstrate a "good reason to fear an injury to his person or property" before obtaining a concealed-carry permit.[12] West Virginia also enacted a public-carry law around this time, prohibiting all carry absent good cause. *See* 1925 W. Va. Laws 25. And other states went further, prohibiting all public carry with no exception for good cause.[13]

**Beginning immediately after the 14th Amendment's ratification, many legislatures enact laws banning public carry specifically in populated areas.** Starting with New Mexico in 1869, many legislatures enacted Northampton-style prohibitions on public carry in cities and other populated areas. New Mexico made it "unlawful for any person to carry deadly weapons, either concealed or otherwise, on or about their persons within any of the settlements of this Territory," while providing a narrow self-defense exception. 1869 N.M. Laws 312, *Deadly Weapons Act of 1869*, § 1. Violators could serve up to 50 days in jail. *Id.* § 3. Wyoming prohibited carrying firearms "concealed or openly" "within the limits of any city, town or village." 1875 Wyo. Laws 352, ch. 52, § 1. Idaho made it unlawful "to carry, exhibit or flourish any … pistol, gun or other-deadly weapons, within the limits or confines of any city, town or village or in any public assembly." 1889 Idaho Laws 23, § 1. Arizona banned "any person within any settlement, town, village or city within this Territory" from "carry[ing] on or about his person, saddle, or in his saddlebags, any pistol." 1889 Ariz. Laws 16, ch. 13, § 1. And, at the turn

---

issued a license which required showing an "occasion to carry a pistol for his protection." Elliot Shepard, *Ordinances of the City of New York* 214 (1881).

[12]    *See* 1923 Cal. Laws 701, ch. 339; 1923 Conn. Laws 3707, ch. 252; 1923 N.D. Laws 379, ch. 266; 1923 N.H. Laws 138, ch. 118; 1925 Mich. Laws 473, no. 313; 1925 N.J. Laws 185, ch. 64; 1925 Ind. Laws 495, ch. 207; 1925 Or. Laws 468, ch. 260.

[13]    *See* 1890 Okla. Laws 495, art. 47, §§ 2, 5 (making it a crime for anyone "to carry upon or about his person any pistol, revolver," or "other offensive weapons" with certain exceptions); 1903 Okla. Laws 643, ch. 25, art. 45, § 584.

of the century, Texas and Michigan granted cities the power to "prohibit and restrain the carrying of pistols." 1909 Tex. Laws 105; *see* 1901 Mich. Laws 687, § 8.

By this time, many cities, such as Syracuse, N.Y. and Washington, D.C., had imposed such public-carry bans for decades.  Syracuse, N.Y., Ordinances ch. 27 (1885); Washington, D.C., Ordinance ch. 5 (1857).[14] "A visitor arriving in Wichita, Kansas, in 1873," for example, "would have seen signs declaring, 'LEAVE YOUR REVOLVERS AT POLICE HEADQUARTERS, AND GET A CHECK.'" Winkler, *Gunfight* 165 (2011). Dodge City was no different. A sign read: "THE CARRYING OF FIREARMS STRICTLY PROHIBITED." *Id.* Even in Tombstone, Arizona, people "could not lawfully bring their firearms past city limits. In fact, the famed shootout at Tombstone's O.K. Corral was sparked in part by Wyatt Earp pistol-whipping Tom McLaury for violating Tombstone's gun control laws." Blocher, *Firearm Localism*, 123 Yale L.J. 82, 84 (2013).

## CONCLUSION

In sum, a long tradition of American law makes clear that prohibitions on public carry—with or without a good-cause exception—were historically understood to be outside the scope of the Second Amendment. No historical evidence supports the contrary position that public carry was widely permitted in populous cities.

As applied here, New York's law—requiring "proper cause" before a person may carry a firearm on the populated streets of Brooklyn or Buffalo—fits squarely within our historical tradition, and is therefore constitutional. Were it otherwise, public-carry laws enacted by a

---

[14]    *See, e.g.*, Nebraska City, Neb., Ordinance no. 7 (1872); Nashville, Tenn., Ordinance ch. 108 (1873); Los Angeles, Cal., Ordinance nos. 35–36 (1878); Salina, Kan., Ordinance no. 268 (1879); La Crosse, Wis., Ordinance no. 14, § 15 (1880); Dallas, Tex., Ordinance (1887); New Haven, Conn., Ordinances § 192 (1890); Checotah, Okla., Ordinance no. 11 (1890); Rawlins, Wyo., Ordinances art. 7 (1893); Wichita, Kan., Ordinance no. 1641 (1899); San Antonio, Tex., Ordinance ch. 10 (1899); *When and Where May a Man Go Armed*, S.F. Bulletin, Oct. 26, 1866, at 5 ("[San Francisco] ordains that no person can carry deadly weapons").

majority of states and many cities by the early 20th century would have been unconstitutional.

This Court should reject that untenable position, and grant the Defendants' motion to dismiss.

Dated:  April 2, 2018                               EMERY CELLI BRINCKERHOFF
           New York, New York                      & ABADY LLP

                                            _____/s_____
                                            Ilann M. Maazel
                                            O. Andrew F. Wilson
                                            600 Fifth Avenue, 10th Floor
                                            New York, NY 10020
                                            (212) 763-5000
                                            imaazel@ecbalaw.com

EVERYTOWN FOR GUN SAFETY
SUPPORT FUND
Eric Tirschwell
Mark Anthony Frassetto
132 E. 43rd Street, # 657
New York, NY 10017

*Counsel for Amicus Curiae*
*Everytown for Gun Safety*

21

**APPENDIX**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

NEW YORK STATE RIFLE AND PISTOL
ASSOCIATION, INC. and ROBERT NASH,

*Plaintiffs*,

v.

GEORGE P. BEACH II, in his official capacity as
Superintendent of the New York State Police and
RICHARD J. MCNALLY, in his official capacity
as Justice of the New York State Supreme Court,
Third Judicial District, and Licensing Officer for
Rensselaer County,

*Defendants*.

Civil Action No.
1:18-CV-0134 (BKS/ATB)

---

**APPENDIX OF HISTORICAL GUN LAWS
OF AMICUS CURIAE EVERYTOWN FOR GUN SAFETY**

ILAAN M. MAAZEL
O. ANDREW F. WILSON
EMERY CELLI
BRINCKERHOFF&ABADY LLP
600 Fifth Avenue, 10th Floor
New York, NY 10020
(212) 763-5000
imaazel@ecbalaw.com

ERIC TIRSCHWELL
MARK ANTHONY FRASSETTO
EVERYTOWN FOR GUN SAFETY
SUPPORT FUND
132 E. 43rd Street, # 657
New York, NY 10017

April 2, 2018

*Counsel for Amicus Curiae
Everytown for Gun Safety*

## Appendix of Historical Laws

### English statutes and royal proclamations

Statute of Northampton, 2 Edw. 3, 258, ch. 3 (1328) ............................................ App. 1

25 Edw. 3, 320, ch. 2, § 13 (1351) .......................................................... App. 2

7 Ric. 2, 35, ch. 13 (1383) ................................................................ App. 8

20 Ric. 2, 93, ch. 1 (1396) ................................................................ App. 11

### Early American enactments of the Statute of Northampton

1694 Mass. Laws 12, no. 6 ................................................................ App. 13

1699 N.H. Laws 1.......................................................................... App. 16

1786 Va. Laws 33, ch. 21 ................................................................. App. 22

1792 N.C. Laws 60, ch. 3.................................................................. App. 23

1801 Tenn. Laws 710, § 6 ................................................................. App. 25

1821 Me. Laws 285, ch. 76, § 1........................................................... App. 26

1852 Del. Laws 330, ch. 97, § 13 ........................................................ App. 27

1859 N.M. Laws 94, § 2 ................................................................... App. 28

### Other colonial-era American laws

1686 N.J. Laws 289, ch. 9 ................................................................ App. 33

### American good-cause variants of the Statute of Northampton

1836 Mass. Laws 750, § 16................................................................ App. 35

1838 Wisc. Laws 381, § 16 ............................................................... App. 36

1841 Me. Laws 709, ch. 169, § 16........................................................ App. 37

1846 Mich. Laws 690, ch. 162, § 16...................................................... App. 38

1847 Va. Laws 127, ch. 14, § 16 ......................................................... App. 39

1851 Minn. Laws 526, ch. 112, § 18 ...................................................... App. 42

1853 Or. Laws 218, ch. 16, § 17 ......................................................... App. 43

1861 Pa. Laws 248, 250, § 6.............................................................. App. 44

1870 W. Va. Laws 702, ch. 153, § 8 ...................................................... App. 45

1871 Tex. Laws 1322, art. 6512........................................................... App. 48

1873 Minn. Laws 1025, § 17 ………………………………………………………… App. 50a

1891 W. Va. Laws 915, ch. 148, § 7 ...................................................... App. 51

**Southern "lash and pistol" laws**

    1854 Ala. Laws 588, § 3272 .................................................................. App. 53

    1861 Ga. Laws 859, § 4413 .................................................................. App. 57

**Post-Civil-War enactments of Northampton-style laws**

    1869 N.M. Laws 312, § 1 ..................................................................... App. 58

    1870 S.C. Laws 403, no. 288, § 4 ....................................................... App. 61

    1875 Wyo. Laws 352, ch. 52, § 1 ....................................................... App. 64

    1889 Ariz. Laws 16, ch. 13, § 1 .......................................................... App. 65

    1889 Idaho Laws 23, § 1 ...................................................................... App. 66

    1901 Mich. Laws 687, § 8 .................................................................... App. 67

    1909 Tex. Laws 105 .............................................................................. App. 69

**Late 19th and early 20th century laws**

    1890 Okla. Laws 495, art. 47, §§ 2, 5 ................................................. App. 70

    1903 Okla. Laws 643, ch. 25, art. 45, § 584 ....................................... App. 72

    1906 Mass. Laws 150 ........................................................................... App. 73

    1909 Ala. Laws 258, no. 215, §§ 2, 4 ................................................. App. 74

    1913 N.Y. Laws 1627 ........................................................................... App. 76

    1913 Haw. Laws 25, act 22, § 1 .......................................................... App. 80

    1923 Cal. Laws 701, ch. 339 ............................................................... App. 81

    1923 Conn. Laws 3707, ch. 252 .......................................................... App. 89

    1923 N.D. Laws 379, ch. 266 .............................................................. App. 90

    1923 N.H. Laws 138, ch. 118 .............................................................. App. 95

    1925 Mich. Laws 473, no. 313 ............................................................ App. 99

    1925 N.J. Laws 185, ch. 64 ................................................................. App. 103

    1925 Ind. Laws 495, ch. 207 ............................................................... App. 108

    1925 Or. Laws 468, ch. 260 ................................................................. App. 115

    1925 W. Va. Laws 25 ........................................................................... App. 123

**American municipal ordinances**

    Washington, D.C. Ordinance ch. 5 (1857) ........................................... App. 130

    Nebraska City, Neb., Ordinance no. 7 (1872) ..................................... App. 133

    Nashville, Tenn., Ordinance ch. 108 (1873) ....................................... App. 134

    Los Angeles, Cal., Ordinance nos. 35-36 (1878) ................................ App. 136

    Salina, Kan., Ordinance no. 268 (1879) .............................................. App. 137

    La Crosse, Wis., Ordinance no. 14, § 15 (1880) ................................. App. 138

    Syracuse, N.Y., Ordinances ch. 27 (1885) .......................................... App. 139

    Dallas, Tex., Ordinance (1887) ........................................................... App. 140

    New Haven, Conn., Ordinances § 192 (1890) .................................... App. 141

Checotah, Okla., Ordinance no. 11 (1890)........................................................... App. 142

Rawlins, Wyo., Rev. Ordinances art. 7 (1893)................................................... App. 143

Wichita, Kan., Ordinance no. 1641 (1899)......................................................... App. 145

San Antonio, Tex., Ordinance ch. 10 (1899) ...................................................... App. 147

258                2° Edw. III. *Stat. Northampt.* c. 2—5.                *A.D.*1328.

37 Ed. I. c.3

Grandfather to our Lord the King that now is, wherein
is contained, that Justices assigned to take Assises, if
they be Laymen, shall make Deliverance; and if the
one be a Clerk, and the other a Layman, that the Lay
Judge, with another of the Country associate to him,
shall deliver the Gaols: Wherefore it is enacted, That
such [Justices'] shall not be made against the Form of
the said Statute; and that the Assises, Attaints, and
Certifications be taken before the Justices commonly
assigned, which should be good Men and lawful, hav-
ing Knowledge of the Law, and none other, after the
Form of another Statute made in the Time of the said
[King Edward the First;'] and that the Oyers and Ter-
miners shall not be granted but before Justices of the
one Bench or the other, or the Justices Errants, and
that for great [hurt,] or horrible Trespasses, and of
the King's special Grace, after the Form of the Statute
thereof ordained in Time of the said Grandfather, and
none otherwise.

Justices
of Assise
and Gaol-
delivery.

Oyers and
Terminers.

ITEM, It is enacted, That no Man great nor small, of
what Condition soever he be, except the King's Ser-
vants in his presence, and his Ministers in executing
of the King's Precepts, or of their Office, and such as
be in their Company assisting them, and also [upon a
Cry made for Arms to keep the Peace, and the same
in such places where such Acts happen,'] be so hardy
to come before the King's Justices, or other of the
King's Ministers doing their office, with force and arms,
nor bring no force in affray of the peace, nor to go
nor ride armed by night nor by day, in Fairs, Markets,
nor in the presence of the Justices or other Ministers,
nor in no part elsewhere, upon pain to forfeit their
Armour to the King, and their Bodies to Prison at the
King's pleasure.    And that the King's Justices in their
presence, Sheriffs, and other Ministers (') in their Baili-
wicks, Lords of Franchises, and their Bailiffs in the
same, and Mayors and Bailiffs of Cities and Boroughs,
within the same Cities and Boroughs, and Borough-
Holders, Constables, and Wardens of the Peace within
their Wards, shall have Power to execute this Act.
And that the Justices assigned, at their coming down
into the Country, shall have Power to enquire how
such Officers and Lords have exercised their Offices in
this Case, and to punish them whom they find that
have not done that which pertained to their Office.

III.
Riding or
going armed
in Affray of
the Peace.

ITEM, Because the Peace cannot be well kept without
good Ministers, as Sheriffs, Bailiffs, and Hundreders,
which ought to do Execution as well of the King's
Privities as of other Things touching our Lord the
King and his People; It is ordained and established,
That the Statute made in the time of King Edward,
Father to the King that now is, at Lincoln, containing
that Sheriffs, Hundreders, and Bailiffs shall be of such
People as have Lands in the same Shires or Bailiwicks,
shall be observed in all Points after the Form thereof;
and that Sheriffs and Bailiffs of Fee shall cause their
Counties and Bailiwicks to be kept by such as have
Lands therein.

IV.
The Statute
of Lincoln.
9 Edw. II.
concerning
Sheriffs, &c.
confirmed.

ITEM, Where it was ordained by the Statute of West-
minster the Second, that they which will deliver their
Writs to the Sheriff, shall deliver them in the full
County, or in the Rere County, and that the Sheriff or
under Sheriff shall thereupon make a Bill; It is accorded
and established, that at what Time or Place in the
County a Man doth deliver any Writ to the Sheriff or
to the Under-Sheriff, that they shall receive the same
Writs, and make a Bill, after the form contained in the
same Statute, without taking any Thing therefore ; and
if they refuse to make a Bill, others that be present shall
set to their Seals; and if the Sheriff or Under-Sheriff
do not return the said Writs, they shall be punished
after the form contained in the same Statute ; and also
the Justices of Assises shall have power to enquire thereof
at every Man's Complaint, and to award Damages, as
having respect to the Delay, and to the loss and peril
that might happen

V.
The Statute
Westminster
the Second.
13 Edw. I.
chapter 39,
concerning
the Delivery
of Writs to
the Sheriff,
confirmed.

¹ *Commission*          ³ *Grandfather*
² *upon a Proclamation of Deceit of items in time of Peace, and
that in Places where such Deeds are to be done,*—See Lib. Rub.
Scac. Westm. fo 122 b. a Writ reciting a Grant of K. Richard I.
"q⁴ crescentia sint in Angl in ... placitis: Inᵗ Starᶠ & Wiltonⁱ
Inⁱ Wateerioch & Kenelingworth : Inⁱ Stanford & Warneford :
Inⁱ Brisitole & Mireliⁱ : Inᵗ Blie & Tykeliⁱ.   Ita qᵈ pax tre
nɇ ió infringetᶜ, n⁴ poteras Justicisrii minorabil' Nec de
f.iestis nʇis dʒpnü inferecⁱ."               ' *of the King*

nʳe Seign' le Roi qore est, en quele est contenuz q̃
les Justices as assises p̃ndre assignez nils soient lais,
facent les deliv̄ances; et si lun soit clerc, & lautre lais,
q̃ le dit lais, associe a lui un autre du pais, facent la
deliv̄ance des gaols; p̃ qoi acorde est & establi, q̃ tiels
Justiceries ne soient mes g̃ntees countre la forme du
dit estatut, & q̃ les assises, atteintes, & ꝑtifications soient
p̃ses devant les Justices cõmunement assignez, q̃ soient
bones gentz & loialx & conissantz de la lei, & nemie
autres ; solonc la forme dun autre statut fait en temps
meisme le ael; et q̃ les oiers & ꝑminers ne soient gran-
tees forsq̃, - - - - devant les Justices de Iun Baunk & de
lautre, ou les Justices errantz ; & ce p' led & orrible tres-
pas, & de lespeciale g̃ce le Roi, solonc forme de statut
de ce ordene en temps meisme le ael; & nemie autrement.

Ensement acorde est & establi, q̃ nul, g̃nt ne
petit de quele condicion q̃l soit, sauve les ꝑantz le
Roi en la p̃sence le Roi, & les Ministres le Roi, en
fesantz execucion des mandementz le Roi, ou de lour
office, & ceux q̃ sont en lour compaignies, eidantz
as ditz ministres, & auxint au cri de fait darmes de
pees, & ce en lieux ou tielx faitz se ferront, soit si
hardi de venir devant les Justices le Roi, ou autres
Ministres le Roi enfesant lour office, a force & armes ;
ne force mesner en affrai de la pees, ne de chivau-
cher ne daler arme, ne de nuit ne de jour, en faires,
marchees, nen p̃sence des Justices, ne dautres Ministres,
ne nule part aillours, sur peine de pdre lour armures
au Roi & de lour corps a la prisone a la volunte le
Roi.   Et q̃ Justices le Roi en lour p̃sences, viscountes
& autres Ministres le Roi en lour baillies, seign's
des fraunchises & lour baillifs en yceles, & Meire &
Baillifs des Citees & Burghs deinz meismes les Citees &
Burghs, Burghaldres, constables, & gardeins de la pees
deinz lour gardes, eient poair affaire execucion de cest
acord.   Et q̃ les Justices assignez, a lour venu en
pais, eient poair denquere coment tielx Ministres &
seign's ont use lour office en ce, & de punir ceux q̃ls
trov̄unt, q̃ nount mie fait ce q̃ a lour office appent.

Et p'ce q̃ la pees ne poet mie estre bien garde sauntz
bons ministres, come Viscountes, Baillifs, & Hundreders
q̃ deivent faire execucion, auxibien des p'vetez le Roi
come dautres choses tochantes le Roi & son poeple,
acorde est & establi q̃ lestatut fait en temps le Roi
Edward, piere le Roi qore est, a Nicole, contenant q̃
Viscontes, Hundreders & Baillifs soient des gentz eantz
ꝑres en meismes les Countez, ou baillies, soit garde
en touz pointz solonc la forme dycel, & auxint q̃ les
Viscountes & Baillifs de fee, facent garder meismes
lour Countez & Baillies p̃ gentz eantz ꝑres en yceles.

Ensement la ou ordine est, p̃ statut de Westmonsᵗ
le secund, q̃ ceux q̃ liv̄er volent lour briefs as viscountes,
les liv̄ent en plein Counte, ou en rerecounte, & q̃ vis-
conte ou southvisconte facent sur ce bille; acorde est &
establi q̃ a quele heure ou a queu lieu deinz le Counte
home livre a viscountes, ou a southvisconte, briefs,
q̃ls les resceivent & facent bille en la forme con-
tenue en le dit estatut, & ce sanz rien p̃ndre ; et
sils refusent de faire bille, mettent autres lour seelx
q̃ i p̃ront p̃sentz ; et si le Viscounte ou le Southvis-
counte ne retorne mie les briefs, soient puniz solonc la
forme contenue en le dit estatut; & jadumeins cient
les Justices as assises p̃ndre assignez poair denquer
de ce a chescuny pleinte & de agarder damages, eant
regard au delai, & a les ꝑes & pils q̃ i p'ront avenir.

A.D.1351-2.                25° Edw. III. *Stat.* 5. c.1, 2.                319

In Margine Rotuli.

Statutū apud Westm̄ in P'liamento in festo S'ct Hillarii anno regni
Regis E. t'cii vicesimo q'into tento, f'cm.

A STATUTE made at WESTMINSTER;
In the Parliament holden in the Feast of Saint Hilary;
In the TWENTY-FIFTH Year of the Reign of K. EDWARD the THIRD.

*Ex magno Rot. Stat. in Turr. Lond. m.* 16.

AU plement somonz a Westm̄, en la feste de Seint Hiller lan du regne nr̄e Seign' le Roi Edward Denglet're vintisme quint, & de France douzisme, nr̄e ɛ̄' le Roi del assent des Prelatz, Ducs, Countes, Barons, & de tout la comunalte de son Roialme Denglet're, au dit plement somonz, al hon' de Dieu & de Seinte Eglise, & en amendement de son dit Roialme, ad ordeine & establi les choses soutzescriptes.

En p'mes, p'ce q̄ tresg'untz & tresout'geouses damages & grevances sont faites au poeple p les pno's & p'veo's des vitailles p' les hosteux nr̄e ɛ̄' le Roi, ma dame la Roigne, & de lo' enfantz, Si est acorde & assentuz en le dit plement, q̄ les pno's & p'veio's des bledz p' les ditz hosteux les Pignent p mesure rase, selonc ceo q̄ hōme use pmy le Roialme. Et q̄ touz bledz, feyns, litere & bestaill, & touz aut's vitailles & choses quecques, queles sont aprendre p' meismes les hosteux, soient p̄sez a la V̄roie value, p les Constables & aut's bons gentz des villes ou tieles prises se feront, sanz ce q̄ p manaces, ou duresces soient les preisours chacez a mettre autre pris q̄ lour ɛ̄ement ne voet, & come curt cōement en les P̄scheins marchees: et q̄ entre les Purveours & ceux des queux les biens P̄ront prises, en la P̄sence des Conestables & preisours, soient tailles tantost faites, saunz ceo q̄ les gentz des queux les biens P̄ront prises soient ailloursz traitz ou t'vaillez; & meismes les tailles enselatz des seals les pnours des choses isint prises, p les queles tailles gre soit fait as ceux des queux les choses P̄ront isint prises: et si nul pnour ou P'veour p' les ditz hosteux face p autre mañe, soit meintenant arestu p la villee ou la prise P̄ra faite, et mesne a la P̄scheine gaole, et si de ceo soit atteint, soit la fait de lui come de laron, si la quantite des biens le demand; selonc ceo qen un estatut fait en temps meisme nr̄e ɛ̄' le Roi lan de son regne quint, & en un autre estatut fait en temps laiel nr̄e Seign' le Roi s' tieles prises, est contenuz plus au plein: et q̄ desore soit contenue es cōmissions des tieux P'veours et pnours, lentent et la peine contenuz en cest estatut: et q̄ nule cōmission soit faite forsq̄, soulement souz les g'nt ou prive seaлx le Roi; ne q̄ nul hōme soit tenuz de obeier a autre cōmission nen autre mañe q̄ nest dit en avant; et q̄ meisme lestatut tiegne lieu en touz pointz dev's chescun pnour & p'veour, de chescune mañe des vitailles en chescune ptie du Roialme de quele condition qil soit.

Auxint p'ceo q̄ div̄ses opinions ount este einz ces heures que cas, q'nt il avient doit estre dit treson, & en quel cas noun, le Roi a la requeste des Seign's & de la Cōe, ad fait declariaisement q̄ ensuit, Cest assavoir;

AT the Parliament summoned at Westminster in the Feast of St. Hilary, the Year of the Reign of our Lord King Edward the Third [after the Conquest,] of England the Five and twentieth, and of France the Twelfth; our said Lord the King, by the assent of the Prelates, Earls, Barons, and of all the Commonalty of his Realm of England summoned to the Parliament, to the honour of God and Holy Church, and in Amendment of his said Realm, hath ordained and established the Things underwritten.

FIRST, Forasmuch as great and outrageous damage and grievance hath been done to the People by the Takers and Purveyors of Victuals, for the Houses of our Sovereign Lord the King, the Queen, and their Children; It is accorded and assented in the said Parliament, That the Takers ('') of Corn for the said Houses shall take the same by Measure striked according as it is used through the Land. And that such Corn, Hay, Litter, Bestall and all other Victuals and Things, which shall be taken for the said Houses, shall be [taken '] by the very Value, by the Constable and other good People of the Towns where such Taking shall be made, without that that the Praisers by Menace or Duress shall be driven to set any other Price than their Oath will, and as commonly runneth in the next Markets. And that betwixt the Purveyors and them whose Goods shall be taken in the presence of the Constables and Praisers, Tallies be made incontinently, without that that the People whose Goods shall be taken, shall be drawn or travelled elsewhere, and the same Tallies sealed with the Seals of the Takers of the Things so taken, by which Tallies Gree shall be made to them whose Goods shall be so taken; and if any Purveyor or Taker for the said Houses, do in any other Manner, he shall be [maintenant '] arrested by the Town where the Taking shall be made, and brought to the next Gaol; and if he be thereof attainted, it shall be done of him as of a Thief, if the Quantity of the Goods the same require; according as in a Statute made in the Time of our Sovereign Lord the King that now is, the Fifth Year of his Reign, and in another Statute made in the Time of the King's Grandfather upon such Takings, is contained more at the full: and that from henceforth in the Commissions of such Takers and Purveyors, the Intent and Pain limited in this Statute shall be contained: and that no Commission be made, but only under the King's great Seal or Privy Seal; nor that no Man be bound to obey [any such Commissions, other or in what Manner '] than is aforesaid; and that the same Statute take place in all Points against every Taker and Purveyor of every Manner of Victual in every part of the Realm, of what Condition soever he be.

ITEM, Whereas divers Opinions have been before this Time [in what Case Treason shall be said, and in what not '] shall be; at the Request of the Lords and of the Commons, hath made a Declaration in the Manner as hereafter followeth, that is to say; When a Man

I.
Corn shall be taken by Purveyors by Measure striked

Things taken by Purveyors shall be apprised at the very Value.

Tallies of the Goods taken.

Punishment for undue Purveyance as under Stat. 5 E. III. c. 2.

Purveyors' Commissions shall be under the Great or Privy Seal.

II.
Declaration what Offences shall be adjudged Treason.

' *aad Purveyors*
' praysed          ' immediately
' any other Commyssions, or in other manner MS. Tr. 2.
' what case should be adjudged Treason, and what not ;

25° Edw. III. Stat. 5. c. 2, 3.  *A.D.* 1351-2.

*Compassing the Death of the King, Queen, or their eldest Son; violating the Queen, or the King's eldest Daughter unmarried, or his eldest Son's Wife; levying War; adhering to the King's Enemies; counterfeiting the King's Seals, or Money; importing counterfeit Money; killing the Chancellor, Treasurer, or Judges in Execution of their Duty.*

*The King shall have the Forfeiture of all the Offenders' Lands.*

*Petit Treason. Forfeiture of the Lands to the Lords.*

*New Questions of Treasons shall be decided in Parliament.*

doth compass or imagine the Death of our Lord the King, or of our Lady his [Queen '] or of their eldest Son and Heir; or if a Man do violate the King's [Companion,'] or the King's eldest Daughter unmarried, or the Wife (') the King's eldest Son and Heir; or if a Man do levy War against our Lord the King in his Realm, or be adherent to the King's Enemies in his Realm, giving to them Aid and Comfort in the Realm, or elsewhere, and thereof be [probably '] attainted of open Deed by [the People '] of their Condition: And if a Man counterfeit the King's Great or Privy Seal, or his Money; and if a Man bring false Money into this Realm, counterfeit to the Money of England, as the Money called Lushburgh, or other, like to the said Money of England, knowing the Money to be false, to merchandise or make Payment in Deceit of our said Lord the King and of his People; and if a Man slea the Chancellor, Treasurer, or the King's Justices of the one Bench or the other, Justices in Eyre, or Justices of Assise, and all other Justices assigned to hear and determine, being in their Places, doing their Offices: And it is to be understood, that in the Cases above rehearsed, [that '] ought to be judged Treason which extends to our Lord the King, and his Royal Majesty: And of such Treason the Forfeiture of the Escheats pertaineth to our Sovereign Lord, as well of the Lands and Tenements holden of other, as of himself: And moreover there is another manner of Treason, that is to say, when a Servant slayeth his Master, or a Wife her Husband, or when a Man secular or Religious slayeth his Prelate, to whom he oweth Faith and Obedience; and [of such Treason the Escheats ought to pertain '] to every Lord of his own Fee: And because that many other like Cases of Treason may happen in Time to come, which a Man cannot think nor declare at this present Time; It is accorded, That if any other Case, supposed Treason, which is not above specified, doth happen (') before any Justices, the Justices shall tarry without any going to Judgement of the Treason, till the [Cause '] be shewed [and declared before the King and his Parliament,'] whether it ought to be judged Treason or [other '] Felony. And if percase any Man of this Realm ride armed [covertly '] or secretly with Men of Arms against any other, to slay him, or rob him, or take him, or retain him till he hath made Fine or Ransom for to have his Deliverance, it is not the Mind of the King nor his Council, that in such Case it shall be judged Treason, but shall be judged Felony or Trespass, according to the Laws of the Land of old Time used, and according as the Case requireth. And if in such Case, or other like, before this Time any Justices have judged Treason, and for this Cause the Lands and Tenements have comen into the King's hands as Forfeit, the chief Lords of the Fee shall have the Escheats of the Tenements holden of them, whether that the same Tenements be in the King's hands, or in others, by Gift or in other Manner; Saving always to our Lord the King the Year, and the Waste, and the Forfeitures of Chattels, which pertain to him in the Cases above named; and that [the Writs '] of Scire facias be granted in such Case against the Land-tenants, without other Original, and without allowing [any Protection '] in the said Suit; and that of the Lands which be in the King's hands, Writs be granted to the Sheriffs of the Counties where the Lands be, to deliver them out of the King's hands without Delay.

*Certain Offences not Treason.*

*In such Cases already happened, the Chief Lords shall have the Escheats.*

*Saving the King's Year and Waste.*

*Scire facias to Terretenants, &c.*

*III. Challenge of an Indictor upon an Inquest.*

ITEM, it is accorded, That no Indictor shall be put in Inquests upon Deliverance of the Indictees of Felonies or Trespass, if he be challenged for that same cause by him which is so indicted.

' Wife                     ' of
' proveably *MS. Tr.* 2.        ' People       ' it
' *such Manner of Treason giveth Forfeiture of Escheats*
' of new, *MS. Tr.* 2.          ' Case
' *before the King in his Parliament, and it be declared*
" else                     " openly
" Writs                    " the Protection of our Lord the King

---

q'nt hõme fait compasser ou ymaginer la mort nře Seign' le Roi, ma dame sa compaigne, ou de lour fitz primer & heir; ou si hõme violast la compaigne le Roi, ou leisnesce fill le Roi nient marie, ou la compaigne leisne fitz & heir du Roi; & si hõme leve de guerre contre nře dit Seign' le Roi en son Roialme, ou soit aherdant as enemys nře Seign' le Roi en le Roialme, donant a eux aid ou confort en son Roialme ou p'aillours, & de ceo p'vablement soit atteint de ou̇t faite p gentz de lour condicion: et si hõme contreface [Iex g'nt ou prive seal̃x le Roi,'] ou sa monoie, et si hõme apport faus monoie en ceste Roialme contrefaite a la monoie Denglet're, sicome la monoie appelle [Lucynburgh'] ou autre semblable a la dite monoie Dengleť're, sachant la monoie estre faus, p' marchander, ou paiement faire en deceit nře dit Seign' le Roi & son poeple; et si hõme tuast Chanceller, Tresorer, ou Justice nře Seign' le Roi de l'un Baunk ou del autre, Justice en Eir & des assises & toutes aut̃s Justices assignes a oier & ťminer estecantz en lours places en fesantz lours offices: et fait a entendre qen les cases suisnomez doit estre ajugge treson [ḡ sestent'] a nře Seign' le Roi & a sa roial majeste; et de tiele malle de treson la forfait're des eschetes apptient a nře Seign' le Roi, si bien des ťres & teñz tenuz des aut̃s, come de lui meismes: et ovesq̃, ceo il yad autre malle de treson, cest assavoir q'nt un ẽvant tue son meistre, une feme q̃ tue son baron, q'nt hõme seculer ou de religion tue son Prelat, a qi il doit foi & obedience; la tiele malle de treson donn forfaiť's des eschetes a cheœun Seign' de son fee pure: et p' ceo q̃ plusurs aut̃s cases de semblable treson p'ront escheer en temps a venir, queux hõme ne p'ra penser ne declarer en p̃sent, assentu est q̃ si autre cas suppose treson q̃ nest especifie p amount aviegne de novel devant ascunes Justices, demoerge la Justice saunz aler au juggement de treson, tanq̃, p devant nře Seign' le Roi [en'] soit plement soit le cas monstree & declarre le quel ceo doit estre ajugge treson ou autre felonie. Et si p cas ascun hõme de cest Roialme chivach arme descovert ou secrement od gentz armees contre ascun autre, p' lui tuer ou derober, ou p' lui p̃ndre & retenir tanqi face fyn ou raunceon p' sa deliv'rance avoir, nest pas lentent du Roi & de son conseil q̃ en tiel cas soit ajugge treson, einz soit ajugge felonie ou ťspas solonc la lei de la ť're auncienement usee, & solonc ceo q̃ le cas demand: et si en tieu cas, ou autre semblable devant ces heures, ascune Justice eit ajugge treson, & p celle cause les ťres & teñz soient devenuz en la main nře Seign' le Roi come forfaita, eient les chiefs Seign's de fee lours eschetes des teñz de eux tenuz, le quel ḡ les teñz soient en la main nře Seign' le Roi, ou en la main des aut̃s, p donn ou en autre malle; Sauvant toutefoitz a nře Seign' le Roi lan & le wast, & aut̃s forfait'es des chateux q̃ a lui attenent en les cases suisnomez; et q̃ briefs de Scire faḋ v̄s les ť'res tenantz soient g'ntez en dieu cas, saunz autre originale & saunz allower la pteccion nře Seign' le Roi en la dite seute; et q̃ de les ť'res q̃ sont en la main le Roi, soit g'nte brief as vicontes des Countees la ou les ť'res šront de' ostier la main le Roi saunz outre delaie.

Auxint acorde est, q̃ nul enditour soit mys en enquest x' la deliv'ance del endite de ť'spas ou de felonie, sil soit chalange p tiele cause p celui qest endite.

' le grant seal le Roi, *Rot. Parl.* 25 *E.*3. *P. II. nu. vij.* (17.)
' Lusseburgh *Rot. Parl.*      ' q̃ ce estent *Rot. Parl.*
' & *Rot. Parl.*

Estre ceo, come contenu soit en la g'nt Chre des franchies Denglet're q̃ nul soit pris ne emprisone, ne ouste de son frank teñ ne de ses franchises ne de ses franches custumes, sil ne soit p lei de la t're; Accorde est, assentu & establi, q̃ nul desore soit pris p peticion ou suggestion faite a ñre Seign' le Roi ou a son conseill, sil ne soit p enditement ou p̃sentement des bones & loialx du visnee ou tiele fait se face, & en due mañe, ou pces fait sur brief original a la cõe lei; ne q̃ nul soit ouste de ses franchises ne de son frãkteñ sil ne soit mesne duement en respons, & forjugge dyceles p voie de lei; et si rien soit fait al encont̃ soit redresse & tenue p' nul.

Ensement accorde est & establi, q̃ executours des executours eient accion des dettes, acomptes, & des biens emportez du primer testatour, & execucion des estatutz marchantz & reconissances faites en court de record au p̃mer Testatour, en mesme la mañe come le p̃mer testatour av̇oit sil f̃ust en vie, auxibien daccions de temps passe, come de temps avenir, en toutz caas ou juggementz ne sont pas renduz ungore entre tieux executours des executours; mes q̃ les juggementz a cont'ire en temps passe, estoisent en lour force; et q̃ mesmes les executours des executours respoignent au aut̃s de tant come ils av̇eront recov̇t des biens du p̃mer testatour, sicome les p̃mers executours ferroient sils fussent en pleine vie.

Auxint accorde est & assentu, q̃ nul pnour de buche ou de maerisme al oeps ñre Seign' le Roi, p' ov̇eyns ne p' aut̃s choses faire, coupe, ne abate les arbres de nully cressantz entour ou dedeinz sa mansion; et si nul face au cont'ire face gree a la ptie du damage au treble, & elt la prisone dun an, & soit forjugge de son office.

Estre ceo est acorde & establi, q̃ nul Forester ne Gardein des forestes, ou des chaces, ne nul autre Ministre, ne face ne coille pu̇re ne nul autre coillect des vitailles ne de nul autre chose, p colour de son office contre nully volunte, deinz lour baillie ne dehors, forspris ce qest due dauncien droit.

Auxint acorde est & assentu, q̃ nul hõme soit arte de trover gentz darmes, hobellers narchers aut̃s q̃ ceux q̃ tiegnent p tiele s̃vice, sil ne soit de cõe assent & g'nt fait en plement.    Ensement p'ce q̃ tresgrant damage & desceit est fait au poeple, p tant q̃ plus's marchantz usent dachater & poiser leines & aut̃s marchandises p une pois qest appelle Auns elt, acorde est & establi, q̃ celle pois appelle Auns elt entre achatour et vendour soit del tout oste, & q̃ chescun vend & achate p balances, issint q̃ les balances soient owels & les leines & aut̃s marchandises owelment poisez p droit pois; et q̃ le sak de leine ne poise q̃ vint & sys perces, & chescun pere poise quatorze livres, & q̃ lestater de la balance ne encline ne a lune ptie, ne al autre, & q̃ le pois soit acordant al estandard del Escheker: et si nul achatour face al encontre, soit grevousement puny si bien a la seute de ptie come a la seute ñre Seign' le Roi.

Auxint come contenue soit en la g'nde Chr̃e q̃ une mesure soit usee pmy tout Englet're, la quele charre nad mie este tenu bien en ceo point avant ces heures; si est acorde & assentu, q̃ toutz les mesures cest assavoir bussel, di bussel, & peck, galon, potel & quart, p toute Englet're deinz franchise & dehors soient acordauntz al estandard ñre Seign' le Roi; & contiegne le quart oet busselx p lestandard & nient pluis; & soit chescune mesure de blee rase saunz comble, sauvez les rentes & fermes des Seign'sq̃ueles soient mezurez p tiele mesure come eles soleient avant ces heures:

_de mensut & pond._

---

ITEM, Whereas it is contained in the Great Charter of the Franchises of England, that none shall be imprisoned nor put out of his Freehold, nor of his Franchises nor free Custom, unless it be by the Law of the Land; It is accorded assented, and stablished, That from henceforth none shall be taken by Petition or Suggestion made to our Lord the King, or to his Council, unless it be by Indictment or Presentment of good and lawful People of the same neighbourhood where such Deeds be done, in due Manner, or by Process made by Writ original at the Common Law; nor that none be out of his Franchises, nor of his Freeholds, unless he be duly brought into answer, and forejudged of the same by the Course of the Law; and if any thing be done against the same, it shall be redressed and holden for none.

ITEM, It is accorded and stablished, That Executors of Executors shall have Actions of Debts, Accompts, and of Goods carried away of the first Testators, and Execution of Statutes Merchants and Recognizances made in Court of Record to the first Testator, in the same Manner as the first Testator should have had if he were in Life, as well of Actions of the Time past, as of the Time to come, in all Cases where Judgement is not yet given betwixt such Executors (¹); but that the Judgements given to the contrary to this Article in Times past shall stand in their Force; and that the same Executors of Executors shall answer to other of as much as they have recovered of the Goods of the first Testators, as the first Executors should do if they were in full Life.

ITEM, It is accorded and stablished, That no Taker of Wood nor of Timber to the King's Use for work, nor for to make other thing, shall cut or cast down the Trees of any Man growing about or within his House; and if any do to the contrary, he shall make Gree to the Party of his Treble Damage, and to have one year's Prison and to be forejudged of his office.

MOREOVER It is accorded and stablished, That no Forester, nor Keeper of Forest or Chase, nor any other Minister, shall make or gather Sustenance, nor other Gathering of Victuals, nor other Thing, by colour of their Office, against any Man's Will, within their Bailiwick nor without, but that which is due of old Right.

ITEM, It is accorded and assented, That no Man shall be constrained to find Men of Arms, Hoblers, nor Archers, other than those which hold by such Services, if it be not by common Assent and Grant made in Parliament.

ITEM, Whereas great Damage and Deceit is done to the People, for that divers Merchants use to buy and weigh Wools and other Merchandises, by a Weight which is called Auncel; It is accorded and established, That this Weight called Auncel betwixt Buyers and Sellers, shall be wholly put out; and that every Person do sell and buy by the Balance, so that the Balance be even, and the Wools and other Merchandizes evenly weighed by right Weight; so that the Sack of Wool weigh no more but xxvi Stones, and every Stone to weigh xiv l. and that the Beam of the Balance do not bow more to the one part than to the other; and that the Weight be according to the Standard of the Exchequer: And if any Buyer do the contrary, he shall be grievously punished, as well at the Suit of the Party, as at the Suit of our Lord the King.

ITEM, Whereas it is contained in the Great Charter, that one Measure shall be throughout England, which Charter hath not been well kept and holden in this point in Times past; It is accorded and assented, That all the Measures, that is to say, Bushels, Half-bushels, Peck, Gallon, Pottle, and Quart, throughout England, within Franchises and without, shall be according to the King's Standard; and the Quarter shall contain Eight Bushels by the Standard, and no more; and every Measure of Corn shall be striken without Heap, saving the Rents and Ferms of Lords, which shall be measured by such Measures as they were wont in Times past.

¹ of Executors

---

**IV.** None shall be taken upon Suggestion without lawful Presentment;

nor disfranchised, but by Course of Law.

**V.** Executors of Executors shall have the same Rights and Duties as the first Executors.

**VI.** Purveyors shall not take Trees about the Mansion.

**VII.** Keepers of Forests shall not exact Puture, &c. by colour of Office.

**VIII.** No finding of Men of Arms, but by Tenure, or Grant in Parliament.

**IX.** Auncel Weight abolished. Goods shall be weighed by Balance.

**X.** Magna Carta, chapter 25. respecting Measures recited and enforced.

*Justices shall inquire of and punish the Offenders.*

And the Purveyors of the King, of the Queen, and all other, shall make their Purveyances by the same Measure striked in the same manner ; and at all Times that shall be needful, [and'] our Lord the King shall assign certain Justices in every County to inquire, hear, and determine upon the Points aforesaid, and upon the same to do Punishment according to the Trespass, as well at

*Saving of Franchises.*

the Party's Suit as at the King's; so always, that all Manner of Franchises be saved to the Lords in all Points without Blemish to be made in any Manner.

**XI.**

*Aid to make the King's Son Knight, or to marry his Daughter.*

ITEM, It is amented, That reasonable Aid to make the King's eldest Son Knight, and to marry his eldest Daughter, shall be demanded and levied after the Form of the Statute thereof made, and not in other Manner, that is to say, of every (') Fee holden of the King without mean, Twenty Shillings ; and no more, and of every twenty pound of Land holden of the King without mean in Socage twenty Shillings and no more.

**XII.**

*None shall take Profit by Exchange of Gold or Silver.*

ITEM, It is accorded, That it shall be lawful for every Man to exchange Gold for Silver, [or Silver for Gold, or for Gold and Silver,'] so that no Man hold [the same as exchanged,'] nor take no Profit for making such Exchange, upon Pain of Forfeiture of the Money so exchanged ; except the King's Exchangers, which take Profit of such Exchange, according to the Ordinance afore made.

**XIII.**

*The current Coin shall not be impaired.*

ITEM, It is accorded, That the Money of Gold and Silver which now runneth, shall not be impaired in Weight nor in Allay ; but as soon as a good way may be found, the same be put in the antient State, as in the Sterling.

**XIV.**

*Process against Persons indicted of Felony.*

ITEM, It is accorded, That after any Man be indicted of Felony before the Justices in their Sessions to hear and determine, it shall be commanded to the Sheriff to attach his Body by Writ or by Precept, which is called a Capias ; and if the Sheriff return in the same Writ or Precept, that the Body is not found, another Writ or Precept of Capias shall be incontinently made, returnable at three weeks after ; and in the same Writ or Precept it shall be comprised, that the Sheriff shall cause to be seised his Chattels, and safely to keep them till the Day of the Writ or Precept returned ; and if the Sheriff return, that the Body is not found, and the Indictee cometh not, the Exigend shall be awarded, and the Chattels shall be forfeit, as the Law of the Crown ordaineth ; but if he come and yield himself, or be taken by the Sheriff, or by other Minister, before the Return of the second Capias, then the Goods and Chattels shall be saved.

**XV.**

*The Penalty of Purveyors taking more Sheep before shearing Time than are wanted.*

ITEM, Forasmuch as the Takers and Buyers of the King's Prises, do take Sheep from the People betwixt Easter and the Feast of Saint John Baptist, with their Wools, and prise the same at a small Price, and after send them to their own Houses, and do them to be shorn to their own Profit, in deceit of the King, and great Oppression of the People ; It is accorded, that no such Taker, Purveyor, nor Buyer, shall take any Sheep before the Time of shearing, but as much as may reasonably suffice the Time of shearing ; and after that Time they shall take as many Sheep shorn, and not other, that may reasonably suffice them for the Time to come : And if any Taker, Purveyor, or Buyer of the Realm, do against the same, and be thereof attainted at the Suit of the King, or of the Party, it shall be done of him as of a Thief or a Robber ; and the pain shall be contained in every Commission of such Purveyors.

**XVI.**

*Exception of Nontenure of Parcel.*

ITEM, It is accorded, That by the Exception of Nontenure of Parcel no Writ shall be abated, but for Quantity of the Nontenure which is alledged.

**XVII.**

*Process of Exigent in Debt, Detinue, and Replevin.*

ITEM, It is accorded, That such Process shall be made in a Writ of Debt, and Detinue of Chattels, and taking of Beasts, by Writ of Capias, and by Process of Exigend [by'] the Sheriff's Return, as is used in a Writ of Accompt.

' Omit this Word.      ' *Knight's*
' *or for Gold, or Silver for Silver or for Gold,*      ' *upon*
' *a common Exchange*

et facent les p'veours le Roi, ma dame la Roigne, & toutz autres, loun p'veances p meismes les mesures rases, & en meisme la manle ; & a toutes les foitz q̃ mestier s'ra, n̄re Seign' le Roi assignera ĉteines Justices en chescune Countee, demqueer & doier & r'miner s' les pointz suisditz, & de faire s' ce due punissement, solonc chescun r̄spas, si bien a la seute de ptie, come a la seute le Roi ; Issint totes foitz q̃ toutes maners des franchises soient sauvez as Seign's en touz pointz saunz nul emblemissement eni faire en q̃cunq̃ maňe.

Estre ceo acorde est & assentu q̃ renable eid, p' faire raisne fitz le Roi Chivaler, & sa eisnesce filt marier, soit demande & leve solonc la forme del estatut ent fait, & nemie en autre maňe, cest assavoir de cheseun fee (') tenue du Roi saunz meen, vint souldz & nient plus ; & de chescun vint livree de r̄re tenue du Roi saunz meen en sokage vint souldz & nient plus.

Ensement acorde est & establi, q̃ bien lise a chescun hōme de chaunger or p' argent ou p' or, ou argent p' argent ou p' or, issint q̃ nul hōme tiegne cōe eschaunge, ne rien p̄igne de pfit p' tiel eschaunge faire, s' peine de forfait'e de la monie issint chaungee, forprises les Chaungeours le Roi, les queux p̄ignent pfit p' tiele eschaunge solonc lordenance avant faite.

Auxint acorde est & establi, q̃ la monoie dor & dargent qore coert, ne soit mie empire, en pois nen alai ; mes aa plus tost q̃ hōme pusse trover bone voie q̃le soit mys en launcien estat, come en esterling.

Et auxint est acorde & assentu, q̃ ap̄s ceo q̃ ascun hōme soit endite de felonie devant Justices en lour sessions doier & r̄miner, soit cōmande au viscont dattach son corps, p brief ou p̄cept qest appelle Capias, & le viscount retourn en le dit brief ou p̄cept q̃ le corps soit mie trovee, meintenant soit autre brief ou p̄cept de Capias fait, retournable as trois symeignes ap̄s ; & en meisme le brief ou p̄cept soit compris q̃ le viscount face seisir les chateux & les sauvement garder tanq̃ a jour de brief ou p̄cept retournable ; et si le viscount respoigne q̃ le corps nest pas trovee, ne lendite vient point, soit lexigend agarde & soient les chateux forfaitz, sicome la lei de la corone demand ; Mes sil viegne & se rend ou soit pris p viscount ou p autre Ministre devant le retourů del sc̄de Capias, adonq̃s soient les biens & les chateux sauvez.

Ensement p'ce q̃ les achatours & pnours des prises le Roi pnent berbitz du poeple, pentre la Pasch et la fest de Seint Johan od les leines, & les fount preiser a [menc'] pris, & puis les mandent a loure menons demesne & les fount tounder a lour pfit demesne, en deceit du Roi & g'nt opp̄ssion du poeple, Si est acorde & assentuz, q̃ nul des tieux Purveours, pnours & achatours ne p̄igne nules berbitz devant la seisone du toundeson, forsq̃ a tantz q̃ p'ront suffire resonablement tantq̃ au temps du toundison, & ap̄s cel temps p̄igne il a tantz de berbitz tounduz & nemie aut's, come p'ront suffire resonablement p' le temps avenir ; et si nul P'veour, pnour ou achatour du Roialme, face el encontre, & de ceo soit atteint a la seute le Roi ou de ptie, soit fait de lui come de laron ou de robbour, & soit la peine contenue en chescune cōmission des tieux p'veours.

Auxint acorde est & assentue, q̃ p excepcion de nounten'e de pcell null brief soit abatu forsq̃, p' la quantite de la nounten'e qest alegge.      Ensement acorde est & assentue, q̃ auriele pces soit fait en brief de dette, detencu des chateux, & en prises des avers p brief de Capias, & p pces dexigend, p retourů de viscount, sicome est usee en brief dacompt.

' *de Chivaler Rot. Parl.* 25 *E. III. P. II. nu.* xix. (29.)
' petit *Printed Copies—mesme Rot. Parl.* xxxj. (41.)

App. 5

Estre ceo acorde est & assentue, q̃ nient contre-
esteant adjournement faite en Eire p brief de libtate
pbanda p'chacee en favour des neifs, p' delaier les
Seign's de lours accions deu̾s tieux neifs, soient les
Seign's receux dalegger excepcions de villenage contre
lours vileins en touts briefs le quel q̃ les dita briefs de
libtate pbanda soient p'chacez p deceit ou en autre
mañe, & q̃ les Seign's pussent seisir les corps de lours
vileins, auxi bien come ils p'roient devant q̃ tieux
briefs de libtate pbanda feurent ordenez & p'chacez.

Auxint come nr̃e Seign' le Roi eit avant ces heures
fait pteccions as diu̾ses gentz q̃ lui estoient tenuz en
aucuñ mañe des dettes, qils ne u̾ront mie empledez des
dettes queles ils deivent as aut̾s, tanq, ils eussent fait
gre a nr̃e Seign' le Roi de ceo q̃ lui estoit due p eux
p resoun de sa p̃rogative, & issint durantes tieles ptec-
cions nul hõme ad ateint ou oue dempleder tieux dett's
acorde est & assentue, q̃ nient contresteant tieles
pteccions les pties qount accions a lours dettours,
soient respounduz en la Court le Roi p lours det-
tours, et si juggement soit sur ceo rendu p' le pleintif
ou demandant, soit lexecucion de cel juggement mys
en suspenã tanq, le Roi soit fait au Roi de sa dette; et
si les Creansours voillent emp̃ndre p' la dette le Roi,
soient ils a ceo receuz, & outre eient execucion deu̾s
lours dettours de dette a eux due, & auxint recou̾ent
deu̾s eux tant come ils paieront p' eux au Roi.

Ensement acorde est & assentue, q̃ les Moneours, &
aut̾s gardeins & Ministres de la monoie, receivent plat
dor & dargent p pois, & en meisme la mañe deliu̾ent
les monoies q'nt eles u̾ront faix p pois, & nemie p
nombre, saunz nully targer.     Estre ce, come avant
ces heures les Botillers nr̃e Seign' le Roi & lours
deputees soleient p̃ndr̃, & pnent de jour en autre,
moult plus des vyns, p colour de lour office al oeps
nr̃e Seign' le Roi qil ne bosoigneroit, des queux les
plus fiebles ils deliu̾ent al oeps nr̃e d̾e le Roi, & les
meillours en g'nt nombre ils reiengnent deu̾s eux a
vendre & a faire ent lour pfit, & alafoitz ils relessent
as marchantz ceo qils ount pris de eaux, p' fines &
donnes qils p̃ignent de meismes les marchantz p extor-
sion, en g'nt damage & empou̾issement des ditz mar-
chantz; si est acorde & establi q̃ le Seneschal del
Hostiel le Roi, & le Tresorer de la Garderobe, man-
dent as touz les portz Denglet̾re la ou vyns sont a
p̃ndr̃ al oeps le Roi le c̃tein nombre q̃ le Botiller
p̃ndra en chescun port, si q̃ rien soit pris outre
cel nombre; et q̃ Meir & Bailifs des ditz portz c̃i-
fient les ditz Seneschal & Tresorer le nombre des
toneux issint prises p le Botiller ou ses lieutenantz,
souz les seals des ditz Meir & Bailifs, & p endenture
faite entre eaux & les pnours des ditz vines; et en
cas qil soit trove q̃ le Botiller ou ses lieu tenantz
p̃ignent plus ou p̃ignent lower de nully ou delaie
nully p colour de son office, come p arest, face gre
de double a la ptie & soit ouste de son office, & cit
la prison & soit reint a la volunte le Roi; et le Roi as-
signera ses Justices q'nt lui plerra denquere sur cestes
choses; & respoigne le Botiller sibien p' ses deputees
come p' lui meismes, la ou ils ne sont mie sufficeantz.

Auxint p ce q̃ ascuns p'chacent a la Court de Rome
pvisions, davoir Abbeies & Priories en Englet̾re, en
destruccion du Roialme & de seinte r̃ligion, acorde est
& assentue q̃ chescun q̃ p'chace tieles pvisions dabbeie
ou de priorie, q̃ lui & ses executours & p̃curatours q̃
suent & fount execucion de tieles pvisions, soient hors
de la pteccion nr̃e Seign' le Roi; & q̃ hõme pusse faire

ITEM, It is accorded and assented, that notwithstand-
ing adjournment made in Eyre, by Writ of Libertate
pbanda, purchased in favour ofe Villaines to delay the
Lords of their Actions of such Villaines, the same Lords
shall be received to alledge the Exception of Villainage
against their Villaines in all Writs, whether that the said
Writs of Libertate pbanda were purchased by deceit
or in other manner; and that the Lords may seise the
Bodies of their Villaines, as well as they might before
that the Writs of Libertate pbanda were ordained or
purchased.

ITEM, Forasmuch as our Lord the King hath made
before this Time Protections to divers People, which
were bounden to him in some manner of Debt, that
they should not be impleaded of the Debts which they
owed to other, till they had made Gree to our Lord the
King of that which to him was due by them, by reason
of his Prerogative; and so during such Protections no
Man [hath used, nor '] durst implead such Debtors; It
is accorded and assented, That notwithstanding such
Protections, the Parties which have Actions against their
Debtors, shall be answered in the King's Court by their
Debtors; and if Judgement be thereupon given for the
Plaintiff or Demandant, the Execution of the same
Judgement shall be put in Suspence till Gree be made
to the King of his Debt; and if the Creditors will
undertake for the King's Debt, they shall be thereunto
received, and shall have Execution against the Debtors
of the Debt due [and adjudged '] to them, and also shall
recover against them as much as they shall pay to the
King for them.

ITEM, It is accorded and assented, That the Money-
ors, and other Wardens and Ministers of the Money,
shall receive Plate of Gold and Silver by the Weight;
and in the same Manner shall deliver the Money when
it shall be made, by Weight, and not by Number, with-
out any tarrying.

ITEM, Whereas before this Time the King's Butlers
and their Deputies were wont to take, and daily do take
much more Wine, by Colour of their Office, to the
King's Use, than they shall need, whereof the worst
they deliver to the King's Use, and the best in great
Number they retain to themselves, to sell and make
thereof their Profit; and sometime they release to Mer-
chants that which they have taken of them, for Fines
and Gifts, which they take of the same Merchants by
Extortion, to the great Damage and Impoverishment of
the said Merchants; It is accorded, That the Steward of
the King's House, and Treasurer of the Wardrobe, shall
send to all the Ports of England, where Wines be to be
taken to the King's Use, the certain number which the
Butler shall take in every Port, so that nothing be taken
over this Number; and that the Mayor and Bailiffs of
the said Ports certify the said Steward and Treasurer of
the Number of all the Tuns so taken by the Butler or
his Lieutenant, under the Seal of the said Mayor and
Bailiffs, by Indentures made betwixt them and the Takers
of the said Wines; and in case that it be found, that
the Butler or his Lieutenant take more, or take Reward
of any, or delay any by Colour of his Office, as by
arrest, he shall make Gree to the Party of the double,
and shall be put out of his Office, and have Imprison-
ment, and be ransomed at the King's Will; and the
King shall assign his Justices when it shall please him,
to enquire upon these Things; and the Butler shall
answer as well for his Deputies as for himself, where
they be not sufficient.

ITEM, Because that some do purchase in the Court
of Rome Provisions, to have Abbies and Priories in
England, in Destruction of the Realm, and of Holy
Religion; It is accorded, That every Man that pur-
chaseth such Provisions of Abbies or Priories, that he and
his Executors and Procurators, which do sue and make
Execution of such Provisions, shall be out of the King's
Protection; and that a Man may do with them as of

XVIII.
Villainage
may be
pleaded,
and a Villaine
seized,
pending a
Writ of
Libertate
probanda.

XIX.
The King's
Debtors
unable not-
withstanding
Protections.

Stay of
Execution,
until Payment
of King's
Debt; or the
Creditors
undertake
for it.

XX.
Plate shall
be received
at the Mint,
and Coin
delivered,
by Weight.

XXI.
Abuses by
the King's
Butlers in
Purveyance
of Wine.

Regulations
therein.

Punishment
of the Butlers.

XXII.
Penalties on
purchasing
Provisions at
Rome, for
Abbies, or
Priories.

:} Old Printed Copies omit these Words.

Enemies of our Sovereign Lord the King and his Realm; And he that offendeth against such Provisors in Body or in Goods, or in other Possessions, shall be excused against all People, and shall never be impeached nor grieved for the same at any Man's Suit.

**XXIII.**
Companies of Lombards answerable for the Debts of their Fellows.

ITEM, Whereas much People of the Realm, which have made Contracts with Lombards, that be named of the Companies dwelling in the same Realm, which Lombards after that they have made their Obligations to their Creansours, have suddenly escaped out of the Realm without Agreement made to their said Creansours, in deceit and great damage of the People: It is accorded and assented, That if any Merchant of the Company, knowledge himself bound [by the Manner,'] that the Company shall answer of the Debt. So that another Merchant which is not of the Company, shall not be thereby grieved or impeached.

' in that manner,

Of the proclaiming the Statute.

The King to the Sheriff of Kent, Greeting. Certain Statutes passed in our Parliament assembled at Westminster in the Feast of St. Hilary last past, by Us, the Prelates, Dukes, Earls, Barons, and others of the Commonalty of our Realm of England, summoned to the said Parliament, We do send to you under our Seal; charging you to cause the said Statutes to be read in your full County Court, and the same to be strictly observed, and holden. Witness the King at Westminster, the sixth day of March.

Like Writs are directed to all the Sheriffs through England, under the same date.

A like Writ is directed to the Justice of Ireland, changing what ought to be changed, under the same date.

Like Writs are directed to the Persons under-written, under the same date; that is to say:

William de Shareshull and his Companions, Justices assigned to hold Pleas before the King himself:

John de Stonore and his Companions, Justices of the Common Bench:

The Treasurer and Barons of the Exchequer.

de lui come de enemy du Roi et du Roialme; et q̃ celui q̃ face contre tiels p̃visours en corps ou biens ou en aut's possessions, soit excuse dev's touz gentz, & p tant ne soit james greve nempeschee au seute de nully.

Auxint p'ce q̃ plusurs gentz du Roialme, qont fait contractes ove Lumbardz q̃ sont nomez des compaignies demorantz en meisme le Roialme, queux Lombardz ap's qils ount fait lours obligacions a lours Creansours, se sont sodeinement eschapez hors du Roialme, saunz gre faire a les ditz Creansours, en deceit & g'nt damage du poeple; acorde est & assentuz q̃ si nul marchant de compaignie conue se oblige p la mañe, q̃ la compaignie respoigne de la dette. Issint q̃ autre marchant qi nest mie de la compaignie ne soit p tant grevez nempeschee.

B̃ Vic̃ Kanc̃, saltm. Quelam statuta, in p̃iamento nr̃o apud Westm̃ in festo xp̃i Hillar̃ p̃ p̃ito convocato, p nos Prelatos Duces Comites Barones & alios de c̃oitate regni nr̃i Angl̃ ad dc̃m p̃iamentum sũmonitos, &ca, tibi mitt̃im⁰ sub pede sigilli nr̃i, mandantes q̃d statuta p̃dc̃a in pleno Com̃ tuo legi & ea firmit̃ observari & teneri fac̃. T. R. apud Westm̃ vi. die Marc̃.

Cons̃ bria dirigunt' singulis vicecomitib; p Angl̃ sub eadem data.

Cons̃ bre dirigit' Justic̃ Hib̃n mutatis mutand̃ sub eadem data.

Cons̃ bria dirigunt' subacriptis sub eadem data videlt.

Will̃o de Shareshull & sociis suis Justic̃ ad pl̃ita coram rege tenend̃ assigñ.

Joh de Stonore & sociis suis Justic̃ de c̃i Banco.

Thes̃ & Baronib; de scacc̃io.

D' p̃clamañe Statuti.

In Margine Rotuli.

---

## Ordinacio p' Clero
### Fc'a apud Westm̃, anno r. R. E. t'cii vicesimo quinto.

### AN ORDINANCE FOR THE CLERGY,

Made at Westminster in the Twenty-fifth Year of the Reign of K. Edward III.

---

STATUTE THE SIXTH.*

OUR Lord the King, seeing and examining by good Deliberation the Petitions and Articles delivered to him in his Parliament holden at Westminster in the Feast of St. Hilary, the Year of his Reign of England the Five and twentieth, and of France the Twelfth, by the Honourable Father in God, Simon Archbishop of Canterbury, and other Bishops of his Province, upon and for certain Grievances, which they alledged to be done to Holy Church, and to the Clergy, against the Privileges of Holy Church; and then they prayed, that

*Ex magno Rot. Stat. in Turr. Lond. m. 16 d.*

NT̃re Seignour le Roi, veues & examinez p bone deliberacion les peticions & articles a lui bailliez en son plement, tenuz a Westmonster en la feste de seint Hillar̃ lan de son regne Deng̃le're vintisme quint, & de France duxzisme, p Lon'able piere en Dieu Simon Erceveq̃, de Cant'birs et aut's Evesq̃s de sa p̃vince, s' & p' c̃teines grevances queles ils disoient estre faites a seinte eglise et a la clergie, encontre les privileges de seinte eglise, & dunk ils prierent q̃ cove-

---

\* Statute the Third in all former Printed Copies; and entitled " Statutum pro Clero. A Statute for the Clergy."—It is entered on the Back of the Statute Roll. See the Note to Statute the First of this Year.

**Application of the Forfeitures.**

be present, or of the Lords of the Fairs and Markets, and other Places where such Cloths shall be found defective, or of *their* Stewards or Bailiffs, or of the Constables of the Towns and Places aforesaid, by Indenture betwixt them duly to be made; which Indentures shall be every Year at the Feast of St. Michael delivered into the Exchequer, by them which so shall make the said Delivery, to the Intent there to charge the Aulnegers and Collectors aforesaid, by whom such Defaults ought to have been searched, corrected, and mended, and be not, but commonly maintained and concealed in all Parts; for which Third Part that pertaineth to the King as his Forfeiture by force of the Statutes made in Times past, the Aulnegers and Collectors aforesaid, in every County and Place where such Cloths defective shall be found, for the Pain against the said Offences and Concealment, shall make Gree of their own Money to our Lord the King in his Exchequer, of the Value of the same Third Part; so that as well of the same Third Part as of the Remnant of the said Cloth, the King shall be wholly answered at his said Exchequer.

**X. Trial of Assise for Rent out of Lands lying in Two Counties.**

ITEM, It is ordained and assented, That an Assise of Novel Disseisin shall be from henceforth granted and made of Rent behind, due of Tenements being in divers Counties, to be holden in the Confine of the Counties, within which the Tenements be; and thereupon the Assise taken and tried by People of the said Counties in the same Manner as is done of a Common of Pasture being in one County, and appendant to Tenements in another County; and that as well of Disseisins done in Time past, as of Disseisins yet to be done; and that Writs thereupon at the Suit of the Plaintiffs be made from henceforth in the Chancery without any Manner of Contradiction, in a due Form.

**XI. The Statutes 5 Ric. II. c. 4, 5. and 6 Ric. II. c. 7, 11, 12, concerning Fishmongers, Victuallers, and Vintners, repealed.**

ITEM, Whereas in divers Parliaments holden at Westminster, the Fifth and Sixth Years of our said Lord the King, divers Ordinances and Statutes of Fishers of London and other Victuallers were made, and also of Vintners, and of the Sale of Wines, and thereupon the same Ordinances and Statutes, with the Pains in them contained, were published and proclaimed throughout the Realm, as in the said Statutes and Ordinances more plainly may appear: Nevertheless for certain Causes, at the Requeft of the Commons of England thereupon specially made, It is assented and agreed, That the same Ordinances and Statutes of Fishers, Vintners, and Victuallers, made in the Years aforesaid, shall be wholly annulled and repealed, and shall lose their Effect and Strength: Nevertheless saving to the King all the Forfeitures of Wines for the Time past that to him pertaineth

**Victuallers of London shall be under the Rule of the Mayor and Aldermen.**

by virtue of the same Ordinances and Statutes: Provided always, that all the [Vintners and '] Victuallers, as well Fishers as other coming with their Victuals to the City of London, shall be from henceforth under the Governance and Rule of the Mayor and Aldermen of the said City for the Time being, as in Time past it hath been used.

**XII. Stat. 5 Ric. II. c. 3. recited 5**

ITEM, Whereas late in the Parliament holden at Westminster, the Third Year of the Reign of our said Lord the King, at the Request of the Commons, and by the Assent of the Lords Temporal, it was ordained and assented, and upon a grievous Pain prohibited, that no Subject of the King nor other Person, of what Estate or Condition he were, should take, neither receive from thenceforth, within the Realm of England, Procuracy, Letter of Attorney, ne Ferm, nor any other Administration by Indenture, or in any other Manner, of any Person concerning any Benefice of Holy Church within the Realm, but only of the King's Subjects of the same Realm, without the especial Grace and express

**confirmed and extended to Aliens holding Benefices in England;**

Licence of our said Lord the King, upon a certain Pain contained in the said Statute; It is assented and agreed by the same Lords, That the same Statute shall keep his

¹ *Wines, and the*

---

soient presentz ou des c's des faires & marchees, & auls lieux ou tielx draps defectives front trovez, ou de lo's Seneschalx & Baillifs ou des Conestables des villes & lieux avantditz p endentures ent entre eux duement affaires; les queles endentures soient chescun an a la feste de Seint Michel livrez en lescheqir p ceux qensi ferront la dite livree, al effect de charger illoeqs les Alncours & coillours avantditz p queux tielx defautes dussent estre *cerchez* chastiez & amendez & ne sont my einz cõement maintenuz ou concelez toutz p'ts; pur quele tierce ptie qapptient au Roi come sa forfaiture p force de lestatutz devant ore faitz les alneo' & coillo' avantditz, en chescun Countee & lieu ou tielx draps defectives front trovez p' peine encontre lo's ditz mal fait & concelement, facent gree de lo's appres deniers a nre dit t' le Roi en son Escheqir de la value de celle tierce ptie, issint ñ aibn de mesme la tierce ptie come del remenant du dit drap' nre t' le Roi soit entierement respunduz a son Escheqir avantdit.

Item est ordeignez & assentuz qassise de Novele Disseisine soit desore g'nte & faite de rent aderiere, due des teñz esteantz es divses Countees a tenir en la confyne des Countees deinz queux les teñz sont, & sur ce lassise prise & triee p gentz des ditz Countees en mesme la mañe come est fait du cõe de pasture esteantz en un Countee & appendante aa teñz en autre Countee, & ce auxi avant des disseisines faites devant ceste heure, come de disseisines unqore affaire, & ñ briefs sur ceo a la p'suyte des pleinifs soient desore faitz en la Chauncellerie sanz nulle mañe de cont'diccion en due forme.

Item commõn ñ nadgairs en divses plementz tenuz a Westm̃ les ans du regne nre dit t' le Roi quint & sisme, furent faitz divses ordinances, & estatutz des pessoners de Londres & daut's vitaillers & auxint des vineters & la vente des vins, & sur ce mesmes les ordinances & estatutz ovesq, les peynes en ycelles contenuz furent publiez & pclamez pmy le Roialme sicome en les ditz ordinances & estatutz pluis pleinement purra apparoir; Nientmeyns p' c'eins encheusons a la requeste des cões Denglet're sur ceo especialment faite, est assentuz & accordez ñ mesmes les ordinances & estatutz des Pessoners Vineters & Vitaillers, faitz en les ans desusditz, soient de tout anientiz & repellez & pdent lour force & v'tue; Sauvez nientmeins a nre t' le Roi toutz les forfaitures des vins a lui apptenantes p v'tue de mesmes les ordinances & estatutz qantal temps passez. Purveuz toutz foitz ñ toutz les [vins '] & vitaillers sibn Pessoners come aut's ove leur vitailles venantz a la cite Citee de Londres, soient desore desouz le gov'naille [& reulle '] des Meir & Aldermannes de la Citee avandte p' le temps esteantz come auncienement y soleient estre.

Item come nadgairs en plement tenuz a Westm̃ lan du regne nre t' le Roi tierce, a la requeste des cões & p assent des t's temporels, estoit ordeignez & assentuz & sur grevouse peyne defunduz ñ nutt liege le Roi nautre psone quelconñ de quel estat ou condicion qil fuist, pndroit ne resceivoit delors enavant deinz le Roialme Denglet're pcuracie, l're datto'ne, ne ferme, nautre administracioñ p endenture nen autre mañe quelconq, de nulle psone dascun benefice de Seinte Esglise deinz le dit Roialme fors tantsoulement des lieges nre t' le Roi de mesme le Roialme sanz especiale g'ce & exp'sse congie de nre t' le Roi sur c'teine peine comprise en lestatut avantdit, assentuz est ore & accordez p mesmes les t's ñ mesme lestatut tiegne ses

¹ Vintners *Old Printed Copies.*
² Interlined on the Roll.

force & vtue en touts points; et outre ceo est auxint assentuz q̃ al aacun alien eit purchacez ou desore purchace aacun benefice de Seinte Esglise Dignite ou autre & en ppre peone pigne possession dicelle ou loccupie dc fait, deinz mesme le Roialme, soit il a son oeps ppre, ou al oeps dautri sanz especiale congie du Roi, soit il compris en mesme lestatut, & outre ceo encourge en toutz pointz tielx peines & forfaiture come sont ordeignez p un autre estatut fait en lan xxv' del regne luy noble Roi E. aiel nr̃e l̃ le Roi qore est, contre ceux qi purchacent pvisions dabbeies ou Priories; et enoutre au fyn q̃ tielx licences ne se facent desore enavant, le Roi voet & comande a toutz ses lieges & autres qils lour abstiegnent de cy enavant de luy prier dascuna tiels licences doner; et si voet auxi le Roi luy mesmes sbetiegner de doner aacune tiele licence, durantes les guerres horspris au Cardinal de Naples ou a autre especiale peone a qi le Roi soit p especiale cause tenuz.

xiij.    Item est ordeignez & assentuz & le Roi defende q̃ descremes sult hõme chivache deinz le Roialme armez, encontre la forme de lestatut de Norhampton sur ce fait, ne ovesq, lancegay deinz mesme le Roialme, les queux lancegayes soient de tout oustez deinz le dit Roialme come chose defendue p nr̃e l̃ le Roi, sur peine de forfaiture dicelx lancegaies armures & aut̃s herneys quelconqes es maynz & possession de celluy qi les port'a desore deinz mesme le Roialme contre cesta estatut & ordinances sanz especiale congie de Roi nr̃e l̃.

xiiij.    Item en briefs de p̃munire fač est assentuz & accordez q̃ ceux q̃ queux tielx briefs sont portez, & qi sont de p̃sent hors de Roialme & sont de bone fame & aient faitz lo' general̃ atto'nes devant lo' deptir, q̃ le Chaunceller [Dengle'tre'] pur le temps esteant, p ladvis des Justices purra g'ntier q̃ mesmes les peones purront apparoir & respondre & faire & resceivre ce q̃ la ley demande, p lo' ge'lalx atto'nes avantditz siavant come es autres cas & quereles; et ceux peones qi decy enavant passeront p licence nr̃e l̃ le Roi & soient auxint de bone fame, q̃ a lo' requeste le dit Chaunceller p ladvis des Justices lour purra g'ntier desaire lo' ge'lalx atto'nes en la Chancellerie p patent du Roi devant lo' passer, [a respondre'] aibn es dizz briefs de p̃munire fač, come en sult quereles en quel cas toutes voies soit exp̃sse mencion [faite'] des briefs & quereles de p̃munire fač; et celle patente enai faite, purront des lors les ditz atto'nes en absence de lo' Meistres, responder p eux & aut̃s atto'nes desouz eux, devant quelconq, juge du Roialme & faire & resceivre el dit cas, siavant come en sult autre cas nientcontresteant aacun estatut fait a cont̃rie avant ces heures.

Item sur la grievouse pleinte qest faite des meynteno's des quereles & chaumpto's; est ordeignez & assentuz q̃ lestatutz ent faitz en les ans du regne le Roi Edward aiel nr̃e dit l̃ le Roi primer & quart, et auxint en lan de nr̃e l̃ le Roi qore est primer, soient tenuz & gardez & duement executz en toutz pointz.

Item est assentuz & le Roi defende estroitement q̃ decy enavant nulle peone aliene ou denazein de quelconq, estat ou condicion qil soit amesne ou envoie ou face amesner ou envoier p v̄re ou p meer hors du Roialme Dengle'tre az aacunes pties Descoce en prive ne en appt aacune mañe darmure de blee de breez ne dautre vitaille ou dautre refresshchement quelconq,, sur peine de forfaiture de mesmes les vitailles armures & des autres choses avantdites ensemble avec les niefs vesseulx charettes & chivalx qi les portent ou amement, ou de la v̄roie value dicelles, si enai ne soit q̃ le

†††  Interlined on the Roll.

---

Force and Effect in all Points; and moreover it is assented, That if any Alien have purchased, or from henceforth shall purchase any Benefice of Holy Church, Dignity, or other Thing, and in his proper Person take Possession of the same, or occupy it himself within the Realm, whether it be to his own proper Use, or to the Use of another, without especial Licence of the King, he shall be comprised within the same Statute; and moreover shall incur all Pains and Forfeitures in all Points as is before ordained by another Statute made the Five and twentieth Year of the noble King Edward the Third, Grandfather to our Lord the King that now is, against them that purchase Provisions of Abbeys or Priories; and to the Intent that such Licences shall not be from henceforth made, the King willeth and commandeth to all his Subjects and other, that they shall abstain them from henceforth to pray him for any such Licence to be given; and also the King himself will refrain to give any such Licence during the Wars, except to the Cardinal of Naples, or to some other special Person to whom the King is beholden for a special Cause.

ITEM, It is ordained and assented, and also the King doth prohibit, That from henceforth no Man shall ride in Harness within the Realm, contrary to the Form of the Statute of Northampton thereupon made, neither with Launcegay within the Realm, the which Launcegays be clearly put out within the said Realm, as a Thing prohibited by our Lord the King, upon Pain of Forfeiture of the said Launcegays, Armours, and other Harness, in whose Hands or Possession they be found that bear them within the Realm, contrary to the Statutes and Ordinances aforesaid, without the King's special Licence.

ITEM, In Writs of Præmunire facias, It is assented and agreed, That they against whom such Writs be sued, and who at this Time be out of the Realm, and be of good Fame, and have made their general Atturnies before their departing, that the Chancellor of England for the Time being, by the Advice of the Justices, may grant, that the same Persons may appear to answer, to do, and to receive that Thing which the Law demandeth, by their general Atturnies aforesaid, as well as in other Causes and Quarrels; and those Persons which from henceforth shall pass by the King's Licence, and be of good Fame, that at their Request the Chancellor, by the Advice of the Justices, may grant to them to make their general Atturnies in the Chancery by the King's Patent, before their Passage, to answer as well in the said Writs of Præmunire facias, as in other Writs and Plaints; in which Case express Mention shall be made at all Times of the Writs and Plaints of Præmunire facias; and this Patent so made, the said Atturnies from henceforth, in Absence of their Masters, may answer [for them, and make'] other Atturnies under them, before any Judge of the Realm, [to'] do and receive in the said Case as much as in any other Case or Matter, notwithstanding any Statute made to the contrary heretofore.

ITEM, For the grievous Complaint that is made of Maintainers of Quarrels, and Champertors; It is ordained and assented, That the Statutes thereof made in the First and Fourth Years of King Edward, Grandfather to our Lord the King that now is, and also in the First Year of our Lord the King that now is, shall be holden and kept, and duly executed in all Points.

ITEM, It is assented, and the King straitly defendeth, That from henceforth no Person, Alien nor Denizen, of whatsoever Estate or Condition that he be, shall carry nor send, nor do to be carried nor sent, by Land nor by Sea, out of the Realm of England, to any Parts of Scotland, privily nor apertly, any Manner of Armour, Corn, Malt, or other Victuals, or any other refreshing, upon Pain of Forfeiture of the same Victuals, Armours, and other Things aforesaid, together with the Ships, Vessels, Carts, and Horses which shall bring or carry the same, or of the very Value of the same, except so it be

'  by themselves and      ' and

---

who shall also be liable to the Penalties of 25 Ed.III. st. 5. c. 22.

The King's Licences to the contrary shall not be asked for.

XIII. No Man shall ride armed contrary to the Statute 2 Edw. III. chapter 3.

XIV. For enabling Parties out of the Realm to appoint Attornies in Writs of Præmunire.

XV. Statutes 1 Edw. III. stat. 2. c. 14; 4 E.III. c.11; 1 Ric.II.c. 4; against Maintenance, &c. confirmed.

XVI. No Armour or Victual shall be sent into Scotland without Licence of the King; on Pain of Forfeiture thereof.

36         7° RIC. II. c. 16, 17.         *A.D.*1383.

that the King do give his special Licence to the contrary. And to the Intent that these Ordinances be duly kept and put in due Execution, It is also assented, that he which after Proclamation thereof made, espy and prove that any hath offended or forfeit in any Point against the Form of this Ordinance, shall have the Third Part of the said Forfeitures wholly to his own Use (¹).

**XVII.**
**When Main-**
**pernors shall**
**be liable in**
**Damages**
**by Delay.**

ITEM, It is assented and accorded, That in Writs of Debt, Trespass, and Account, and in all other Cases where Mainprise and Writs of Supersedeas be grantable, that if the Persons [comprised ²] come not before the Judges at a Day comprised in the same Mainprise, and by so much the Plaintiff is put to Delay and Loss, the said Mainpernors shall be answerable to the Plaintiffs of a certain Sum of Silver, to be limited by the Discretion and Advice of the said Judges, having Consideration to the Quality and Quantity of the Damages of the Parties, and of the Things in Demand. And this Ordinance of Mainpernors shall endure in Assay till the next Parliament only.

[¹ And therefore We command you that as well the said Statute of Winchester, four times in each Year from henceforth, in Manner as above is ordained, as the other Statutes and Ordinances above written, in all the Cities, Boroughs, Market Towns, and other notable laces within your Bailiwick, where it shall seem to you most expedient, within Franchise and without, you do cause to be proclaimed on our behalf, and to be published and duly kept and observed according to the Form and Effect of the same. Given under the Witness of our Great Seal at our Palace of Westminster the Twenty-sixth Day of November, in the Seventh Year of our Reign.³]

Like Commands of the King are directed to the several Sheriffs throughout England, under the same Date.

¹ *for his labour*      ² *mainprised*
³ *Former Translations read only thus :*
And therefore We command you, &c. Dated, &c.

Roi nře d' nent donne sa licence especiale a cont'rie. Et au fyn q̃ ceste ordinance soit duement gardee & mys en bone execucion ent auxint assentuz q̃ celluy qi aP'r q̃ proclamacion ent soit faite purra espier & p'ver quecun eit mespris, ou forfait en ascun point contre la forme de ceste ordinance, eit la tierce ptie des dites forfaitures ent'ement a son ppre oeps p' son t'vaille.

Item est assentuz & accordez qen briefs de dette trespas & de accompte, & en toutz autres cas ou maynprise & brief de Supsedeas sont g'ntables, si les psones maunprisez ne viegnent mye devant les Juges au jo' compris en mesme la meynprise, & p tant le plaintif soit mys en delay & pde, soient les ditz mesignours respoignables as pleintifs dune ℄eine s̃me, (¹) a limiter p la discrecion & advis des ditz Juges, eiantz consideracion a la qualitee & quantitee des damages du ptie & de la chose en demande. Et si durera ceste ordinance des mainpno's en assaie, tanq, al p̃chein plement tantsoulement.

Et purce vous mandons q̃ sibn le dit Estatut de Wyncestre quatre foitz chescun an decy enavant p mañe q̃ dessus est ordeignez, come les autres Estatutz & ordinances desusescritz en toutz les Citees Burghs villes marchees & autres lieux notables deinz vře baillie ou vous verrez q̃ mieutz soit affaire deinz franchise & dehors, facez pclamer dep nous & publier & duement garder & tenir selonc la forme & effect dicelles. Doñ p tesmoignance de nře g'nt Seal a nře Paleys de Westm̃ avantdit le xxvj™ jour de Novembre lan de nře regne septisme.

Consimilia mandata ℟ dirigunt' singulis Vicecomitibȝ p Angl̃ sub eadem dat̃.

¹ *dargent Old Printed Copies.*

---

## Anno 8° RICARDI, II.    A.D. 1384.

### Statutū apud Wlestm̄ anno octabo editū.

### STATUTE MADE AT WESTMINSTER IN THE EIGHTH YEAR.

*In Margine*
*Rotuli.*

TO the Honour of God, and at the Request of the Commonalty of the Realm of England made to our Lord the King in his Parliament holden at Westminster in the Morrow of St. Martin, the Eighth Year of his Reign; the same our Lord the King of the Assent of the Prelates, Great Men, and Commons aforesaid, hath caused to be made in the same Parliament, a certain Statute for the common Profit of the said Realm, and especially for the good and just Governance, and due Execution of the Common Law, in the Form following.

**I.**
**Liberties of**
**the Church,**
**and Statutes**
**confirmed.**

FIRST, It is [ordained and enacted,¹] that Holy Church have all her Liberties ; and that the Great Charter, and the Charter of the Forest, the Statutes of Purveyors and Labourers, and all other Statutes and Ordinances heretofore made and not repealed, shall be holden and observed, and put in due Execution according to the Form and Effect of the same.

**II.**
**No Lawyer**
**shall be a**
**Judge in his**
**own Country.**

ITEM, It is [ordained and assented,¹] That no Man of Law shall be from henceforth Justice of Assises, or of the common Deliverance of Gaols in his own Country ; and that the Chief Justice of the Common Bench be assigned amongst other to take such Assises, and deliver Gaols ; but as to the Chief Justice of the King's Bench, it shall be as for the most part of an hundred Years last past was wont to be done.

¹ ¹ *accorded and statuted MS. Tr.* 2.

*Ex Rot. Stat. in Turr. Lond. II. m.* 18.

AD honorem dei & requisic̃õem cõitatis regni Angl̃ ſtam d̃ño Regi in pliamento suo tento apud Westm̃ in Crastino Sc̃i Martini anno regni sui octavo, idem d̃ñs Rex de assensu Prelatoȝ Magnatū & Cõitatis p̃dc̃e quoddam statutū in eodem pliamento p cõi utilitate dc̃i regni & p̃ertim p bona & justa gubnac̃õe ac debita execuc̃õe cõis legis fieri fecit in forma subsequenti :

In primis concordatū est & statutū qd nullus homo de ſeat omes libtates suas, & qd Magna Carta & Carta de Foresta, Statuta de gvisoribȝ & laboratoribȝ & omia alia statuta & ordinac̃ões ante hec t̃pora edita & minime revocata teneant' observent' & execuc̃õi debite demandent' juxta formam & eff̃m e900dem.

Item concordatū est & statutū qd nullus homo de lege sit decet̃o Justic̃ assisaȝ vel cõis delibac̃õis gaolaȝ in ppria p̃ria sua et qd capitalis Justic̃ de cõi Banco assignet' int' alios ad h°i assisas capiend & ad gaolas delib̃and sed quoad capitalem Justic̃ de Banco Regis fiat sicut p majori p̃te Centū annoȝ p̃x p̃t̃toȝ fieri consuevit.

Ward of Farringdon-Within may elect an Alderman, wise, sufficient, and able to govern the said Ward Within, and to be named the Aldermen of the Ward of Farringdon-Within; and that between this and the said Feast of Saint Gregory the People of the Ward of Farringdon-Without may elect another Alderman, wise, sufficient, and able to govern the said Ward Without; and to be named the Alderman of the Ward of Farringdon-Without: And that the said Two Aldermen so elected may be established and not removed, except for Cause reasonable, as is ordained and granted by our said Lord the King in this Parliament, of the other Aldermen of the said City.

garde de Farndoñ dedeins puissent eslire un Alderman sage sufficeant & able p' govñer mesme la garde dedeins, & estre nome laldermañ de la garde de Farndoñ dedeins; et q̃ pentre cy & le dit fest de Seint Gregoire les gentz de la garde de Farndoñ dehors puissent eslire un autre Aldirman sage sufficeant & able p' govñer mesme la garde dehors, & estre nomez lalderman de la garde de Farndoñ dehors. Et q̃ les ditz deux Aldermans issint eslux puissent estre establiz & nemye remoez si noun p cause resonable, come ordeinez est & g'ntez p ñre dit S' le Roi en cest plement des aut̃s Aldermans du dite Citee.

---

<span style="float:left">For the proclaiming the Statute.</span>

THE King to the Sheriff of Kent, Greeting. A certain Statute, in our last Parliament holden at Westminster, by Us with the Assent of the Great Men and Commons of our Realm of England there assisting Us, made, We do send to you in Form Patent; Commanding that the same Statute and all and singular the Articles in the same contained, in the Cities, Boroughs, Market Towns, and other Places within your Bailiwick, where you shall see it to be most expedient, you do cause to be publicly proclaimed, and as far as in you lieth, to be firmly and inviolably observed. Witness the King at Westminster, the first Day of June.

By the King Himself and Council.

Like Writs are directed to the several Sheriffs throughout England; and to John Duke of Aquitain and Lancaster, or to his Chancellor in the same Duchy of Lancaster, under the same Date.

Ŕ Vic̃ Kanc̃, saltm. Quoddam statutum in ultimo pliamento ño apud Westm̃ tento p nos de assensu Magnatum & Com̃itatis regni ñi Angl nobiscum ibidem tunc assistenciū editū tibi mittim⁹ in forma patenti; Mandantes q̃d Statutum illud & om̃es & singulos articulos in eodem contentos, in Civitatibus Burgis Villis m̃catoriis & aliis locis infra balliṽi tuam ubi melius expediri videris, publice pclamari & quantum ad te pt̃inet firmit̃ & inviolabilit̃ observari fac̃. T. Ŕ. apud Westm̃ primo die Junii.

p ipm Regem & consilium.

Consimilia br̃ia dirigunt' singulis Vicecomitib₃ p Angl; ac Johi Duci Aquit̃ & Lancast̃ vel ejus Cancellario in eodem Ducatu Lancast̃ sub eadem data.

<span style="float:right">D pclamaco̅e stapliamento pclamand.</span>

---

## Anno 20° RICARDI. II. A.D. 1396-7.

---

### Statutū de Anno vicesimo.

#### STATUTE of the Twentieth Year.

THE KING at his Parliament holden at Westminster in the Feast of Saint Vincent, the Twentieth Year of his Reign, by the Assent of the Prelates, Lords, and Commons of his Realm [of England,] assembled in the same present Parliament, for the Quietness and Tranquillity of his People, hath made certain Statutes and Ordinances in the Form which followeth:

<span style="float:left">Recital of St. 7 R. II. c. 13.</span>

FIRST, Whereas in a Statute made the Seventh Year of the Reign of the King that now is, it is ordained and assented, That no Man shall ride armed within the Realm, against the Form of the Statute of Northampton thereupon made, nor with Launcegays within the same Realm; and that the said Launcegays shall be utterly put out within the said Realm, as a Thing prohibited by the King, upon Pain of Forfeiture of the same Launcegays, Armours, or any other Harness, in the Hands and Possession of them that bear them, from henceforth within the same Realm against the same Statutes and Ordinances, without the King's special Licence:

*Ex Rot. Stat. in Turr. Lond. II. m. 4.*

LE ROY en son parlement tenuz a Westm̃ en la feste de Seint Vincent lan de son roialme vintisme, del assent des Prelatz d's & Com̃unes de son roialme en mesme le parlement, pur quiete & t'nquillite de son poeple ad fait c̃teins estatutz & ordenances qensuient.

Primement, come en un estatut fait lan septisme du regne ñre Seignur le Roy soit ordeignez & assentuz q̃ nuut h̃ome chivache deins le Roialme armez contre la fourme de lestatut de Norhamptoñ sur ce fait, ne oveoq̃ lancegaye deins mesme le roialme, et q̃ les ditz lancegayes soient de tout oustez deins le dit Roialme, come chose defendue par le Roy sur peyne de forfaiture dicelles lancegayes armures & aut̃s hernoys quelconques, es mayns & possessioñ dycelx qui les port'a delors deinz mesme le Roialme encontre ycelles estatutz & ordenances sanz esp̃ale congie du Roy:

Nře Seignur le Roy considerant le gˀnt clamour a luy fait en cest pˀent plement de ce q̃ le dit estatut nest mye tenuz, Si ad ordeignez & establiz en mesme le plement q̃ les ditz estatutz soient pleinement tenuz & gardez & duement executz; et q̃ les ditz lancegayes soient tout outˀment oustez sur la peine contenue en le dit estatut de Northamptoñ & outre de fair fyn & ranceon au Roy. Et outre ce q̃ nuł łˀ, Chivaler nautre petit ne gˀnt aille ne chivache p noeę ne jour armez ne porte Palet ne chapełˀ de ferre nautre armure sur la peine suˀdˀte; Sauvez & exceptz les office & Miniſtres du Roy enfaiſantz leur offices. Et outre ce le Roy voet & ad ordeignez q̃ leſtatut fait łan de ſon regne priſſle de liˀee des Chaperons ſoit tenuz & gardez ſur la peine contenue en meſme leſtatut & ſur peine deſtre empriſonez & de fair fyn & ranceon au Roy.

Item q̃ Vadletz appellez Yomen ne nułˀ autˀ de meindre eſtat qeſquier ne uſe ne porte nułˀ ſigne ne liˀee appelle liˀee de compaignie daſcun łˀ deins le roialme, ſil ne ſoit menial & familier ou officer continuel de ſon dit łˀ et q̃ les Juſtices de la paix' aient poair denquer de ceux qi font a lencontre & de les punir ſelonc leur diſcrecion.

Item le Roy voet & defende q̃ nułˀ łˀ nautre du pais petit ne gˀnt ne ſoit ſeant en Bank oveſq̃, les Juſtices as aſſiſes pˀndre en leur ſeſſions es Countees Dengleˀre ſur grief forfaiture Uˀe le Roy; Et ad chargez ſes ditz Juſtices q̃la ne ſoeffrent le contraire eſtre fait.

Item q̃ come il ſoit contenuz en un eſtatut de łˀ Edward nadgairs Roy Dengleˀre Aiel a nře łˀ le Roy qoreſt łan de ſon regne vynt & oetiſme, q̃ nulle maˀe de nief q̃ ſoit frette deˀs Engleˀre ou ailłours ſoit artez de venir a nuł Port Dengleˀre ne y dem'er contre le gree des Meſtres & Mariˀã dicelle, ou des Marchantz as queux les biens ſont, et ſi tielx niefs veignent de gree ou ſoient chacez p tempeſte ou auˀ infortune ou meſchief a aſcun port Dengleˀre & les Meiſtres & mariˀã ou Marchantz de meſmes les niefs voillent vendre & deliˀer ptie de leur ˀẽchandiſes p loure bone volunte, bien liſe a cheſcuny tieles ˀẽchandiſes achate franchement ſanz empeſchement en le port ou tieles niefs viendront, tout ne ſoient les ˀẽchandiſes miſes a la ˀe par vendre; Et q̃ les Meiſtres Mariˀã & Marchantz, aps ce qils aˀont iſſint venduz ce q̃ lour plerra de leur ditz biens & paie ent la cuſtume, puiſſent łˀunchement deptier & aler ove lour niefs & tout le remenant de lour biˀs pła ou lour plerra ſanz cuſtume ent paier: Nře Seignur le Roy p' la quiete & eaſe de ſon poeple voet q̃ le dit eſtatut ſoit tenuz & gardez en toutz pointz & duement executez nient contreeſteant aſcune ordeignance ou uſage a cont'rie.

Item pur ce q̃ les Cõmunes eunt fait compleint q̃ pluſours gˀntz meſchiefs extorſions & diſeaſe ſont faitz p diˀſes gentz de mauveis condicion q̃ de leure auˀoritee demeſne p̃ignont & font p̃ndre roialment chivalx & auˀs choſes & beſtes hors de leur charues charettes & meſons, diſantz & imaginantz qils ſont a chivaucher en haſtifs meſſages ou boſoignes, la ou en Uˀte ils ne ſont aucunement privez de nulle boſoigne ou meſſage, mes ſoulement en deceite & ſubtilite p' p̃ndre chivalx

Our Lord the King, conſidering the great Clamour made to him in this preſent Parliament, becauſe that the ſaid Statute is not holden, hath ordained and eſtabliſhed in that ſaid Parliament, That the ſaid Statutes ſhall be fully holden and kept, and duly executed; and that the ſaid Launcegayes ſhall be clear put out upon the Pain contained in the ſaid Statute of Northampton, and alſo to make Fine and Ranſom to the King. And moreover, that no Lord, Knight, nor other, little nor great, ſhall go nor ride by Night nor by Day armed, nor bear [Sallet '] nor Skull of Iron, nor [of'] other Armour, upon the Pain aforeſaid; ſave and except the King's Officers and Miniſters in doing their Office. And Moreover, the King will and hath ordained, that the Statute made the Firſt Year of his Reign, of Liveries of Hats, ſhall be holden and kept upon the Pain contained in the ſame Statute, and upon Pain to be impriſoned, and make Fine and Ranſom to the King.

ITEM, That no Varlets called Yeomen, nor none other of leſs Eſtate than Eſquire, ſhall uſe nor bear no [Sign of Livery '] called Livery of Company of any Lord within the Realm, unleſs he be menial and familiar or continual Officer of his ſaid Lord. And that the Juſtices of the Peace ſhall have Power to enquire of them, which do to the contrary, and them to puniſh according to their Diſcretion.

ITEM, The King doth will and forbid, That no Lord, nor other of the Country, little nor great, ſhall ſit upon the Bench with the Juſtices to take Aſſiſes, in their Seſſions in the Counties of England, upon great Forfeiture to the King; and hath charged his ſaid Juſtices, that they ſhall not ſuffer the contrary to be done.

ITEM, Whereas it is contained in a Statute of the late King Edward, Grandfather to the King that now is, the xxviij Year of his Reign, That no Manner of Ship, which is freighted toward England, or elſewhere, ſhall be compelled to come to any Port of England, nor there to tarry againſt the [Agreement '] of the Maſters and Mariners of the ſame, or of the Merchants to whom the Goods be; and if ſuch Ships come of their own Good-will, or be driven by Tempeſt, [Caſualty, or other Misfortune,'] to any Port of England, and the Maſters or Mariners, or Merchants of the ſame Ships, will ſell or deliver Part of their Merchandizes with their Good-will, it ſhall be lawful to every Perſon to buy ſuch Merchandizes freely without Impeachment in the Port where ſuch Ships ſhall come, albeit the Merchandizes be not [put to Sale to the Land;''] And the Maſters, Mariners, and Merchants, after that they have ſo ſold ſo much as pleaſeth them of their ſaid Goods, and the Cuſtom thereof paid, may freely depart and go with their Ships, and all the Remnant of their Goods, where it ſhall pleaſe them, without paying thereof Cuſtom: Our ſaid Lord the King, for the Quietneſs and Eaſe of his People, willeth, That the ſaid Statute ſhall be holden and kept in all Points, and duly executed, notwithſtanding any Ordinance or Uſage to the contrary.

ITEM, Foraſmuch as the Commons have made Complaint, that many great Miſchiefs, Extortions, and Oppreſſions be done by divers People of evil Condition, which of their own Authority take and cauſe to be taken royally Horſes and other Things, and Beaſts out of their Wains, Carts, and Houſes, ſaying and deviſing that they be to ride on haſty Meſſages and Buſineſs, where of Truth they be in no wiſe privy of any Buſineſs or Meſſage, but only in Deceit and Subtilty by ſuch Colour

*Marginal notes:*
- Confirmation thereof.
- No Man ſhall ride or go armed.
- The Statute 1 Ric II. c.7, touching giving of Liveries, confirmed.
- II. Liveries of Companies reſtrained.
- III. None ſhall ſit upon the Bench with Juſtices of Aſſiſe.
- IV. Recital of St. 28 Edw. III. chapter 13, concerning Merchants Strangers.
- Confirmation thereof.
- V. Penalty for taking Horſes, &c. for the King's Service, without Warrant.

' *Preſle*   ' Omit this word.   ' *Badge or Livery*   ' Will
' or other Misfortune or Miſchief,   ' put to land, to ſell.

Case 1:18-cv-00134-BKS-ATB   Document 23-3   Filed 04/02/18   Page 49 of 186

One Half of the Fines and Forfeitures to be unto Their Majesties, and the other Half to theInformers.

A N D further it is Enacted by the Authority aforesaid, That all Fines, Penalties, and Forfeitures arising by force and virtue of this Act, shall be, the one Half to Their Majesties, towards the Support of the Government of this Province, and the other Half to him or them that shall inform and sue for the same in any of Their Majesties Courts of Record within this Province.

Measure of Salt, and Culler of Fish.

B E it further Enacted by the Authority aforesaid, That there be a Measurer of Salt, and Culler of Fish in every Sea-port Town within this Province, to be appointed, as aforesaid, who being likewise sworn for the faithful Discharge of that Office, shall cull all merchantable Fish, and measure all Salt that shall be imported and sold out of any Ship or other Vessel, and shall have Three-half Pence for every Hogshead of Salt by him so measured, to be paid, the one Half by the Buyer, the other Half by the Seller; and One Peny *per* Quintal for every Quintal of merchantable Fish by him culled, to be paid, one Half by the Buyer, and the other Half by the Seller.

---

No 6.
Confirmed 12 Aug.1695.

## An Act for the Punishing of Criminal Offenders.

Cursing and Swearing.

B E it Enacted and Ordained by the Governor, Council, and Representatives, in General Court Assembled, by the Authority of the same, That if any Person or Persons shall prophanely Swear or Curse in the hearing of any Justice of the Peace, or shall be thereof convicted by the Oaths of Two Witnesses, or Confession of the Party, before any Justice or Justices of the Peace, every such Offender shall forfeit and pay unto the Use of the Poor of the Town where the Offence shall be committed, the Sum of Five Shillings; and if the Offender be not able to pay the said Sum, then to be set

Exemption.

in the Stocks, not exceeding Two Hours: And if any Person shall utter more prophane Oaths or Curses at the same time, and in hearing of the same Person or Persons, he shall forfeit and pay to the Use aforesaid, the Sum of Twelve Pence for every Oath or Curse after the first, or be set in the Stocks Three Hours.

P R O V I D E D, That every Offence against this Law shall be complained of, and proved, as aforesaid, within Thirty Days next after the Offence committed.

Drunkenness.

F U R T H E R it is Enacted by the Authority aforesaid, That every Person convicted of Drunkenness by View of any Justice of Peace, Confession of the Party, or Oaths of Two Witnesses, such Person so convicted, shall forfeit and pay unto the Use of the Poor of the Town where such Offence is committed, the Sum of Five Shillings for every such Offence; and if the Offender be unable to pay the said Sum, to be set in the Stocks, not exceeding Three Hours, at the Discretion of the Justice or Justices before whom the Conviction shall be: And upon a second Conviction of Drunkenness, every such Offender, over and above the Penalty aforesaid, shall be bound with Two Sureties in the Sum of Ten Pounds, with Condition for the good Behaviour; and for want of such Sureties, shall be sent to the Common Goal until he find the same.

P R O V I D E D, That no Person shall be impeached or molested for any Offence against this Act, unless he shall be thereof Presented, Indicted, or Convicted, within Six Months after the Offence committed; and the Justice or Justices before whom Conviction of any of the aforesaid Offences shall be, are hereby impowered and authorized to restrain or commit the Offender, until the Fine imposed for such Offence be satisfied; or to cause the same to be levied by Distress and Sale of the Offender's Goods, by Warrant directed to the Constable,
returning

Digitized from Best Copy Available

## *Anno Regni Quarto* Gulielmi & Mariæ.    11

returning the Overplus ( if any be. )   All such Fines to be levied within One Week next after such Conviction, and delivered to the Select-men, or Over-seers of the Poor, for the Use of the Poor, as aforesaid.

Iᴛ is further Enacted and Ordained by the Authority aforesaid, That who-soever shall steal or purloin any Money, Goods, or Chattels, being thereof convicted by Confession, or sufficient Witness upon Oath, every such Offender shall forfeit treble the Value of the Money, Goods, or Chattels so stoln or purloined, unto the Owner or Owners thereof; and be further punished, by Fine or Whipping, at the Discretion of the Court or Justices that have Cogni-zance of such Offence, not exceeding the Sum of Five Pounds, or Twenty Stripes: And if any such Offender be unable to make Restitution, or pay such Threefold Damages, such Offender shall be enjoyned to make Satisfaction by Service; and the Prosecutor shall be, and hereby is impowered to dispose of the said Offender in Service to any of Their Majesties Subjects, for such Term as shall be assigned by the Court or Justices before whom the Prosecution was. And every Justice of the Peace in the County where such Offence is commit-ted, or where the Thief shall be apprehended, is hereby authorized to hear and determine all Offences against this Law: Provided, that the Damage ex-ceed not the Sum of Forty Shillings. And if any Person shall commit Burglary Burglary and by breaking up any Dwelling-house, Ware-house, Shop, Mill, Malt-house, Robbery. Barn, Out-house, or any Ship or other Vessel lying within the Body of the Coun-ty, or shall rob any Person in the Field or High-ways, every Person so offend-ing shall, upon Conviction, be branded on the Forehead with the Letter $B$; and upon a second Conviction, shall be set upon the Gallows for the space of One Hour, with a Rope about his Neck, and one End thereof cast over the Gallows, and be severely Whipt, not exceeding Thirty nine Stripes; and upon a third Conviction of the like Offence, shall suffer the Pains of Death, as being Incorrigible; and shall likewise, upon the first and second Convictions, pay treble Damages to the Party injured, as is provided in case of Theft.

Aɴᴅ it is further Enacted by the Authority aforesaid, That if any Man Fornication. commit Fornication with any single Woman, upon due Conviction thereof, they shall be fined unto Their Majesties, not exceeding the Sum of Five Pounds; or be corporally punished by Whipping, not exceeding Ten Stripes apiece, at the Discretion of the Sessions of the Peace, who shall have Cognizance of the Offence.   And he that is accused by any Woman to be the Father of a Bastard Reputed Fa-Child, begotten of her Body, she continuing constant in such Accusation, being ther of a Ba-examined upon Oath, and put upon the Discovery of the Truth in the time of stard. her Travail, shall be adjudged the Reputed Father of such Child, notwith-standing his Denial, and stand charged with the Maintenance thereof, with the Assistance of the Mother, as the Justices in the Quarter-Sessions shall order; and give Security to perform the said Order, and to save the Town or Place where such Child is born, free from Charge for its Maintenance; and may be committed to Prison until he find Sureties for the same, unless the Pleas and Proofs made and produced on the behalf of the Man accused, and other Cir-cumstances, be such as the Justices shall see reason to judge him innocent, and acquit him thereof, and otherwise dispose of the Child: And every Justice of the Peace, upon his Discretion, may bind to the next Quarter-Sessions him that is charged or suspected to have begotten a Bastard Child; and if the Woman be not then delivered, the Sessions may order the Continuance or Renewal of his Bond, that he may be forth-coming when the Child is born.

Fᴜʀᴛʜᴇʀ it is Enacted by the Authority aforesaid, That every Justice of Power of the the Peace in the County where the Offence is committed, may cause to be Justice of staid and arrested all Affrayers, Rioters, Disturbers, or Breakers of the Peace, Peace. and such as shall ride or go armed Offensively before any of Their Majesties Justices, or other Their Officers or Ministers doing their Office, or elsewhere,

by

Digitized from Best Copy Available

by Night or by Day, in Fear or Affray of Their Majesties Liege People ; and such others as shall utter any Menaces or Threatning Speeches ; and upon View of such Justice or Justices, Confession of the Party, or other legal Conviction of any such Offence, shall commit the Offender to Prison, until he find Sureties for the Peace and good Behaviour, and seize and take away his Armour or Weapons, and shall cause them to be apprized and answered to the

Breach of the Peace.

King as forfeited : And may further punish the Breach of the Peace, in any Person that shall smite or strike another, by Fine to the King, not exceeding Twenty Shillings, and require Bond with Sureties for the Peace, or bind the Offender over to answer it at the next Sessions of the Peace, as the Nature or

Forcible Entry and Detainer.

Circumstance of the Offence may be ; and may make Enquiry of forcible Entry and Detainer, and cause the same to be removed, and make out Hue and Cries after Runaway Servants, Thieves, and other Criminals.

Lying and Libelling.

And it is further Enacted by the Authority aforesaid, That if any Person or Persons of the Age of Discretion (which is accounted Fourteen Years, or upwards) shall wittingly and willingly make or publish any Lye or Libel, tending to the Defamation or Damage of any particular Person, make or spread any false News or Reports, with Intent to abuse and deceive others, every such Person or Persons offending in any of the Particulars before mentioned, and being duly convicted thereof before One or more Justices of the Peace, shall be fined according to the Degree of such Offence, not exceeding the Sum of Twenty Shillings for the first Conviction, and find Sureties for the good Behaviour : And if the Party be unable to pay the said Fine, then to be set in the Stocks, not exceeding Three Hours, or be corporally punished by Whipping, at the Discretion of the Justice or Justices before whom the Conviction shall be, according as the Circumstances or Nature of the Offence shall be ; and the said Justice or Justices may restrain and commit the Offender until he pay the said Fine, and find Sureties for the good Behaviour, or may cause the Fine to be levied by Distress and Sale of the Offender's Goods ; and the Party or Parties grieved or injured by reason of any of the Offences aforesaid, shall or may take his or their Suit against any such Offender or Offenders in any Court of Record.

Forgery.

It is further Enacted by the Authority aforesaid, That if any Person or Persons, upon his or their own Head or Imagination, or by false Conspiracy and Fraud with others, shall wittingly, subtilly, and falsely forge or make, or subtilly cause, or wittingly assent to be forged or made, any false Deed, Conveyance, or Writing sealed, or the Will of any Person or Persons in Writing, to the Intent that the Estate of Free-hold or Inheritance, Right, Title, or Interest of any Person or Persons, of, in, or to any Lands, Tenements, or Hereditaments, shall or may be molested, troubled, defeated, recovered, or charged, or shall, as is aforesaid, forge, make, or cause or assent to be made or forged, any Obligation, or Bill Obligatory, Letter of Attorney, or any Acquittance, Release, or other Discharge of any Debt, Account, Action, Suit, Demand, or other Thing Personal ; or if any Person or Persons shall pronounce, publish, or shew forth in Evidence, any such false and forged Deed, Conveyance, Writing, Obligation, Bill Obligatory, Letter of Attorney, Acquittance, Release, or Discharge, as true, knowing the same to be false and forged, as is aforesaid, to the Intent above remembred, and shall be thereof convicted, either upon Action or Actions of Forger of false Deeds to be founded upon this Act at the Suit of the Party grieved, or otherwise according to the Order and due Course of Law, or upon Bill or Information, that then every such Offender shall pay unto the Party grieved his double Costs and Damages, to be found and assessed in such Court where the said Conviction shall be ; and also shall be set upon the Pillory in some Market-Town, or other open Place, and there to have One of his Ears cut off, and also shall have and suffer Imprisonment by the Space of One whole Year without Bail or Mainprize ; and the Party or Parties grieved by reason

Digitized from Best Copy Available

# LAWS OF NEW HAMPSHIRE.

AN ACT FOR ESTABLISHING AND REGULATING COURTS OF PUBLIC
JUSTICE WITHIN THIS PROVINCE. — PASS'D 11TH OF WM. 3.
WITH ADDITIONAL PARAGRAPHS OF OTHER ACTS RELATIVE
THERETO.

11th of W. 3.

Whereas the establishing and regulating courts of justice, doth
very much tend to the honour and dignity of the crown, and to
the ease and benefit of the Subject :

*Be it therefore Enacted by the Governor, Council, and Representa-
tives, in General Assembly convened, and by the Authority of the
same :*

That every justice of the peace in this province, is hereby au-
thorized and impower'd, to take cognizance of, hear, try, and de-
termine, any criminal offence against any penal law not exceeding
the sum of forty shillings, and to issue all necessary process, and
award execution thereon with legal cost ; as well as in all other
cases where he is, or shall be so authorized by particular laws.
But any person against whom such sentence shall be given, by one
or more justices of the peace, out of the court of general sessions
of the peace, may appeal from the same, to the next court of
general sessions of the peace, to be held in and for said province ;
the appellant recognizing with sureties, in a reasonable sum, not
exceeding five pounds, for his appearance at the court appealed to,
and prosecuting his appeal there with effect, and for performing
and abiding the order or sentence of said court thereon, which
shall be final ; and in the mean time to be of the good behaviour.
The appellant in such cases is to observe the same rules in bring-
ing forward the appeal, as is hereafter directed in civil cases, and
to pay the same fee for entering such appeal ; and to the jury, if it
shall be tried by them, as is paid for cases so tried at the inferior
court — *Provided* such liberty of appealing shall not be construed
to extend to such cases as by the particular laws aforesaid, are
otherwise order'd.

*Justices power in criminal cases, by virtue of a paragraph of an act passed 4th of G. 1. relating to sureties upon mean process, &c.*

*Appeal granted.*

*Proviso.*

And every justice of the peace within this province, may cause
to be stayed and arrested, all affrayers, rioters, disturbers or break-
ers of the peace, or any other who shall go armed offensively, or
put his Majesty's subjects in fear, by menaces or threating
speeches : And upon view of such justice, confession of the

*Justices power to stay affrayers, rioters &c. and to punish the breach of the peace ; by virtue of a paragraph in an act past*

2                                LAWS OF THE PROVINCE

**13th of W. 3d, for punishing criminal offenders.** offender, or legal proof of any such offence, the justice may commit the offender to prison, until he or she find such sureties for the peace and good behaviour, as is required, according to the aggravations of the offence ; and cause the arms or weapons so used by the offender, to be taken away, which shall be forfeited and sold for his Majesty's use.  And may also punish the breach of the peace in any person, who shall smite, or strike another, by fine to the King, not exceeding twenty shillings ; and require bond with sureties for the peace, till the next court of general sessions of the peace, or may bind the offender over to answer for said offence at said court, as the nature and circumstances of the offence may require.

**An act of 13th of W. 3d, for giving aid to sheriffs, &c.** That any of said justices, for the preservation of the peace, upon view of the breach thereof, or of any other transgression of the law proper to his cognizance, done, or committed by any person, or persons whatsoever, shall, and hereby is, impowered, in the absence of a sheriff, under-sheriff, or constable, to require any person, or persons, to apprehend and to bring before him, such offender or offenders : And every person, or persons that shall neglect, or refuse to obey any justice, or justices, in apprehending such offender, or offenders, being thereunto required as aforesaid, shall incur and suffer the like pains and penalties as is provided for refusing or neglecting to assist any sheriff, under-sheriff, or constable, in the execution of his office.

**Justices power in civil cases by virtue of the act for establishing courts of justice in this province, past the 11th of W. 3d.** And every justice of the peace in this province, in the town or parish where he dwells, shall be, and hereby is, authorized and impowered to take cognizance of, hear, try, and determine, any civil action, wherein the demand is for any sum not exceeding forty shillings, arising within this province, in which the title of land, or any real estate is not concerned.  And to give judgment for the debt, or damage, according to the nature of the action, with the legal cost, and grant execution thereon — And for that purpose to issue all necessary processes, which with the execution **Direction of writs by 4th of G. 1. prescribing forms. To be served 7 days before the time of trial.** aforesaid, shall be in the forms prescribed by law.  All writs issued by any justice of the peace, shall be directed to the sheriff of said province, his under-sheriff or deputy, or to any constable of the town or parish where the person, on whom any such writ is to be served, resides ; and shall be executed seven days before the day therein appointed for the trial, and return'd to the justice who **Pleas in abatement and bar to be first made.** issued the same, at or before the time of trial.  And all pleas in abatement, and bar, in any such action, shall be made and enter'd, before any issuable plea is given.

**Judgment may be given on default of appearance.** And in case any person, on whom any writ issued by a justice of the peace, has been duly serv'd and return'd, shall not appear at the time of trial, either by himself or attorney, the justice may enter judgment, in the absence of such party, according to the nature of the action and evidence produced by the plaintiff — And may also give judgment, where any Plaintiff shall become non-suit, or discontinue his suit for the defendant, for his legal cost — *Provided*, nevertheless, that any party aggrieved at the **Liberty of appealing.** judgment or sentence of any justice of the peace, in any of the cases aforesaid, may appeal from the same, to the next inferior

court of common pleas, to be held in and for said province; the party appealing, giving security before said justice, in a reasonable sum, to the appellee, to prosecute his appeal with effect, and to answer and pay such cost and damage, as shall be awarded against the appellant thereon, at the said court.  And the party so appealing, shall observe the same rule in bringing forward his appeal, as is prescribed in this act, to appellants from judgments of the inferior court, and have the same advantage. *How the appeal is to be bro't forward, &c.*

*And be it further Enacted,* That there shall be held and kept, by the justices of the peace within this province, or so many of them as shall be limited by the commission of the peace, to make a quorum, a court of general sessions of the peace at Portsmouth in said province, quarterly, every year; to begin on the second Tuesdays of March, June, September, and December: Who are hereby impower'd to hear and determine all matters relating to the conservation of the peace, and punishment of offenders, appeals from the sentences of justices in the criminal cases triable by them as aforesaid, and whatsoever is by said court cognizable according to law; and to give judgment and award execution therein. *Court of general sessions of the peace by virtue of the said act of the 11th of W. 3d.  The time now stated by the act of the 31st of G. the 2d, for altering the times for holding the several courts of justice, &c.*

And any person aggrieved at the sentence of the justices, in the court of general sessions of the peace, may appeal from such sentence, the matter being originally heard and tried in the said court, unto the next court of assize and general goal delivery, in said province, there to be finally issued. — *Provided* that no appeal shall be granted, unless it be claimed at the time of declaring the sentence, and the appellant enter into recognizance, with two sureties within the space of two hours next after, in a reasonable sum for his personal appearance at the court appealed to, and prosecution of his appeal there with effect, and to perform and abide by the order or sentence of the said court thereon, and to be of good behaviour in the mean time.  And the party appealing is to remain in the hands or custody of an officer, until he or she shall have given such security, and the officer not to be allowed above twelve pence an hour for his time and attendance. *Liberty to appeal to the court of assize, by virtue of a paragraph in said act of 4th of G. 1st, relating to sureties upon mean process, &c.*  *Time and conditions of granting said appeal.*

And such appellant shall, at his or her own cost, take out and present unto the court appealed to, an attested copy of the sentence, and of all the evidences, upon which the same was grounded: and the appellant shall pay the like fee, for the entry of his appeal in the court appealed to, as is by law required for entry of a civil action, and the like fee to the jury that shall try the same. *How the appellant shall bring forward his appeal.*

*And be it further Enacted,* That there shall be held and kept at said Portsmouth, at four terms, an inferior court of common pleas, by four justices, to be appointed and commissionated thereto, by the Governor or Commander in chief for the time being, any three of whom to make a quorum: The said terms to begin on the first Tuesdays of March, June, September, and December, annually.  Which said inferior court shall have cognizance of, hear, try, and determine, all civil actions, matters, and causes, triable at the common law, of what nature, kind, or quality soever, appeals from judgments of justices of the peace in civil actions, triable by them as aforesaid — Excepting that no action for the value of forty shillings, and under, shall be commenced at the said *Inferior court established by the 11th act of the 11th of W. 3d.*  *Time of the beginning of each term by said act, 31st of G. 2.*  *Actions of 40s. value and under, to be commenced elsewhere, this of land excepted, by virtue of the act for regulating trials in civil causes, past 13th of W. 3.*

4                              Laws of the Province

inferior court, unless the title of land, or any real estate, is con-
cern'd.

**Appeal granted by virtue of the act of 13th of W. 3. for regulating trials in civil causes.**
And any party aggrieved at the judgment given in any inferior
court of common pleas (the matter being originally heard and tried
there) may appeal from such judgment, to the next superior court
of judicature, to be held within and for this province.   The appel-
lant entering into a recognizance with sufficient sureties, to prose-
cute his appeal there with effect, and to answer and pay all inter-
vening damages occasion'd to the appellee by such appeal, with
**Execution stayed** additional costs, in case the judgment shall be affirmed.   And no
execution shall be awarded or issued, on any judgment, from which
**Security to be given to prose-cute, &c.** an appeal is granted.   The said recognizance shall be taken before
the said inferior court of common pleas whilst sitting, or before
one or more of the justices of the same, with the clerk, out of
**The time when it may be given.** court, at any time within seven days, next after the judgment
given, if the appeal is claimed in court.   But if the security for
**In default there-of execution may issue.** prosecuting such appeal, shall not be so given, the clerk of said
court may issue execution as he may do, where no appeal is
claimed.

**Appellant to pro-duce a copy of the case.**
And the appellant shall produce and give into the court where
such appeal is to be tried, attested copies of the writ, judgment,
and all the evidence filed in the inferior court of common pleas.
And each party shall be allow'd the benefit of any new and farther
plea or argument, in the trial on the appeal, and also any new evi-
dence.

**What shall be done if the ap-pellant shall not produce it.**
And in default of producing such copies, in manner and form
aforesaid, the appellant shall be non-suited, and judgment shall be
enter'd for the appellee, upon his producing the copies and evi-
dence necessary for that purpose, according to the nature of the
case.

**Superior court of judicature, court of assize, &c. so called by several acts viz. 10th Ann against forging the bills of credit; the 4th of Geo. 1st relating to sure-ties, &c. another of the 4th of Geo. 1. relating to the office & duty of a coroner,&c. The beginning of each term now stated by the said act of 31st of Geo. 2.**
*And be it further Enacted,* That there shall be held and kept at
Portsmouth aforesaid, at two terms in every year, a superior court
of judicature, court of assize and general goal delivery, by one
chief justice, and three other justices, to be appointed and com-
missioned thereto by the Governor or Commander in chief for
the time being, any three of whom to make a quorum.   The one
of said terms to begin on the third Tuesday of May, and the
other on the second Tuesday of November, annually.   Which
court shall have cognizance of all pleas, real, personal, or mixt, or
any civil action or cause, as well between his Majesty and any of
his subjects as between one subject and another; whether the
same do concern the realty, and relate to any right of freehold
and inheritance, or whether the same do concern the personalty,
and relate to matter of debt, contract, damage, or personal injury.
And all mixt actions, which concern both realty and personalty,
which shall be brought before them, by appeal, review, writ of
error, *certiorari,* or in any legal way whatsoever.   And all pleas
of the crown, criminal actions, and causes, and whatsoever relates
to the conservation of the peace, and punishment of offenders,
whether the same be brought into said court by appeal, or any
**The power of the King's Bench, &c.** original process, according to law.   And generally all other mat-
ters, as fully and amply to all intents and purposes whatsoever, as

the courts of King's Bench, common pleas and exchequer, within his Majesty's kingdom of England have, or ought to have. And are hereby impowered to give judgment therein, and award execution thereupon.

And any party, aggrieved at the judgment given in the said superior court, in any civil action, may appeal from the same, unto the Governor and Council, as a court of appeals, to hear and determine such cases—*Provided* the value appealed for, or matter in controversy, exceed the sum of one hundred pounds sterling. And that sufficient security be given by recognizance or otherways, before the said superior court, to prosecute the said appeal with effect, and to pay all intervening damages as aforesaid, in case the judgment appealed from, shall be affirmed, with additional costs.

*Liberty of appeal to the Governor and Council as a court of appeals for £100 sterling.*

And in civil actions tried at the said superior court, if the matter in controversy exceeds the true value of the sum of three hundred pounds sterling, either party to the suit, may appeal from the judgment of said court, to his Majesty in council, whether the said judgment be given on the appeal, or review at said court. And such appeals may be made at any time within fourteen days after sentence or judgment is given, sufficient security being given by the appellant, as the court shall direct, to the appellee, to answer such cost and damage as shall be sustain'd by the appeal, in case the judgment appealed from shall be affirm'd.

*Liberty to appeal from the superior court to the King in council for £300 sterling.*

*Security to be given.*

*And be it further Enacted,* That all original writs, or writs of review, for bringing any civil actions or suits to trial, in the said inferior court of common pleas, or superior court of judicature, shall be summons, capias or attachment, and shall be issued in the form directed in and by an act of this province, entituled " An act prescribing forms of writs in civil causes "; and shall be under the seal, and signed by the clerk, of the court, to which it shall be returnable, and shall be executed by the officer to whom it is directed, fourteen days at least before the day of the sitting of the court to which it is to be returned.

*Original writs what sort to be.*

*Writs how issued and executed. Pass'd 4th of G. 1.*

And the justices of the several courts aforesaid, are hereby authorized to make necessary rules, for the more orderly practice, and management of the business of said courts respectively : *Provided* such rules are not repugnant to the laws of this province, nor to the rules of common law in use here.

*Courts power to make rules, by 13th W. 3.*

And also as often as they shall judge it necessary and proper, to chuse and appoint a clerk, to officiate in such court, and to do all things belonging to that office, who shall be under oath, well and truly to execute and discharge the same.

*And to chuse their clerk, by the 13th W. 3.*

*And be it further Enacted,* That in all cases that are or shall be brought for trial in the said superior court of judicature, or inferior court of common pleas, where the forfeiture of the penalty of any obligation, with a condition, or penalty annexed to any articles, agreement, covenant, contract, charter-party or other specialty : or the forfeiture of any estate granted on condition, executed by deed of mortgage, or bargain and sale with defeazance, shall be found by verdict of a jury, or by default or confession of the obligor, mortgager, or vender, the justices of

*Courts power of chancery.*

6                            LAWS OF THE PROVINCE

the said courts respectively where the trial is had, are hereby im-
powered, and authorized, to moderate the rigour of the law, and
in consideration of such cases, according to equity and good con-
science, to chancer such forfeiture, and to enter up judgment for
the just debt and damages, and to award execution accordingly.
Only in real actions, upon mortgage, or bargain and sale with
defeazance, the judgment to be conditional ; that the mortgager
or vender, his heirs, executors, administrators, or assigns, pay to
the plaintiff, such sum as the court shall determine to be justly
due thereon, within two months, to be computed from the date
of the judgment in such case.   And in default thereof that the
plaintiff recover possession of the estate sued for, and have exe-
cution for the same accordingly.

**Justices of each court to be sworn.**
And each of the justices of the superior court of judicature,
court of assize and general goal delivery, and each of the justices
of the inferior court of common pleas, shall, before their enter-
ing upon the execution of their respective offices, take the follow-
ing oath, to be administred by the Governor or Commander in
chief for the time being, or such as shall be by him thereunto
appointed.

**Oath.**
You swear, that well and truly you shall serve our sovereign Lord
the King, and his people, in the office of a justice of the ——— court of
——— and that you will do equal law and execution of right, to all people,
poor and rich, according to the laws in force within this province, and usage
within the same ; and in such cases as the law doth specially provide to be
relieved in equity, and good conscience, without having regard to any person
whomsoever.   So help you God.

––––––––––

**Pass'd 13th of W. 3.**
AN ACT FOR REGULATING OF TRIALS IN CIVIL CASES.

*Be it Enacted by the Lieutenant Governor, Council, and Repre-*
*sentatives, convened in general assembly, and by the authority*
*of the same:*

**Actions for more than 40s. to be commenced at the inferior court, excepting causes wherein the King is concern'd, which may be at either inf. or sup. court.  All pro-cess to be in English.  Not to abate for circum-stantial errors.**
That all actions triable at the common law, for any matter or
demand above forty shillings value, as also titles of land, shall be
first brought to the inferior court of common pleas, (excepting
only actions or causes relating to the Crown, which may be tried
at either the inferior court of common pleas, or the superior
court of judicature.)    And that all writs, processes, declarations,
indictments, pleas, answers, replications, and entries, in the
several courts of justice within this province, shall be in the
English tongue, and no other.    And that no summons, process,
writ, judgment, or other proceedings in court, or course of justice,
shall be abated, or arrested, or reversed for any kind of circum-
stantial errors, or mistakes, where the person and case may be
rightly understood and intended by the court, nor through defect
or want of form only ; and the justices on motion made in court
may order amendment thereof.

**Costs to be grant-ed on non-suits.**
*And it is further Enacted by the Authority aforesaid,* That if
any person shall cause process to be served upon another on pre-

terposition disarmed of her natural weapons, free argument and debate, errors ceasing to be dangerous when it is permitted freely to contradict them;

II.   BE it enacted by the General Assembly, That no man shall be compelled to frequent or support any religious worship, place, or Ministry whatsoever, nor shall be enforced, restrained, molested, or burthened in his body or goods, nor shall otherwise suffer on account of his religious opinions or belief; but that all men shall be free to profess, and by argument to maintain, their opinions in matters of religion, and that the same shall in no wise diminish, enlarge, or affect their civil capacities.

No man compelled to frequent or support any religious worship. All men free to profess, and by argument to maintain their religious opinions.

III.   AND though we well know that this Assembly elected by the people for the ordinary purposes of legislation only, have no power to restrain the Acts of succeeding Assemblies, constituted with powers equal to our own, and that therefore to declare this Act to be irrevocable, would be of no effect in law; yet we are free to declare, and do declare, that the rights hereby asserted, are of the natural rights of mankind, and that if any Act shall be hereafter passed to repeal the present, or to narrow its operation, such Act will be an infringement of natural right.

Declaration that the rights by this Act asserted, are of the natural rights of mankind.

❧❧❧❧❧❧❧❧❧❧❧❧❧❧❧

## General Assembly, begun and held at the Public Buildings, in the City of Richmond, on Monday, the 16th Day of October, in the Year of our Lord, 1786.

### C H A P.   XXI.

#### An Act forbidding and punishing Affrays.

[Passed the 27th of November, 1786.]

BE it enacted by the General Assembly, That no man, great nor small, of what condition soever he be, except the Ministers of Justice in executing the precepts of the Courts of Justice, or in executing of their office, and such as be in their company assisting them, be so hardy to come before the Justices of any Court, or other of their Ministers of Justice, doing their office, with force and arms, on pain, to forfeit their armour to the Commonwealth, and their bodies to prison, at the pleasure of a Court; nor go nor ride armed by night nor by day, in fairs or markets, or in other places, in terror of the Country, upon pain of being arrested and committed to prison by any Justice on his own view, or proof by others, there to abide for so long a time as a Jury, to be sworn for that purpose by the said Justice, shall direct, and in like manner to forfeit his armour to the Commonwealth; but no person shall be imprisoned for such offence by a longer space of time than one month.

Punishment of persons going armed before Courts of Justice, or the Ministers of Justice, or in fairs or markets in terror of the Country

### C H A P.   XXII.

#### An Act against Conspirators.

[Passed the 27th of November, 1786.]

BE it declared and enacted by the General Assembly, That Conspirators be they that do confederate and bind themselves by oath, covenant, or other alliance, that every of them shall aid and bear the other falsely and maliciously, to move or cause to be moved any indictment or information against another on the part of the Commonwealth, and those who are convicted thereof at the suit of the Commonwealth, shall be punished by imprisonment and amercement, at the discretion of a Jury.

Who shall be deemed conspirators.

( 60 )

## C H A P.   VIII.

*Nothing shall be taken for Beaupleader.*

ITEM, Whereas some of the realm have grievously complained, that they be grieved by Sheriffs, naming themselves the King's approvers, which take money by extortion for Beaupleader, the King will, that the statute of Marlebridge shall be observed and kept in this point.

## C H A P.   XIV.

*None shall commit Maintenance.*

ITEM, Because the King desireth that common right be administered to all persons, as well poor as rich, he commandeth and defendeth, that none of his Counsellors, nor of his house, nor none other of his Ministers, nor no great man of the realm by himself, nor by other, by sending of letters, nor otherwise, nor none other in this land, great nor small, shall take upon them to maintain quarrels nor parties in the country, to the let and disturbance of the common law.

Statutes made at Northampton, tribus Septimanis Paschae, in the Second Year of the Reign of Edward the Third, and in the Year of our Lord 1328.

## C H A P.   I.

*A Confirmation of the Great Charter and the Charter of the Forest.*

[*Unnecessary to be inserted.*]

## C H A P.   III.

*No Man shall come before the Justices, or go or ride armed.*

ITEM, It is enacted, that no man great nor small, of what condition soever he be, except the King's servants in his presence, and his Ministers in executing of the King's precepts, or of their office, and such as be in their company assisting them, and also upon a cry made for arms to keep the peace, and the same in such places where such acts happen, be so hardy to come before the King's justices, or other of the King's

( 61 )

Minifters doing their office with force and arms, nor bring no force in an affray of peace, nor to go nor ride armed by night nor by day, in fairs, markets, nor in the prefence of the King's Juftices, or other minifters, nor in no part elfewhere, upon pain to forfeit their ar~~~r to the King, and their bodies to prifon at the King's pleafure.    And that the King's Juftices in their prefence, Sheriffs and other minifters, in their bailiwicks, Lords of Franchifes, and their bailiffs in the fame, and Mayors and Bailiffs of cities and boroughs, within the fame cities and boroughs, and borough-holders, conftables and wardens of the peace within their wards fhall have power to execute this act. And that the Juftices affigned, at their coming down into the country, fhall have power to enquire how fuch officers and lords have exercifed their offices in this cafe, and to punifh them whom they find that have not done that which pertain to their office.

## C H A P.   V.

*The Manner how Writs fhall be delivered to the Sheriff to be executed.*

ITEM where it was ordained by the ftatute of Weftminfter the fecond, that they which will deliver their writs to the Sheriff fhall deliver them in the full county, or in the rere county, and that the Sheriff or Under-Sheriff fhall thereupon make a bill : it is accorded and eftablifhed, that at what time or place in the county a man doth deliver any writ to the Sheriff or to the Under-Sheriff, that they fhall receive the fame writs, and make a bill after the form contained in the fame ftatute, without taking any thing therefore.    And if they refufe to make a bill, others that be prefent fhall fet to their feals, and if the Sheriff or Under-Sheriff do not return the faid writs, they fhall be punifhed after the form contained in the faid ftatute.    And alfo the Juftices of Affize fhall have power to enquire thereof at every man's complaint, and to award damages, as having refpect to the delay, and to the lofs and peril that might happen.

## C H A P.   VI.

*Juftices fhall have Power to punifh Breakers of the Peace.*

ITEM, as to the keeping of the peace in time to come, it is ordained and enacted that the ftatutes made in time paft, with the ftatute of Winchefter, fhall be obferved and kept in every point : and where it is contained in the end of faid ftatute of Winchefter, that the Juftices affigned fhall have power to enquire of defaults, and to report to the King in his next parliament, and the King to remedy it, which no man hath yet feen, the fame Juftices fhall have power to punifh the offenders and difobeyers.

O

**1801.** co unty, shall proceed against such offender, in the same manner as is heretofore prescribed for vagrants.

Keepers of certain gaming tables deemed vagrants. 1811, c. 112, s. 1, 2.

3. *Be it enacted,* That all and every keeper or keepers, exhibitor or exhibitors, of either of the gaming tables commonly called A. B. C. or E. O. tables, or faro bank, or of any other gaming cloth table, or bank of the same, or like kind, under any denomination whatever, shall be deemed and treated as a vagrant, and moreover it shall be the duty of any judge or justice of the peace, by warrant under his hand, to order such gaming table or cloth to be seized and publicly burned or destroyed ; said warrant shall be directed to some one constable within the county, whose duty it shall be, forthwith to execute the same : *Provided,* That nothing herein contained, shall be so construed as to extend to billiard tables.

Penalty for harboring vagrants. April 1784, c. 34, s. 4.

4. *Be it enacted,* That it shall not be lawful for any house keeper to harbor any idle person of the character aforesaid, for any longer time than is heretofore specified, under the penalty of twenty dollars for every such offence, to be recovered by warrant before any justice of the peace of the county where the offence is committed.

Duty of the justices herein. Apl. 1784, c. 34. 1811, c. 112, s. 1, 2.

5. *Be it enacted,* That it shall be the duty of each justice of the peace, on information being made on oath to him or them, that there is a person or persons of the aforesaid description, loitering in his or their county, then and in that case he or they shall issue his or their warrant against such person or persons agreeable to this act : *And provided,* he or they shall neglect or refuse so to do, it shall be deemed a misdemeanor in office, for which he or they shall be impeachable, and on conviction be removed from office.

Penalty for failing.

Proceedings against persons going armed contrary to this act.

6. *Be it enacted,* That if any person or persons shall publicly ride or go armed to the terror of the people, or privately carry any dirk, large knife, pistol or any other dangerous weapon, to the fear or terror of any person, it shall be the duty of any judge or justice, on his own view, or upon the information of any other person on oath, to bind such person or persons to their good behaviour, and if he or they fail to find securities, commit him or them to jail, and if such person or persons shall continue so to offend, he or they shall not only forfeit their recognizance, but be liable to an indictment, and be punished as for a breach of the peace, or riot at common law.

Felony to maim or disfigure any person, &c. Dec. 1754, ch. 15. 1807, ch. 73, s. 13.

7. *Be it enacted,* That if any person or persons shall unlawfully cut out or disable the tongue, put out an eye, slit a nose, bite or cut off a nose, ear or lip, or cut off or disable any limb or member, or stab any person whatsoever, in doing so, to maim, wound or disfigure in any of the manners before mentioned, such person or persons so offending, their counsellors, aiders and abettors, knowing of, and privy to the offence, shall be and are hereby declared to be felons, and shall suffer as in case of felony : *Provided nevertheless,* he or they shall be entitled to benefit of clergy, and be further liable to an action of damages to the party injured.

## CHAPTER LXXVI.

An Act describing the power of Justices of the Peace in Civil and Criminal Cases.

SEC. 1. BE *it enacted by the Senate, and House of Repre-* *sentatives, in Legislature assembled,* That it shall be within the power, and be the duty of every Justice of the Peace within his county, to punish by fine not exceeding five dollars, all assaults and batteries that are not of a high and aggravated nature, and to examine into all homicides, murders, treasons, and felonies done and committed in his county, and commit to prison all persons guilty, or suspected to be guilty of manslaughter, murder, treason or other capital offence ; and to cause to be staid and arrested, all affrayers, rioters, disturbers or breakers of the peace, and such as shall ride or go armed offensively, to the fear or terror of the good citizens of this State, or such others as may utter any menaces or threatening speeches ; and upon view of such Justice, confession of the delinquent, or other legal conviction of any such offence, shall require of the offender to find sureties to appear and answer for his offence, at the Supreme Judicial Court, or Circuit Court of Common Pleas, next to be held within or for the same county, at the discretion of the Justice, and as the nature or circumstances of the case may require : and for his keeping the peace, and being of the good behaviour, until the sitting of the Court he is to appear before ; and to hold to bail all persons guilty or suspected to be guilty of lesser offences which are not cognizable by a Justice of the Peace ; and require sureties for the good behaviour of dangerous and disorderly persons ; and commit all such persons as shall refuse so to recognize, and find such surety or sureties as aforesaid ; and take cognizance of, or examine into all other crimes, matters and offences, which by particular laws are put within his jurisdiction.

*General jurisdiction of Justices of the Peace, and their duty in criminal cases, in arresting, trying, recognizing and committing offenders.*

SEC. 2. *Be it further enacted,* That all fines and forfeitures accruing for the breach of any bye-law, in any town within this State, may be prosecuted for, and recovered before any Justice of the Peace in the town or county where the offence shall be committed, by complaint or information, in the same way and manner other criminal offences are prosecuted before the Justices of the Peace within this State.

*Breaches of the bye-laws of towns may be prosecuted before Justices of the Peace.*

SEC. 3. *Be it further enacted,* That any person aggrieved at the sentence given against him, by any justice of the Peace, may appeal therefrom to the next Circuit Court of Common Pleas to be held within the same county, and shall, before his appeal is granted, recognize to the State in such reasonable sum, not less than twenty dollars, as the Justice shall order, with sufficient surety or sureties for his prosecuting his appeal ; and shall be held to produce the copy of the whole process, and all writings filed before the Justice, at the Court appeal-

*Persons aggrieved may appeal to the C. Court of Com. Pleas.*

*Must recognize with sureties,*

*and produce copies of case at C. C. Common Pleas.*

Case 1:18-cv-00134-BKS-ATB   Document 23-3   Filed 04/02/18   Page 63 of 186

and if the fine and costs be not paid, the constable shall convey said defendant to jail, for which a copy of the judgment shall be a sufficient warrant.

SEC. 11. Every justice of the peace shall transmit to the auditor of accounts, by mail, on the first Tuesday of April and October in each year, a duly certified list of the cases in which any fine, or forfeiture, has been imposed by him before that time; stating the party, the fine, and the name and place of residence of the constable chargeable. Any neglect of this duty shall be deemed a misdemeanor, and shall be punished by fine not exceeding one hundred dollars; and the court shall, on conviction of such justice, transmit a copy of the record to the general assembly.

*2018 To certify fines to auditor.*

*Penalty.*

SEC. 12. Whoever shall threaten to kill, or wound, another, or to injure him in person, or estate, shall, on proof of such threats, before a justice of the peace, either by the oath of the party threatened, or otherwise, and on affidavit, by the said party, that he believes, from such threatening, he is in danger to be hurt in body, or estate, be bound to surety of the peace, and for his appearance at the next Court of General Sessions for the county.

*2019 Power to bind over for THREATS*

SEC. 13. Any justice of the peace may also cause to be arrested and bind to surety of the peace all affrayers, rioters, breakers and disturbers of the peace, and all who go armed offensively to the terror of the people, or are otherwise disorderly and dangerous.

*2020 To cause arrests.*

SEC. 14. He may also cause to be arrested any drunken person, or any person who, in his hearing, shall profanely swear by the name of God, Christ Jesus, or the Holy Spirit; and such person, being thereof convicted by view of the justice, or other proof, shall be fined by him fifty cents for every such profane oath, and fifty cents for every such offence of being drunk.

*2021 Drunkards; swearers.*

SEC. 15. If any person, arrested by warrant, or order, of any court of justice, magistrate, or justice of the peace, shall use abusive, railing, or threatening speeches against such court, magistrate, or justice, or shall resist, or assault, any person executing, or aiding in the execution of any such warrant, or order, he shall be fined by such court, magistrate, or justice, any sum not exceeding fifteen dollars.

*2022 To punish those who resist authority.*

SEC. 16. When complaint is made in due form to a justice, alleging that an offence has been committed, the justice shall carefully examine the complainant on oath, or affirmation, and if he considers there is probable ground for the accusation, he shall issue his warrant.

*2023 Proceedings in criminal cases; complaint.*

A warrant of arrest may be in this form:

*2024 Warrant of arrest.*

—— *County, ss.  The State of Delaware,*
      *To any constable of said county, greeting :*

*Whereas G. H. of —— hath upon oath* (or affirmation) *before me, a justice of the peace of said county declared that on the —— day of —— at —— (state the offence charged) and that he hath just cause to suspect and doth suspect C. D. of —— hundred, of committing the said offence: You are therefore hereby commanded to take the said*

94                          LAWS OF NEW MEXICO.

**Challenges.**  SEC. 9.  That in the trial of all causes under the provisions of this act, each party shall have the right to challenge peremptorily three jurors and no more.

**Panel how completed.**  SEC. 10.  When, from any cause whatever, the panel shall not be completed, or the jurors are not present, it shall be the duty of the sheriff, by order of the court, to complete said panel by summoning such members.

SEC. 11.  That all laws or parts of laws in conflict herewith are hereby repealed, and this act shall be in force from and after its passage.

[Translation.]

_____

### An Act prohibiting the carrying of Weapons, concealed or otherwise.

Be it enacted by the Legislative Assembly of the Territory of New Mexico:

**Carrying weapons prohibited.**  SECTION 1.  That, from and after the passage of this act, it shall be unlawful for any person to carry concealed weapons on their persons, of any class of pistols whatever, bowie knife (cuchillo de cinto), Arkansas toothpick, Spanish dagger, sling-shot, or any other deadly weapon, of whatever class or description they may be, no matter by what name they may be known or called, under the penalties and punishment which shall hereinafter be described.

**First conviction fine.**  SEC. 2.  Be it further enacted: That if any person shall carry about his person, either concealed or otherwise, any deadly weapon of the class and description mentioned in the preceding section, the person or persons who shall so offend, on conviction, which shall be by indictment in the district court, shall be fined in any sum not less than fifty dollars, nor more than one hundred dollars, at the discretion of the court trying the cause, on the first conviction under this act; and for the second conviction, the party convicted shall be imprisoned in the county jail for a term of not less than three months, nor for more than one year, also at the discretion of the court trying the cause.

**Second conviction. imprisonment.**

son dispuestos ántes. En los condados de San Miguel, Rio Arriba, y Bernalillo, el primer lúnes de Marzo y Setiembre, y continuará una semana si los negocios no están dispuestos ántes. En los condados de Santa Ana, Socorro, y Doña Ana, el primer lúnes de Mayo, Setiembre y Noviembre, y continuará una semana si los negocios no están dispuestos ántes.

SEC. 9. Que en el juicio de todas las causas bajo las provisiones de este acto, cada una de las pártes tendrán derecho de desechar perentoriamente tres jurados y no mas. *Recusas.*

SEC. 10. Cuando, por cualquiera causa que sea, un jurado no está completo, ó no están presentes, será el deber del alguacil mayor, por órden de la corte, de llenar dicho jurado citando tales miembros. *Lista, como se completa.*

SEC. 11. Que todas las leyes, ó partes de leyes, en conflicto [con esto,] son por este abrogadas, y este acto tendrá efecto desde y despues de su pasaje.

Aprobado Febrero 2 de 1860.

———

### Un Acto prohibiendo el porte de Armas ocultas ó de otra manera.

Decrétese por la Asamblea Legislativa del Territorio de Nuevo Méjico:

SECCION 1ª. Que desde y despues del pasaje de este acto no será legal para que ninguna persona porte armas sobre sus personas, ninguna pistola de cualesquiera clase que sea, ni bowie knife (cuchillo de cinto) Arkansas toothpick, daga española, huracana, ó cualesquiera otra arma mortífera de cualesquiera clase ó descripcion que sea, no importa el nombre que tuviere con que fuere conocida ó llamada, bajo las penas y castigos que sean en este acto despues descritas. *Porte de armas prohibido.*

SEC. 2. Decrétese ademas: Que si cualesquiera persona portare sobre su persona, ya sea oculta ó de otra manera, cualesquiera arma mortífera de la clase y descripcion mencionada en la seccion anterior, la persona ó personas que así ofendan, sobre conviccion, la cual será por querella legal en la corte de distrito, será multada en cualesquiera suma que no bajé de cincuenta pesos, ni pase de cien pesos, á la discrecion de la corte *Primera conviccion, multa.*

Penalty for discharging or drawing weapons.

SEC. 3. Be it further enacted: That if any person shall discharge or draw any deadly weapon, of the class or description set forth in the first section of this act, in any baile or fandango, or in any other public assembly whatever, the person who shall so offend, on conviction thereof, which shall be indictment in the district court, shall be fined in any sum not less than one hundred dollars, nor more than three hundred, at the discretion of the court trying the cause, or imprisoned in the county jail for a term not less than three months nor more than one year.

Penalty for cutting or wounding in assemblies.

SEC. 4. Be it further enacted: That if any person in any baile or fandango, or in any public assembly of whatever class or description it may be, shall fire off or discharge any firearm of the class mentioned in the first section of this act, or shall cut or wound any person with any description of deadly weapon mentioned in the first section of this act, in any baile or fandango, or in any other public assembly, and any death shall result from said cut or wound so given, the person who shall so wound or cut, on conviction, shall be considered guilty of murder in the first degree, and shall suffer the penalty of death in the said first degree.

In case of death, to be deemed murder.

Duty of sheriffs and constables to arrest.

SEC. 5. Be it further enacted: That it shall be the duty of the sheriffs, their deputies, or constables, to arrest and take all persons who shall be found with deadly weapons of the class and description mentioned in the first section of this act, and present them to some justice of the peace, or other authority, to be examined; and it shall also be the duty of the judges of the district courts to cause, at the first term to be held in each county, the sheriffs and their deputies to take an oath that they will truly and faithfully comply with the provisions of this act, and that they will arrest at all times every person who shall violate any of the provisions of this act.

Sheriffs and constables to take oath.

Officers excused.

SEC. 6. Be it further enacted: That none of the provisions of this act shall be applied to the sheriffs, their deputies, or constables, in the execution of any process of the courts, or to conductors of the mail, or to persons when actually on trips from one town to another in this Territory; *provided*, that nothing in this act shall be so construed as to permit the conductors of mails, or travellers, to carry any deadly weapons, as mentioned

Travellers excused.

que conozca la causa en la primera conviccion bajo esta ley ; y por la segunda conviccion, la parte convicta será encarcelada en la cárcel del condado por un término que no baje de tres meses ni pase de un año, tambien á la discrecion de la corte que conozca en la causa.

*Segunda conviccion, encarcelamiento.*

SEC. 3. Decrétese ademas : Que si cualesquiera persona disparare ó sacare cualquier arma mortífera, de la clase ó descripcion citada en la primera seccion de este acto, en cualquiera baile ó fandango, ó en cualesquiera otra reunion pública, de la clase que sea, la persona que así ofenda, sobre conviccion de lo mismo, la causa será por querella legal en la corte de distrito, será multada en una suma que no baje de cien pesos, ni pase de trescientos, á la discrecion de la corte que conozca en la causa, ó será encarcelada en la cárcel del condado por un término que no baje de tres meses, ni pase de un año.

*Disparando armas, pena de.*

SEC. 4. Decrétese ademas : Que si cualesquiera persona en algun baile ó fandango, ó en otra concurrencia pública de la clase y descripcion que sea, disparare ó descargare alguna arma de fuego de la clase mencionada en la seccion primera de este acto, ó que cortare ó hiriere á alguna persona con cualesquiera descripcion de armas mortíferas mencionadas en la primera seccion de este acto, en algun baile ó fandango, ú otra concurrencia pública, y resultare alguna muerte de la tal herida ó cortada así dada, la persona que así hiriere ó cortare, sobre conviccion, será considerada culpada de muerte en el primer grado, y sufrirá la pena de muerte en dicho primer grado.

*Hiriendo en reuniones públicas, pena de.*

*Muerte en primer grado.*

SEC. 5. Decrétese ademas : Que será el deber de los alguaciles mayores, sus diputados, ó condestables, de arrestar y tomar toda persona que sea hallada con armas mortíferas, de la clase y descripcion mencionadas en la primera seccion de este acto, y presentar lasá algun juez de paz, ú otra autoridad, para su examinacion ; y tambien será el deber de los jueces de distrito de causar, en la primera corte que sea tenida en cada condado, que los alguaciles mayores y sus diputados presten juramento que ellos bien y fielmente cumplirán con las provisiones de este acto, y arrestarán en todo tiempo á todas las personas que violaren cualesquiera de las provisiones de este acto.

*Deberes de los alguaciles, y ofensores de dar fianzas.*

SEC. 6. Decrétese ademas : Que ninguno de los provisos de este acto serán aplicables al alguacil mayor, sus diputados, ó

*Viajeros, &a., esceptuados.*

7

LAWS OF NEW MEXICO.

in the first section of this act, on their persons, after they shall have arrived at the town or settlement.

**Judges to give this act in charge.**

SEC. 7. Be it further enacted: That it shall be the duty of the several judges of the district court to give this act specially in their charges to the grand juries at each term of the court; and further, it shall be the duty of the grand juries, at each term of the court, to make a special report whether there has been any violation of the provisions of this act in their counties since the last term of the court.

**Repealing clause.**

SEC. 8. That all laws or parts of laws in conflict with this act are hereby repealed, and this act shall be in force and take effect from and after its passage.

**To be published.**

SEC. 9. That the Secretary of the Territory of New Mexico be required to have this law published in the Santa Fé Gazette, as soon as possible, for six successive weeks, for the information of the people.

[Translation.]

————

*An Act regulating Mercantile Copartnerships.*

Be it enacted by the Legislative Assembly of the Territory of New Mexico:

**Who may enter into.**

SECTION 1. That any two or more persons in this Territory may, and when they shall think proper, bind themselves mutually, for a certain time and under certain conditions, to do and follow at the same time various negotiations on their own common account and risk, or at that of each one of the partners respectively, as well in the losses as in the profits that may arise from said copartnership.

**Good faith to be observed.**

SEC. 2. The copartners or associates shall act in good faith, placing punctually in the concern the capital or services as stipulated, under the penalty of indemnifying the others for the damages which may arise.

**Articles what to contain and before whom made.**

SEC. 3. The contract of copartnership should be made before any court of record, or the clerk thereof, of the several counties by means of an indenture, authorized by any court of record or the clerk thereof, which shall contain the chris-

ny persons as they shall think fit, not exceeding seven, to make orders from time to time, such as may be suitable and beneficial for every town, village, hamlet, or neighbourhood, for preventing all harms by swine, in town, meadows, pastures and gardens, in any respect, and to impose penalties according to their best discretions.

## Chap. VIII.

## An Act appointing some new Commissioners of the Highways.

WHEREAS there was an act made in the year 1682, for the county of Monmouth, to enable Col. Lewis Morris, John Bound, and Joseph Parker, to lay out highways, passages, ferry's, and making bridges and such like; there being three of those persons disenabled for the true performance of the said services, *be it therefore enacted* by the Governor, Council and Deputies now met and assembled, and by the authority of the same, that John Frogmerton, John Slocame, and Nicholas Brown, in the stead and room of Col. Lewis Morris, John Bound, and Joseph Parker, be made capable and hereby invested with the same power to all intents and purposes in the said premises, as the aforesaid Col. Lewis Morris, John Bound, and Joseph Parker, were by the said acts.

## Chap. IX.

## An Act against wearing Swords, &c.

WHEREAS there hath been great complaint by the inhabitants of this Province, that several persons wearing swords, daggers, pistols, dirks, stilladoes, skeines, or any other unusual or unlawful weapons, by reason of which several persons in this Province, receive great abuses, and put in great fear and quarrels, and challenges made, to the great abuse of the inhabitants of this Province. *Be it therefore enacted* by the Governor, and Council, and Deputies now met in General Assembly, and by authority of the same, that no person or persons within this Province, presume to send any challenge in writing, by word of mouth,

19

290          Laws passed in 1686.

or message, to any person to fight, upon pain of being imprisoned during the space of six months, without bail or mainprize, and forfeit ten pounds: and whosoever shall except of such challenge, and not discover the same to the Governor, or some publick officer of the peace, shall forfeit the sum of ten pounds; the one moiety of the said forfeiture to be paid unto the Treasurer for the time being, for the public use of the Province, and the other moiety to such person or persons as shall discover the same, and make proof thereof in any court of record within this Province, to be recovered by the usual action of debt, in any of the said courts. *And be it further enacted* by the authority aforesaid, that no person or persons after publication hereof, shall presume privately to wear any pocket pistol, skeines, stillaoders, daggers or dirks, or other unusual or unlawful weapons within this Province, upon penalty for the first offence five pounds, and to be committed by any justice of the peace, his warrant before whom proof thereof shall be made, who is hereby authorized to enquire of and proceed in the same, and keep in custody till he hath paid the said five pounds, one half to the public treasury for the use of this Province, and the other half to the informer: And if such person shall again offend against this law, he shall be in like manner committed (upon proof thereof before any justice of the peace) to the common gaol, there to remain till the next sessions, and upon conviction thereof by verdict of twelve men, shall receive judgment to be in prison six month, and pay ten pounds for the use aforesaid. *And be it further enacted* by the authority aforesaid, that no planter shall ride or go armed with sword, pistol, or dagger, upon the penalty of five pounds, to be levied as aforesaid, excepting all officers, civil and military, and soldiers while in actual service, as also all strangers, travelling upon their lawful occasions thro' this Province, behaving themselves peaceably.

said, may, on giving the security required, appeal to the court of common pleas, next to be held in the same county, or, in the city of Boston, to the municipal court.

*On appeal, witnesses to recognize.*

SECT. 10.    The magistrate, from whose order an appeal is so taken, shall require such witnesses, as he may think necessary to support the complaint, to recognize for their appearance at the court to which the appeal is made.

*Proceedings on appeal.*

SECT. 11.    The court, before which such appeal is prosecuted, may affirm the order of the justice, or discharge the appellant, or may require the appellant to enter into a new recognizance, with sufficient sureties, in such sum, and for such time, as the court shall think proper, and may also make such order, in relation to the costs of prosecution, as may be deemed just and reasonable.

*Recognizance, when to remain in force.*

SECT. 12.    If any party appealing shall fail to prosecute his appeal, his recognizance shall remain in full force and effect, as to any breach of the condition, without an affirmation of the judgment or order of the magistrate, and shall also stand as a security for any costs, which shall be ordered, by the court appealed to, to be paid by the appellant.

*Persons committed for not recognizing, how discharged.*

SECT. 13.    Any person, committed for not finding sureties, or refusing to recognize, as required by the court or magistrate, may be discharged by any judge or justice of the peace, on giving such security as was required.

*Recognizances to be transmitted to the court.*

SECT. 14.    Every recognizance, taken pursuant to the foregoing provisions, shall be transmitted by the magistrate to the court of common pleas for the county, or, in the city of Boston, to the municipal court, on or before the first day of the next term, and shall be there filed of record by the clerk.

*— when to be required on view of the court or magistrate.*

SECT. 15.    Every person who shall, in the presence of any magistrate mentioned in the first section of this chapter, or before any court of record, make an affray, or threaten to kill or beat another, or to commit any violence or outrage against his person or property, and every person, who in the presence of such court or magistrate, shall contend with hot and angry words, to the disturbance of the peace, may be ordered, without process or any other proof, to recognize for keeping the peace, or being of good behavior, for a term not exceeding three months, and in case of refusal, may be committed, as before directed.

*Persons who go armed may be required to find sureties for the peace, &c. 1794, 26, § 2.*

SECT. 16.    If any person shall go armed with a dirk, dagger, sword, pistol, or other offensive and dangerous weapon, without reasonable cause to fear an assault or other injury, or violence to his person, or to his family or property, he may, on complaint of any person having reasonable cause to fear an injury, or breach of the peace, be required to find sureties for keeping the peace, for a term not exceeding six months, with the right of appealing as before provided.

*Court may remit part of penalty. 7 Mass. 397. 1810, 80.*

SECT. 17.    Whenever, upon a suit brought on any such recognizance, the penalty thereof shall be adjudged forfeited, the court may remit such portion of the penalty, on the petition of any defendant, as the circumstances of the case shall render just and reasonable.

*Surety may surrender his*

SECT. 18.    Any surety in a recognizance to keep the peace, or for good behavior, or both, shall have the same authority and right

the condition, without an affirmation of the judgment or order of the magistrate, and shall also stand as a security for any costs which shall be ordered by the court appealed to, to be paid by the appellant.

§ 13. Any person committed for not finding sureties, or refusing to recognize as required by the court or magistrate, may be discharged by any judge or justice of the peace on giving such security as was required. *Not recognizing, how discharged.*

§ 14. Every recognizance taken in pursuance of the foregoing provisions shall be transmitted by the magistrate to the district court for the county on or before the first day of the next term, and shall be there filed of record by the clerk. *Recognizances transmitted to court.*

§ 15. Any person who shall, in the presence of any magistrate mentioned in the first section of this statute, or before any court of record, make an affray, or threaten to kill or beat another, or to commit any violence or outrage against his person or property, and every person who, in the presence of such court or magistrate, shall contend, with hot and angry words, to the disturbance of the peace, may be ordered, without process or any other proof, to recognize for keeping the peace and being of good behavior, for a term not exceeding six months, and in case of refusal may be committed as before directed. *When required on view of court, &c.*

§ 16. If any person shall go armed with a dirk, dagger, sword, pistol or pistols, or other offensive and dangerous weapon, without reasonable cause to fear an assault or other injury, or violence to his person, or to his family, or property, he may, on complaint of any other person having reasonable cause to fear an injury or breach of the peace, be required to find sureties for keeping the peace for a term not exceeding six months, with the right of appealing as before provided. *Persons going armed to give security, &c.*

§ 17. Whenever, upon a suit brought on any such recognizance, the penalty thereof shall be adjudged forfeited, the court may remit such portion of the penalty on the petition of any defendant, as the circumstances of the case shall render just and reasonable. *Part of penalty remitted.*

§ 18. Any surety in a recognizance to keep the peace or for good behavior or both, shall have the same authority and right to take and surrender his principal as if he had been bail for him in a civil cause, and upon such surrender shall be discharged and exempt from all liability for any act of the principal subsequent to such surrender, which would be a breach of the condition of the recognizance; and the person so surrendered may recognize anew, with sufficient sureties, before any justice of the peace for the residue of the term, and thereupon shall be discharged. *Surety may surrender principal.*

## AN ACT making general provisions concerning crimes and punishments.

§ 1. That every person who shall be aiding in the commission of any offence, which shall be a felony either at common law or by any statute now made, or which shall be hereafter made, or who shall be accessory thereto before the fact, by counselling, hiring or otherwise procuring such felony to be committed, shall be punished in the same manner as is or shall be prescribed for the punishment of the principal felon. *Accessory to felony before the fact, how punished.*

refusing to recognize, as required by the court or magistrate, may **CHAP. 169.**
be discharged by any judge or justice of the peace, on giving such
security, as was required.

*may be taken after commit-ment.*

SECT. 14.   Every recognizance, taken pursuant to the foregoing
provisions, shall be transmitted to the district court, on or before
the first day of the next ensuing term, and shall there be filed by
the clerk, as of record.

*Return of such recognizance.*

SECT. 15.   Whoever, in the presence of any magistrate, men-
tioned in the second section of this chapter, or before any court of
record, shall make any affray or threaten to kill or beat another, or
commit any violence against his person or property, or shall con-
tend, with hot and angry words, to the disturbance of the peace,
may be ordered, without process or any other proof, to recognize
for keeping the peace, or being of the good behavior for a term, not
exceeding three months, and, in case of refusal, may be committed
to prison as before directed.

*When magis-trate may re-quire sureties, without a for-mal complaint, &c.*

SECT. 16.   Any person, going armed with any dirk, dagger,
sword, pistol, or other offensive and dangerous weapon, without a
reasonable cause to fear an assault on himself, or any of his family
or property, may, on the complaint of any person having cause to
fear an injury or breach of the peace, be required to find sureties
for keeping the peace for a term, not exceeding one year, with the
right of appeal as before provided.

*Persons going armed, without reasonable cause.*
*1821, 76, § 1.*

SECT. 17.   In a suit, on such recognizance taken in a criminal
case, if a forfeiture is found or confessed, the court, on petition,
may remit the penalty, or such part of it as they may think proper,
on such terms as they may think right.

*Power of court, to remit the penalty of a re-cognizance.*
*1821, 50, § 4.*

SECT. 18.   Any surety in a recognizance may surrender the
principal in the same manner, as if he had been his bail in a civil
cause, and, on such surrender, shall be discharged from all liability
for any act of the principal after such surrender, which would be a
breach of the recognizance; and, upon such surrender, the princi-
pal may recognize anew with sufficient surety or sureties for the
residue of the term, before any justice of the peace, and shall
thereupon be discharged.

*Sureties on re-cognizances may surrender their principals as in case of bail in civil ac-tions.*

# CHAPTER 170.

### OF THE POWER AND PROCEEDINGS OF JUSTICES OF THE PEACE IN CRIMINAL CASES.

SECT. 1. Justices may require aid, on view, without a warrant.
  2. Their jurisdiction.
  3. When a justice shall issue his war-rant.
  4. Examination, on trial, of the party accused.
  5. Of commitment or binding over to a higher court.

SECT. 6. Duty of justices, as to arrests, and examinations into treasons, felon-ies, &c.
  7. Trial and sentence within their ju-risdiction.
  8. Respondent may appeal; but re-quired to recognize.
  9. To carry up copies of the case.

TITLE XXXI
CHAPTER 163.

Breach of peace in presence of magistrate, &c.

SEC. 15. Every person who shall, in the presence of any magistrate mentioned in the first section of this chapter, or before any court of record, make an affray, or threaten to kill or beat another, or to commit any violence or outrage against his person or property, and every person who, in the presence of such court or magistrate, shall contend with hot and angry words, to the disturbance of the peace, may be ordered, without process or any other proof, to recognize for keeping the peace, for a term not exceeding six months, and in case of refusal, may be committed as before directed.

Person going armed to find sureties for the peace.

SEC. 16. If any person shall go armed with a dirk, dagger, sword, pistol, or other offensive and dangerous weapon, without reasonable cause to fear an assault or other injury, or violence to his person, or to his family or property, he may, on complaint of any person having reasonable cause to fear an injury or breach of the peace, be required to find sureties for keeping the peace, for a term not exceeding six months, with the right of appealing as before provided.

Court may remit part of penalty.
7 Mass., 397.

SEC. 17. Whenever upon a suit brought on any recognizance entered into in pursuance of this chapter, the penalty thereof shall be adjudged forfeited, the court may remit such portion of the penalty, on the petition of any defendant, as the circumstances of the case shall render just and reasonable.

Surety may surrender his principal, effect of surrender.

SEC. 18. Any surety in a recognizance to keep the peace, shall have the same authority and right to take and surrender his principal as in other criminal cases, and upon such surrender shall be discharged and exempt from all liability for any act of the principal subsequent to such surrender, which would be a breach of the condition of the recognizance ; and the person so surrendered may recognize anew, with sufficient sureties, before any justice of the peace or circuit court commissioner for the residue of the term, and shall thereupon be discharged.

## CHAPTER 163.

### OF THE ARREST AND EXAMINATION OF OFFENDERS, COMMITMENT FOR TRIAL AND TAKING BAIL.

What officers may issue process for the arrest of offenders, &c.

SECTION 1. For the apprehension of persons charged with offences, excepting such offences as are cognizable by justices of the peace, the justices of the supreme court, judges of the county courts, circuit court commissioners, mayors and recorders of cities, and all justices of the peace, shall have power to issue process and to carry into effect the provisions of this chapter.

Complainant, &c. to be examined.

SEC. 2. Whenever complaint shall be made to any such magistrate, that a criminal offence, not cognizable by a justice of the peace, has been committed, he shall examine on oath the complainant, and any witnesses who may be produced by him.

Proceedings if it appear that an offence has been committed.

SEC. 3. If it shall appear from such examination, that any criminal offence, not cognizable by a justice of the peace, has been committed, the magistrate shall issue a warrant, directed to the sheriff or any constable of the county, reciting the substance of the accusation, and

# TITLE III.

### OF PROCEEDINGS IN CRIMINAL CASES.

CHAP. 14. Of proceedings to prevent the commission of crimes.
   15. Of arrest and commitment.
   16. Of coroners' inquests.
   17. Of bail in criminal cases.
   18. Of examining courts.
   19. Of grand juries.
   20. Of indictments, presentments and informations, and process thereon.
   21. Of trial and its incidents.
   22. Of exceptions, writs of error and execution of judgment.
   23. Of taxation and allowance of costs.
   24. Of contempts of court.
   25. Of general provisions concerning proceedings in criminal cases.
   26. Of criminal proceedings against slaves, free negroes and mulattoes.

## CHAP. XIV.

### OF PROCEEDINGS TO PREVENT THE COMMISSION OF CRIMES.

SECTION
1. Officers authorized to keep the peace.
2. Complaint, how made.
3. Arrest.
4. Trial.  Recognizance to keep the peace.
5. Party, when discharged.
6. Refusing to recognize, to be committed.
7. Complainant when to pay costs.
8. Payment of costs in other cases.
9. Appeal allowed.
10. On appeal, witnesses to recognize.
11. Proceedings on appeal.

SECTION
12. Recognizance, when to remain in force.
13. Persons committed for not recognizing, how discharged.
14. Recognizances to be transmitted to court.
15. Recognizances, when to be required on view of the court or magistrate.
16. Persons who go armed may be required to find sureties of the peace, &c.
17. Persons not of good fame to give surety for good behaviour.

1. The judges of the supreme court of appeals, the judges of the general court throughout the commonwealth, all justices of the peace and commissioners in chancery within their respective jurisdictions, shall have power to cause all laws made for the preservation of the public peace, to be kept, and in the execution of that power, may require persons to give security to keep the peace, or for their good behaviour, or both, in the manner hereinafter provided. <small>Officers authorized to keep the peace.</small> <small>Power to require security for behaviour.</small>

2. Whenever complaint shall be made to any such magistrate that there is good cause for fear that any person intends to commit an offence against the person or property of another, the magistrate shall examine the complainant and any witnesses who may be produced on oath, and reduce such complaint to writing, and cause the same to be subscribed by the complainant. <small>Complaint how made.</small>

3. If upon examination, it shall appear that there is just cause to fear that any such offence may be committed, the magistrate shall issue a warrant under his hand, reciting the substance of the complaint, and requiring the officer to whom it may be directed, forthwith to apprehend the person complained of, and bring him before such magistrate, or some other magistrate having jurisdiction of the cause. <small>Arrest.</small>

Trial.
Recognizance to keep peace.

4. When the party complained of is brought before the magistrate, he shall be heard in his defence, and he may be required to enter into a recognizance, with sufficient sureties, in such sum as the magistrate shall direct, to keep the peace towards all the people of this commonwealth, and especially towards the person making the complaint, for such term as the magistrate may order, not exceeding twelve months, but shall not be bound over to the next court, unless he is also charged with some other offence, for which he ought to be held to answer at such court.

Party when discharged.

5. Upon complying with the order of the magistrate, the party complained of shall be discharged.

Refusing to recognize, to be committed.

6. If the person so ordered to recognize shall refuse or neglect to comply with such order, the magistrate shall commit him to the jail during the period for which he was required to give security, or until he shall so recognize, stating in the warrant the cause of commitment, with the sum and the time for which security was required.

Defendant when discharged.

7. If upon examination it shall not appear that there is just cause to fear that any such offence will be committed by the party complained of, he shall be forthwith discharged; and if the magistrate shall deem the complaint unfounded, frivolous or malicious, he may order the complainant to pay the costs of the prosecution, and thereupon award execution against him for the same.

Complainant when to pay costs.

Payment of costs in other cases.

8. When no order respecting the costs is made by the magistrate, they shall be allowed and paid in the same manner as costs before justices in criminal prosecutions; but in all cases where a person is required to give security for the peace, or for his good behaviour, the court or magistrate may further order that the costs of prosecution, or any part thereof, shall be paid by such person, who shall stand committed until such costs are paid, or he is otherwise legally discharged.

Appeal against order to recognize allowed.

9. Any person aggrieved by the order of any justice of the peace requiring him to recognize as aforesaid, may, on giving the security required, appeal to the county or corporation court next to be holden for the said county or corporation.

On appeal, witnesses to recognize.

10. The magistrate from whose order an appeal is taken, shall require such witnesses as he may think necessary to support the complaint, to recognize for their appearance at the court to which the appeal is made.

Proceedings on appeal.

11. The court before which such appeal is prosecuted, may affirm the order of the justice, or discharge the appellant, or may require him to enter into a new recognizance, with sufficient sureties, in such sum, and for such time, as the court shall think proper; and may also make such order in relation to the costs of prosecution as may be deemed just and reasonable.

Costs.

Recognizance to be valid unless appeal prosecuted.

12. If any party appealing shall fail to prosecute his appeal, his recognizance shall remain in full force and effect, as to any breach of the condition, without any affirmation of the order of the magistrate, and shall also stand as a security for any costs which shall be ordered by the court appealed to, to be paid by the appellant.

Persons committed for not recognizing, how discharged.

13. Any person committed for not finding securities, or refusing to recognize as required by the court or magistrate, may be discharged by any judge or justice of the peace on giving such security as was required, or by the county court, on such terms as the court may deem reasonable.

Recognizances returned to court.

14. Every recognizance taken pursuant to the foregoing provisions, shall be transmitted by the magistrate to the court of the county on or before the first day of the next term thereof, and shall be there filed of record by the clerk.

15. Every person who shall, in the presence of any magistrate, mentioned in the first section of this act, or before any court of record, make an affray, or threaten to kill or beat another, or to commit any violence or outrage against his person or property, and every person who, in the presence of such court or magistrate, shall contend with hot and angry words, to the disturbance of the peace, may be ordered without process or any other proof, to recognize for keeping the peace, or being of good behaviour, for a term not exceeding six months, and in case of refusal may be committed as before directed. *Recognizances required for offences in presence of magistrate or court.*

16. If any person shall go armed with any offensive or dangerous weapon, without reasonable cause to fear an assault or other injury, or violence to his person, or to his family or property, he may be required to find sureties for keeping the peace for a term not exceeding twelve months, with the right of appealing as before provided. *Persons armed, required to find sureties. Appeal allowed.*

17. Such persons as are not of good fame may be required to give sufficient surety of their good behaviour for such term, not exceeding twelve months, as the magistrate requiring it may order. *Persons not of good fame to give surety.*

---

## CHAP. XV.

### OF ARREST AND COMMITMENT.

SECTION
1. Officers empowered to act.
2. Complaints, warrants and summonses.
3. Offence committed in another county.
4. In what county warrant may be executed.
5. Prisoner, when to be brought before magistrate on arrest.
6. Magistrate, if he take bail, to return recognizance, &c.
7. Officer, how to proceed if prisoner not bailed.
8. Prisoner, when to be carried to county whence warrant issued.
9. Same subject.
10. Magistrate may adjourn examination.
11. In case of default, recognizance to be certified.
12. Proceedings when party fails to recognize.
13. 14. 15. } Manner of conducting examination.
16. Testimony to be reduced to writing.

SECTION
17. When prisoner to be discharged.
18. When to be bailed or committed.
19. If party entitled to examination, &c.
20. If not so entitled, and triable on indictment, &c.
21. If party charged be free negro, &c.
22. Duty of magistrate, &c.
23. Witnesses to recognize.
24. Witnesses, when to recognize with sureties.
25. Recognizances of minors, &c.
26. Witnesses refusing to recognize.
27. Magistrate may associate others.
28. Prisoner by whom let to bail.
29. Recognizances, &c. to be returned.
30. Commitments, &c. when to be discharged.
31. Orders therefor, how to be filed &c.
32. 33. 34. 35. } Proceedings on forfeited recognizances.
36. Right of surety to surrender principal.
37. To whom to be surrendered.
38. When to the court.

1. For the apprehension of persons charged with offences, the judges of the general court, and all justices of the peace in vacation as well as in term time, are authorized to issue process to carry into effect the provisions of this act. *Process to arrest for offences, by whom issued.*

2. Upon complaint made to any such magistrate that a criminal offence has been committed, he shall examine on oath the complainant and any witnesses produced by him, and shall reduce the complaint to writing, and cause the same to be subscribed by the complainant; and if it shall appear that any such offence has been com- *Examination on complaint.*

17

Case 1:18-cv-00134-BKS-ATB   Document 23-3   Filed 04/02/18   Page 78 of 186

deem the complaint unfounded, frivolous, or malicious, he shall order the complainant to pay the costs of prosecution, who shall thereupon be answerable to the magistrate and the officer for their fees as for his own debt.

**Costs by whom paid.**

SEC. 10.   When no order respecting the costs is made by the magistrate, they shall be allowed and paid in the same manner as costs before justices in criminal prosecutions; but in all cases where a person is required to give security for the peace or for his good behavior, the magistrate may further order the costs of prosecution or any part thereof to be paid by such person, who shall stand committed until such costs are paid, or he is otherwise legally discharged.

**Appeal when allowed.**

SEC. 11.   Any person aggrieved by the order of any justice of the peace requiring him to recognize as aforesaid, may, on giving the security required, appeal to the district court next to be holden in the same county, or that county to which said county is attached for judicial purposes.

**When magistrate may require witness to recognize.**

SEC. 12.   The magistrate from whose order an appeal is so taken, shall require such witnesses as he may think necessary to support the complaint, to recognize for their appearance at the court to which appeal is made.

**District court how to proceed upon such appeal.**

SEC. 13.   The court before which such appeal is prosecuted, may affirm the order of the justice or discharge the appellant, or may require the appellant to enter into a new recognizance, with sufficient sureties, in such sum and for such time as the court shall think proper, and may also make such order in relation to the costs of prosecution as he may deem just and reasonable.

**When appellant fails to prosecute appeal, recognizance to be in force.**

SEC. 14.   If any party appealing, shall fail to prosecute his appeal, his recognizance shall remain in full force and effect as to any breach of the condition, without an affirmation of the judgment or order of the magistrate, and shall also stand as a security for any costs which shall be ordered by the court appealed to, to be paid by the appellant.

**After commitment, how defendant may be discharged.**

SEC. 15.   Any person committed for not finding sureties, or refusing to recognize as required by the court or magistrate, may be discharged by any judge or justice of the peace on giving such security as was required.

**Recognizance to be transmitted to district court.**

SEC. 16.   Every recognizance taken in pursuance of the foregoing provision, shall be transmitted by the magistrate to the district court for the county, on or before the first day of the next term, and shall be there filed of record by the clerk.

**When person may be ordered to recognize without warrant.**

SEC. 17.   Any person who shall in the presence of any magistrate mentioned in the first section of this chapter, or before any court of record make an affray, or threaten to kill or beat another, or to commit any violence or outrage against his person or property, and every person, who, in the presence of such court or magistate, shall contend with hot and angry words, to the disturbance of the peace, may be ordered without process or any other proof, to recognize for keeping the peace, and being of good behavior, for a term not exceeding six months, and in case of a refusal, may be committed as before directed.

**Persons carrying offensive weapons how punished.**

SEC. 18.   If any person shall go armed with a dirk, dagger, sword, pistol or pistols, or other offensive and dangerous weapon, without reasonable cause to fear an assault or other injury or violence to his person, or to his family, or property, he may, on complaint of any other person having reasonable cause to fear an injury or breach of the peace, be required to find sureties for keeping the peace, for a term not exceeding six months, with the right of appealing as before provided.

**Suit brought on recognizance.**

SEC. 19.   Whenever upon a suit brought on any such recognizances, the penalty thereof shall be adjudged forfeited, the court may remit such

220                                    ARRESTS.

CHAP. 17.   charged by any judge or justice of the peace, on giving such security as was required.

Recognizances when to be transmitted.   SEC. 15. Every recognizance taken in pursuance of the foregoing provisions, shall be transmitted by the magistrate to the district court for the county, on or before the first day of the next term, and shall be there filed of record by the clerk.

Order to recognize without warrant.   SEC. 16. Any person, who shall, in the presence of any magistrate mentioned in the first section of this chapter, or before any court of record, make an affray, or threaten to kill, or beat another, or to commit any violence or outrage against his person or property, and every person, who, in the presence of such court or magistrate, shall contend with hot and angry words, to the disturbance of the peace, may be ordered, without process or any other proof, to recognize for keeping the peace, and being of good behavior for a term not exceeding six months, and in case of a refusal, may be committed as before directed.

Armed persons, when required to find sureties.   SEC. 17. If any person shall go armed with a dirk, dagger, sword, pistol, or other offensive and dangerous weapon, without reasonable cause to fear an assault, injury, or other violence to his person, or to his family or property, he may, on complaint of any other person, having reasonable cause to fear an injury, or breach of the peace, be required to find sureties for keeping the peace for a term not exceeding six months, with the right of appealing as before provided.

Suit on recognizance.   SEC. 18. Whenever on a suit brought on any such recognizance, the penalty thereof shall be adjudged forfeited, the court may remit such portion of the penalty on the petition of any defendant, as the circumstances of the case shall render just and reasonable.

Surety may surrender principal.   SEC. 19. Any surety in a recognizance to keep the peace, or for good behavior, or both, shall have the same authority and right to take and surrender his principal, as if he had been bail for him in a civil case, and upon such surrender, shall be discharged and exempted from all liability for any act of the principal, subsequent to such surrender, which would be a breach of the condition of the recognizance; and the person so surrendered, may recognize anew with sufficient sureties, before any justice of the peace for the residue of the term, and thereupon shall be discharged.

# CHAPTER XVII.

### ARRESTS.

SEC. 1. Arrest defined.
2. Arrest, how and by whom made.
3. Every person must aid officer in making arrest, if required.
4. Arrest for felony and misdemeanor, when may be made.
5. As to what constitutes arrest.
6. Officer may pursue fugitive into other counties.
7. When an officer or private person may arrest without warrant.
8. Arrest, how made in such case.
9. Escape and capture of prisoner.

Arrest.   SEC. 1. Arrest is the taking a person into custody, that he may be held to answer for a public offence.

supposed to be stolen, found in the possession of one accused.

tion, of the crime of burglary, robbery or larceny, and the said magistrate shall have issued his warrant to apprehend such person or persons, or to search for such goods as have been described, on oath or affirmation, to have been stolen goods, if any shall be found in the custody or possession of such person or persons, or in the custody or possession of any other person or persons, for his, her or their use, and there is probable cause, supported by oath or affirmation, to suspect that other goods, which may be discovered on such search, are stolen, it shall and may be lawful for the said magistrate to direct the said goods to be seized, and to secure the same in his own custody, unless the person in whose possession the same were found shall give sufficient surety to produce

Inventory.

the same at the time of his or her trial. And the said magistrate shall forthwith cause an inventory to be taken of the said goods, and shall file the same with the clerk of that court in which the accused person is intended to be prosecuted, and shall give public

Notice.

notice in the newspapers, or otherwise by advertising the same in three or more public places in the city or county where the offence is charged to have been committed, before the time of trial, noting in such advertisement the said inventory, the person charged

Restitution.

and time of trial. And if, on such trial, the accused party shall be acquitted, and no other claimant shall appear or suit be commenced, then, at the expiration of three months, such goods shall be delivered to the party accused, and he, she or they shall be discharged, and the county be liable to the costs of prosecution ; but if he be convicted of larceny only, and, after restitution made to the owner and the sentence of the court being fully complied with, shall claim a right in the residue of the said goods, and no other shall appear or claim the said goods, or any part of them, then it shall be lawful, notwithstanding the claim of the said party accused, to detain such goods for the term of nine months, to the end that all persons having any claim thereto may have full opportunity to come, and to the satisfaction of the court, prove their property in them ; on which proof the said owner or owners, respectively, shall receive the said goods, or the value thereof, if from their perishable nature it shall have been found necessary to make sale thereof, upon paying the reasonable charges incurred by the securing the said goods and establishing their property in the same ; but if no such claim shall be brought and duly supported, then the person so convicted shall be entitled to the remainder of the said goods, or the value thereof, in case the same shall have been sold agreeably to

When to be delivered to county commissioners.

the original inventory. But if, upon an attainder of burglary or robbery, the court shall, after due inquiry, be of opinion that the said goods were not the property of such burglar or robber, they shall be delivered, together with a certified copy of the said inventory, to the commissioners of the county, who shall indorse a receipt therefor on the original inventory, register the said inventory in a book, and also cause the same to be publicly advertised, giving notice to all persons claiming the said goods to prove their property therein to the said commissioners ; and unless such proof shall be made within three months from the date of such advertisement, the said goods shall be publicly sold, and the net moneys arising from such sale shall be paid into the county treasury for the use

Disposition of proceeds.

of the commonwealth : *Provided always*, That if any claimant shall appear within one year, and prove his or her property in the said goods to the satisfaction of the commissioners, or in the case of dispute, shall obtain the verdict of a jury in favor of such claim, the said claimant shall be entitled to recover, and receive from the said commissioners, or treasurer, the net amount of the moneys paid as aforesaid into the hands of the said commissioners, or by them paid into the treasury of this commonwealth.(a)

Surety of the peace.

6. If any person shall threaten the person of another to wound, kill or destroy him, or to do him any harm in person or estate,(b) and the person threatened shall appear before a justice of the peace, and attest, on oath or affirmation, that he believes that by such threatening he is in danger of being hurt in body or estate, such person so threatening as aforesaid, shall be bound over, with one sufficient surety, to appear at the next sessions,(c) according to law, and in the meantime to be of his good behavior, and keep the peace toward all citizens of this commonwealth.(d) If any person, not being an officer on duty in the military or naval service of the state or of the United States shall go armed with a dirk, dagger, sword or pistol, or other offensive or dangerous weapon, without reasonable cause to fear an assault or other injury or violence to his family, person or property, he may, on complaint of any person having reasonable cause to fear a breach of the peace therefrom, be required to find surety of the peace as aforesaid.(e)

Bail.

7. In all cases the party accused, on oath or affirmation, of any crime or misdemeanor against the laws, shall be admitted to bail by one or more sufficient sureties, to be taken before any judge, justice, mayor, recorder or alderman where the offence charged has been committed, except such persons as are precluded from being bailed by the constitution of this commonwealth :(g) *Provided also*, That persons accused as aforesaid, of

6. Act 31 March 1860, § 6. P. L. 432.          7. Ibid. § 7.

(a) This section is taken from the 10th section of the act 23d September 1791, 3 Sm. 42. Report on the Penal Code 39.

(b) Surety of the peace is demandable of right by any individual who will make the necessary oath. 1 B. 102, n. See 1 Ash. 46. 2 P. 458.

(c) A committing magistrate has no authority to bind a person to keep the peace, or for his good behavior, longer than the next term of the court. 2 P. 458

(d) Surety for good behavior may be ordered by the court, after the acquittal of a prisoner, in such sum. and for such length of time, as the public safety requires. 2 Y. 437, 10 Barr

359. 2 Hayw. 73–4. See 12 Eng. L. & Eq. 462.

(e) This section is partly taken from the act of 1700. 1 Sm. 5, the addition thereto provided by this section, against the unnecessary carrying deadly weapons. is introduced from an obvious necessity, arising from daily experience and observation. Report on the Penal Code 39.

(g) A justice may take bail in any indictment for trial. 6 W & S. 314. 2 P. 458. And see 7 W. 454. 5 B. 512. 1 Sm. 57. n A recognizance taken by a justice to answer the charge of arson is *coram non judice*, and void. Com. v. Phillips, 2 U S. Law Mag. 316.

App.44

for the like offense, he shall be sentenced to be confined in the penitentiary for one year.

Id. § 28.
1 Va. Cas. 151-2.

26. When any person is convicted of two or more offenses, before sentence is pronounced for either, the confinement to which he may be sentenced upon the second, or any subsequent conviction, shall commence at the termination of the previous terms of confinement.

Code Va., p. 815, § 29.
10 Gratt. 755.

27. When a person is convicted of selling, or offering or exposing for sale, at retail, spirituous liquors, wine, porter, ale, or beer, or drink of like nature, and it is alleged in the indictment or presentment on which he is convicted, and admitted, or by the jury found, that he has been before convicted of the like offense, he shall be fined as provided in the third section of chapter thirty-two, and may, at the discretion of the court, be confined in jail not exceeding six months.

Acts of 1868, p. 124, ch. 149, § 1.

28. No criminal prosecution for any felony or misdemeanor shall be maintained in the courts of this state against any person for any act done in the suppression of the late rebellion; and it shall be a sufficient defense to such prosecution, to show that such act was done in obedience to the orders, or by the authority, of any civil or military officer of this state, or of the re-organized government of Virginia, or of the government of the United States; or that said act was done in aid of the purposes and policy of said authorities, in retarding, checking, and suppressing the said rebellion.

---

## CHAPTER CLIII.

### FOR PREVENTING THE COMMISSION OF CRIMES.

SEC.
1. Conservators of the peace; power to bind to good behavior.
2. Duty of, on complaint that a crime is intended.
3. Proceedings when accused appears.
4. Proceedings when accused appears.
5. Right of accused to appeal.
6. Power of court upon such appeal, and when the accused is committed.
7.

SEC.
8. Person going armed with deadly weapon, when required to give recognizance, etc.
9. Affray, etc., in the presence of constable.
10. In presence of justice; duty of justice where person brought before him, etc.
11. Proceedings where person suspected of unlawful retailing of spirituous liquors.

Code of Va., p. 817, § 1.
Const. art. 7, § 9.
Acts of 1863, p. 234, ch. 132, § 1.

1. Every justice and constable shall be a conservator of the peace, within his county. As such conservator, every justice shall have power to require from persons not of good fame, security for their good behavior for a term not exceeding one year.

Code Va., p. 817, § 2.

2. If complaint be made to any justice, as such conservator, that there is good cause to fear that a person intends to commit an offense against the person or property of another, he shall examine on oath the complainant, and any witnesses who may be produced, reduce the complaint to writing, and cause it to be signed by the complainant.

Id. p. 818, § 3.
Munf. 458.

3. If it appear proper, such justice shall issue a warrant, reciting the complaint, and requiring the person complained of forthwith to be apprehended and brought before him or some other justice.

4. When such person appears, if the justice, on hearing the par- Code Va., p. 818, ties, consider that there is not good cause for the complaint, he shall ₴ 4. discharge the said person, and may give judgment in his favor against the complainant for his costs. If he consider that there is good cause therefor, he may require a recognizance of the person against whom it is, and give judgment against him for the costs of the prosecution, or any part thereof; and, unless such recognizance be given, he shall commit him to jail, by a warrant, stating the sum and time in and for which the recognizance is directed. The justice giving judgment under this section for costs may issue a writ of fieri facias thereon, if an appeal be not allowed; and proceedings thereupon may be according to the two hundred and twenty-seventh section of chapter fifty.

5. A person from whom such recognizance is required may, on Id. ₴ 5. giving it, appeal to the circuit court of the county; and in such case the officer from whose judgment the appeal is taken shall recognize such of the witnesses as he thinks proper.

6. The court may dismiss the complaint, or affirm the judgment, Id. ₴ 6. and make what order it sees fit as to the costs. If it award costs against the appellant, the recognizance which he may have given shall stand as a security therefor. When there is a failure to prosecute the appeal, such recognizance shall remain in force, although there be no order of affirmance. On any appeal the court may require of the appellant a new recognizance, if it see fit.

7. Any person committed to jail under this chapter may be dis- Id. ₴ 7. charged by the circuit court, or the judge thereof in vacation, upon such terms as may be deemed reasonable.

8. If any person go armed with a deadly or dangerous weapon, Id. ₴ 8. without reasonable cause to fear violence to his person, family, or property, he may be required to give a recognizance, with the right of appeal, as before provided, and like proceedings shall be had on such appeal.

9. If any person shall, in the presence of a constable and within Id. ₴ 9. his county, make an affray, or threaten to beat, wound, or kill Acts of 1863, p. 234–5, ₴ 1. another, or to commit violence against his person or property; or contend with angry words to the disturbance of the peace; or improperly or indecently expose his person; or appear in a state of gross intoxication in a public place; such constable, as such conservator, may, without warrant or other process, or further proof, arrest such offending person and carry him before some justice of the township in which such offense is committed, who, upon hearing the testimony of such constable and other witnesses, if any are then and there produced, if, in his opinion the offense charged be proved, shall require the offender to give a bond or recognizance, with security, to keep the peace and be of good behavior for a term not exceeding one year.

10. If any offense enumerated in the preceding section be com- Id. p. 235, ₴ 2.

mitted in the presence of a justice within his county, or the offender
being brought before him, the commission thereof be proved to his
satisfaction, he may, besides requiring a bond or recognizance with
security, as provided in the preceding section, impose a fine upon the
offender not exceeding five dollars. If such bond or recognizance
be not then and there given, or such fine be not then and there paid,
the said justice shall commit the offender to the jail of his county,
there to remain until such bond or recognizance be given, and such
fine be paid; but no imprisonment under this section shall continue
more than ten days, at the end of which the sheriff or jailor shall
discharge the prisoner, unless he has been commanded by sufficient
authority to detain him for some other cause.

Code of Va., p. 818, § 10.
Acts of 1865, p. 57, ch. 61.

11. If any justice suspect any person of selling, by retail, wine,
or ardent spirits, or a mixture thereof, contrary to law; or of sell-
ing, or offering or exposing for sale, any intoxicating liquor, or
keeping open any distillery, bar, office, stall, or room in his posses-
sion, or under his control, at which such liquor had theretofore
usually been sold, or permitting any person to drink any intoxica-
ting liquor at the same, on the day of an election, and within two
miles of the place of such election, or during the night succeeding
such day, contrary to the eleventh section of chapter five, such jus-
tice shall summon the person suspected of such offense, and such
witnesses as he may think proper, to appear before him; and upon
the person so suspected appearing, or failing to appear, if the justice,
on examining the witnesses under oath, find sufficient cause, he shall
direct the prosecuting attorney for the county to institute a prosecu-
tion against the person so suspected, and shall recognize the material
witnesses, or cause them to be summoned, to appear at the next term
of the circuit court of the county. Such justice may also require
the person suspected to enter into recognizance to keep the peace
and be of good behavior for a time not exceeding one year. If
recognizance be given by the person so suspected, the condition
thereof shall be deemed to be broken, if during the time for which
it is given, such person shall sell, by retail, wine, or ardent spirits, or
a mixture thereof, contrary to law, or violate in any particular the
eleventh section of chapter five.

---

# CHAPTER CLIV.

### OF INQUESTS UPON DEAD BODIES.

SEC.
1. Duty of justice upon being notified of death by violence, etc.
2. Warrant and summons, how executed.
3. Jury formed; their oath.
4. How witnesses compelled to attend; how evidence taken.
5. Inquisition.
6. Inquisition, evidence, etc., returned; witnesses recognized.

SEC.
7. Justice to issue warrant for the arrest of ac-cused, if not in custody.
8. When deceased a stranger, body to be buried, etc.; costs, how paid.
9. Justice may require physicians to attend in-quest.
10. Penalty on justice for neglect of duty.
11. Inquest may be taken on Sunday.

GENERAL LAWS.                        25

# CHAPTER XXXIV.

### AN ACT TO REGULATE THE KEEPING AND BEARING OF DEADLY WEAPONS.

SECTION 1.  *Be it enacted by the Legislature of the State of Texas,* That any person carrying on or about his person, saddle, or in his saddle bags, any pistol, dirk, dagger, slung-shot, sword-cane, spear, brass-knuckles, bowie-knife, or any other kind of knife manufactured or sold for the purposes of offense or defense, unless he has reasonable grounds for fearing an unlawful attack on his person, and that such ground of attack shall be immediate and pressing; or unless having or carrying the same on or about his person for the lawful defense of the State, as a militiaman in actual service, or as a peace officer or policeman, shall be guilty of a misdemeanor, and, on conviction thereof shall, for the first offense, be punished by fine of not less than twenty-five nor more than one hundred dollars, and shall forfeit to the county the weapon or weapons so found on or about his person; and for every subsequent offense may, in addition to such fine and forfeiture, be imprisoned in the county jail for a term not exceeding sixty days; and in every case of fine under this section the fines imposed and collected shall go into the treasury of the county in which they may have been imposed; *provided,* that this section shall not be so construed as to prohibit any person from keeping or bearing arms on his or her own premises, or at his or her own place of business, nor to prohibit sheriffs or other revenue officers, and other civil officers, from keeping or bearing arms while engaged in the discharge of their official duties, nor to prohibit persons traveling in the State from keeping or carrying arms with their baggage; *provided further,* that members of the Legislature shall not be included under the term "civil officers" as used in this act.

SEC. 2.  Any person charged under the first section of this act, who may offer to prove, by way of defense, that he was in danger of an attack on his person, or unlawful interference with his property, shall be required to show that such danger was immediate and pressing, and was of such a nature as to alarm a person of ordinary courage; and that the weapon so carried was borne openly and not concealed beneath the clothing; and if it shall appear that this danger had its origin in a difficulty first commenced by the accused, it shall not be considered as a legal defense.

SEC. 3.  If any person shall go into any church or religious assembly, any school room, or other place where persons are assem-

GENERAL LAWS.

bled for amusement or for educational or scientific purposes, or into any circus, show, or public exhibition of any kind, or into a ball room, social party, or social gathering, or to any election precinct on the day or days of any election, where any portion of the people of this State are collected to vote at any election, or to any other place where people may be assembled to muster, or to perform any other public duty, (except as may be required or permitted by law,) or to any other public assembly, and shall have or carry about his person a pistol or other firearm, dirk, dagger, slung shot, sword cane, spear, brass-knuckles, bowie-knife, or any other kind of knife manufactured and sold for the purposes of offense and defense, unless an officer of the peace, he shall be guilty of a misdemeanor, and, on conviction thereof, shall, for the first offense, be punished by fine of not less than fifty, nor more than five hundred dollars, and shall forfeit to the county the weapon or weapons so found on his person; and for every subsequent offense may, in addition to such fine and forfeiture, be imprisoned in the county jail for a term not more than ninety days.

SEC. 4.  This act shall not apply to, nor be enforced in any county of the State, which may be designated, in a proclamation of the Governor, as a frontier county, and liable to incursions of hostile Indians.

SEC. 5.  All fines collected under the provisions of this act shall be paid into the treasury of the county, and appropriated exclusively to the keeping in repair and maintenance of public roads, and all weapons forfeited to the county under the provisions of this act shall be sold as may be prescribed by the county court, and the proceeds appropriated to the same purpose.

SEC. 6.  It shall be the duty of all sheriffs, constables, marshals, and their deputies, and all policemen, and other peace officers, to arrest any person violating the first or third sections of this act, and to take such person immediately before a justice of the peace of the county where the offense is committed, or before a mayor or recorder of the town or city in which the offense is committed, who shall investigate and try the case without delay.  On all such trials the accused shall have the right of a trial by jury, and of appeal to the district court; but, in case of appeal, the accused shall be required to give bond with two or more good and sufficient sureties in a sum of not less than one hundred nor more than two hundred dollars, if convicted under the first section and in a sum of not less than two hundred nor more than one thousand dollars, if convicted under the third section of this act; said bond to be payable to the State of Texas, and approved by the magistrate, and conditioned that the defendant will abide the judgment of the district court that may

HeinOnline -- 1871 26 1871

be rendered in the case; and in case of forfeiture the proceedings thereon shall be as is or may be prescribed by law in similar cases; and all moneys collected on any bond or judgment upon the same, shall be paid over and appropriated as provided in the fifth section of this act.

SEC. 7. Any officer named in the sixth section of this act who shall refuse or fail to arrest any person whom he is required to arrest by said section on his own information, or where knowledge is conveyed to him of any violation of the first or third sections of this act, shall be dismissed from his office on conviction in the district court, on indictment or information, or by such other proceedings or tribunal as may be provided by law, and in addition, shall be fined in any sum not exceeding five hundred dollars, at the discretion of the court or jury.

SEC. 8. That the district courts shall have concurrent jurisdiction under this act, and it is hereby made the duty of the several judges of the district courts of this State to give this act especially in charge to the grand juries of their respective counties.

SEC. 9. It is hereby made the duty of the Governor to publish this act throughout the State; and this act shall take effect and be in force from and after the expiration of sixty days after its passage.

Approved April 12, 1871.

---

## CHAPTER XXXV.

AN ACT TO AUTHORIZE THE COUNTY COURT OF ROBERTSON COUNTY TO LEVY AND COLLECT A SPECIAL TAX FOR THE TERM OF TWO YEARS TO BUILD A COURT HOUSE AND JAIL IN THE CITY OF CALVERT, THE COUNTY SEAT OF SAID COUNTY.

SECTION 1. *Be it enacted by the Legislature of the State of Texas,* That the County Court of Robertson county be and the same is hereby authorized to levy and collect, annually, for the term of two years, a special *ad valorem* tax upon all property, real, personal and mixed, in said county, not to exceed one half of one per centum in addition to all general and special taxes now authorized to be levied and collected by law, which tax shall be levied and collected the same as other taxes, and shall be appropriated and paid out solely for the purpose of building a substantial court house and jail at Calvert, the county seat of Robertson county, Texas.

SEC. 2. That this act shall take effect and be in force from and after its passage.

Approved April 12, 1871.

or order of the magistrate, and shall also stand as a security for any costs which shall be ordered by the court appealed to, to be paid by the appellant.

SEC. 14.  *Party committed, how discharged.*—Any person committed for not finding sureties or refusing to recognize as required by the court or magistrate, may be discharged by any judge or justice of the peace, on giving such security as was required.

SEC. 15.  *Recognizances to be transmitted to district court.*—Every recognizance taken in pursuance of the foregoing provision shall be transmitted by the magistrate to the district court for the county, on or before the first day of the next term, and shall be there filed or recorded by the clerk.

SEC. 16.  *When person may be ordered to recognize, without process.*—Any person who shall in the presence of any magistrate mentioned in the first section of this chapter, or before any court of record, make an affray or threaten to kill or beat another, or to commit any violence or outrage against his person or property, and every person, who in the presence of such court or magistrate shall contend with hot and angry words, to the disturbance of the peace, may be ordered, without process or any other proof, to recognize for keeping the peace, and being of good behavior, for a term not exceeding six months, and, in case of a refusal, may be committed as before directed.

SEC. 17.  *Carrying dangerous weapons, how punished.*—Whoever goes armed with a dirk, dagger, sword, pistol or pistols, or other offensive and dangerous weapon, without reasonable cause to fear an assault or other injury or violence to his person, or to his family or property, may, on complaint of any other person having reasonable cause to fear an injury or breach of the peace, be required to find sureties for keeping the peace, for a term not exceeding six months, with the right of appealing as before provided.

SEC. 18.  *Judgment on recognizance remitted, when.*—Whenever upon an action brought on any such recognizances, the penalty thereof is adjudged forfeited, the court may remit such portion of the penalty on the petition of any defendant, as the circumstances of the case render just and reasonable.

SEC. 19.  *Surety in recognizance may take and surrender principal—new recognizance may be given.*—Any surety in a recognizance to keep the peace, or for good behavior, or both, has authority and right to take and surrender his principal, and upon such surrender shall be discharged and exempted from all liability for any act of the principal subsequent to such surrender, which would be a breach of the condition of the recognizance ; and the person so surrendered may recognize anew with sufficient sureties, before any justice of the peace for the residue of the term, and thereupon shall be discharged.

3. If any judge or justice have notice of a riotous, tumultuous, or unlawful assembly in the county in which he resides, and fail to proceed immediately to the place of such assembly, or as near as he may safely, or fail to exercise his authority for suppressing it and arresting the offenders, he shall be fined not exceeding one hundred dollars.

4. If any person engaged in such assembly, being commanded as aforesaid to disperse, fail to do so without delay, any such judge or justice may require the aid of a sufficient number of persons, in arms or otherwise, and proceed, in such manner as he may deem expedient, to disperse and suppress such assembly, and arrest and secure those engaged in it.

5. If by any means, taken under authority of this chapter, to disperse any such assembly, or arrest and secure those engaged in it, any person present, as spectator or otherwise, be killed or wounded, any judge or justice exercising such authority, and every one acting under his order, shall be held guiltless; and if the judge or justice, or any person acting under the order of either of them, be killed or wounded in taking such means, or by the rioters, all persons engaged in such assembly shall be deemed guilty of such killing or wounding.

6. If any rioter pull down or destroy, in whole or in part, any dwelling house, or assist therein, he shall be confined in the penitentiary not less than one nor more than five years; and though no such house so be injured, every rioter, and every person unlawfully or tumultuously assembled, shall be confined in jail not more than one year and fined not exceeding one hundred dollars.

7. If a person carry about his person any revolver or other pistol, dirk, bowie knife, razor, slung shot, billy, metallic or other false knuckles, or any other dangerous or deadly weapon of like kind or character, he shall be guilty of a misdemeanor, and fined not less than twenty-five nor more than two hundred dollars, and may, at the discretion of the court, be confined in jail not less than one nor more than twelve months; and if any person shall sell or furnish any such weapon as is hereinbefore mentioned to a person whom he knows, or has reason, from his appearance or otherwise, to believe to be under the age of twenty-one years, he shall be punished as hereinbefore provided; but nothing herein contained shall be so construed as to prevent any person from keeping or carrying about his dwelling house or premises, any such revolver or other pistol, or from carrying the same from the place of purchase to his dwelling house, or from his dwelling house to any place where repairing is done, to have it repaired, and back again. And if upon the trial of an indictment for carrying any such pistol, dirk, razor or bowie knife, the defendant shall prove to the satisfaction of the jury that he is a quiet and peaceable citizen, of good character and standing in the community in which he lives, and at the time he was found with such pistol, dirk, razor or bowie knife, as charged in the in-

(See Acts 1872-3, ch. 226, § 168.)
Acts 1882, ch. 135.
7 Gratt. 597.
34 W. Va. 74.

dictment, he had good cause to believe and did believe that he was in danger of death or great bodily harm at the hands of another person, and that he was in good faith, carrying such weapon for self-defence and for no other purpose, the jury shall find him not guilty. But nothing in this section contained shall be so construed as to prevent any officer charged with the execution of the laws of the State, from carrying a revolver or other pistol, dirk or bowie knife.

Acts 1866, p. 23.    8. If any person shall wilfully disturb, molest or interrupt any literary society, school, or society formed for intellectual improvement, or any other school or society organized under the laws of this State, or any school, society, or meeting formed or convened for improvement in music, either vocal or instrumental, or for any moral and social amusement, the person so offending shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be fined not less than five dollars, and may be imprisoned in the county jail not exceeding ten days. (See ch. 149, sec. 19, of this code.)

Acts 1882, ch. 135.    9. If two or more persons under the name of "Red Men," "Regulators," "Vigilance Committee," or any other name or without a name combine or conspire together for the purpose of inflicting any punishment or bodily injury upon any other person or persons, or for the purpose of destroying, injuring, or taking and carrying away any property, real or personal, not their own, every such person, whether he has done any act in pursuance of such combination or conspiracy or not, shall be guilty of a misdemeanor and fined not less than fifty, nor more than five hundred dollars, and may, at the discretion of the court, be confined in jail not less than one nor more than twelve months.

Id. 25 W. Va. 685.    10. If any person, in pursuance of such combination or conspiracy as is mentioned in the next preceding section, shall inflict any punishment or bodily injury upon another person, or shall destroy, injure, or take and carry away, any property, real or personal, not his own, he shall be guilty of a felony, and confined in the penitentiary not less than two nor more than ten years. And if, on the trial of an indictment under this section, it be proved that two or more persons, the defendant being one, were present, aiding and abetting in the commission of the offence charged therein, it shall be presumed that such offence was committed in pursuance of such combination or conspiracy, in the absence of satisfactory proof to the contrary. And all persons who shall be present, aiding and abetting, at the commission of any offence mentioned in this section, shall be deemed conspirators within the meaning of this, and the next preceding section.

Acts 1882, ch. 135.    11. No person called as a witness for the State on the trial of any person for an offence mentioned in either of the two next preceding sections, shall be excused from answering any question which may be asked him as such witness, and which would be otherwise legal and proper, on the ground that the answer to such question would or might degrade him, or expose him to punishment; but no such wit-

**Factor appropriating cotton taken from bale.**

§ 3266. Any factor, commission merchant, or agent, having the control of cotton, who appropriates to his own use any cotton taken from any bale under his control, with intent to defraud the owner thereof, must, on conviction, be punished, as if he had feloniously stolen such cotton.

**Adulterating sugar.**

§ 3267. Any person who mixes any foreign matter or thing with sugar, so as to deteriorate the quality thereof with intent to injure or defraud, must, on conviction, be fined not less than fifty or more than two hundred dollars, and may be imprisoned not more than three months.

**Making or emitting bills for circulation.**

§ 3268. Any person, private corporation, or association, who without authority of law, makes or emits any paper to answer the purposes of money, or for general circulation, such person, and each individual of such corporation or association, on conviction, must be fined not less than twenty or more than one hundred dollars, and may be imprisoned not more than twelve months.

**Signing bills for circulation.**

§ 3269. Any person in this state who signs any paper to be put in circulation as money, except under the authority of this state, or countersigns the same, must, on conviction, be fined in a sum not less than one hundred or more than five hundred dollars; and the signature of such person to any such paper must be taken as genuine, unless the fact of signing be denied on oath by the defendant.

**Passing such paper.**

§ 3270. Any person who passes or circulates any paper issued to answer the purposes of money, without authority of law, must, on conviction, be fined not less than twenty or more than one hundred dollars.

**Passing bills under five dollars.**

§ 3271. Any person who passes or circulates in this state, any bank bill of a less denomination than five dollars, not issued under the authority of this state, must, on conviction, be fined not exceeding fifty dollars.

**Indictment for.**

§ 3272. An indictment under the preceding section, which charges that the defendant did pass or circulate a bank bill under the denomination of five dollars, not issued under the authority of this state, is sufficient, without describing such bank bill; and proof that such bill on its face purported to be issued by the authority of any other state, or country, or by any bank, or corporation out of this state, or by any bank or corporation known to be out of this state, is sufficient without further proof.

**Concealed weapons.**

§ 3273. Any one who carries concealed about his person a bowie knife, or knife or instrument of the like kind or description by whatever name called, or air gun, must, on conviction, be fined not less than fifty or more than three hundred dollars.

**The same.**

§ 3274. Any one who carries concealed about his person a pistol, or any other description of fire arms, not being threatened with, or having good reason to apprehend an attack, or travelling, or setting out on a journey, must, on conviction, be fined not less than fifty nor more than three hundred dollars.

§ 3275. In an indictment under the preceding section, it *Indictment for.* is sufficient to charge that the defendant carried concealed about his person a pistol or other description of fire arms; *Excuse.* and the excuse must be made out by the defendant, to the satisfaction of the jury.

§ 3276. Any person, who in any newspaper, handbill, or *Publishing another as a coward, &c.* other advertisement, written or printed, publishes or proclaims any person as a coward, or uses any other opprobrious or abusive language for not accepting a challenge to fight a duel, or for not fighting a duel, must, on conviction, be fined not less than two hundred or more than five hundred dollars, and imprisoned not less than six or more than twelve months.

§ 3277. The publisher or printer of any such newspaper, *Printer to give evidence.* or handbill, or other publication, may be required to testify against any defendant indicted under the preceding section; and refusing to give evidence, must be fined five hundred *Penalty for refusing.* dollars, and imprisoned until such fine is paid, and also imprisoned until he shall testify.

§ 3278. Any person who sells and delivers any poisonous *Selling poisons without labels.* substance, without having the word "poison" written or printed on the label attached to the vial, box or parcel in which the same is sold; or sells and delivers any tartar emetic, laudanum or morphine, without having the common name thereof, written or printed upon a label attached to the vial, box or parcel, containing the same, must, on conviction, be fined not more than one hundred dollars.

§ 3279. Any person who sells to any slave, or free child *Selling poisons to slaves or children.* under ten years of age, any drug, poisonous in its nature, without an order in writing from the owner or master of such slave, or the parent, guardian, or person standing in that relation to such child, designating the drug, either by name or by its effects, must, on conviction, be fined not more than two hundred dollars, and may be imprisoned not more than three months.

§ 3280. Any licensed retailer or other person, keeping fer- *Selling or giving liquor to students, &c.* mented, vinous or spirituous liquors for sale, who sells, gives or delivers to any student of any college, or pupil of any school or academy, or to any other person for the use of such student or pupil, any of such liquors, knowing the use for which it was intended, without the consent of the parent or guardian, or the person having the charge of such student or pupil, such retailer, or the person so selling, giving or delivering, must, on conviction, be fined not less than fifty or more than five hundred dollars.

§ 3281. Any licensed retailer or other person who sells, *To minors.* gives, or delivers to any minor any of the liquors specified in the preceding section, after notice from the parent, guardian, or person in charge of such minor, forbidding such sale, gift, or delivery, must, on conviction, be fined not less than fifty or more than five hundred dollars.

§ 3282. Any licensed retailer, who, after taking the affida- *Licensed retailer trad-* vit prescribed in section 1057, knowingly sells any vinous

Case 1:18-cv-00134-BKS-ATB Document 23-3 Filed 04/02/18 Page 92 of 186

**ing with slaves.**   or spirituous liquors to any slave; or knowingly sells to or purchases from any slave any article or commodity, without the permission of the master or overseer of such slave; or knowingly permits the same to be done by his partner, clerk, or any other person about his premises; or knowingly permits any gaming to be carried on on his premises, must, on conviction, be imprisoned in the penitentiary not less than two or more than five years.

**Selling or giving liquor to slaves.**   § 3283. Any person who sells, gives, or delivers to any slave any vinous or spirituous liquor, except on an order in writing, signed by the overseer or master of such slave, specifying the quantity to be sold, given, or delivered, must, on conviction, be fined not less than fifty dollars.

**The same.**   § 3284. The provisions of the above section apply to licensed retailers as well as other persons.

**Trading with slaves. 19 Ala., 19.**   § 3285. Any person who sells to or buys or receives from any slave, any other article or commodity of any kind or description, without the consent of the master, owner, or overseer of such slave, verbally or in writing, expressing the articles permitted to be sold to, or bought or received from such slave, first obtained, must, on conviction, be fined in not less than ten or more than two hundred dollars, and may be imprisoned not more than six months.

**Evidence on indictment.**   § 3286. Upon the trial of indictments under the preceding and section 3283, evidence that the slave was seen in the night time, or on Sunday, going into a place where spirituous or vinous liquors or merchandize are sold, with an article of traffic, and coming out without the same; or that such slave was seen at such time, or on such day, immediately after coming out of such place, in possession of spirituous or vinous liquor, or merchandize of any kind, is presumptive evidence of the guilt of the defendant.

**Employing slave or free negro to draw off or sell.**   § 3287. Any person keeping spirituous liquor for sale, who employs any slave or free person of color in drawing off or selling such liquor, must, on conviction, be fined not less than twenty-five or more than fifty dollars.

**Duty of magistrate in relation to laws against retailing or trading with slaves.**   § 3288. Any justice or magistrate, whenever he has good reason to believe, or upon information on oath that any of the laws of this state against retailing or trading with slaves have been violated by any person, must forthwith issue a warrant of arrest against such person, and if the evidence proves the offence, must bind him over to answer therefor at the next circuit court, and on his failing to give bond must commit him.

**Permitting slave or free negro to sample cotton.**   § 3289. Any person who employs or knowingly permits any slave or free person of color to sample any cotton, must, on conviction, be fined not less than fifty or more than one thousand dollars.

**Owner may.**   § 3290. In indictments under the preceding section, the defendant may show in defence he was the owner of the cotton.

**Prosecuting suits in the name of an-**   § 3291. Any person who prosecutes a suit in any of the courts in this state, in the name of another person, without

his consent, must, on conviction, be fined not less than five hundred dollars. *other. Exceptions.*

§ 3292. The provisions of the preceding section do not apply to a person having the beneficial interest using the name of the person having the legal right, in cases where he cannot bring the action in his own name. *Refusing to obey summons of officer.*

§ 3293. Any person summoned by any sheriff, or other officer having authority, for the purpose of enabling such officer to make an arrest, or to execute any duty devolving upon him under any law in relation to public offences, who refuses obedience to such summons, must, on conviction, be fined not less than fifty or more than three hundred dollars. *Duty of the officer.*

§ 3294. It is the duty of the officer summoning such person to present the offender to the next grand jury, and failing so to do, he must, on conviction, be fined not less than twenty dollars.

---

## ARTICLE VII.

### *Offences against slaves.*

| Sec. | | Sec. | |
|---|---|---|---|
| 3295. | Causing death of by whipping, is murder in the first degree. | 3298. | Indictments under preceding section. |
| 3296. | Causing death by whipping, &c., without intention to kill, murder in the second degree. | 3299. | Defendant entitled to a jury two-thirds of whom are slave holders. |
| 3297. | Inflicting or allowing cruel punishment, &c., failing to provide food, raiment, attention in sickness, &c. | 3300. | Assaults by any other person than the master. |

§ 3295. Any person who with malice aforethought causes the death of a slave, by cruel whipping or beating, or by any inhuman treatment, or by the use of any weapon in its nature calculated to produce death, is guilty of murder in the first degree. *Death of a slave by whipping, &c.*

§ 3296. Any owner, overseer, or other person having the right to correct any slave, who causes the death of such slave by cruel whipping or beating, or by any other cruel or inhuman treatment, or by the use of any instrument in its nature calculated to produce death, though without any intention to kill, is guilty of murder in the second degree, and may be guilty of murder in the first degree. *Without intention to kill.*

§ 3297. Any master, or other person standing towards the slave in that relation, who inflicts, or allows another to inflict on him any cruel punishment, or fails to provide him with a sufficiency of healthy food, or necessary clothing, or to provide for him properly in sickness or old age, or treats him in any other way with inhumanity, on conviction thereof must be fined not less than twenty-five or more than one thousand dollars. *Cruel punishments; not feeding or clothing, &c.*

§ 3298. In indictments under the preceding section, it is sufficient to charge that the defendant did inflict on a slave *Indictments.*

Division 9.—Offences against the Public Peace and Tranquillity.

be made ; *And provided, also,* that the only questions to be submitted to and determined by the jury in trials for forcible entry, or forcible detainer, shall be the possession and the force, without regard to the merits of the title on either side.  <small>Title not examinable.</small>

§4413. SEC. XV. Any person having or carrying about his person, unless in an open manner and fully exposed to view, any pistol, (except horseman's pistols,) dirk, sword in a cane, spear, bowie-knife, or any other kind of knives, manufactured and sold for the purpose of offence and defence, shall be guilty of a misdemeanor, and, on conviction, shall be punished by fine or imprisonment, or both, at the discretion of the court.  <small>Carrying concealed, deadly weapons.</small>

§4414. SEC. XVI. All other offences against the public peace, not provided for in this Code, shall be prosecuted and indicted as heretofore, and the punishment, in every case, shall be by fine or imprisonment in the common jail of the county, or both, at the discretion of the court.  <small>Other offences vs. public peace.</small>

---

## TENTH DIVISION.

OFFENCES AGAINST THE PUBLIC MORALITY, HEALTH, POLICE AND DECENCY.

| SECTION. | SECTION. |
|---|---|
| 4415. Bigamy. | 4435. Vagrants. |
| 4416. Punishment on married person. | 4436. Common rogues. |
| 4417. On unmarried person. | 4437. Nuisances. |
| 4418. Incest. | 4438. Disinterring bodies. |
| 4419. Adultery. | 4439. Bastardy. |
| 4420. Lewdness. | 4440. Retailing without license. |
| 4421. Lewd houses. | 4441. Illegal marrying. |
| 4422. Disorderly houses. | 4442. Illegal voting. |
| 4423. Gaming houses. | 4443. Buying or selling votes. |
| 4424. Gaming tables. | 4444. Minor voting. |
| 4425. Gambling. | 4445. Adultery with negro. |
| 4426. Gaming with minors. | 4446. Whipping wife. |
| 4427. Gaming with clerks and bank offr's. | 4447. Interfering with religious worship. |
| 4428. Players—witnesses. | 4448. Retailing near church. |
| 4429. Judge's charge. | 4449. Working slaves on Sabbath. |
| 4430. Suspected houses. | 4450. Running freight trains on Sunday. |
| 4431. Unwholesome provisions. | 4451. Violating Sabbath. |
| 4432. Unwholesome bread, &c. | 4452. Fines from Sabbath-breakers. |
| 4433. Spreading small pox. | 4453. Bonds in case of vagrancy. |
| 4434. Violating quarantine. | 4454. Att'y or Sol'r—duty in such case. |

§4415. SEC. 1. Polygamy, or bigamy, shall consist in knowingly having a plurality of husbands, or wives, at the same time.  <small>Polygamy and bigamy.</small>

Case 1:18-cv-00134-BKS-ATB    Document 23-3    Filed 04/02/18    Page 95 of 186

shall be responsible for the payment of the expenses of his retention in jail.

### Rewards for the Apprehension of Escaped Prisoners. Act of February 1, 1860.

SECTION 1. When any person shall make his escape from any county of this Territory after having been sentenced by the court to suffer any penalty, it shall be the duty of the court to inform immediately the governor thereof, giving a description of such fugitive.

§ 2. The governor is hereby authorized to offer a reward, to be paid out of the funds of the Territory, to any person who shall find and deliver such fugitive: *Provided*, that such reward shall be at the will of the governor.

### Reward for Accused Persons. Act of 1874, Ch. 12.

SECTION 1. In cases of murder or other felony, when the person or persons accused of the crime shall be at large, the governor, when in his judgment it shall be necessary to secure the apprehension of the accused, shall be authorized to issue his proclamation offering a reward, not exceeding five hundred dollars, for the apprehension and delivery of the accused to the proper office.

§ 2. The auditor of public accounts is hereby authorized to draw a warrant on the treasury of the Territory, in favor of the person entitled to a reward, under the provisions of the preceding section, for the amount thereof, upon the presentation by such person of his account certified and approved by the governor.

### Deadly Weapons. Act of 1869, Ch. 32

SECTION 1. It shall be unlawful for any person to carry deadly weapons, either concealed or otherwise, on or about their persons within any of the settlements of this Territory, except it be in the lawful defense of themselves, their families or their property, and the same being then and there threatened with danger, or by order of legal authority, or on their own landed property, or in execution of an order of court.

§ 2. Deadly weapons, in the meaning of this act, shall be construed to mean all kinds and classes of pistols,

whether the same be a revolver, derringer, repeater, or any other kind or class of pistol; any and all kinds of bowie knives, daggers, poniards, butcher knives, dirk knives and all such weapons with which cuts can be given or by which wounds can be inflicted by thrusting, including sword canes and such sharp-pointed canes with which deadly thrusts can be given, and all kinds of slung-shots, and any other kinds of deadly weapon, by whatever name it may be called, by which a dangerous wound can be inflicted.

§ 3. The penalty for the violation of the preceding sections of this act shall not be less than ten dollars nor more than fifty dollars for each offense, or not less than ten days' imprisonment nor more than fifty days' imprisonment in the county jail, or both; such fine and imprisonment in the discretion of the jury trying the case.

§ 4. Any person who shall draw a deadly weapon on another, or who shall handle a deadly weapon in a threatening manner at or towards another, in any part of this Territory, except in the lawful defense of himself, his family, or his property, or by order of legal authority, upon conviction thereof before the proper tribunal, shall, for each offense, be fined in a sum not less than twenty-five dollars nor more than seventy-five dollars, or by imprisonment in the county jail for a term of not less than twenty days or more than sixty days, or be punished by both such fine and imprisonment, in the discretion of the jury trying the cause.

§ 5. Any person who shall draw or use any deadly weapon in any ball, dance, or other public gathering of the people, or near where any election authorized by law is being held in any part of the Territory, except it be in the lawful defense of himself, his family, or his property, or in obedience to legal authority, shall, upon conviction before the proper tribunal, be punished by a fine not less than fifty dollars nor more than one hundred dollars for each offense, or by imprisonment in the county jail for a term of not less than one month nor more than three months for each offense, or by both such fine and imprisonment in the discretion of the jury trying the cause.

§ 6. Justices of the peace, as well as the District Court, shall have jurisdiction of all offenses under the preceding sections of this act; and in all cases of prosecution under this act, in which a plea of guilty shall be entered, the court shall proceed to hear and determine the case, and

314 MISCELLANEOUS.

shall assess the penalty, upon conviction, without the intervention of a jury, unless the accused shall demand a trial by jury. [As amended, 1876, Ch. 35.]

§ 7. A conviction of any person under this act shall not be a bar to a prosecution and conviction of the same person for an assault and battery, aggravated assault, assault with a deadly weapon, assault with intent to kill, or murder, manslaughter, or other crime, and where the words "weapons" or "deadly weapons" are used in this act, such word or words shall be construed to mean the weapons described in section two of this act.

§ 8. It shall not be necessary, in the trial of any cause arising under the provisions of this act, to prove that the person charged was not in the lawful defense of himself, his family or his property; but the accused must prove to the satisfaction of the jury that the act charged was done in the lawful defense of himself, his family, or his property, before the jury can acquit.

§ 9. Any lawful voter of the Territory may without a warrant arrest parties who may violate the preceding sections of this act, and take such persons before a justice of the peace of the county in which the offense was committed, for complaint and trial, and such trial shall be had as soon as possible, giving due time for summoning witnesses.

§ 10. All fines collected by virtue of the preceding sections of this act shall go, one-third to the Territory, one-third to the county in which the offense was committed, and one-third to the person or attorney who, on the part of the Territory, procured the conviction.

§ 11. Persons traveling may be permitted to carry arms within settlements or towns of this Territory, for one hour after arriving in such settlements or town, and while going out of such towns or settlements; and sheriffs and constables of the various counties of this Territory and their lawfully appointed deputies may carry weapons in the legal discharge of the duties of their respective office, when the same may be necessary, but it shall be for the jury to decide from the evidence whether such carrying of weapons was necessary or not, and for an improper carrying or using deadly weapons by any officer mentioned in this section, he shall be punished as other persons are punished for a violation of the preceding sections of this act.

§ 12. It shall be the duty of the keeper of each and

402 STATUTES AT LARGE

A. D. 1870.

dred dollars, and one per cent. for all sums over that amount ; for search for each paper, fifteen cents ; for certificate and seal, fifty cents ; for copying papers on file in office, per copy sheet of one hundred words, twenty-five cents ; for final discharge of executor, administrator or guardian, two dollars ; for proceedings in dower, inclusive of all charges, twenty dollars ; for proceedings in lunacy, inclusive, five dollars.

Approved March 1, 1870.

---

No. 287. AN ACT TO INCORPORATE THE COOPERS' TRADES-UNION, OF CHARLESTON.

SECTION 1. *Be it enacted* by the Senate and House of Representatives of the State of South Carolina, now met and sitting in General Assembly, and by the authority of the same, That A. R. Mitchell, A. F. Gregorie, Edward Jones, James Chapman, and such other persons as may now, or hereafter shall be, associated with them, are hereby made and declared to be a body politic and corporate by the name and style of the Coopers' Trades-Union, of Charleston.

Corporators.

SEC. 2. That said Coopers' Trades-Union, of Charleston, shall have succession of officers and members according to its by-laws, and shall have power to make by-laws, not repugnant to the laws of the land, and to have, use and keep a common seal, and the same to alter at will, to sue and be sued, plead and be impleaded, in any Court in this State. It is hereby empowered to retain, possess, and enjoy all such property, real and personal, as it may possess or be entitled to, or which shall hereafter be given, bequeathed to, or in any manner acquired by it, and to sell, alien, or transfer the same.

Powers and privileges.

SEC. 3. That this Act shall be a public Act, and continue in force for the term of twelve years from the date of its ratification.

Approved March 1, 1870.

---

No. 288. AN ACT TO DEFINE THE CRIMINAL JURISDICTION OF TRIAL JUSTICES.

SECTION 1. *Be it enacted* by the Senate and House of Representatives of the State of South Carolina, now met and sitting in General Assembly, and by the authortiy of the same, That Trial Justices shall have and exercise within their respective Counties all the powers, authority and jurisdiction, in criminal cases, hereinafter set forth.

SEC. 2. Trial Justices shall have jurisdiction of all offences which may be subject to the penalties of either fine or forfeiture not exceeding one hundred dollars, or imprisonment in the Jail or Work House not exceeding thirty days, and may impose any sentence within those limits, singly or in the alternative.

Penalties not exceeding $100.

SEC. 3. They may punish not exceeding one hundred dollars, or imprisonment in the Jail or House of Correction not exceeding thirty days, all assault and batteries, and other breaches of the peace, when the offence is not of a high and aggravated nature, requiring, in their judgment, greater punishment.

Assault and battery.

SEC. 4. They may cause to be arrested all affrayers, rioters, disturbers

Rioters, &c.

App.61

Case 1:18-cv-00134-BKS-ATB   Document 23-3   Filed 04/02/18   Page 99 of 186

and breakers of the peace, and all who go armed offensively, to the terror of the people, and such as utter menaces or threatening speeches, or otherwise dangerous and disorderly persons.

<span style="float:right">A. D. 1870.</span>

Persons arrested for any of said offences shall be examined by the Trial Justice before whom they are brought, and may be tried before him, and, if found guilty, may be required to find sureties of the peace, and be punished within the limits prescribed in Section 2, or, when the offence is of a high and aggravated nature, they may be committed or bound over for trial before the Court of General Sessions. *Sureties.*

SEC. 5. They shall have jurisdiction of larcenies, by stealing of the property of another, of money, goods or chattels, or any bank note, bond, promissory note, bill of exchange, or other bill, order or certificate; or any book of accounts for or concerning money or goods due, or to become due, or to be delivered; or any deed or writing containing a conveyance of land or any other valuable contract in force; or any receipt, release or defeasance; or any writ, process or public record, if the property stolen does not exceed twenty dollars in value. *Larceny.*

SEC. 6. They shall have jurisdiction of the offences of buying, receiving or aiding in the concealment of stolen goods or other property, where they would have jurisdiction of the larceny of the same goods or property. *Stolen Goods.*

SEC. 7. They shall have jurisdiction of the offences of obtaining property by any false pretence, or by any privy or false token, or by any game, device, slight of hand, pretensions to fortune telling, trick or other means, by the use of cards or other implements or instruments, where they would have jurisdiction of a larceny of the same property, and may punish said offences the same as larceny. *False pretence.*

SEC. 8. They shall cause to be arrested all persons, found within their Counties, charged with any offence, and persons who, after committing any offence within the County, escape out of the same; examine into treasons, felonies, grand larcenies, high crimes and misdemeanors; and commit or bind over for trial those who appear to be guilty of crimes or offences not within their jurisdiction, and punish those guilty of such offences within their jurisdiction.

SEC. 9. All proceedings before Trial Justices, in criminal cases, shall be commenced on information, under oath, plainly and substantially setting forth the offence charged, upon which, and only which, shall a warrant of arrest issue. *When proceedings to commence.*

The information may be amended at any time before trial.

All proceedings before Trial Justices shall be summary, or with only such delay as a fair and just examination of the case requires.

SEC. 10. Every person arrested and brought before a Trial Justice charged with an offence within his jurisdiction, shall be entitled, on demand, to a trial by jury, to be selected in the manner indicated by Section 6 of the Act entitled "An Act to provide for the temporary appointment of Magistrates, and to define their powers and duties," ratified 24th day of September, A. D. 1868. *Trial by Jury.*

SEC. 11. Trial Justices are authorized to issue all necessary processes to carry their powers into effect, and may exercise all the powers heretofore conferred by law upon Magistrates.

SEC. 12. Every person convicted before a Trial Justice of any offence whatever, and sentenced, may appeal from the sentence to the next term *Appeal.*

A. D. 1870.    of the Court of General Sessions for the County.  The appellant shall be
committed, to abide the sentence of said Court, until he recognizes to the
State in such reasonable sum, and with such sureties, as the Court re-
quires, with condition to appear at the Court appealed to, and at any
subsequent term to which the case is continued, if not previously surren-
dered and discharged, and so, from term to term, until the final decree,
sentence or order of the Court thereon; and to abide such final sentence,
order or decree, and not depart without leave; and, in the meantime, to
keep the peace, and be of good behavior.

Sec. 13. All Acts and parts of Acts inconsistent or supplied by this
Act are hereby repealed.

Approved March 1, 1870.

———

No. 289.    AN ACT to authorize Trustees to Invest Funds in the Bonds of
the State of South Carolina.

Section 1. *Be it enacted* by the Senate and House of Representatives
of the State of South Carolina, now met and sitting in General Assembly,
and by the authority of the same, That Guardians, Trustees, Administra-
tors, Executors, Probate Judges, and Clerks of Courts, and all other per-
sons holding funds in trust for investment, are hereby authorized to invest
the same in bonds of the State of South Carolina.    And they are hereby
relieved from all responsibility for said investment, except for the safe
keeping of the bonds:   Provided, That as to officers of the Court, there
be no order of the Court directing a different investment.

Approved March 1, 1870.

———

No. 290.    AN ACT to Fix the Per Diem and Mileage of the Members of
the General Assembly.

*Be it enacted* by the Senate and House of Representatives of the State
of South Carolina, now met and sitting in General Assembly, and by the
authority of the same, That the members of the next General Assembly
shall receive the same mileage and per diem as now allowed the members
of the present General Assembly by the provisions of the Constitution of
this State, as ratified by the people on the 14th, 15th and 16th days of
April, 1868.

Approved March 1, 1870.

———

No. 291.    AN ACT to Incorporate the Comet Light Infantry, and the
Randolph Riflemen, both of the city of Charleston, and, also,
the Lincoln Guards, of Saint Stephens, and the Santee Na-
tional Guards.

Section 1. *Be it enacted* by the Senate and House of Representatives
of the State of South Carolina, now met and sitting in General As-
Corporators. sembly, and by the authority of the same, That Samuel Dickerson, P. L.

# CHAPTER 52.

AN ACT to Prevent the Carrying of Fire Arms and Other Deadly Weapons.

*Be it enacted by the Council and House of Representatives of the Territory of Wyoming:*

**Carrying weapons within city, town or village limits, prohibited.**
SECTION. 1. That hereafter it shall be unlawful for any resident of any city, town or village, or for any one not a resident of any city, town or village, in said Territory, but a sojourner therein, to bear upon his person, concealed or openly, any fire arm or other deadly weapon, within the limits of any city, town or village.

**Non-resident to be first notified.**
SEC. 2. That if any person not a resident of any town, city or village of Wyoming Territory, shall, after being notified of the existence of this act by a proper peace officer, continue to carry or bear upon his person any fire arm or other deadly weapon, he or she, shall be deemed to be guilty of a violation of the provisions of this act and shall be punished accordingly.

**Violation of this act a misdemeanor.**
**Penalty.**
SEC. 3. Any person violating any of the provisions of this act shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not less than five dollars nor more than fifty dollars, and, in the default of the payment of any fine which may be assessed against him, shall be imprisoned in the county jail for not less than five days nor more than twenty days.

**In force.**
SEC. 4. This act shall take effect and be in force from and after its passage.

Approved, December 2nd, 1875.

HeinOnline -- 1876 352 1876

16                          LAWS OF ARIZONA.

SEC. 3.   This Act shall take effect from and after its pass-age.

Approved March 18, 1889.

No. 12.                      AN  ACT

Concerning the Transaction of Judicial Business on Legal Holi-days.

*Be it enacted by the Legislative Assembly of the Territory of Arizona:*

SECTION 1.   No Court of Justice shall be open, nor shall any Judicial business be transacted on any Legal Holiday, ex-cept for the following purposes:

1.   To give, upon their request, instructions to a Jury when deliberating on their verdict.

2.   To receive a verdict or discharge a Jury.

3.   For the exercise of the powers of a magistrate in a criminal action, or in a proceeding of a criminal nature; pro-vided, that the Supreme Court shall always be open for the transaction of business; and provided further, that injunctions, attachments, claim and delivery and writs of prohibition may be issued and served on any day.

SEC. 2.   All Acts and parts of Acts in conflict with this Act are hereby repealed.

SEC. 3.   This Act shall be in force and effect from and after its passage.

Approved March 18, 1889.

No. 13.                      AN  ACT

Defining and Punishing Certain Offenses Against the Public Peace.

*Be it Enacted by the Legislative Assembly of the Territory of Arizona:*

SECTION 1.   If any person within any settlement, town, village or city within this Territory shall carry on or about his person, saddle, or in his saddlebags, any pistol, dirk, dagger, slung shot, sword cane, spear, brass knuckles, bowie knife, or any other kind of knife manufactured or sold for purposes of offense or defense, he shall be punished by a fine of not less than twenty-five nor more than one hundred dollars; and in addition thereto, shall forfeit to the County in which he is con-victed, the weapon or weapons so carried.

SEC. 2.   The preceding article shall not apply to a per-son in actual service as a militiaman, nor as a peace officer

around the head of Panther Creek, to the divide between Hat Creek and Ellis Creek, thence on the divide between Hat and Ellis Creeks in an easterly direction to the Salmon River, thence up the main channel of said Salmon River to the place of beginning.

SEC. 2.   This act to take effect and be in force, from and after its passage.

Approved February 4, 1889.

# CARRYING DEADLY WEAPONS.

## AN ACT

REGULATING THE USE AND CARRYING OF DEADLY WEAPONS IN IDAHO TERRITORY.

*Be it enacted by the Legislative Assembly of the Territory of Idaho, as follows:*

SECTION 1.   That it is unlawful for any person, except United States officials, officials of Idaho Territory, County officials, Peace officers, Guards of any jail, and officers or employees of any Express Company on duty, to carry, exhibit or flourish any dirk, dirk-knife, sword, sword-cane, pistol, gun or other deadly weapons, within the limits or confines of any city, town or village or in any public assembly of Idaho Territory.   Every person so doing is guilty of a misdemeanor and is punishable by fine not less than fifty dollars nor more than one hundred dollars, or by imprisonment in the county jail for a period of not less than twenty days nor more than fifty days, or by both such fine and imprisonment.

SEC. 2.   One half of all fines collected under the provisions of this act shall be paid to the officer making the arrest, which amount shall be payment in full for his services.   The other one half shall be paid into the Common School Fund of the county, after deducting the necessary costs of the prosecution of the case.

SEC. 3.   All acts or parts of acts in conflict with this act are hereby repealed.

SEC. 4.   This act shall take effect and be in force from and after its passage.

Approved February 4, 1889.

HeinOnline -- 1888 23 1888

686 LOCAL ACTS, 1901—No. 469.

to repeal all acts inconsistent herewith,' and acts supplementary and amendatory thereof, and to repeal all acts and parts of acts inconsistent herewith," be and the same are hereby amended so as to read as follows:

## TITLE III.

**Additional powers of council.**

SEC. 8. The common council in addition to the powers and duties specially conferred upon them in this act, shall have the management and control of the finances, rights and interests, and all property, real and personal, belonging to the city, and make such orders and by-laws relating to the same as they shall deem proper and necessary; and they shall have the power within said city to enact, make, continue, establish, modify, amend and repeal such ordinances, by-laws and regulations as they may deem desirable within said city, for the following purposes:

**Vice.**

First.  To prevent vice and immorality, to preserve peace and good order, to regulate the police of the city, to prevent and quell riots, disturbances and disorderly assemblages;

**Disorderly houses.**

Second.  To restrain and prevent disorderly and gaming houses, and houses of ill-fame, all instruments and devices used for gaming, and to prohibit all gaming and fraudulent devices, and regulate or restrain billiard tables and bowling alleys;

**Liquors.**

Third.  To forbid and prevent the vending or other disposition of liquors and intoxicating drinks in violation of the laws of the State, and to forbid the selling or giving to be drunk any intoxicating liquors to any child or young person without the consent of his or her parents or guardian and to prohibit, restrain and regulate the sale of all goods, wares and personal property at auction, except in cases of sale authorized by law, and to fix the fees to be paid by and to the auctioneers;

**Auctions.**

**Exhibitions.**

Fourth.  To prohibit, restrain, license and regulate all sports, exhibitions of all natural or artificial curiosities, caravans of animals, theatrical exhibitions, circuses or other public performances and exhibitions for money;

**Nuisances.**

Fifth.  To abate or remove nuisances of every kind, and to compel the owner or occupant of any grocery, tallow-chandler shop, butcher's stall, soap factory, tannery, stable, privy, hog pen, sewer or other offensive or unwholesome house or place, to cleanse, remove or abate the same from time to time, as often as they may deem necessary for the health, comfort and convenience of the inhabitants of the city.  To compel the owner, lessee or agent to remove buildings that are liable to fall by reason of being burnt, decayed or not properly erected;

**Dangerous buildings.**

**Location of slaughter houses.**

Sixth.  To direct the location of all slaughter houses, markets and buildings for storing gunpowder or other combustible materials, and to regulate the manner of keeping the same;

Seventh.   To regulate, restrain or prohibit the buying, sell- *Firearms, combustibles, etc.* ing, carrying and using of firearms, weapons, gunpowder, fire-crackers or fireworks, manufactured or prepared therefrom, or from other combustible material, and the exhibition of fireworks, and the discharge of firearms, and the lights in barns, stables and other buildings, and to restrain and prohibit the making of bonfires in streets, yards, alleys and other public places;

Eighth.   To prevent the encumbering of streets, sidewalks, *Encumbering streets.* crosswalks, lanes, alleys, bridges, aqueducts, wharves or slips in any manner whatever;

Ninth.   to prevent and punish horse racing and immoder- *Horse racing.* ate riding or driving in any street, and to authorize the stopping and detaining of any person who shall be guilty of immoderate riding or driving in any street; and to prevent any person from leaving a horse or horses or other animal standing upon the streets of said city without being securely tied, held or fastened so as to prevent their escape;

Tenth.   To determine and designate the routes and grades *Railroad grades, etc.* of any railroad to be laid in said city, and to regulate the use of locomotives, engines and cars upon the railroads within the city; to compel such railroads to erect and maintain safety gates at street crossings;

Eleventh.   To regulate, restrain or prohibit bathing in any *Bathing, etc.* public water, and to provide for (cleansing) cleaning Saginaw river of driftwood and other obstructions;

Twelfth.   To restrain and punish drunkards, vagrants, *Drunkards, vagrants, etc.* mendicants, street beggars and persons soliciting alms or subscriptions for any purpose whatever;

Thirteenth.   To establish one or more pounds, and to re- *Pounds.* strain, regulate or prohibit the running at large of horses, cattle, swine and other animals, geese and poultry, and to authorize the impounding and sale of the same for the penalty incurred and the cost of their keeping and impounding;

Fourteenth.   To regulate or prevent the running at large *Dogs.* of dogs; to impose taxes upon the owners of dogs and to punish dog fights and those engaged in aiding and abetting the same, in the streets and elsewhere in said city.   To provide for the issuing of licenses to the owners and keepers of dogs, and to compel the owners and keepers thereof to pay for and obtain such licenses; to require them to be muzzled and to authorize the killing of dogs not licensed or running at large in violation of the ordinances of the city; and to authorize the killing of dogs impounded, which shall not be redeemed within the time prescribed by the ordinance regulating the same;

Fifteenth.   To prohibit any person from bringing and de- *Carcasses, etc.* positing within the limits of said city any dead carcass or other unwholesome or offensive substance, and to require the removal and destruction thereof, if any person shall have on his premises such substance or any putrid meats, fish, hides

vocations and trades, professions or callings, which are licensed by the State of Texas or which are taxed by said State; provided, that no tax assessed on such occupation, trade, vocation, profession or calling shall be more than one-half the amount levied thereon by said State, and said commission shall have the power to prescribe penalties against all persons pursuing any occupation, vocation, trade, profession or calling so taxed, without having first paid the tax due, and secured a proper license therefor.

(w) *Riots.*—Power to prevent and suppress riots, affrays, noise, breach of the peace, assaults, disturbances or disorderly assembly in any public or private place within the limits of said city, and to provide punishment therefor; to prohibit and restrain the firing of guns, and pistols in the city limits, and to prohibit and restrain the carrying of pistols.

(x) *Racing.*—To prevent and prohibit and suppress horse racing, immoderate or careless riding or driving in the streets of said city, or in any public place therein, to suppress racing in the streets of said city by means of animals or vehicles.

(y) *Streets.*—To regulate the use of all streets, alleys, parks, squares, sidewalks and public grounds within said city, and to prevent and suppress all encroachments on said streets, sidewalks, alleys or parks or other public places, and to prevent and suppress all obstructions of every kind and character on the said streets, sidewalks, alleys, parks and other public grounds within said city.

(z) *Saloons.*—Power to close drinking saloons, dramshops and other public places where intoxicating liquors are sold or given away, and to close any theater or variety show when necessary or expedient; to make and enforce all needful regulations for saloons, dramshops and other places where intoxicating liquors are sold or given away. The said commission shall have the power to prescribe by ordinance that no intoxicating liquors shall be sold or given away within the corporate limits of the said city, in any certain prescribed district in said corporaton in which there are more residences than business houses, said districts to be accurately defined by said ordinances.

Said commission shall have the power to cancel and forfeit any city license issued by said City of Marshall to the owner or proprietor of any saloon or other place where intoxicating liquors are sold, under such license, within the limits of said city upon conviction of the person owning such license, of any offense against the laws of Texas, or of the City of Marshall pertaining to such liquor business, or to the sale of liquor under such license, and after forfeiture of such license by said commission, no other license for the sale of spirituous, vinous or malt liquors shall be issued or sold by the said city unto such convicted person for the period of two years.

(aa) *Theaters.*—Power to permit, regulate or forbid theaters, balls, variety shows and other public amusements, and to suppress the same whenever the preservation of order, tranquility or public safety may require.

(bb) *Ticket Scalpers.*—To prevent and prohibit the sale by any other person than a duly authorized agent, of any non-transferable ticket, pass,

(2430) § **6**.  Every person who, with intent to extort any money or other property from another, sends to any person any letter or other writing, whether subscribed or not, expressing or implying, or adapted to imply, any threat, such as is specified in the second section of this article, is punishable in the same manner as if such money or property were actually obtained by means of such threat.

*Chap. 25.*

*Sending threatening letter.*

(2431) § **7**.  Every person who unsuccessfully attempts by means of any verbal threat such as is specified in the second section of this article, to extort money or other property from another is guilty of a misdemeanor.

*Attempting to export money.*

### ARTICLE 47.—CONCEALED WEAPONS.

| SECTION. | SECTION. |
|---|---|
| 1. Prohibited weapons enumerated. | 6. Degree of punishment. |
| 2. Same. | 7. Public buildings and gatherings. |
| 3. Minors. | 8. Intent of persons carrying weapons. |
| 4. Public officials, when privileged. | 9. Pointing weapon at another. |
| 5. Arms, when lawful to carry. | 10. Violation of certain sections. |

(2432) § **1**.  It shall be unlawful for any person in the Territory of Oklahoma to carry concealed on or about his person, saddle, or saddle bags, any pistol, revolver, bowie knife, dirk, dagger, slung-shot, sword cane, spear, metal knuckles, or any other kind of knife or instrument manufactured or sold for the purpose of defense except as in this article provided.

*Prohibited weapons enumerated.*

(2433) § **2**.  It shall be unlawful for any person in the Territory of Oklahoma, to carry upon or about his person any pistol, revolver, bowie knife, dirk knife, loaded cane, billy, metal knuckles, or any other offensive or defensive weapon, except as in this article provided.

*Same.*

(2434) § **3**.  It shall be unlawful for any person within this Territory, to sell or give to any minor any of the arms or weapons designated in sections one and two of this article.

*Minors.*

(2435) § **4**.  Public officers while in the discharge of their duties or while going from their homes to their place of duty, or returning therefrom, shall be permitted to carry arms, but at no other time and under no other circumstances: *Provided, however,* That if any public officer be found carrying such arms while under the influence of intoxicating drinks, he shall be deemed guilty of a violation of this article as though he were a private person.

*Public officials, when privileged.*

(2436) § **5**.  Persons shall be permitted to carry shot-guns or rifles for the purpose of hunting, having them repaired, or for killing animals, or for the purpose of using the same in public muster or military drills, or while travelling or removing from one place to another, and not otherwise.

*Arms, when lawful to carry.*

(2437) § **6**.  Any person violating the provisions of any one of the foregoing sections, shall on the first conviction be adjudged guilty of a misdemeanor and be punished by a fine of not less than twenty-five dollars nor more than fifty dollars, or by imprisonment in the county jail not to exceed thirty days or both at the discretion of the court.  On the second and every subsequent con-

*Degree of punishment.*

496                         CRIMES AND PUNISHMENT.

Chap. 25.

viction, the party offending shall on conviction be fined not less than fifty dollars nor more than two hundred and fifty dollars or be imprisoned in the county jail not less than thirty days nor more than three months or both, at the discretion of the court.

*Public buildings and gatherings.*

(2438) § **7.**   It shall be unlawful for any person, except a peace officer, to carry into any church or religious assembly, any school room or other place where persons are assembled for public worship, for amusement, or for educational or scientific purposes, or into any circus, show or public exhibition of any kind, or into any ball room, or to any social party or social gathering, or to any election, or to any place where intoxicating liquors are sold, or to any political convention, or to any other public assembly, any of the weapons designated in sections one and two of this article.

*Intent of persons carrying weapons.*

(2439) § **8.**   It shall be unlawful for any person in this Territory to carry or wear any deadly weapons or dangerous instrument whatsoever, openly or secretly, with the intent or for the avowed purpose of injuring his fellow man.

*Pointing weapons at another.*

(2440) § **9.**   It shall be unlawful for any person to point any pistol or any other deadly weapon whether loaded or not, at any other person or persons either in anger or otherwise.

*Violation of section seven.*

(2441) § **10.**   Any person violating the provisions of section seven, eight or nine of this article; shall on conviction, be punished by a fine of not less than fifty dollars, nor more than five hundred and shall be imprisoned in the county jail for not less than three nor more than twelve months.

ARTICLE 48.—FALSE PERSONATION AND CHEATS.

SECTION.
1.   False impersonation, punishment for.
2.   False impersonation and receiving money.
3.   Personating officers and others.
4.   Unlawful wearing of grand army badge.
5.   Fines, how paid.
6.   Obtaining property under false pretenses.

SECTION.
7.   False representation of charitable purposes.
8.   Falsely representing banking corporations.
9.   Using false check.
10.  Holding mock auction.

*Punishment for false impersonation.*

(2442) § **1.**   Every person who falsely personates another, and in such assumed character, either:

First.   Marries or pretends to marry, or to sustain the marriage relation toward another, with or without the connivance of such other person; or,

Second.   Becomes bail or surety for any party, in any proceeding whatever, before any court or officer authorized to take such bail or surety; or,

Third.   Subscribes, verifies, publishes, acknowledges or proves, in the name of another person, any written instrument, with intent that the same may be delivered or used as true; or,

Fourth.   Does any other act whereby, if it were done by the person falsely personated, he might in any event become liable to any suit or prosecution, or to pay any sum of money, or to incur any charge, forfeiture or penalty, or whereby any benefit might accrue to the party personating, or to any other person.

(2498)  § 579.  Every person who commits any extortion under color of official right, in cases for which a different punishment is not prescribed by this chapter, or by some of the statutes which it specifies as continuing in force, is guilty of a misdemeanor. *Extortion under color of official right.*

(2499)  § 580.  Every person who, by any extortionate means, obtains from another his signature to any paper or instrument, whereby, if such signature were freely given, any property would be transferred, or any debt, demand, charge or right of action created, is punishable in the same manner as if the actual delivery of such property or payment of the amount of such debt, demand, charge or right of action were obtained. *Obtaining signature by extortion.*

(2500)  § 581.  Every person who, with intent to extort any money or other property from another, sends to any person any letter or other writing, whether subscribed or not, expressing or implying, or adapted to imply, any threat, such as is specified in the second section of this article, is punishable in the same manner as if such money or property were actually obtained by means of such threat. *Sending threatening letter.*

(2501)  § 582.  Every person who unsuccessfully attempts by means of any verbal threat such as is specified in the second section of this article, to extort money or other property from another is guilty of a misdemeanor. *Attempting to extort money.*

## ARTICLE 45.—CONCEALED WEAPONS.

| Section. | | Section. | |
|---|---|---|---|
| (2502) 583. | Prohibited weapons enumerated. | (2507) 588. | Degree of punishment. |
| | | (2508) 589. | Public buildings and gatherings. |
| (2503) 584. | Same. | | |
| (2504) 585. | Minors. | (2509) 590. | Intent of persons carrying weapons. |
| (2505) 586. | Public officials, when privileged. | | |
| | | (2510) 591. | Pointing weapon at another. |
| (2506) 587. | Arms, when lawful to carry. | (2511) 592. | Violation of certain sections. |

(2502)  § 583.  It shall be unlawful for any person in the Territory of Oklahoma to carry concealed on or about his person, saddle, or saddle bags, any pistol, revolver, bowie knife, dirk, dagger, slung-shot, sword, cane, spear, metal knuckles, or any other kind of knife or instrument manufactured or sold for the purpose of defense except as in this article provided. *Prohibited weapons enumerated.*

The provisions of the statute in reference to the crime of carrying concealed weapons are not in conflict with any constitutional provision or organic law and are therefore valid.  Walburn v. Territory, 9 Ok., 23, 59 Pac., 972.

(2503)  § 584.  It shall be unlawful for any person in the Territory of Oklahoma, to carry upon or about his person any pistol, revolver, bowie knife, dirk knife, loaded cane, billy, metal knuckles, or any other offensive or defensive weapon, except as in this article provided. *Same.*

(2504)  § 585.  It shall be unlawful for any person within this Territory, to sell or give to any minor any of the arms or weapons designated in sections one and two of this article. *Minors.*

(2505)  § 586.  Public officers while in the discharge of their duties or while going from their homes to their place of duty, or returning therefrom, shall be permitted to carry arms, but at no other time and under no other circumstances:  Provided, however, That if any public officer be found carrying such arms while under the influence of intoxicating drinks, he shall be deemed guilty of a violation of this article as though he were a private person. *Public officials, when privileged.*

Repeal.

SECTION 3. Chapter one hundred and eight of the acts of the year nineteen hundred and two and all other acts or parts of acts inconsistent herewith are hereby repealed.

SECTION 4. This act shall take effect upon its passage.

*Approved March 16, 1906.*

*Chap.*172 AN ACT TO REGULATE BY LICENSE THE CARRYING OF CON-CEALED WEAPONS.

*Be it enacted, etc., as follows:*

Licenses may be granted for carrying concealed weapons, etc.

SECTION 1. The justice of a court, or trial justices, the board of police or mayor of a city, or the selectmen of a town, or persons authorized by them, respectively, may, upon the application of any person, issue a license to such person to carry a loaded pistol or revolver in this Commonwealth, if it appears that the applicant has good reason to fear an injury to his person or property, and that he is a suitable person to be so licensed.

Penalty for carrying concealed weapon with-out permis-sion.

SECTION 2. Whoever, except as provided by the laws of this Commonwealth, carries on his person a loaded pistol or revolver, without authority or permission as pro-vided in section one of this act, or whoever carries any stiletto, dagger, dirk-knife, slung-shot or metallic knuckles, shall upon conviction be punished by a fine of not less than ten nor more than one hundred dollars, or by imprison-ment for a term not exceeding one year, or by both such fine and imprisonment. *Approved March 16, 1906.*

*Chap.*173 AN ACT TO PROVIDE FOR THE FURTHER IMPROVEMENT OF THE COMMONWEALTH'S FLATS AT SOUTH BOSTON.

*Be it enacted, etc., as follows:*

Improvement of the Com-monwealth's flats at South Boston.

SECTION 1. For the purpose of enforcing and execut-ing the provisions and requirements of existing laws re-lating to the Commonwealth's flats at South Boston, and for the payment of money which may be needed to carry out the provisions of chapter two hundred and thirty-nine of the acts of the year eighteen hundred and seventy-five, the sum of five hundred thousand dollars is hereby ap-propriated from the Commonwealth's Flats Improvement Fund, established by chapter two hundred and thirty-seven of the acts of the year eighteen hundred and seventy-eight.

SECTION 2. This act shall take effect upon its passage.

*Approved March 19, 1906.*

To the person raising the best mule colt under six months of age, $15.00; To the person raising the best horse colt under six months old $15.00. To the person raising the best acre of corn $25.00; To the person raising the best acre of wheat, $15.00; To the person raising the best acre of oats, $15.00; To the person raising the best acre of sweet or irish potatoes, $10.00 each; To the person raising the best acre of hay, $5.00.

2. It shall be the duty of the commissioner of agriculture and industries to provide rules under which the results of the contestants may be declared and awards made.

Payment authorized.

3. "That the commissioner of agriculture and industries is hereby required and authorized to pay the several prizes enumerated above out of the funds provided for the expense of the agricultural department by sections 52 and 73 of the Code of 1907."

Approved Aug. 26, 1907.

———

No. 215)          AN ACT          (S. 50

To regulate the right to carry a pistol in this State.

Unlawful to carry concealed pistol.

Section 1. Be it enacted by the Legislature of Alabama, That it shall be unlawful for any person to carry a pistol concealed about his person.

Does not apply to sheriff, etc.

Section 2. It shall be unlawful for any person to carry a pistol about his person on premises not his own or under his control, provided this section shall not apply to any sheriff or his deputy or police officer of an incorporated town or city in the lawful discharge of the duties of his office or United States Marshal or their deputies, rural free delivery mail carriers in the discharge of their duties as such or bonded constable in the discharge of their duties as such.

Violations.

Section 3. Any person violating the provisions of this act must on conviction be fined not less than fifty dollars and may also be imprisoned in the county jail or sentenced to hard labor for the county for not more than six months.

May give evidence of good reason.

Section 4. The defendant may give evidence that at the time of carrying the pistol he had good reason to apprehend an attack which the

259                                      1909.

jury may consider in mitigation of the fine or
justification of the offense.

Section 5.   In an indictment for a violation Sufficient to
of this act, it shall be sufficient to charge that the charge de-
defendant carried a pistol concealed about his ried pistol.
person or on premises not his own or under his
control and the excuse if any must be proved by Excuse must
the defendant on the trial, to the satisfaction of be proved.
the jury.

Section 6.   All laws and parts of laws in con- Conflicting
flict with the provisions of this act be and the laws re-
same are hereby repealed. pealed.

Approved Aug. 26, 1909.

----

No. 217.)              AN ACT              (S. 7.

To authorize and empower the commissioners
court, board of revenue, or other court or
county officers of similar or like jurisdiction
to donate or appropriate funds from the
county treasury to aid in the construction
or improvement of necessary buildings and
the maintenance and support of those State
schools known as county high schools estab-
lished under the act of the Legislature ap-
proved August 7, 1907, and to ratify and
confirm all appropriations heretofore made
for such purposes and to repeal all laws
and parts of laws in conflict therewith.

Section 1.   Be it enacted by the Legislature of Lawful to ap-
Alabama, That on and after the approval of this propriate
act by the governor it shall be lawful for the com- in construc-
missioners court, board of revenue, or other court tion, etc. of
or officers of the county of similar or like jur- county high
isdiction to donate or appropriate funds from schools.
the county treasury to aid in the construction or
improvement of necessary buildings and the
maintenance and support of those State schools
known as county high schools, established in the
several counties of the State under an act of the
Legislature entitled an act "to provide for the es-
tablishment of high schools in this State, and to
make appropriations for said schools," approved
August 7th, 1907, such donations or appropria-
tions to be applied to the benefits of said schools

[1] Where a male person of the age of sixteen years and under the age of eighteen years has been convicted of juvenile delinquency or of a misdemeanor, the trial court may, instead of sentencing him to imprisonment in a state prison or in a penitentiary, direct him to be confined in a house of refuge established by the managers of the society for the reformation of juvenile delinquents in the city of New York; under the provisions of the statute relating thereto. Where a female person not over the age of twelve years is convicted of a crime amounting to felony, or where a female person of the age of twelve years and not over the age of sixteen years is convicted of a crime, the trial court may, instead of sentencing her to imprisonment in a state prison or in a penitentiary, direct her to be confined in the New York State Training School for Girls, under the provisions of the statute relating thereto, but nothing in this section shall affect any of the provisions contained in section twenty-one hundred and ninety-four.

§ 2. All acts or parts of acts inconsistent with this act are hereby repealed.

§ 3. This act shall take effect immediately.

---

## Chap. 608.

AN ACT to amend the penal law generally, in relation to the carrying, use and sale of dangerous weapons.

Became a law May 21, 1913, with the approval of the Governor. Passed, three-fifths being present.

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Section 1. Section eighteen hundred and ninety-seven of chapter eighty-eight of the laws of nineteen hundred and nine, entitled "An act providing for the punishment of crime, constituting chapter forty of the consolidated laws," as amended by chapter one hundred and ninety-five of the laws of nineteen hundred and eleven, is hereby amended to read as follows:

L. 1909, ch. 88, § 1897, as amended by L. 1911, ch. 195, amended.

§ 1897. **Carrying and use of dangerous weapons.** A person who attempts to use against another, or who carries, or possesses, any instrument or weapon of the kind commonly known as a blackjack,

---

[1] Following sentence new.

slungshot, billy, sandclub, sandbag, metal knuckles, bludgeon, bomb or bombshell,[1] or who, with intent to use the same unlawfully against another, carries or possesses a dagger, dirk, dangerous knife, razor, stiletto, or any other dangerous or deadly instrument or weapon, is guilty of a felony.

Any person under the age of sixteen years, who shall have, carry, or have in his possession, any of the articles named or described in the last section, which is forbidden therein to offer, sell, loan, lease or give to him, shall be guilty of a misdemeanor.

Any person over the age of sixteen years, who shall have in his possession in any city, village or town of this state, any pistol, revolver or other firearm of a size which may be concealed upon the person, without a written license therefor, issued to him [2] as hereinafter prescribed, shall be guilty of a misdemeanor.

Any person over the age of sixteen years, who shall have or carry concealed upon his person in any city, village, or town of this state, any pistol, revolver, or other firearm without a written license therefor, [3] issued as hereinafter prescribed and licensing such possession and concealment, shall be guilty of a felony.

Any person not a citizen of the United States, who shall have or carry firearms, or any dangerous or deadly weapons in any [4]place, at any time, shall be guilty of a felony, [5]unless authorized by license issued as hereinafter prescribed.

[6] It shall be the duty of any magistrate in this state to whom an application therefor is made by a commissioner of correction of a city or by any warden, superintendent or head keeper of any state prison, penitentiary, workhouse, county jail or other institution for the detention of persons convicted of or accused of crime, or offences, or held as witnesses in criminal cases, to issue to each of such persons as may be designated in such applications, and who is in the regular employ in such institution of the state, or of any county, city, town or village therein, a license authorizing such

---

[1] Inclusion of bomb and bombshell, new.
[2] Remainder of sentence formerly read: "by a police magistrate of such city or village, or by a justice of the peace of such town, or in such manner as may be prescribed by ordinance in such city, village or town, shall be guilty of a misdemeanor."
[3] Remainder of sentence formerly read: "theretofore issued to him by a police magistrate of such city or village, or by a justice of the peace of such town, or in such manner as may be prescribed by ordinance of such city, village or town, shall be guilty of a felony."
[4] Word "public" omitted.
[5] Remainder of sentence new
[6] Following paragraph new.

Case 1:18-cv-00134-BKS-ATB   Document 23-3   Filed 04/02/18   Page 115 of 186

person to have and carry concealed a pistol or revolver while such person remains in the said employ.

⁶ It shall be the duty of any magistrate in this state, upon application therefor, by any householder, merchant, storekeeper or messenger of any banking institution or express company in the state, and provided such magistrate is satisfied of the good moral character of the applicant, and provided that no other good cause exists for the denial of such application, to issue to such applicant a license to have and possess a pistol or revolver, and authorizing him (a) if a householder, to have such weapon in his dwelling, and (b) if a merchant, or storekeeper, to have such weapon in his place of business, and (c) if a messenger of a banking institution or express company, to have and carry such weapon concealed while in the employ of such institution or express company.

⁶ In addition, it shall be lawful for any magistrate, upon proof before him that the person applying therefor is of good moral character, and that proper cause exists for the issuance thereof, to issue to such person a license to have and carry concealed a pistol or revolver without regard to employment or place of possessing such weapon, provided, however, that no such license shall be issued to any alien, or to any person not a citizen of and usually resident in the state of New York, except by a judge or justice of a court of record in this state, who shall state in such license the particular reason for the issuance thereof, and the names of the persons certifying to the good moral character of the applicant.

⁶Any license issued in pursuance of the provisions of this section may be limited as to the date of expiration thereof and may be vacated and cancelled at any time by the magistrate, judge or justice who issued the same or by any judge or justice of a court of record.   Any license issued in pursuance of this section and not otherwise limited as to place or time or possession of such weapon, shall be effective throughout the state of New York, *notwitstanding the provisions of any local law or ordinance.

This section shall not apply to the regular and ordinary transportation of firearms as merchandise, nor to sheriffs, policemen, or to other duly appointed peace officers, nor to duly authorized military or civil organizations, when parading, nor to the members thereof when going to and from the place of meeting of their respective organizations.

---

* So in original.
⁶ Following paragraph new.

§ 1914, as
added by
L. 1911,
ch. 195,
amended.

§ 2. Section nineteen hundred and fourteen of such chapter, as added by chapter one hundred and ninety-five of the laws of nineteen hundred and eleven, is hereby amended to read as follows:

§ 1914. **Sale of pistols, revolvers and other firearms.** [7]No pistol, revolver or other firearms of a size which may be concealed upon the person, shall be sold, or given away, or otherwise disposed of, except to a person expressly authorized under the provisions of section eighteen hundred and ninety-seven of the penal law to possess and have such firearm.

[7]Any person selling or disposing of such firearm in violation of this provision of this section shall be guilty of a misdemeanor.

Every person selling a pistol, revolver or other firearm of a size which may be concealed upon the person, whether such seller is a retail dealer, pawnbroker, or otherwise, shall keep a register in which shall be entered at the time of sale, the date of sale, name, age, occupation and residence of every purchaser of such a pistol, revolver or other firearm, together with the calibre, make, model, manufacturer's number or other mark of identification on such pistol, revolver or other firearm. Such person shall also, before delivering the same to the purchaser, require such purchaser to produce a license[8] for possessing or carrying the same, as required by law, and shall also enter in such register the date of such permit, the number thereof, if any, and the name of the magistrate or other officer by whom the same was issued. Every person who shall fail to keep a register and to enter therein the facts required by this section or who shall fail to exact the production of a permit to possess or carry such pistol, revolver or other firearm, if such permit is required by law, shall be guilty of a misdemeanor. Such register shall be open at all reasonable hours for the inspection of any peace officer. Every person becoming the lawful possessor of such a pistol, revolver or other firearm, who shall sell, give or transfer the same to another person without first notifying the police authorities, shall be guilty of a misdemeanor. This section shall not apply to wholesale dealers.

In effect
Sept. 1,
1913.

§ 3. This act shall take effect September first, nineteen hundred and thirteen.

---

[7] Following sentence new.
[8] Word "license" substituted for word "permit."

25

# ACT 22

## AN ACT

TO AMEND SECTION 3089 OF THE REVISED LAWS OF HAWAII.

*Be it Enacted by the Legislature of the Territory of Hawaii:*

SECTION 1.   Section 3089 of the Revised Laws of Hawaii is hereby amended so as to read as follows:

"Section 3089.   Persons not authorized; punishment.   Any person not authorized by law, who shall carry, or be found armed with any bowie-knife, sword-cane, pistol, air-gun, slung-shot, or other deadly weapon, shall be liable to a fine of not more than Two Hundred and Fifty Dollars and not less than Ten Dollars, or in default of payment of such fine, to imprisonment for a term not exceeding one year, nor less than three months, upon conviction for such offense, unless good cause be shown for having such dangerous weapon; and any such person may be immediately arrested without warrant by the high sheriff, or any sheriff, policeman, or other officer or person."

SECTION 2.   This Act shall take effect from and after the date of its approval.

Approved this 19th day of March, A. D. 1913.

WALTER F. FREAR,
Governor of the Territory of Hawaii.

treasurer or the inheritance tax appraiser of the county of the superior court having jurisdiction as provided in section fifteen of this act.

(6) This act shall become effective and in force contempo- *Act takes* *effect.* raneously with the taking effect of amendments to sections one thousand four hundred one and one thousand four hundred two of the Civil Code, which amendments were enacted at the forty-fifth session of the legislature of the State of California and known as chapter eighteen of the statutes of 1923, and not otherwise.

---

## CHAPTER 338.

*An act to add a new section to the Civil Code to be numbered three thousand fifty-one a, fixing a limit on the amount of a lien on property held under the provisions of section three thousand fifty-one of said code.*

[Approved June 13, 1923.]

*The people of the State of California do enact as follows:*

SECTION 1. A new section is hereby added to the Civil Code to be numbered three thousand fifty-one *a* and to read as follows:

3051*a*. That portion of any lien, as provided for in the *Limitation* *on amount* next preceding section, in excess of one hundred dollars, for *recoverable* any work, services, care, or safekeeping rendered or performed *where* *written* at the request of any person other than the holder of the legal *notice not* title, shall be invalid, unless prior to commencing any such *given.* work, service, care, or safekeeping, the person claiming such lien shall give actual notice in writing either by personal service or by registered letter addressed to the holder of the legal title to such property, if known. In the case of automobiles, the person named as legal owner in the registration certificate, shall be deemed for the purpose of this section, as the holder of the legal title.

---

## CHAPTER 339.

*An act to control and regulate the possession, sale and use of pistols, revolvers and other firearms capable of being concealed upon the person; to prohibit the manufacture, sale, possession or carrying of certain other dangerous weapons within this state; to provide for registering all sales of pistols, revolvers or other firearms capable of being concealed upon the person; to prohibit the carrying of concealed firearms except by lawfully authorized persons; to provide for the confiscation and destruction of such weapons in certain cases; to prohibit the ownership, use, or possession of any of such weapons by certain classes of persons; to prescribe penalties for violations of this act and increased penalties for repeated violations hereof; to*

696                     STATUTES OF CALIFORNIA.            [Ch. 339

> *authorize, in proper cases, the granting of licenses or permits to carry firearms concealed upon the person; to provide for licensing retail dealers in such firearms and regulating sales thereunder; and to repeal chapter one hundred forty-five of California statutes of 1917, relating to the same subject.*

[Approved June 13, 1923.]

*The people of the State of California do enact as follows:*

Manufacture, sale, carrying, etc., certain dangerous weapons prohibited.

SECTION 1.  On and after the date upon which this act takes effect, every person who within the State of California manufactures or causes to be manufactured, or who imports into the state, or who keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, or metal knuckles, or who carries concealed upon his person any explosive substance, other than fixed ammunition, or who carries concealed upon his person any dirk or dagger, shall be guilty of a felony and upon a conviction thereof shall be punishable by imprisonment in a state prison for not less than one year nor for more than five years.

Aliens and felons must not possess certain firearms.

SEC. 2.  On and after the date upon which this act takes effect, no unnaturalized foreign born person and no person who has been convicted of a felony against the person or property of another or against the government of the United States or of the State of California or of any political subdivision thereof shall own or have in his possession or under his custody or control any pistol, revolver or other firearm capable of being concealed upon the person.  The terms "pistol," "revolver," and "firearms capable of being concealed upon the person" as used in this act shall be construed to apply to and include all firearms having a barrel less than twelve inches in length.  Any person who shall violate the provisions of this section shall be guilty of a felony and upon conviction thereof shall be punishable by imprisonment in a state prison for not less than one year nor for more than five years.

Committing felony while carrying dangerous weapon.

SEC. 3.  If any person shall commit or attempt to commit any felony within this state while armed with any of the weapons mentioned in section one hereof or while armed with any pistol, revolver or other firearm capable of being concealed upon the person, without having a license or permit to carry such firearm as hereinafter provided, upon conviction of such felony or of an attempt to commit such felony, he shall in addition to the punishment prescribed for the crime of which he has been convicted, be punishable by imprisonment in a state prison for not less than five nor for more than ten years.  Such additional period of imprisonment shall commence upon the expiration or other termination of the sentence imposed for the crime of which he stands convicted and shall not run concurrently with such sentence.  Upon a second conviction under like circumstances such additional period of impris-

Case 1:18-cv-00134-BKS-ATB   Document 23-3   Filed 04/02/18   Page 120 of 186

onment shall be for not less than ten years nor for more than fifteen years, and upon a third conviction under like circumstances such additional period of imprisonment shall be for not less than fifteen nor for more than twenty-five years, such terms of additional imprisonment to run consecutively as before. Upon a fourth or subsequent conviction under like circumstances the person so convicted may be imprisoned for life or for a term of years not less than twenty-five years, within the discretion of the court wherein such fourth or subsequent conviction was had.

In the trial of a person charged with committing or attempt- Evidence. ing to commit a felony against the person of another while armed with any of the weapons mentioned in section one hereof, or while armed with any pistol, revolver or other firearm capable of being concealed upon the person, without having a license or permit to carry such firearm as hereinafter provided, the fact that he was so armed shall be prima facie evidence of his intent to commit such felony.

SEC. 4.　In no case shall any person punishable under the No probation preceding sections of this act be granted probation by the or suspension of sentence trial court, nor shall the execution of the sentence imposed upon such person be suspended by the court.

SEC. 5.　Except as otherwise provided in this act, it shall Carrying certain be unlawful for any person within this state to carry con- firearms cealed upon his person or within any vehicle which is under without license. his control or direction any pistol, revolver or other firearm capable of being concealed upon the person without having a license to carry such firearm as hereinafter provided in section eight hereof.　Any person who violates the provisions of this section shall be guilty of a misdemeanor, and if he has been convicted previously of any felony, or of any crime made punishable by this act, he is guilty of a felony.

This section shall not be construed to prohibit any citizen Exceptions. of the United States, over the age of eighteen years, who resides or is temporarily sojourning within this state, and who is not within the excepted classes prescribed by section two hereof, from owning, possessing or keeping within his place of residence or place of business any pistol, revolver or other firearm capable of being concealed upon the person, and no permit or license to purchase, own, possess or keep any such firearm at his place of residence or place of business shall be required of any such citizen.　Firearms carried openly in belt holsters shall not be deemed to be concealed within the meaning of this section, nor shall knives which are carried openly in sheaths suspended from the waist of the wearer.

SEC. 6.　Nothing in the preceding section shall be construed Police officers, sol- to apply to or affect sheriffs, constables, marshals, policemen, diers, etc., whether active or honorably retired, or other duly appointed excepted. peace officers, nor to any person summoned by any such officers to assist in making arrests or preserving the peace while said person so summoned is actually engaged in assisting such officer; nor to the possession or transportation by any merchant of unloaded firearms as merchandise; nor to members of

the army, navy, or marine corps of the United States, or the national guard, when on duty, or to organizations which are by law authorized to purchase or receive such weapons from the United States, or from this state; nor to duly authorized military or civil organizations while parading, nor to the members thereof when going to and from the places of meeting of their respective organizations; nor to members of any club or organization now existing, or hereafter organized, for the purpose of practicing shooting at targets upon the established target ranges, whether public or private, while such members are using any of the firearms referred to in this act upon such target ranges, or while going to and from such ranges; or to licensed hunters or fishermen while engaged in hunting or fishing, or while going to or returning from such hunting or fishing expedition.

**Nuisances.**   SEC. 7.   The unlawful concealed carrying upon the person or within the vehicle of the carrier of any dirk, dagger, pistol, revolver, or other firearm capable of being concealed upon the person, is a nuisance.   Any such weapons taken from the person or vehicle of any person unlawfully carrying the same are hereby declared to be nuisances, and shall be surrendered to the magistrate before whom said person shall be taken, except that in any city, city and county, town or other municipal corporation the same shall be surrendered to the head of the police force or police department thereof.   The officers to **Destruction of weapons.** whom the same may be so surrendered, except upon the certificate of a judge of a court of record, or of the district attorney of the county, that the preservation thereof is necessary or proper to the ends of justice, shall annually, between the first and tenth days of July, in each year, destroy or cause to be destroyed such weapons to such extent that the same shall become and be wholly and entirely ineffective and useless for the purpose for which it was manufactured; *provided, however,* that in the event any such weapon has been stolen and is thereafter recovered from the thief or his transferee, the same shall not be destroyed but shall be restored to the lawful owner thereof, so soon as its use as evidence has been served, upon his identification of the weapon and proof of ownership thereof.   Blackjacks, slungshots, billys, sandclubs, sandbags and metal knuckles are hereby declared to be nuisances and shall be subject to confiscation and summary destruction whenever found within the state; *provided,* that upon the certificate of a judge or of the district attorney that the ends of justice will be subserved thereby, such weapon shall be preserved until the necessity for its use ceases.

**Licenses to carry firearms.**   SEC. 8.   It shall be lawful for the sheriff of a county, and the board of police commissioners, chief of police, city marshal, town marshal, or other head of the police department of any city, city and county, town, or other municipal corporation of this state, upon proof before said board, chief, marshal or other police head, that the person applying therefor is of good moral character, and that good cause exists for the issuance thereof, to issue to such person a license to carry con-

cealed a pistol, revolver or other firearm for a period of one year from the date of such license. All applications for such licenses shall be filed in writing, signed by the applicant, and shall state the name, occupation, residence and business address of the applicant, his age, height, weight, color of eyes and hair, and reason for desiring a license to carry such weapon. Any license issued upon such application shall set forth the foregoing data and shall, in addition, contain a description of the weapon authorized to be carried, giving the name of the manufacturer, the serial number and the caliber thereof. When such licenses are issued by a sheriff a record thereof shall be kept in the office of the county clerk; when issued by police authority such record shall be maintained in the office of the authority by whom issued. Such applications and licenses shall be uniform throughout the state, upon forms to be prescribed by the attorney general. *Applications.* *Record.*

SEC. 9.  Every person in the business of selling, leasing or otherwise transferring a pistol, revolver or other firearm, of a size capable of being concealed upon the person, whether such seller, lessor or transferrer is a retail dealer, pawn-broker or otherwise, except as hereinafter provided, shall keep a register in which shall be entered the time of sale, the date of sale, the name of the salesman making the sale, the place where sold, the make, model, manufacturer's number, caliber or other marks of identification on such pistol, revolver or other firearm. Such register shall be prepared by and obtained from the state printer and shall be furnished by the state printer to said dealers on application at a cost of three dollars per one hundred leaves in duplicate and shall be in the form hereinafter provided. The purchaser of any fire-arm, capable of being concealed upon the person shall sign, and the dealer shall require him to sign his name and affix his address to said register in duplicate and the salesman shall affix his signature in duplicate as a witness to the signatures of the purchaser. Any person signing a fictitious name or address is guilty of a misdemeanor. The duplicate sheet of such register shall on the evening of the day of sale, be placed in the mail, postage prepaid and properly addressed to the board of police commissioners, chief of police, city marshal, town marshal or other head of the police department of the city, city and county, town or other municipal corporation wherein the sale was made: *provided,* that where the sale is made in a district where there is no municipal police department, said duplicate sheet shall be mailed to the county clerk of the county wherein the sale is made. A violation of any of the provisions of this section by any person engaged in the busi-ness of selling, leasing or otherwise transferring such fire-arm is a misdemeanor. This section shall not apply to whole-sale dealers in their business intercourse with retail dealers, nor to wholesale or retail dealers in the regular or ordinary transportation of unloaded firearms as merchandise by mail, express or other mode of shipment, to points outside of the city, city and county, town or municipal corporation wherein *Dealers registers.* *Cost.* *Signatures.* *Disposition of duplicate sheets.* *Penalty.*

Form of register. | they are situated.  The register provided for in this act shall be substantially in the following form:

### Form of Register.

Series No._____
Sheet No._____

#### ORIGINAL.

### Dealers' Record of Sale of Revolver or Pistol.

### State of California.

Notice to dealers: This original is for your files.  If spoiled in making out, do not destroy.  Keep in books.  Fill out in duplicate.

Carbon duplicate must be mailed on the evening of the day of sale, to head of police commissioners, chief of police, city marshal, town marshal or other head of the police department of the municipal corporations wherein the sale is made, or to the county clerk of your county if the sale is made in a district where there is no municipal police department.  Violation of this law is a misdemeanor.  Use carbon paper for duplicate. Use indelible pencil.

Sold by_____ Salesman_____
City, town or township _____
Description of arm (state whether revolver or pistol)_____
Maker_____ Number_____ Caliber_____
Name of purchaser _____age_____years.
Permanent residence (state name of city, town or township, street and number of dwelling)_____
Height _____feet_____inches.  Occupation_____
Color _ _____skin_____eyes_____hair_____
If traveling or in locality temporarily, give local address
_____
_____
Signature of purchaser_____
(Signing a fictitious name or address is a misdemeanor.)   (To be signed in duplicate.)
Witness_____, salesman.
   (To be signed in duplicate.)

Series No._____
Sheet No._____

#### DUPLICATE.

### Dealers' Record of Sale of Revolver or Pistol.

### State of California.

Notice to dealers:  This carbon duplicate must be mailed on the evening of the day of sale as set forth in the original of this register page.  Violation of this law is a misdemeanor.
Sold by _____ Salesman_____
City, town or township _____
Description of arm (state whether revolver or pistol)_____
Maker _____number_____caliber_____

Name of purchaser _____age_____years.
Permanent address (state name of city, town or township,
street and number of dwelling)_____
_____
Height_____feet_____inches.  Occupation _____
Color _____skin_____eyes_____hair_____
If traveling or in locality temporarily, give local address
_____,__
Signature of purchaser_____
(Signing a fictitious name or address is a misdemeanor.)   (To
be signed in duplicate.)
Witness_____, salesman.
   (To be signed in duplicate.)

SEC. 10.   No person shall sell, deliver or otherwise transfer <sup>Restrictions on transfer of certain firearms.</sup> any pistol, revolver, or other firearm capable of being concealed upon the person to any person whom he has cause to believe to be within any of the classes prohibited by section two hereof from owning or possessing such firearms, nor to any minor under the age of eighteen years.  In no event shall any such firearm be delivered to the purchaser upon the day of the application for the purchase thereof, and when delivered such firearm shall be securely wrapped and shall be unloaded. Where neither party to the transaction holds a dealer's license, no person shall sell or otherwise transfer any such firearm to any other person within this state who is not personally known to the vendor.   Any violation of the provisions of this section shall be a misdemeanor.

SEC. 11.   The duly constituted licensing authorities of <sup>Local licenses for sale of certain firearms.</sup> any county, city and county, city, town or other municipality within this state, may grant licenses in form prescribed by the attorney general, effective for not more than one year from date of issue, permitting the licensee to sell at retail within the said county, city and county, city, town or other municipality pistols, revolvers, and other firearms capable of being concealed upon the person, subject to the following conditions, for breach of any of which the license shall be subject to forfeiture:

1. The business shall be carried on only in the building designated in the license.

2. The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can easily be read.

3. No pistol or revolver shall be delivered
   (a) On the day of the application for the purchase, and when delivered shall be unloaded and securely wrapped; nor
   (b) Unless the purchaser either is personally known to the seller or shall present clear evidence of his identity.

4. No pistol or revolver, or imitation thereof, or placard advertising the sale or other transfer thereof, shall be displayed in any part of said premises where it can readily be seen from the outside.

**Penalty for dealing in certain firearms without license.**

SEC. 12.   Any person who, without being licensed as above provided, engages in the business of selling or otherwise transferring, or who advertises for sale, or offers or exposes for sale or transfer, any pistol, revolver or other firearm capable of being concealed upon the person is guilty of a misdemeanor.

**Tampering with marks on certain firearms.**

SEC. 13.   No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any pistol or revolver. Possession of any such firearm upon which the same shall have been changed, altered, removed, or obliterated, shall be presumptive evidence that such possessor has changed, altered,

**Penalty.**

removed, or obliterated the same.   Violations of this section shall be punished by imprisonment in the state prison for not less than one year nor more than five years.

**Expiration of current licenses.**

SEC. 14.   All licenses heretofore issued within this state permitting the carrying of pistols or revolvers concealed upon the person shall expire at midnight of December 31, 1924.

**Antique pistols, etc.**

SEC. 15.   This act shall not apply to antique pistols or revolvers incapable of use as such.

**Constitutionality.**

SEC. 16.   If any section, subsection, sentence, clause or phrase of this act is for any reason held to be unconstitutional such decision shall not affect the validity of the remaining portions of this act.   The legislature hereby declares that it would have passed this act and each section, subsection, sentence, clause and phrase thereof, irrespective of the fact that any one or more other sections, subsections, sentences, clauses or phrases be declared unconstitutional.

**Stats. 1917, p. 221, repealed.**

SEC. 17.   That certain act entitled, "An act relating to and regulating the carrying, possession, sale or other disposition of firearms capable of being concealed upon the person; prohibiting the possession, carrying, manufacturing and sale of certain other dangerous weapons and the giving, transferring and disposition thereof to other persons within this state; providing for the registering of the sales of firearms; prohibiting the carrying or possession of concealed weapons in municipal corporations; providing for the destruction of certain dangerous weapons as nuisances and making it a felony to use or attempt to use certain dangerous weapons against another," approved May 4, 1917, is hereby repealed.

SUBSTITUTE FOR SENATE BILL No. 265.

CHAPTER 252

AN ACT CONCERNING THE POSSESSION, SALE AND
USE OF PISTOLS AND REVOLVERS.

*Be it enacted by the Senate and House of Representatives in
General Assembly convened:*

SECTION 1.   The term " pistol " and the term " revolver ", as used in this act, shall mean any firearm having a barrel less than twelve inches in length. — Terms "pistol" and "revolver" defined.

SEC. 2.   No person shall advertise, sell, deliver, offer or expose for sale or delivery or have in his possession with intent to sell or deliver any pistol or revolver at retail without having a permit therefor issued as hereinafter provided. — Permit for selling pistol or revolver to be obtained.

SEC. 3.   The chief of police or, where there shall be no chief of police, the warden of the borough or the first selectman of the town, as the case may be, may, upon the application of any person, issue a permit in such form as may be prescribed by the superintendent of state police for the sale at retail of pistols and revolvers within the jurisdiction of the authority issuing such permit.   Upon the application of any person having a bona fide residence or place of business within the jurisdiction of any such authority or, upon the application of any bona fide resident of the United States having a permit or license to carry any firearm issued by the authority of any state or sub-division of the United States, such chief of police, warden or selectman may issue a permit to such person to carry a pistol or revolver within the jurisdiction of the authority issuing the same, provided such authority shall find that such applicant intends to make no use of any pistol or revolver which he may be permitted to carry thereunder other than a proper use and that such person is a suitable person to receive such permit.   The superintendent of state police may, upon application, issue to any holder of any permit to carry any pistol or revolver hereinbefore provided for, a permit to carry a pistol or revolver within the state.   Each permit to carry any pistol or revolver shall be issued in triplicate and one of the copies issued by the superintendent of state police shall be delivered to the person to whom issued, one shall be delivered forthwith to the authority issuing the local permit and one shall be retained by the superintendent of state police, and the local authority issuing any such permit shall forthwith deliver one of such copies to the person to whom issued and one copy to the superintendent of state police and shall retain one of such copies. — Local authority may issue permit. — Local authorities may issue permit to carry any fire arm within their jurisdiction. — Superintendent of state police may grant permits to carry pistol or revolver in confines of state.

SEC. 4.   The fee for each permit originally issued under the provisions of this act shall be one dollar and for each renewal — Fees for permits.

# PERJURY

## CHAPTER 265.

### (S. B. No. 232—Stevens.)

#### OATH.

An Act to Amend and Re-enact Section 9367 of the Compiled Laws of
North Dakota for the year 1913, Relating to the Prescribing of an
Oath.

*Be It Enacted by the Legislative Assembly of the State of North Dakota:*

Sec. 1. AMENDMENT.) That Section 9367 of the Compiled
Laws of North Dakota for the year 1913 be amended and re-en-
acted to read as follows:

Sec. 9367. OATH DEFINED.) The term oath as used in Sec-
tion 9366 of the Compiled Laws of 1913, includes an affirmation
and every other mode of attesting the truth of that which is stated,
which is authorized by law, and the signing of any writing pur-
porting to be made under oath, in the presence of an officer
authorized to administer oaths, or the acknowledgment of the
signing thereof, to or before any such officer, or the presentation
thereof to such officer by the person signing or by his direction to
be authenticated as an oath, shall be deemed to be the taking
of an oath within the meaning of said section and the certificate
of the officer purporting to take such oath shall be prima facie
evidence of the taking thereof.

Approved March 1st, 1923.

# PISTOLS AND REVOLVERS

## CHAPTER 266.

### (S. B. No. 256—McLachlin.)

#### PISTOLS AND REVOLVERS.

An Act To Control the Possession, sale, and use of pistols and revolvers,
to provide penalties, and for other purposes.

*Be It Enacted by the Legislative Assembly of the State of North Dakota:*

Sec. 1. DEFINITION.) "Pistol or revolver," as used in this
Act, shall be contrued as meaning any firearm with barrel less
than twelve inches in length.

Sec. 2.  COMMITTING CRIME WHEN ARMED.)  If any person shall commit or attempt to commit a crime when armed with a pistol or revolver, and having no permit to carry the same, he shall be in addition to the punishment provided for the crime, be punished by imprisonment for not less than ten years.

Sec. 3.  PUNISHMENT.)  The judge shall have the power to sentence any person who may be convicted for a second or third offense under section 2 of this Act, to double and triple the penalty imposed thereby, and for a fourth offense the person so convicted may be sentenced to life imprisonment.

Sec. 4.  BEING ARMED PRIMA FACIE EVIDENCE OF INTENTION.)  In the trial of a person for the commission of a felony or of an attempt to commit a felony against the person of another, the fact that he was armed with a pistol or revolver ånd having no permit to carry the same shall be prima facie evidence of his intention to commit said felony.

Sec. 5.  ALIENS AND CRIMINALS MUST NOT POSSESS ARMS.)  No unnaturalized foreign-born person and no person who has been convicted of a felony against the person or property of another or against the Government of the United States or of any State or subdivision thereof, shall own or have in his possession or under his control, a pistol or revolver.  Violations of this section shall be punished by imprisonment for not to exceed five years.

Sec. 6.  CARRYING PISTOL CONCEALED.)  No person shall carry a pistol or revolver concealed in any vehicle or in any package, satchel, grip, suit case or carry in any way or upon his person, except in his dwelling house or place of business, without a license therefor as hereinafter provided.  Violations of this section shall be punished by imprisonment for not less than one year, and upon conviction the pistol or revolver shall be confiscated and destroyed.

Sec. 7.  EXCEPTIONS.)  The provisions of the preceding section shall not apply to marshals, sheriffs, policemen, or other duly appointed peace officers, nor to the regular and ordinary transportation of pistols or revolvers as merchandise, nor to members of the Army, Navy or Marine Corps of the United States, or the National Guard, when on duty, or organizations by law authorized to purchase or receive such weapons from the United States, or this State, nor to duly authorized military or civil organizations when parading, nor to the members thereof when at or going to or from their customary places of assembly.

Sec. 8.  ISSUE OF LICENSES TO CARRY.)  The justice of a court of record, the chief of police of a city or town and the sheriff of a county, or persons authorized by any of them

shall upon the application of any persons having a bona
fide residence or place of business within the jurisdiction of
said licensing authority, or of any person having a bona
fide residence or place of business within the United States
and a license to carry a fire arm concealed upon his person
issued by the authorities of any State or sub-division of the
United States, issue a license to such person to carry a pistol or
revolver within this State for not more than one year from date
of issue, if it appears that the applicant has good reason to fear
an injury to his person or property or for any other proper pur-
pose, and that he is a suitable person to be so licensed. The li-
cense shall be in triplicate, in form to be prescribed by the Sec-
retary of State, and shall bear the name, address, description,
and signature of the licensee and the reason given for desiring a
license. The original thereof shall be delivered to the licensee,
the duplicate shall within seven days be sent by registered mail
to the Secretary of State, and the triplicate shall be preserved
for six years by the authority issuing said license.

Sec. 9. SELLING TO MINORS.) Any person or persons who
shall sell, barter, hire, lend or give to any minor under the age
of eighteen years any pistol or revolver shall be deemed guilty
of a misdemeanor, and shall upon conviction thereof be fined not
less than $100, nor more than $1,000, or be imprisoned not less
than three months, nor more than one year, or both.

Sec. 10. SALES REGULATED.) No person shall sell, deliver,
or otherwise transfer a pistol or revolver to a person who he has
reasonable cause to believe either is an unnaturalized foreign
born person or has been convicted of a felony against the person
or property of another, or against the Government of the United
States or any State or subdivision thereof, nor in any event shall
he deliver a pistol or revolver on the day of the application for
the purchase thereof, and when delivered, said pistol or revolver
shall be securely wrapped and shall be unloaded. Before a
delivery be made the purchaser shall sign in triplicate and deliver
to the seller a statement containing his full name, address, oc-
cupation, and nationality, the date of sale, the caliber, make,
model, and manufacturer's number of the weapon. The seller
shall, within seven days, sign and forward by registered mail one
copy thereof to the Secretary of State, and one copy thereof to the
chief of police of the city or town, or the sheriff of the county
of which the seller is a resident, and shall retain the other copy
for six years. This section shall not apply to sales at whole-
sale. Where neither party to the transaction holds a dealer's li-
cense, no person shall sell or otherwise transfer a pistol or revol-
ver to any person not personally known to him. Violations of this
section shall be punished by a fine of not less than $100 or by

imprisonment for not less than one year, or by both such fine and imprisonment.

Sec. 11.  DEALERS TO BE LICENSED.)  Whoever, without being licensed as hereinafter provided, sells, or otherwise transfers, advertises, or exposes for sale, or transfers or has in his possession with intent to sell, or otherwise transfer, pistols or revolvers, shall be punished by imprisonment for not less than two years.

Sec. 12.  DEALERS' LICENSES:  BY WHOM GRANTED, AND CONDITIONS THEREOF.)  The duly constituted licensing authorities of any city, town or subdivision of this state, may grant licenses in form prescribed by the Secretary of State, effective for not more than one year from date of issue, permitting the licensee to sell at retail within the said city or town or political subdivision, pistols and revolvers, subject to the following conditions, for breach of any of which the license shall be subject to forfeiture:

1.  The business shall be carried on only in the building designated in the license.

2.  The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can easily be read.

3.  No pistol or revolver shall be delivered—
   (a)  On the day of the application for the purchase, and when delivered shall be unloaded and securely wrapped; nor
   (b)  Unless the purchaser either is personally known to the seller or shall present clear evidence of his identity; nor
   (c)  If the seller has reasonable cause to believe that the purchaser either is an unnaturalized foreign born person or has been convicted of a felony against the person or property of another, or against the Government of the United States or any State or subdivision thereof.

4.  A true record, in triplicate, shall be made of every pistol or revolver sold, said record to be made in a book kept for the purpose, the form of which may be prescribed by the Secretary of State, and shall be personally signed by the purchaser and by the person affecting the sale, each in the presence of the other, and shall include the date of sale, the caliber, make, model, and manufacturer's number of the weapon, the name, address, occupation, and nationality of the purchaser.  One copy of said record shall, within seven days, be forwarded by registered mail to the Secretary of State and one copy thereof to the chief of police of the city or town or the sheriff of the county of which the seller is a resident, and the other copy retained for six years.

5. No pistol or revolver, or imitation thereof, or placard advertising the sale or other transfer thereof, shall be displayed in any part of said premises where it can readily be seen from the outside.

Sec. 13. PENALTY FOR FALSE INFORMATION.) If any person in purchasing or otherwise securing delivery of a pistol or revolver or in applying for a permit to carry the same, shall give false information or offer false evidence of his identity he shall be punished by imprisonment for not less than five nor more than ten years.

Sec. 14. ALTERATION OF IDENTIFYING MARKS PROHIBITED.) No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any pistol or revolver. Possession of any such firearm upon which the same shall have been changed, altered, removed, or obliterated, shall be presumptive evidence that such possessor has changed, altered, removed, or obliterated the same. Violations of this section shall be punished by imprisonment for not less than one year nor more than five years.

Sec. 15. EXISTING LICENSES REVOKED.) All Licenses heretofore issued within this State permitting the carrying of pistols or revolvers concealed upon the person shall expire at midnight of June 30th, 1923.

Sec. 16. EXCEPTIONS.) This Act shall not apply to antique pistols or revolvers incapable of use as such.

Sec. 17. CERTAIN ACTS REPEALED.) All laws or parts of laws inconsistent herewith are hereby repealed.

Approved March 7th, 1923.

# PLEDGE

## CHAPTER 267.

(H. B. No. 177—Cole.)

### SALE OF PROPERTY PLEDGED.

An Act to Amend and Re-enact Section 6790 of the Compiled Laws of North Dakota for 1913.

*Be It Enacted by the Legislative Assembly of the State of North Dakota:*

Sec. 1. AMENDMENT.) Section 6790 of the Compiled Laws of the State of North Dakota for 1913 is amended and re-enacted to read as follows:

## CHAPTER 118.

### AN ACT TO CONTROL THE POSSESSION, SALE, AND USE OF PISTOLS AND REVOLVERS.

SECTION
1. Definition of pistol or revolver.
2. Commission of crime by one armed with pistol and unlicensed, how punished.
3. What persons forbidden to carry pistols or revolvers; penalty for violation.
4. Carrying concealed weapon without license; penalty for violation.
5. Persons exempt from application of preceding section.
6. License to carry loaded weapon, to whom and by whom to be granted.
7. Sales, etc., of weapons to minors, how punished; exemption.
8. Sale, etc., to unnaturalized foreign-born persons, etc., or to a felon, prohibited except upon permit.

SECTION
9. Selling, etc., of weapons without license, how punished.
10. Licenses to sell, how granted; record of sales to be kept.
11. Purchasing weapon by false information or evidence, how punished.
12. Removing maker's name from weapon, or other mark of identification, how punished.
13. Existing licenses to expire July 31, 1923.
14. Antique weapons not included in act.
15. Repealing clause; takes effect on passage.

*Be it enacted by the Senate and House of Representatives in General Court convened:*

**Definition of pistol or revolver.** SECTION 1. Pistol or revolver, as used in this act shall be construed as meaning any firearm with a barrel less than twelve inches in length.

**Commission of crime by one armed with pistol and unlicensed, how punished.** SECT. 2. If any person shall commit or attempt to commit a crime when armed with a pistol or revolver, and having no permit to carry the same, he shall in addition to the punishment provided for the crime, be punished by imprisonment for not more than five years.

**What persons forbidden to carry pistols or revolvers; penalty for violation.** SECT. 3. No unnaturalized foreign-born person and no person who has been convicted of a felony against the person or property of another shall own or have in his possession or under his control a pistol or revolver, except as hereinafter provided. Violations of this section shall be punished by imprisonment for not more than two years and upon conviction the pistol or revolver shall be confiscated and destroyed.

**Carrying concealed weapon without license; penalty for violation.** SECT. 4. No person shall carry a pistol or revolver concealed in any vehicle or upon his person, except in his dwelling house or place of business, without a license therefor as hereinafter provided. Violations of this section shall be punished by a fine of not more than one hundred dollars or by imprisonment not exceeding one year or by both fine and imprisonment.

**Persons exempt from application of preceding section.** SECT. 5. The provisions of the preceding sections shall not apply to marshals, sheriffs, policemen, or other duly appointed peace and other law enforcement officers, nor to the regular and ordinary trans-

portation of pistols or revolvers as merchandise, nor to members of the army, navy, or marine corps of the United States, nor to the national guard when on duty, nor to organizations by law authorized to purchase or receive such weapons, nor to duly authorized military or civil organizations when parading, or the members thereof when at or going to or from their customary places of assembly.

SECT. 6.   The selectmen of towns or the mayor or chief of police of cities may, upon application of any person issue a license to such person to carry a loaded pistol or revolver in this state, for not more than one year from date of issue, if it appears that the applicant has good reason to fear an injury to his person or property or for any other proper purpose, and that he is a suitable person to be licensed.   The license shall be in duplicate and shall bear the name, address, description, and signature of the licensee. The original thereof shall be delivered to the licensee, the duplicate shall be preserved by the selectmen of towns and the chief of police of the cities wherein issued for a period of one year. *License to carry loaded weapon, to whom and by whom to be granted.*

SECT. 7.   Any person or persons who shall sell, barter, hire, lend or give to any minor under the age of twenty-one years any pistol or revolver shall be deemed guilty of a misdemeanor and shall upon conviction thereof be fined not more than one hundred dollars or be imprisoned not more than three months, or both. This section shall not apply to fathers, mothers, guardians, administrators, or executors who give to their children, wards, or heirs to an estate, a revolver. *Sales, etc., of weapons to minors, how punished; exemption.*

SECT. 8.   No person shall sell, deliver, or otherwise transfer a pistol or revolver to a person who is an unnaturalized foreign-born person or has been convicted of a felony against the person or property of another, except upon delivery of a written permit to purchase, signed by the selectmen of the town or the mayor or chief of police of the city. Before a delivery be made the purchaser shall sign in duplicate and deliver to the seller a statement containing his full name, address, and nationality, the date of sale, the caliber, make, model, and manufacturer's number of the weapon. The seller shall, within seven days, sign and forward to the chief of police of the city or selectmen of the town one copy thereof and shall retain the other copy for one year.   This section shall not apply to sales at wholesale.   Where neither party to the transaction holds a dealer's license, no person shall sell or otherwise transfer a pistol or revolver to any person not personally known to him. Violations of this section shall be punished by a fine of not more than one hundred dollars or by imprisonment for not more than one year, or by both such fine and imprisonment. *Sale, etc., to unnaturalized foreign-born persons, etc., or to a felon, prohibited except upon permit.*

SECT. 9.   Whoever, without being licensed as hereinafter provided, sells, advertises, or exposes for sale, or has in his possession *Selling, etc., of weapons without license, how punished.*

with intent to sell, pistols or revolvers, shall be punished by imprisonment for not more than two years.

**Licenses to sell, how granted; record of sales to be kept.**

SECT. 10.   The selectmen of towns and the chief of police of cities may grant licenses, the form of which shall be prescribed by the secretary of state, effective for not more than one year from date of issue, permitting the licensee to sell at retail pistols and revolvers subject to the following conditions, for breach of any of which the license shall be subject to forfeiture:

1. The business shall be carried on only in the building designated in the license.

2. The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can easily be read.

3. No pistol or revolver shall be delivered (a) to a purchaser not personally known to the seller or who does not present clear evidence of his identity; nor (b) to an unnaturalized foreign-born person or a person who has been convicted of a felony and has no permit as required by section 8 of this act.

A true record, in duplicate, shall be made of every pistol or revolver sold, said record to be made in a book kept for the purpose, the form of which shall be prescribed by the secretary of state and shall be signed by the purchaser and by the person effecting the sale, and shall include the date of sale, the caliber, make, model, and manufacturer's number of the weapon, the name, address, and nationality of the purchaser.  One copy of said record shall, within seven days, be forwarded to the selectmen of the town or the chief of police of the city and the other copy retained for one year.

**Purchasing weapon by false information or evidence, how punished.**

SECT. 11.   If any person in purchasing or otherwise securing delivery of a pistol or revolver shall give false information or offer false evidence of his identity he shall be punished by imprisonment for not more than two years.

**Removing maker's name from weapon, or other mark of identification, how punished.**

SECT. 12.   No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any pistol or revolver.  Possession of any such firearms upon which the same shall have been changed, altered, removed, or obliterated, shall be presumptive evidence that such possessor has changed, altered, removed or obliterated the same.  Violations of this section shall be punished by a fine of not more than two hundred dollars or by imprisonment for not more than one year, or both.

**Existing licenses to expire July 31, 1923.**

SECT. 13.   All licenses heretofore issued within the state permitting the carrying of pistols or revolvers upon the person shall expire at midnight of July 31, 1923.

**Antique weapons not included in act.**

SECT. 14.   This act shall not apply to antique pistols or revolvers incapable of use as such.

SECT. 15.  All acts and parts of acts inconsistent herewith are Repealing clause; takes effect on passage. hereby repealed, and this act shall take effect upon its passage.

[Approved May 4, 1923.]

----

## CHAPTER 119.

AN ACT TO PROHIBIT THE SALE AND MANUFACTURE OF INFLAMMABLE STOVE POLISHES.

| SECTION | SECTION |
|---|---|
| 1.  Manufacture or sale of certain inflammable stove polishes forbidden. | 2.  Penalty for violation. |
| | 3.  Repealing clause; takes effect on passage. |

*Be it enacted by the Senate and House of Representatives in General Court convened:*

SECTION 1.  It shall be unlawful to manufacture for sale, keep for Manufacture or sale of certain inflammable stove polishes forbidden. sale, or sell for domestic use, any articles or compounds designed or intended as stove polish, which flash at a temperature below one hundred and twenty degrees Fahrenheit, open cup test.  The selling or having for sale of such compounds by retail stores shall be deemed as presumptive evidence of their being intended for domestic use.

SECT. 2.  Any violation of this act shall be punished by a fine Penalty for violation. not exceeding one hundred dollars ($100) or by imprisonment not exceeding six months or both.

SECT. 3.  So much of chapter 101, Laws of 1921, as is incon- Repealing clause; takes effect on passage. sistent herewith and all other acts and parts of acts inconsistent herewith are hereby repealed and this act shall take effect upon its passage.

[Approved May 4, 1923.]

[No. 313.]

AN ACT to regulate the possession and sale of pistols, revolvers and guns; to provide a method of licensing those carrying such weapons concealed; and to provide penalties for violations of such regulations.

*The People of the State of Michigan enact:*

SECTION 1.  A pistol, revolver or gun as used in this act shall be construed to mean any pistol, revolver or gun not exceeding thirty inches in length that can be concealed on or about the person. **Pistol, etc., defined.**

SEC. 2.  Any person who shall commit or attempt to commit a felony when armed with a pistol, revolver or gun, as defined in section one, shall, in addition to the punishment provided for committing the crime, be punished by imprisonment for not less than two nor more than five years within the discretion of the court. **Felony, penalty for.**

SEC. 3.  The court shall have power to sentence any person who may be convicted of a second offense to double the additional penalty imposed under section two hereof for carrying such concealed weapon without a license. **Second offense.**

SEC. 4.  In the trial of a person for the commission of murder, assault with intent to do great bodily harm, robbery, larceny, or of an attempt to commit any of such offenses, the fact that he was armed with a pistol, revolver or gun as herein defined and had no permit to carry the same, shall be prima facie evidence of his intention to commit the crime with which he is charged.  If any peace officer shall arrest a person on suspicion and with probable cause and without a warrant, for carrying concealed weapons, as herein provided, without a license therefor, and the arrest was in other respects legal and such person was actually in possession of a concealed weapon without a license to carry the same, it shall be presumed that the officer making the arrest had reasonable cause to believe that the alleged offense was being committed. **What deemed prima facie evidence.**

SEC. 5.  No person shall carry a pistol, revolver or gun concealed on or about his person or in any vehicle owned or operated by him, except in his dwelling house, place of business or on his premises, without a license therefor, as hereinafter provided.  The provisions of this section, however, shall not apply to the regular and ordinary transportation of pistols, revolvers or guns as merchandise, or to any member of the army, navy or marine corps of the United States, or to the national guard when on duty, or organizations by law authorized to purchase or receive such weapons from the United States or from this state, nor to duly authorized military organizations when on duty, nor to the members thereof when going to or returning from their customary places of assembly, nor to wholesale or retail dealers therein, nor to peace officers of the state. **Pistol, etc., when unlawful to carry.**

**Permit to carry, who to issue.**

SEC. 6. The prosecuting attorney, sheriff and chief of police of any city or incorporated village in which an applicant for a license to carry a concealed weapon, as herein defined, resides, shall constitute a licensing board for applicants living in cities and incorporated villages of each county. The prosecuting attorney and sheriff shall constitute a board to act upon applications for such a license by applicants not residing in a city or incorporated village in such county. The county clerk of each county shall be clerk of such board. The board as herein constituted may issue a permit to carry concealed, a revolver or gun within the state, to such person residing within the jurisdiction of the licensing board, if it appears that the applicant is a suitable person to be granted a license and there is reasonable cause therefor. The license so issued shall state the reason for granting the same and the length of time for which granted. Such license shall be void when the reason for granting it ceases to exist. A license may also be issued, as herein provided, to any person having a bona fide residence or place of business within the United States, and holding a license to carry the weapons herein mentioned concealed upon his person, issued by the authorities of the United States. The license herein mentioned shall

**Form of license.**

be in a form prescribed by the secretary of state and shall be in triplicate. It shall give the name, address and description of the licensee and the reason for granting a license. Each of said copies shall be signed by the licensee. The original shall be delivered to such licensee; one copy shall be mailed by registered letter within thirty days to the secretary of state and the other copy shall be preserved by the person issuing the license.

**Delivery to purchaser; statement required.**

SEC. 7. No person shall deliver or otherwise transfer a pistol, revolver or gun, as defined in this act, to a person, unless it be securely wrapped and unloaded. Before the same is delivered to the purchaser, he shall sign in triplicate and deliver to the seller a statement containing his full name, address, occupation, nationality, the date of sale, the caliber, make, model and manufacturer's number of the weapon. The seller shall, within thirty days thereafter, sign and mail by registered letter one copy thereof to the secretary of state, one copy to the chief of police of the city or village in which the same was sold or to the sheriff of the county of which the seller is a resident and shall retain the other copy. This section shall not apply to sales at wholesale. Any person convicted of wilfully violating the provisions of this section shall be punished by a fine of not less than one hundred dollars or by imprisonment for not more than one year or by both such fine and imprisonment, in the discretion of the magistrate.

**Dealer's license.**

SEC. 8. No person, firm or corporation shall hereafter sell or otherwise transfer a pistol, revolver or gun without having obtained a dealer's license therefor. The duly constituted licensing authorities herein mentioned may grant licenses on a form prescribed by the secretary of state, effective for not

more than one year from the date thereof permitting the licensee to sell at retail the firearms herein mentioned, subject to the following conditions: **Conditions.**

1. The business shall be conducted only in the building occupied by the licensed dealer.

2. The license or a copy thereof certified by the issuing authority shall be displayed on the premises where it can be readily seen.

3. A true record in triplicate shall be made of every pistol, revolver or gun, as defined in this act, sold, said record to be made in a book kept for the purpose, the form of which shall be prescribed by the secretary of state as hereinbefore provided. The form shall show the date of sale, the caliber, make, model and manufacturer's number of the weapon and the name, address, occupation and nationality of the purchaser.

SEC. 9. If any person in purchasing or otherwise securing **False** delivery of a pistol, revolver, or gun, as defined in this act, or **information.** in applying for a permit to carry the same, shall give any false information or offer false evidence of his identity, he shall be subject to the penalty hereinafter provided.

SEC. 10. No person shall deliberately change, alter, remove **Not to** or obliterate the name of the maker, model, manufacturer's **change, etc.,** number or other mark of identity of any pistol, revolver or **name of** gun. Possession of any such firearm upon which the name or **maker, etc.** number shall have been deliberately changed, altered, removed or obliterated shall be presumptive evidence that such possessor has changed, altered, removed or obliterated the same.

SEC. 11. On or before the first day of July, nineteen hun- **Registration.** dred twenty-five, any person within this state who owns or has in his possession, a pistol, revolver or gun, as herein described, and which have not been by that time legally registered, shall register the same in the office of the sheriff of the county or the chief of police of the city or village in which such person resides. A certificate of registration shall be **Certificate,** issued in triplicate and on a form to be prescribed by the **what to con-** secretary of state, containing the name, address, description **tain, etc.** and signature of the person registering the same, together with a full description of such firearm. The original shall be delivered to the person registering the same, one copy thereof shall be mailed to the secretary of state by registered letter within thirty days from the date of said registration, and the other copy thereof shall be retained and filed in the office of said sheriff or chief of police. The provisions of this section shall not apply to wholesale or retail dealers or to persons having in their possession pistols, revolvers or guns used solely for the purposes of display as relics, souvenirs or curios and kept as a collection of such.

SEC. 12. All licenses heretofore issued within the state, **When license** permitting a person to carry a pistol, revolver or gun, as de- **to expire.** fined in this act, concealed upon his person, shall expire at midnight, December thirty-first, nineteen hundred twenty-six.

476                     PUBLIC ACTS, 1925—No. 314.

Revocation.    SEC. 13.  Any officer issuing a license under the provisions of this act may revoke the same upon receiving a certificate of any magistrate showing that such licensee has been convicted of violating any of the provisions of this act.  Such license may also be revoked by the official issuing the same whenever in his judgment the holder thereof has violated any of the provisions of this act or is an unfit person to carry a

Hearing.    concealed weapon as mentioned herein.  Such official shall not revoke a license as herein mentioned, except after a hearing of which reasonable notice shall be given to the licensee either personally or by registered mail to the last known residence of the licensee.  No such license shall be revoked except upon the written complaint of a peace officer or person living within the jurisdiction of the licensing official.  Such complaint shall be addressed to the licensing official and shall set forth the reasons for requesting that the license be revoked.

When inapplicable.    SEC. 14.  This shall not apply to antique pistols, revolvers or guns.

Penalty for violation.    SEC. 15.  Any person convicted of a violation of this act for which a penalty is not provided shall be punished by a fine of not more than five hundred dollars, or by imprisonment in the state prison for a period of not more than three years, or by both such fine and imprisonment, in the discretion of the court.

Saving clause.    SEC. 16.  This act is declared to be severable and if any section or part of a section shall be held to be unconstitutional, the validity of the balance of the act shall not be affected thereby.

Approved May 26, 1925.

———————

[No. 314.]

AN ACT to amend section one of act number thirty-two of the public acts of eighteen hundred seventy-three, entitled "An act to extend aid to the university of Michigan and to repeal an act entitled 'An act to extend aid to the university of Michigan,' approved March fifteen, eighteen hundred sixty-seven, being sections three thousand five hundred six and three thousand five hundred seven of the compiled laws of eighteen hundred seventy-one," being section one thousand one hundred eighty-three of the compiled laws of nineteen hundred fifteen, as amended by act number two hundred fifty-two of the public acts of the state of Michigan for the year nineteen hundred twenty-three.

*The People of the State of Michigan enact:*

Section amended.    SECTION 1.  Section one of act number thirty-two of the public acts of eighteen hundred seventy-three, entitled "An act to

App. 102

Case 1:18-cv-00134-BKS-ATB   Document 23-3   Filed 04/02/18   Page 140 of 186

## CHAPTER 64.

An Act to amend an act entitled "A further supple-
ment to an act entitled 'An act for the punishment
of crimes' (Revision of 1898), approved June four-
teenth, one thousand eight hundred and ninety-eight,"
which supplementary act was approved March elev-
enth, one thousand nine hundred and twenty-four.

BE IT ENACTED *by the Senate and General Assembly
of the State of New Jersey:*

1. The act of which this act is amendatory be and Act amended.
the same hereby is amended so that the same shall read
as follows:

1. Any person who shall carry any revolver, pistol Carrying con-
or other firearm, or other instrument of the kinds known cealed weap-
as a blackjack, slungshot, billy, sandclub, sandbag, or in vehicle a
bludgeon, metal knuckles, dagger, dirk, dangerous misdemeanor.
knife, stiletto, bomb or other high explosive, other than
fixed ammunition, concealed in or about his clothes or
person, or in any automobile, carriage, motor cycle, or
other vehicle, shall be guilty of a misdemeanor; *pro-* Proviso: legal
*vided, however,* that nothing in this act contained shall carrying.
be construed in any way to apply to the sheriff, or the
undersheriffs of any county, nor to the regularly em-
ployed members of any uniformed police department
in any municipality of this State, nor to any prosecutor
or assistant prosecutor of any county, jailer, regular
fish and game wardens, constable, railway police, canal
police, and steamboat police and prosecutor's detectives;
nor to any member of the State Police, nor to any motor
vehicle inspector; nor to duly authorized military organ-
izations when under orders, nor to the members thereof
when going to or from places of meeting of their
respective organizations, carrying the weapons pre-
scribed for such drill, exercise or parade; *and provided,* Proviso.
*further,* nothing in this act contained shall be construed
to apply to any person having a written permit to carry

186 CHAPTER 64, LAWS OF 1925.

any revolver, pistol or other firearm, when such permit has been obtained pursuant to the provisions of this act; nor to public utility corporations in the transportation of explosives; *provided, however,* that nothing herein contained shall prevent any person from keeping or carrying about his or her place of business, dwelling, house or premises, any such revolver, pistol, firearm or other weapon, or from carrying the same from any place of purchase to his or her dwelling, house or place of business, or from his or her dwelling, house or place of business to any place where repairing is done, to have the same repaired and returned, or to carry a gun, rifle or knife in the woods or fields or upon the waters of the State for the purpose of hunting or target practice.

*Proviso.*

2. Any person desirous of obtaining a permit to carry a revolver, pistol or other firearm, pursuant to the provisions of this act, shall in the first instance, make application therefor either 'to the chief police official of the municipality in which the applicant resides or to the sheriff of the county wherein the applicant resides. If such application is approved by the chief police official or by the sheriff, as the case may be, the applicant shall then present such application, so approved as aforesaid, to a Common Pleas judge of the county or to the justice of the Supreme Court or to the judge holding the circuit for the county in which the applicant is resident, who, after investigation, and being satisfied of the sufficiency of the application, and of the need of such person carrying concealed upon his person, a revolver, pistol or other firearm, shall issue a permit therefor. A permit so issued pursuant to the provisions of this act is sufficient authority for the holder thereof to carry concealed upon his person a revolver, pistol or other firearm in all parts of the State of New Jersey. All permits issued pursuant to the provisions of this act shall expire on the thirty-first day of December subsequent to the date of issue, and may thereafter be renewed for a period of five years.

*License to carry weapons.*

*Application.*

*Approval.*

*Permit.*

*Expiration and renewal.*

3. Every person engaged in the retail business of selling, leasing or otherwise transferring a pistol, revolver or other firearm of a size capable of being concealed

*Record of sale kept.*

CHAPTER 64, LAWS OF 1925.                     187

upon the person, whether such seller, lessor or trans-
ferror is a retail dealer, pawnbroker or otherwise, shall
keep a register in which shall be entered the time of
sale, date of sale, the name, age, color, nationality,
occupation and residence of the purchaser, the name of
the salesman making the sale, the place where sold,
the make, model, manufacturer's number, calibre or
other marks of identification on such pistol, revolver or
other firearm. Such register shall be open at all reason-
able hours for the inspection of any police or other
peace officer.

The form of such register shall be prepared by the    Registry.
Secretary of State, and by him transmitted to the clerk
of every municipality. The clerk of such municipality    Furnished
dealers.
shall thereupon prepare said register in accordance with
said form so transmitted, and furnish the same to each
person, firm or corporation within his said municipal-
ity engaged in the business of selling, leasing or other-
wise transferring pistols, revolvers or other firearms.
The purchaser of any pistol, revolver or other firearm    Signature of
buyer and
capable of being concealed upon the person shall sign,    seller.
and the dealer shall require him to sign his name and
affix his address to said register, in duplicate, and the
salesman shall affix his name, in duplicate, as a witness
to the signature of the purchaser. Any person signing    False repre-
sentation.
a fictitious name or address, or giving any false infor-
mation in connection with the making of any such pur-
chase shall be guilty of a high misdemeanor.

The duplicate sheet of such register shall before    Duplicate
delivered.
twelve o'clock midnight of the day of sale, lease or
transfer be delivered to the office of the chief of police
of such municipality, or to the office of the captain
of the precinct of any such city, within which the
dealer resides, and a receipt shall be given to such dealer
therefor; *provided, however,* that where a sale, lease or    Proviso.
transfer is made in any municipality having no chief of
police, it shall then be the duty of the dealer, from the
day of sale to mail to the county clerk of the county
within which the sale, lease or transfer was made a
duplicate copy of such register. Any person violating    Penalty.
any of the provisions hereof shall be guilty of a mis-
demeanor.

188                        CHAPTER 64, LAWS OF 1925.

*Form of register.*

The register provided for in this act shall be substantially in the following form:

Sold, leased or transferred by ............. Salesman ............... City, town or township ...... ........ Description of arm (state whether revolver or pistol) ................ Maker .............. Number ........ Caliber ............ Name of purchaser ............. Age ........ Years ........ Permanent residence (state name of city, town or township, street and number of dwelling) .............. Height ...... feet ........ inches .............. Occupation .......... Color ........ Skin ........ Eyes .......... Hair ..........

If traveling or in locality temporarily, give local address ................... Signature of purchaser ...... ........ (Signing a fictitious name or address is a misdemeanor.)   (To be signed in duplicate.) Witness ................... Salesman.

(To be signed in duplicate.)

*No sale after five P. M.*

4. No person engaged in the retail business of selling, leasing or otherwise transferring any pistol, revolver or other firearm of a size capable of being concealed upon the person shall exhibit for purposes of sale, lease or hire any pistol, revolver or other firearm after the hour of five P. M.; *and provided, further,* that no pistol, revolver or other firearm shall be delivered to any purchaser until twenty-four hours shall have elapsed from the time of application therefor.

*Proviso.*

*Permits for banking institutions.*

5. The president of any National bank, building and loan association, trust company or other banking institution located in any municipality of this State may make application to the chief of police of such municipality for permits, in blank, to be used by the messengers, clerks or other employees or agents of such institutions for use while engaged in the performance of their respective duties.   Upon such issue, as aforesaid, he shall transmit to the chief of police from whom such permits were obtained a record of the persons to whom the same were issued; *provided, however,* that such permits, so as aforesaid issued under this section, shall not exceed twenty in number to any one bank.

*Police notified.*

*Proviso.*

## CHAPTERS 64 & 65, LAWS OF 1925.                189

6. Any person who shall alter, change, disfigure or deface the serial number of any pistol or revolver shall be guilty of a misdemeanor; any person engaged in the retail business of selling, leasing or otherwise transferring pistols, revolvers, or other firearms who shall sell or lease any pistol, or revolver having the serial number thereof altered, changed, disfigured or defaced shall be guilty of a misdemeanor. *Not alter serial number.*

7. This act shall take effect immediately.

Approved March 12, 1925.

----

## CHAPTER 65.

An Act concerning building and loan associations (Revision of 1925).

BE IT ENACTED *by the Senate and General Assembly of the State of New Jersey:*

### ARTICLE I. AS TO BUILDING AND LOAN ASSOCIATIONS OF THIS STATE.

#### I. FORMATION.

1. Purposes.

Upon executing, recording and filing a certificate pursuant to this act, nine or more persons, citizens of this State, may become an incorporated association for the purpose of assisting each other and all who may become associated with them in acquiring real estate, making improvements thereon and for removing incumbrances therefrom by the payment of periodical installments, as its constitution shall provide; and for the further purpose of accumulating a fund, to be repaid to its members, subject to the right of earlier redemption, who do not obtain advances for purposes above mentioned when the funds of such association shall amount to a certain sum per share, to be specified in the certificate of incorporation. *Formation of building and loan associations.* *Purposes.*

13 Laws

laying out, opening, changing or vacating of any street, alley, or public place in any city are hereby extended and shall apply to all proceedings had under the provisions of section 1 of this act, including the ascertainment, award and payment of damages to, and the fixing, assessment and collection of assessments from, the owners of property beneficially or injuriously affected by such proceeding.

--------

## CHAPTER 207.

AN ACT to regulate and control the possession, sale, and use of pistols and revolvers in the State of Indiana, to provide penalties, and for other purposes.

[S. 55.  Approved March 12, 1925.]

### Pistols and Revolvers Defined.

SECTION 1.  *Be it enacted by the general assembly of the State of Indiana,* That the term "pistol or revolver," as used in this act, shall be construed as meaning any firearm with a barrel less than twelve inches in length.

### Crime—Committing When Armed With Pistol or Revolver.

SEC. 2.  If any person shall, within the State of Indiana, commit or attempt to commit a crime, when armed with a pistol or revolver, and having no permit to carry the same, he shall, in addition to the punishment provided for the crime, be guilty of a felony and shall be punished by imprisonment for not less than one year and not more than five years.

### Subsequent Offenses.

SEC. 3.  The judge shall have the power to sentence any person who may be convicted for a second or third, or other subsequent offense under section 2 of this act, to double or triple the penalty imposed thereby.

### Felony—Conviction For—Prohibited From Possessing Pistol.

SEC. 4.  No person who has been convicted of a felony committed against the person or property of another shall own or have in his possession or under his control, within the State of Indiana, a pistol or revolver.  A violation

GENERAL LAWS.

of this section shall constitute a felony and be punishable by imprisonment for not less than one year, and not more than five years.

### Pistol or Revolver—Possession Without Permit.

SEC. 5.   No person shall carry, within the State of Indiana, a pistol or revolver concealed in any vehicle or upon his person, except in his dwelling house or place of business, without a permit therefor as hereinafter provided. Violations of this section shall constitute a misdemeanor and be punished by a fine of one hundred dollars ($100.00), to which may be added imprisonment for not more than one year, and upon conviction the pistol or revolver shall be confiscated and destroyed by the sheriff on order of the court.

### Persons Exempt From Act.

SEC. 6.   The provisions of the preceding section shall not apply to marshals, sheriffs, deputy sheriffs, policemen or any other duly appointed peace officers, nor the pistols or revolvers of any bank, trust company, or common carriers, or to the officers or employes of any bank, trust company, or common carriers, while such officers or employes are guarding money or valuables within the line of their duties as such employes, nor to the regular and ordinary transportation of pistols or revolvers as merchandise, nor to members of the army, navy, or marine corps or the mail service of the United States, or the national guard, when on duty, or organizations by law authorized to purchase or receive such weapons from the United States, or the State of Indiana, nor to duly authorized military or civil organizations when parading, nor to the members thereof when at .or going to or from their customary places of assembly.

### Permits—Clerk of Circuit Court—Application—Form—Fee.

SEC. 7.   The clerk of any circuit court of the State of Indiana, shall, upon application of any citizen having a bona fide residence or place of business within the State of Indiana, or of any person having a bona fide residence or place of business within the United States, and a permit

to carry a firearm concealed upon his person issued by the authorities of any other state or subdivision of the United States, issue a permit to such citizen to carry a pistol or revolver within the State of Indiana, during the period of one year or until revoked, as herein provided. Such application for permit shall be signed by two resident householders and freeholders of the county in which the applicant lives, and it shall appear from such application that the applicant is a suitable person to be granted a permit under the law. The permit shall be in duplicate, in form to be prescribed by the adjutant general of the State of Indiana, and shall bear the name, address, description and signature of the applicant and reason given for desiring a permit. The original thereof shall be delivered to the applicant, the duplicate shall be preserved for six years by the clerk of the circuit court issuing the same. For each permit so issued, the applicant shall pay the sum of one dollar ($1.00).

### Minors—Sale of Pistols or Revolvers to Prohibited.

SEC. 8. Any person or persons who shall, within the State of Indiana, sell, barter, hire, lend, or give to any minor under the age of twenty-one years, any pistol or revolver shall be deemed guilty of a misdemeanor and shall upon conviction thereof be fined not more than one hundred dollars ($100.00), or be imprisoned for not more than three months, or both, except for uses as hereinbefore provided.

### Sale of Pistols and Revolvers—Record—Penalty.

SEC. 9. No person shall within the State of Indiana sell, deliver or otherwise transfer a pistol or revolver to a person who he has reasonable cause to believe either is not a citizen or has been convicted of a felony against the person or property of another, nor in any event shall he deliver a pistol or revolver on the day of the application for the purchase thereof, and when delivered said pistol or revolver shall be securely wrapped and shall be unloaded. Before a delivery be made, the purchaser or his duly authorized agent and the seller or his duly authorized agent shall in the presence of each other sign in duplicate a statement containing the purchaser's full name, age, ad-

32—80944

dress, place of birth, and nationality, the date of sale, the caliber, make, model, and manufacturer's number of the weapon. The seller shall, within seven days, forward by registered mail, to the clerk of the circuit court of the county in which the seller resides, one copy thereof and shall retain the other copy for six years. This section shall not apply to sales at wholesale. Where neither party to the transaction holds a dealer's license, no person shall sell or otherwise transfer a pistol or revolver to any person not personally known to him. Violations of this section shall constitute a misdemeanor and shall be punished by a fine of not less than one hundred dollars ($100.00), or by imprisonment for not more than one year, or by both such fine and imprisonment.

### Pistols and Revolvers—Sale Without License.

SEC. 10. Whoever, within the State of Indiana, without being licensed as hereinafter provided, sells, delivers, transfers, advertises, or exposes for sale, or has in his possession with intent to sell, pistols or revolvers, shall be deemed guilty of a felony and upon conviction thereof shall be punished by imprisonment for not less than one year nor more than two years.

### Dealers' Licenses—Conditions on Which Sold—Record— Advertisement.

SEC. 11. The clerk of the circuit court of any county may grant licenses, to any reputable, established dealer, on forms to be prescribed by the adjutant general, permitting the licensee to sell at retail within the State of Indiana pistols and revolvers, subject to the following conditions, for breach of any of which the license shall be subject to forfeiture:

1. The business shall be carried on only in the building designated in the license.

2. The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can easily be read.

3. No pistol or revolver shall be delivered:

(a) On the day of the application for the purchase, and when delivered shall be unloaded and securely wrapped; nor,

(b) Unless the purchaser either is personally known to the seller or shall present clear evidence of his identity; nor,

(c) If the seller has reasonable cause to believe that the purchaser is an unnaturalized foreign-born person or has been convicted of a felony against the person or property of another.

4.   A true record, in duplicate, shall be made of every pistol or revolver sold, said record to be made in a book kept for the purpose, the form of which shall be prescribed by the adjutant general and shall be signed by the purchaser and by the person effecting the sale, and in the presence of each other, and shall include the date of sale, the caliber, make, model, and manufacturer's number of the weapon, the name, address, age, place of birth, nationality of the purchaser.  One copy of said record shall, within seven days, be forwarded by registered mail to the clerk of the circuit court of the county in which the seller resides, and the other copy shall be retained by the seller for six years.

5.   No pistol or revolver, or placard advertising the sale thereof, or imitation thereof, shall be displayed in any part of said premises where it can readily be seen from the outside.

### False Information.

SEC. 12.  If any person in purchasing or otherwise securing delivery of a pistol or revolver or applying for a permit to carry same within the State of Indiana shall give false information or offer false evidence of his identity he shall be deemed guilty of a felony and upon conviction shall be punished by imprisonment for not less than one year nor more than five years.

### Obliteration of Make, Model, Number—Penalty.

SEC. 13.  No person shall within the State of Indiana, change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any pistol or revolver.  Possession of any such firearms upon which the same shall have been changed, altered, removed, or obliterated, shall be prima facie evidence that such possessor has changed, altered, removed,

or obliterated the same.  Violations of this section shall be a misdemeanor and shall be punished by imprisonment for not less than six months nor more than one year.

### Felony—Possession of Revolver Prima Facie Evidence.

SEC. 14.  In the trial of a person charged with committing or attempting to commit a felony against the person or property of another while armed with a pistol or revolver, without having a permit to carry such firearm as hereinbefore provided, the fact that such person was so armed shall be prima facie evidence of his intent to commit such felony.

### Weapons Exempt.

SEC. 15.  This act shall not apply to antique pistols or revolvers incapable of use as a deadly weapon.

### Prior Licenses.

SEC. 16.  Any or all licenses heretofore issued to carry or possess revolver or pistol shall be revoked and rendered null and void on and after thirty days from the taking effect of this act.

### Revocation of License.

SEC. 17.  Hereafter in any court of record upon trial of any person for a penal offense, and upon a showing that such person is not a fit person to carry concealed weapons, the court may enter an order revoking such person's license to carry concealed weapons and such fact shall be communicated to the public officer issuing the same.

### Licensed Dealers—Statement—Penalty.

SEC. 17½.  It shall be unlawful from and after the taking effect of this act, for any person, firm or corporation to receive or have in his or its possession within the State of Indiana any pistol or revolver purchased or acquired after the taking effect of this act, except a licensed dealer, who shall not have signed and forwarded to the clerk of the county in which he resides the statements provided for in section 9 of this act, before or at the time of taking possession of such pistol or revolver.  Whoever shall violate the provisions of this section of this act shall be

deemed guilty of a misdemeanor and shall upon conviction thereof be fined not more than $100, to which may be added imprisonment for not more than sixty days.

### Repeal.

SEC. 18. All laws and parts of laws in conflict herewith are hereby repealed.

### Unconstitutional Provisions.

SEC. 19. If any provision or section of this act shall be held void or unconstitutional, all other provisions and all other sections of this act, which are not expressly held to be void or unconstitutional, shall remain in full force and effect.

---

## CHAPTER 208.

AN ACT fixing the terms of the circuit court, in the forty-ninth judicial circuit, composed of the counties of Daviess and Martin, and repealing all laws in conflict therewith, and declaring an emergency.

[S. 173.  Approved March 12, 1925.]

### Daviess and Martin Counties—Terms of Court.

SECTION 1. *Be it enacted by the general assembly of the State of Indiana,* That there shall be four terms each year of the circuit court in each of the counties of Daviess and Martin, comprising the forty-ninth judicial circuit. The terms in the county of Martin shall begin on the first Monday in January, the fourth Monday in March, the first Monday in August, and the fourth Monday in October of each year, and the terms beginning on the first Monday of January, and the fourth Monday of March, shall continue for four weeks each, and the terms beginning on the first Monday of August, and the fourth Monday of October, shall continue for three weeks each.

The terms in the county of Daviess shall begin on the first Monday of February, the fourth Monday of April, the first Monday of September, and the third Monday of November, and the terms beginning on the first Monday of February, and the first Monday of September, shall continue for six weeks, and the terms beginning on the fourth Monday of April and the third Monday of Novem-

9. County school superintendent, $1,500.   The county school superintendent shall be allowed a deputy or clerk whose salary shall be determined by the county court; all claims of deputy for salary or services must be approved by the county school superintendent *[and the same shall be audited by the county court and paid as other claims against the county are paid. The county school superintendent] shall be allowed such sum as the county court may deem necessary for traveling expenses incurred in the discharge of his duties, which claims shall be audited and paid by the county court out of the general fund of the county.

Approved by the governor February 26, 1925.
Filed in the office of the secretary of state February 26, 1925.

## CHAPTER 260

### AN ACT

[H. B. 452]

To control the possession, sale and use of pistols and revolvers, to provide penalties.

*Be It Enacted by the People of the State of Oregon:*

Section 1. On and after the date upon which this act takes effect, any person who within the state of Oregon manufactures or causes to be manufactured or who imports into the state of Oregon or who keeps for sale or offers or exposes for sale or who gives, lends or possesses a pistol or revolver otherwise than in accordance with the provisions of this act shall be guilty of a felony, and, upon conviction thereof, shall be punishable by imprisonment in the state penitentiary for not more than five years.

Section 2. On and after the date upon which this act takes effect no unnaturalized foreign-born person and no person who has been convicted of a felony against the person or property of another or against the government of the United States or of the state of Oregon or of any political subdivision thereof shall own or have in his possession or under his custody or control any pistol, revolver or other firearm capable of being concealed upon the person.   The terms "pistol," "revolver," and "firearms capable of being concealed upon the person," as used in this act, shall be construed to apply to and include all firearms having a barrel less than twelve inches in length.   Any person who shall violate the provisions of this section shall be guilty of a felony, and, upon conviction thereof, be punishable by imprisonment in the state penitentiary for not less than one year nor for more than five years.

---

* The phrase inserted in brackets appears in the original and engrossed bills, but was not incorporated in the enrolled act.

Section 3.  If any person shall commit or attempt to commit any felony within this state while armed with any of the weapons mentioned in section 1 hereof or while armed with any pistol, revolver or other firearm capable of being concealed upon the person, without having a license or permit to carry such firearm, as hereinafter provided, upon conviction of such felony or of an attempt to commit such felony, he shall, in addition to the punishment prescribed for the crime of which he has been convicted, be punishable by imprisonment in the state penitentiary for not less than five nor for more than ten years.  Such additional period of imprisonment shall commence upon the expiration or other termination of the sentence imposed for the crime of which he stands convicted and shall not run concurrently with such sentence. Upon a second conviction under like circumstances such additional period of imprisonment shall be for not less than ten years nor for more than fifteen years, and upon a third conviction under like circumstances such additional period of imprisonment shall be for not less than fifteen nor for more than twenty-five years; such terms of additional imprisonment to run consecutively as before.  Upon a fourth or subsequent conviction under like circumstances the person so convicted may be imprisoned for life or for a term of years not less than twenty-five years, within the discretion of the court wherein such fourth or subsequent conviction was had. In the trial of a person charged with committing or attempting to commit a felony against the person of another while armed with any of the weapons mentioned in section 1 hereof, or while armed with any pistol, revolver or other firearm capable of being concealed upon the person, without having a license or permit to carry such firearm, as hereinafter provided, the fact that he was so armed shall be prima facie evidence of his intent to commit such felony.

Section 4.  In no case shall any person punishable under the preceding sections of this act be granted probation by the trial court, nor shall the execution of the sentence imposed upon such person be suspended by the court.

Section 5.  Except as otherwise provided in this act, it shall be unlawful for any person within this state to carry concealed upon his person or within any vehicle which is under his control or direction any pistol, revolver or other firearm capable of being concealed upon the person without having a license to carry such firearm, as hereinafter provided in section 8 hereof.  Any person who violates the provisions of this section shall be guilty of a misdemeanor, and if he has been convicted previously of any felony, or of any crime made punishable by this act, he is guilty of a felony.  This section

Case 1:18-cv-00134-BKS-ATB   Document 23-3   Filed 04/02/18   Page 154 of 186

shall not be construed to prohibit any citizen of the United States, over the age of eighteen years, who resides or is temporarily sojourning within this state, and who is not within the excepted classes prescribed by section 2 hereof, from owning, possessing or keeping within his place of residence or place of business any pistol, revolver or other firearm capable of being concealed upon the person, and no permit or license to purchase, own, possess or keep any such firearm at his place of residence or place of business shall be required of any such citizen. Firearms carried openly in belt holsters shall not be deemed to be concealed within the meaning of this section.

Section 6. Nothing in the preceding section shall be construed to apply to or affect sheriffs, constables, marshals, policemen, whether active or honorably retired, or other duly appointed peace officers, nor to any person summoned by any such officers to assist in making arrests or preserving the peace while said person so summoned is actually engaged in assisting such officer; nor to the possession or transportation by any merchant of unloaded firearms as merchandise; nor to members of the army, navy or marine corps of the United States, or the national guard, when on duty, nor to organizations which are by law authorized to purchase or receive such weapons from the United States, or from this state; nor to duly authorized military or civil organizations while parading, nor to the members thereof when going to and from the places of meeting of their respective organizations; nor to members of any club or organization now existing, or hereafter organized, for the purpose of practicing shooting at targets upon the established target ranges, whether public or private, while such members are using any of the firearms referred to in this act upon such target ranges, or while going to and from such ranges; nor to licensed hunters or fishermen while engaged in hunting or fishing, or while going to or returning from such hunting or fishing expedition.

Section 7. The unlawful concealed carrying upon the person or within the vehicle of the carrier of any pistol, revolver or other firearm capable of being concealed upon the person, is a nuisance. Any such weapons taken from the person or vehicle of any person unlawfully carrying the same are hereby declared to be nuisances, and shall be surrendered to the magistrate before whom said person shall be taken, except that in any city, county, town or other municipal corporation the same shall be surrendered to the head of the police force or police department thereof. The officers to whom the same may be so surrendered, except upon the certificate of a judge or a court of record, or of the district attorney of the county,

that the preservation thereof is necessary or proper to the ends of justice, shall annually, between the first and tenth days of July, in each year, destroy or cause to be destroyed such weapons to such extent that the same shall become and be wholly and entirely ineffective and useless for the purpose for which it was [they were] manufactured; provided, however, that in the event any such weapon has been stolen and is thereafter recovered from the thief or his transferee the same shall not be destroyed but shall be restored to the lawful owner thereof, so [as] soon as its use as evidence has been served, upon his identification of the weapon and proof of ownership thereof; provided, that upon the certificate of a judge or of the district attorney that the ends of justice will be subserved thereby such weapon shall be preserved until the necessity for its use ceases.

Section 8. It shall be lawful for the sheriff of a county, and the board of police commissioners, chief of police, city marshal, town marshal, or other head of the police department of any city, county, town, or other municipal corporation of this state, upon proof before said board, chief, marshal or other police head, that the person applying therefor is of good moral character, and that good cause exists for the issuance thereof, to issue to such person a license to carry concealed a pistol, revolver or other firearm for a period of one year from the date of such license. All applications for such licenses shall be filed in writing, signed by the applicant, and shall state the name, occupation, residence and business address of the applicant, his age, height, weight, color of eyes and hair, and reason for desiring a license to carry such weapon. Any license issued upon such application shall set forth the foregoing data and shall, in addition, contain a description of the weapon authorized to be carried, giving the name of the manufacturer, the serial number and the caliber thereof. When such licenses are issued by a sheriff a record thereof shall be kept in the office of the county clerk; when issued by police authority such record shall be maintained in the office of the authority by whom issued. Such applications and licenses shall be uniform throughout the state, upon forms to be prescribed by the attorney general.

Section 9. Every person in the business of selling, leasing or otherwise transferring a pistol, revolver or other firearm, of a size capable of being concealed upon the person, whether such seller, lessor or transferor is a retail dealer, pawnbroker or otherwise, except as hereinafter provided, shall keep a register in which shall be entered the time of sale, the date of sale, the name of the salesman making the sale, the place where sold, the make, model, manufacturer's number, caliber

or other marks of identification on such pistol, revolver or other firearm. Such register shall be prepared by and obtained from the state printer and shall be furnished by the state printer to said dealers on application at a cost of $3 per one hundred leaves, in duplicate, and shall be in the form hereinafter provided. The purchaser of any firearm capable of being concealed upon the person shall sign, and the dealer shall require him to sign, his name and affix his address to said register, in duplicate, and the salesman shall affix his signature, in duplicate, as a witness to the signature of the purchaser. Any person signing a fictitious name or address is guilty of a misdemeanor. The duplicate sheet of such register shall, on the evening of the day of sale, be placed in the mail, postage prepaid, and properly addressed to the board of police commissioners, chief of police, city marshal, town marshal or other head of the police department of the city, county, town or other municipal corporation wherein the sale was made; provided, that where the sale is made in a district where there is no municipal police department, said duplicate sheet shall be mailed to the county clerk of the county wherein the sale is made. A violation of any of the provisions of this section by any person engaged in the business of selling, leasing or otherwise transferring such firearm is a misdemeanor. This section shall not apply to wholesale dealers in their business intercourse with retail dealers, nor to wholesale or retail dealers in the regular or ordinary transportation of unloaded firearms as merchandise by mail, express or other mode of shipment, to points outside of the city, county, town or municipal corporation wherein they are situated. The register provided for in this act shall be substantially in the following form:

### FORM OF REGISTER

Series No.................
Sheet No. .................

Original

DEALERS' RECORD OF SALE OF REVOLVER OR PISTOL
State of Oregon

Notice to Dealers: This original is for your files. If spoiled in making out, do not destroy. Keep in books. Fill out in duplicate.

Carbon duplicate must be mailed on the evening of the day of sale, to head of police commissioners, chief of police, city marshal, town marshal or other head of the police department of the municipal corporations wherein the sale is made, or to the county clerk of your county if the sale is made in a district where there is no municipal police department. Violation of this law is a misdemeanor. Use carbon paper for duplicate. · Use indelible pencil.

Sold by .................................................................Salesman.......................
City, town or township .........................................................................
Description of arm (state whether revolver or pistol)................................
Maker ................................................. Number ................. Caliber .................

Name of purchaser ......................................................... Age ..................... years
Permanent residence (state name of city, town or township, street and
    number of dwelling) ...........................................................................................
Height .................... feet .................... inches.  Occupation................................
Color ..................... Skin .................... Eyes .................... Hair .......................
If traveling, or in locality temporarily, give local address ...........................
.........................................................................................................................
.........................................................................................................................
Signature of purchaser ........................................................................................
    (Signing a fictitious name or address is a misdemeanor.  To be
signed in duplicate.)
Witness ......................................................... Salesman.
        (To be signed in duplicate.)

Series No..................
Sheet No. .................

### DUPLICATE

DEALERS' RECORD OF SALE OF REVOLVER OR PISTOL
State of Oregon

Notice to Dealers:   This carbon duplicate must be mailed on the
evening of the day of sale as set forth in the original of this register
page.  Violation of this law is a misdemeanor.
Sold by .....................................................................Salesman.......................
City, town or township ........................................................................................
Description of arm (state whether revolver or pistol)................................
Maker ........................................... Number ................. Caliber ..................
Name of purchaser ..................................................... Age ................. years
Permanent address (state name of city, town or township, street and
    number of dwelling) ...........................................................................................
Height .................... feet .................... inches.  Occupation................................
Color ..................... Skin .................... Eyes .................... Hair .......................
If traveling, or in locality temporarily, give local address ...........................
.........................................................................................................................
.........................................................................................................................
Signature of purchaser ........................................................................................
    (Signing a fictitious name or address is a misdemeanor.  To be
signed in duplicate.)
Witness ......................................................... Salesman.
        (To be signed in duplicate.)

Section 10.  No person shall sell, deliver or otherwise
transfer any pistol, revolver or other firearm capable of being
concealed upon the person to any person whom he has cause
to believe to be within any of the classes prohibited by sec-
tion 2 hereof from owning or possessing such firearms, nor
to any minor under the age of eighteen years.  In no event
shall any such firearm be delivered to the purchaser upon the
day of the application for the purchase thereof, and when
delivered such firearm shall be securely wrapped and shall be
unloaded.  When neither party to the transaction holds a
dealers' license, no person shall sell or otherwise transfer any
such firearm to any other person within this state who is
not personally known to the vendor.  Any violation of the
provisions of this section shall be a misdemeanor.

Section 11. The duly constituted licensing authorities of any city, county, town or other municipality within this state may grant licenses in form prescribed by the attorney general, effective for not more than one year from date of issue, permitting the licensee to sell at retail within the said city, county, town or other municipality pistols, revolvers and other firearms capable of being concealed upon the person, subject to the following conditions, for breach of any of which the license shall be subject to forfeiture:

1. The business shall be carried on only in the building designated in the license.

2. The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can easily be read.

3. No pistol or revolver shall be delivered:

(a) On the day of the application for the purchase, and when delivered shall be unloaded and securely wrapped; or

(b) Unless the purchaser either is personally known to the seller or shall present clear evidence of his identity.

4. No pistol or revolver, or imitation thereof, or placard advertising the sale or other transfer thereof, shall be displayed in any part of said premises where it can readily be seen.

Section 12. Any person who, without being licensed as above provided, engages in the business of selling or otherwise transferring, or who advertises for sale or offers or exposes for sale or transfer, any pistol, revolver or other firearm capable of being concealed upon the person is guilty of a misdemeanor.

Section 13. No person shall change, alter, remove or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any pistol or revolver. Possession of any such firearm upon which the same shall have been changed, altered, removed or obliterated, shall be presumptive evidence that such possessor has changed, altered, removed or obliterated the same. Violation of this section shall be punished by imprisonment in the state penitentiary for not more than five years.

Section 14. All permits heretofore issued within this state permitting the carrying of pistols or revolvers concealed upon the person shall expire at midnight of June 1, 1925.

Section 15. This act shall not apply to antique pistols or revolvers incapable of use as such.

Section 16. If any section, subsection, sentence, clause or phrase of this act is for any reason held to be unconstitutional such decision shall not affect the validity of the remaining portions of this act. The legislature hereby declares that it would have passed this act and each section, subsection,

sentence, clause and phrase thereof, irrespective of the fact that any one or more other sections, subsections, sentences, clauses or phrases be declared unconstitutional.

Section 17.  All acts and parts of acts in conflict herewith are hereby repealed.

Approved by the governor February 26, 1925.
Filed in the office of the secretary of state February 26, 1925.

## CHAPTER 261

## AN ACT

[H. B. 460]

Providing for the election of county school superintendents in certain counties, prescribing their powers and duties and providing for payment of salaries and expenses of the office.

*Be It Enacted by the People of the State of Oregon:*

Section 1.  In all counties of this state having a population of 25,000 or more children of school age the county superintendent of schools shall have jurisdiction only of the schools of that county as shall be outside of the corporate limits of districts of the first class.  He shall be elected at the biennial election in the year 1928, and every four years thereafter, by the legal voters of the county outside of districts of the first class.  He shall take his office on the first Monday of January following his election; provided, that the present county school superintendent at no decrease in salary shall be ex officio county school superintendent until the expiration of his term of office.  In districts of the first class, in addition to the authority now conferred upon the city superintendent of such districts, said city superintendent shall be and he hereby is vested with the authority now exercised by the county school superintendent in such districts and all reports heretofore rendered by said district to the *[county school superintendent shall be made to the] state superintendent of public instruction.

Section 2.  In all counties coming under the provisions of this act the salaries of the county school superintendent, assistant superintendents, and all expenses for clerical help, traveling expenses or for any other expenses of the office of said county school superintendent shall be paid from a fund known as the county school superintendent's fund, hereinafter provided, by warrants drawn on this fund in the same manner that warrants may be drawn for the salaries for other county officials

Section 3.  In all counties coming under the provisions of this act on the first Monday of November of each year the

* The phrase inclosed in brackets appears in the engrossed bill, but was omitted in the enrolled act.

# CHAPTER 3

**(House Bill No. 7—By Mr. Robinson from the Select Committee)**

AN ACT to amend and re-enact section seven of chapter one hundred and forty-eight of the code of West Virginia, as amended and re-enacted by chapter fifty-one of the acts of the legislature of West Virginia, one thousand nine hundred and nine, regular session, and as further amended and re-enacted by an act of the legislature of West Virginia, regular session, one thousand nine hundred and twenty-five, relating to offenses against the peace; providing for the granting and revoking of licenses and permits respecting the use, transportation and possession of weapons and fire arms; restricting the manner of the sale and display of weapons and fire arms; imposing liability upon certain persons for the accidental or improper, negligent or illegal discharges of weapons and fire arms; defining the powers and duties of certain officers in the granting and revocation of said licenses and permits, and providing penalties for the violation of this act and any part thereof.

[Passed June 5, 1925; in effect 90 days from passage. Approved by the Governor.]

Sec.
7. (a) Penalty for carrying dangerous or deadly weapon without license; second offense; duties of prosecuting attorneys; application for license; what to show; publication; issuance; fee; bond; term of license; territory covered; deputy sheriffs and railway police licenses co-extensive with state; accounting for fees; forms by tax commissioner; certified copy of license to superintendent of department of public safety; list of all licenses to the same; lawful to carry arms on own premises, or from place of purchase and repair, not applicable to employee; permits to express company employees and railway police; bonds; emergency permits; reports of violations, and penalty

Sec.
for failure so to do; certain officers permitted to carry arms; bond; unlawful to carry or use weapon in a manner likely to cause breach of peace; penalty; revocation of license; notice; reinstatement.
7. (b) Permits for possession of machine gun and high-powered rifle; regulations; exception of rifle club members and licensed hunters; granting of permit; fee; revocation; confiscation of arms; alien prohibited from owning or possessing arms; display of arms for sale or rent prohibited; report of sales by dealers to superintendent of department of public safety; unlawful to arm alien; penalty for violations of this sub-section; inconsistent acts repealed.

*Be it enacted by the Legislature of West Virginia:*

That section seven of chapter one hundred and forty-eight of the code of West Virginia, as amended and re-enacted by chapter fifty-one of the acts of the legislature of West Virginia of one thousand nine hundred and nine, regular session, and as further amended and re-enacted by the legislature of West Virginia, one thousand nine hundred and twenty-five, regular session, in House Bill number four hundred six, be amended and re-enacted so as to read as follows:

Section 7 (a). If any person, without a state license therefor,
2 carry about his person any revolver or other pistol, dirk,
3 bowie-knife, slung shot, razor, billy, metallic or other false
4 knuckles, or any other dangerous or deadly weapon of like
5 kind or character, he shall be guilty of a misdemeanor and
7 upon conviction thereof be confined in the county jail for a
8 period of not less than six nor more than twelve months for
9 the first offense; but upon conviction of the same person for
10 the second offense in this state, he shall be guilty of a felony
11 and be confined in the penitentiary not less than one or more
12 than five years, and in either case fined not less than fifty
13 nor more than two hundred dollars, in the discretion of the
14 court; and it shall be the duty of the prosecuting attorney
15 in all cases to ascertain whether or not the charge made by
16 the grand jury is the first or second offense, and if it shall be
17 the second offense, it shall be so stated in the indictment re-
18 turned, and the prosecuting attorney shall introduce the rec-
19 ord evidence before the trial court of said second offense, and
20 shall not be permitted to use his discretion in charging said
21 second offense nor in introducing evidence to prove the same
22 on the trial; *provided,* that boys or girls under the age of
23 eighteen years, upon the second conviction, may, at the dis-
24 cretion of the court, be sent to the industrial homes for boys
25 and girls, respectively, of the state. Any person desiring to
26 obtain a state license to carry any such weapon within one or
27 more counties in this state shall first publish a notice in some
28 newspaper, published in the county in which he resides, setting
29 forth his name, residence and occupation, and that on a cer-
30 tain day he will apply to the circuit court of his county for
31 such state license; and after the publication of such notice for
32 at least ten days before said application is made and at the
33 time stated in said notice upon application to said court, it
34 may grant such person a license in the following manner,
35 to-wit:
36   The applicant shall file with said court his application in
37 writing, duly verified, which said application shall show:
38   *First:* That said applicant is a citizen of the United States
39 of America.
40   *Second:* That such applicant has been a *bona fide* resident
41 of this state for at least one year next prior to the date of
42 such application, and of the county sixty days next prior
43 thereto.

44    *Third:* That such applicant is over twenty-one years of
45 age; that he is a person of good moral character, of temper-
46 ate habits, not addicted to intoxication, and has not been
47 convicted of a felony nor of any offense involving the use on
48 his part of such weapon in an unlawful manner.

49    *Fourth:* The purpose or purposes for which the applicant
50 desires to carry such weapon and the necessity therefor and
51 the county or counties in which said license is desired to be
52 effective.

53    Upon the hearing of such application the court shall hear
54 evidence upon all matters stated in such application and upon
55 any other matter deemed pertinent by the court, and if such
56 court be satisfied from the proof that there is good reason and
57 cause for such person to carry such weapon, and all of the
58. other conditions of this act be complied with, said circuit
59 court or the judge thereof in vacation, may grant
60 said license for such purposes, and no other, as said
60-*a* circuit court may set out in the said license (and the word
60-*b* "court" as used in this act shall include the circuit judge
60-*c* thereof, acting in vacation); but before the said
61 license shall be effective such person shall pay to the
62 sheriff, and the court shall so certify in its order granting the
63 license, the sum of twenty dollars, and shall also file a bond
64 with the clerk of said court, in the penalty of three thousand
65 five hundred dollars, with good security, signed by a respon-
66 sible person or persons, or by some surety company, author-
67 ized to do business in this state, conditioned that such appli-
68 cant will not carry such weapon except in accordance with his
69 said application and as authorized by the court, and that he
70 will pay all costs and damages accruing to any person by the
71 accidental discharge or improper, negligent or illegal use of
72 said weapon or weapons. Any such license granted after this
73 act becomes effective shall be good for one year, unless sooner
74 revoked, as hereinafter provided, and be co-extensive with the
75 county in which granted, and such other county or coun-
76 ties as the court shall designate in the order granting such
77 license; except that regularly appointed deputy sheriffs having
78 license shall be permitted to carry such revolver or other
79 weapons at any place, within the state, while in the perfor-
80 mance of their duties as such deputy sheriffs and except that
81 any such license granted to regularly appointed railway police

82 shall be co-extensive with the state, and all license fees col-
83 lected hereunder shall be paid by the sheriff and accounted for
84 to the auditor as other license taxes are collected and paid, and
85 the state tax commissioner shall prepare all suitable forms for
86 licenses and bonds and certificates showing that such license
87 has been granted and to do anything else in the premises to
88 protect the state and see to the enforcement of this act.

89    The clerk of the court shall immediately after license is
90 granted as aforesaid, furnish the superintendent of the de-
91 partment of public safety a certified copy of the order of the
92 court granting such license, for which service the clerk shall
93 be paid a fee of two dollars which shall be taxed as cost in
94 the proceeding; within thirty days after this act becomes
95 effective it shall be the duty of the clerks of each court in this
96 state having jurisdiction to issue pistol licenses to certify
97 to the superintendent of the department of public safety a
98 list of all such licenses issued in his county.

99    *Provided,* that nothing herein shall prevent any person
100 from carrying any such weapon, in good faith and not for a
101 felonious purpose, upon his own premises, nor shall anything
102 herein prevent a person from carrying any such weapon
103 (unloaded) from the place of purchase to his home
104 or place of residence, or to a place of repair and
105 back to his home or residence; but nothing herein
106 shall be construed to authorize any employee of any person,
107 firm or corporation doing business in this state to carry on
108 or about the premises of such employer any such pistol, or
109 other weapon mentioned in this act for which a license is
110 herein required, without having first obtained the license and
111 given the bond as herein provided; and, *provided, further,*
112 that nothing herein shall prevent agents, messengers and
113 other employees of express companies doing business as com-
114 mon carriers, whose duties require such agents, messengers
115 and other employees to have the care, custody or protection
116 of money, valuables and other property for such express com-
117 panies, from carrying any such weapon while actually en-
118 gaged in such duties, or in doing anything reasonably inci-
119 dent to such duties; *provided,* such express company shall
120 execute a continuing bond in the penalty of thirty thousand
121 dollars, payable unto the state of West Virginia, and with
122 security to be approved by the secretary of state of the state

123 of West Virginia, conditioned that said express company will
124 pay all damages, accruing to anyone by the accidental dis-
125 charge or improper, negligent or illegal discharge or use of such
126 weapon or weapons by such agent, messenger or other employee
127 while actually engaged in such duties for such express com-
128 pany, in doing anything that is reasonably incident to such du-
129 ties; but the amount which may be recovered for breach of
130 such condition shall not exceed the sum of three thousand five
131 hundred  dollars in any one case, and such bond shall be filed
132 with and held by the said secretary of state, for the purpose
133 aforesaid, but upon the trial of any cause for the recovery of
134 damages upon said bond, the burden of proof shall be upon
135 such express company to establish that such agent, messenger
136 or other employee was not actually employed in such duties for
137 such express company nor in doing anything that was rea-
138 sonably incident to such duties at the time such damages were
139 sustained; and, *provided further,* that nothing herein shall
139-*a* prevent railroad police officers duly appointed and qualified
139-*b* under authority of section thirty-one of chapter one hun-
139-*c* dred forty-five of Barnes' code or duly qualified under the
139-*d* laws of any other state, from carrying any such weapon
139-*e* while actually engaged in their duties or in doing anything
139-*f* reasonably incident to such duties; *provided,* such railroad
139-*g* company shall execute a continuing bond in the penalty of
139-*h* ten thousand dollars payable unto the state of West Vir-
139-*i* ginia and with security to be approved by the secretary of
139-*j* state of the state of West Virginia conditioned that said
139-*k* railroad company will pay all damages accruing to anyone
139-*l* by the accidental discharge or improper, negligent or illegal
139-*m* discharge or use of such weapon or weapons by such rail-
139-*n* road special police officer whether appointed in this or some
139-*n*-1 other state while actually engaged in such duties for such
139-*o* railroad company, in doing anything that is reasonably inci-
139-*p* dent to such duties, but the amount which may be recovered
139-*q* for breach of such condition shall not exceed the sum of
139-*r* three thousand five hundred dollars in any one case, and
139-*s* such bond shall be filed with and held by the said secretary
139-*t* of state for the purpose aforesaid but upon the trial of any
139-*u* cause for the recovery of damages upon said bond, the bur-
139-*v* den of proof shall be upon such railroad company to estab-
139-*w* lish that such railroad police officer was not actually em-

Case 1:18-cv-00134-BKS-ATB   Document 23-3   Filed 04/02/18   Page 165 of 186

139-*x* ployed in such duties for such railroad company nor in
139-*y* doing anything that was reasonably incident to such duties
139-*z* at the time such damages were sustained; and *provided, fur-*
140 *ther,* that in case of riot, public danger and emer-
140-*a* gency, a justice of the peace, or other person
141 issuing a warrant, may authorize a special constable and his
142 posse whose names shall be set forth in said warrant,
142-*a* to carry weapons for the purpose of executing a pro-
143 cess, and a sheriff in such cases may authorize a deputy or
144 posse to carry weapons, but the justice shall write in his
145 docket the cause and reasons for such authority and the name
146 of the person, or persons, so authorized, and index the same,
147 and the sheriff or other officer shall write out and file with
148 the clerk of the county court the reasons and causes for such
149 authority and the name, or names of the persons so author-
150 ized, and the same shall always be open to public inspection,
151 and such authority shall authorize such special constable,
152 deputies and posses to carry weapons in good faith only for
153 the specific purposes and times named in such authority, and
154 upon the trial of every indictment the jury shall inquire into
155 the good faith of the person attempting to defend such in-
156 dictment under the authority granted by any such justice,
157 sheriff or other officer, and any such person or persons so
158 authorized shall be personally liable for the injury caused to
159 any person by the negligent or unlawful use of any such
160 weapon or weapons. It shall be the duty of all ministerial of-
161 ficers, consisting of the justices of the peace, notaries public and
162 other conservators of the peace of this state, to report to the
163 prosecuting attorney of the county the names of all persons
164 guilty of violating this section, and any person wilfully failing
165 so to do, shall be guilty of a misdemeanor and shall be fined not
166 exceeding two hundred dollars, and shall, moreover, be liable
167 to removal from office for such wilful failure; and it shall
168 likewise be the duty of every person having knowledge of the
169 violation of this act, to report the same to the prosecuting
170 attorney, and to freely and fully give evidence concerning
171 the same, and any one failing so to do, shall be guilty of a
172 misdemeanor and upon conviction thereof shall be fined not
173 exceeding one hundred dollars; *provided, further,* that noth-
174 ing herein contained shall be so construed as to prohibit sher-
175 iffs, their regularly appointed deputies, who actually collect

176 taxes in each county, and all constables in their respective
177 counties and districts, and all regularly appointed police offi-
178 cers of their respective cities, towns or villages, all jailors and
179 game protectors who have been duly appointed as such, and
179-a members of the department of public safety of this
179-b state, from carrying such weapons as they are now
180 authorized by law to carry, who shall have given
181 bond in the penalty of not less than three thousand five hun-
182 dred dollars, conditioned for the faithful performance of their
183 respective duties, which said officers shall be liable upon their
184 said official bond, for the damages done by the unlawful or
185 careless use of any such weapon or weapons, whether such
186 bond is so conditioned or not.
187    It shall be unlawful for any person armed with a pistol,
188 gun, or other dangerous or deadly weapon, whether licensed
189 to carry same or not, to carry, expose, brandish, or use, such
190 weapon in a way or manner to cause, or threaten, a breach
191 of the peace. Any person violating this provision of this act
192-4 shall be guilty of a misdemeanor, and upon conviction, shall
195 be fined not less than fifty nor more than three hundred
196 dollars or imprisoned in the county jail not less than thirty
197 nor more than ninety days, or be punished by both fine and
198 imprisonment in the discretion of the court.
199    Any circuit court granting any such license to carry any
200 of the weapons mentioned in this act, the governor, or the su-
201 perintendent of the department of public safety, with the con-
202 sent of the governor, may, for any cause deemed sufficient by
203 said court, or by the governor or by the superintendent of the
204 department of public safety with the approval of the governor
205 aforesaid, as the case may be, revoke any such license to carry
205-a a pistol or other weapon mentioned in this act for which a
205-b license is required, and immediate notice of such revocation
206 shall be given such licensee in person, by registered mail or in
207 the same manner as provided by law for the service of other
208 notices, and no person whose license has been so revoked shall
209 be re-licensed within one year thereafter; *provided,* that the
210 authority so revoking such license may, after a hearing, sooner
211 reinstate such licensee.
212    (b) It shall be unlawful for any person to carry, transport,
213 or to have in his possession any machine gun, sub-machine gun,
214 and what is commonly known as a high powered rifle, or any

# CORPORATION LAWS

### OF THE

# CITY OF WASHINGTON,

### TO THE

## End of the Fiftieth Council,

#### (To June 3d, 1853, inclusive,)

###### REVISED AND COMPILED

### BY JAMES W. SHEAHAN,

Under the direction of a Joint Committee, consisting of the Mayor and one member
of the Board of Aldermen and one member of the Board of Common Council:

###### AND, ALSO

## THE ACTS OF INCORPORATION AND OTHER ACTS OF CONGRESS, WITH AN APPENDIX,

###### TO WHICH ARE ADDED

### THE LAWS ENACTED FROM JUNE 3, 1853 TO JUNE 1, 1860,

###### EMBRACING THE

## 51st, 52d, 53d, 54th, 55th, 56th and 57th Councils.

☞ For Laws passed since June 3, 1853, see Index opposite page 396.

Prepared and Published by order of the Corporation of Washington.

### Washington:
### PRINTED BY ROBERT A. WATERS.
### 1853 & 1860.

Digitized by Google

the limits of this city, shall be fifty dollars per annum, to be paid to this Corporation by the insurance company or agent applying for such license before the issuing thereof; and all licenses under this act shall be issued for one year from the date of the application and payment of the tax, and shall be issued by the Register, under the direction of the Mayor, by whom they shall be signed, and countersigned by the Register, and shall express on their face the name of the insurance company authorized by it to establish an agency in this city, where such company is established or located, the kind of insurance it is authorized to effect, and the name of its agent; and such licenses shall confer authority to establish an agency in this city only to the company and the agent therein named: *Provided*, That a license issued to one insurance company or agent may be transferred to another insurance company or agent: but no such transfer shall be valid, or confer any rights or privileges under it until the transfer has been recorded in the Register's office, and endorsed on the license by the Register: *And provided, also*, That no person shall be authorized, under one license, to act as agent for more than one insurance company, and that one the company named in such license; and any person offending against the provisions of this section shall be liable for every offence to the fine imposed by the first section of this act.

SEC. 3. *And be it enacted*, That all former acts or parts of acts inconsistent with the provisions of this act be, and the same are hereby repealed: *Provided*, That this act shall not be construed so as to affect licenses for insurance agencies already issued until the expiration of the time for which said licenses have been so issued.—(See page 78, Sheahan's Digest.)

*Approved October* 29, 1857.

---

## CHAP. 5.

### AN ACT to prevent the carrying of dangerous weapons in the City of Washington.

*Be it enacted by the Board of Aldermen and Board of Common Council of the city of Washington*, That it shall not hereafter be lawful for any person or persons to carry or have about their persons any deadly or dangerous weapons, such as dagger, pistol, bowie knife, dirk knife, or dirk, colt, slung shot, or brass or metal knuckles, within the city of Washington; and any person or persons who shall be duly convicted of so carrying or having on their persons any such weapon shall forfeit and pay upon such conviction not less than twenty nor more than fifty dollars, which fines shall be prosecuted and recovered in the same manner as other penalties and forfeitures accruing to the city are sued for and recovered: *Provided*, That the police officers, members of the Auxiliary Guard, and the military, when on duty, shall be exempt from such penalties and forfeitures.

*Approved November* 4, 1857.

10

stationery, and for all other contingent and necessary expenses of each of said schools; and it shall be the duty of the two Boards to make provision by law for the payment of all such salaries and other necessary expenses, out of any money to the credit of the School Fund, and when that shall be insufficient, out of the General Fund; and all such appropriations shall be subject to the order of the Board of. Trustees, from time to time, as the same may be required, to be properly disbursed, and for which, receipts shall in every case, be taken and returned to the Register of the Corporation, for settlement.

SEC. 12. *And be it enacted,* That all acts or parts of acts heretofore passed relative to the Public Schools; to organize and establish a Board of Trustees of the Public Schools, the salary of the Secretary and Treasurer, and the duties of the Board, be, and the same are hereby, repealed.—(See page 261, Sheahan's Digest.)

*Approved November* 12, 1858.

---

## CHAP. 11.

AN ACT to prevent the carrying of concealed and dangerous weapons in the City of Washington.

*Be it enacted by the Board of Aldermen and Board of Common Council of the city of Washington,* That it shall not hereafter be lawful for any person or persons, to carry or have concealed about their persons any deadly or dangerous weapons, such as dagger, pistol, bowie-knife, dirk-knife or dirk, colt, slung-shot, or brass or other metal knuckles, within the city of Washington, and any person or persons who shall be duly convicted of so carrying or having concealed about their persons any such weapon, shall forfeit and pay upon such conviction, not less than twenty dollars nor more than fifty dollars: which fines shall be prosecuted and recovered in the same manner as other penalties and forfeitures accruing to the city, are sued for and recovered; *Provided,* That the Police officers and the members of the Auxiliary Guard, when on duty, shall be exempt from such penalties and forfeitures.

*Approved November* 18, 1858.

---

## CHAP. 12.

AN ACT explanatory of the Seventh section of the "Act regulating Auctions in the City of Washington," approved June fourth, eighteen hundred and twenty-nine.

*Be it enacted by the Board of Aldermen and Board of Common Council of the city of Washington,* That the true intent and meaning of the seventh section of the "Act regulating auctions in the city of Washington," is to prevent two or more persons who shall take a joint license as auctioneers, from having different houses of business or es-

ORDINANCES OF.

all the charges and remove the same for the period of twenty-four hours after the service of such notice, the said officer shall proceed to sell the same at public auction, first giving two days notice, by not less than five hand-bills conspicuously posted, of the time and place of said sale, which said notice shall also contain a brief description and the name of the owner or custodian thereof, if known.

SEC. 4.  If the owner or custodian shall not be known to said officer he shall immediately advertise the same for sale for at least three days prior to such sale, by three handbills conspicuously posted in said city, which said notice shall contain a description of the swine to be sold, where the same were taken up, the time and place of said sale.

SEC. 5.  The officer's fees for proceedings under this ordinance shall be as follows, to-wit:  One dollar per head for impounding the necessary expenses for keeping; twenty-five cents for each notice served, and twenty per cent of sales for selling.

SEC. 6.  From the proceeds of the sale of each hog or lot of swine belonging to one individual the officer shall pay the fees and expenses as hereinbefore provided for, and the balance if any there be, shall be paid to the city treasurer and be kept by him as a separate fund and shall only be paid out by warrant duly drawn and made payable to the party justly entitled thereto.

SEC. 7.  This ordinance shall take effect and be in force from and after its passage and approval.

Approved, April 16, A. D. 1872.

————

## ORDINANCE No. 7.

An Ordinance prohibiting the carrying of fire arms and concealed weapons.

SECTION 1.  *Be it ordained by the Mayor and Councilmen of the city of Nebraska City,* That it shall be, and it is hereby declared to be unlawful for any person to carry, openly or concealed, any musket, rifle, shot gun, pistol, sabre, sword, bowie knife, dirk, sword cane, billy, slung-shot, brass or other metallic knuckles, or any other dangerous or deadly weapons, within the corporate limits of Nebraska City, Neb.; *Provided,* that nothing herein contained shall prevent the carrying of such weapon by a civil or military officer, or by a soldier in the discharge of his duty, nor by any other person for mere purposes of transportation from one place to another.

SECTION 2.  Upon complaint before the Police Judge that an offence in violation of this ordinance has been committed, he shall inquire into the circumstances of the case to determine whether the charge is well founded, and exercise his own discretion as to the dismissal thereof.  If the complaint shall be made good, and the

340                      ORDINANCES.

# CHAPTER 108.

### CARRYING PISTOLS, BOWIE-KNIVES, ETC.

SECTION
1. Penalty imposed for carrying pistols, bowie-knives, etc.
2. Duty of the police to arrest all persons carrying such weapons.
3. Penalty imposed on police officer for failing to arrest persons carrying deadly weapons.

SECTION
4. Police Commissioners instructed to increase number of patrolmen to thirty-four.
5. Provisions against carrying deadly weapons do not extend to police officers.

SECTION 1. That every person found carrying a pistol, bowie-knife, dirk-knife, slung-shot, brass knucks or other deadly weapon, shall be deemed guilty of a misdemeanor, and, upon conviction of such first offense, shall be fined from ten to fifty dollars, at the discretion of the court, but upon conviction of every such subsequent offense, shall be fined fifty dollars; *Provided, however*, That no ordinary pocket-knife and common walking-canes shall be construed to be deadly weapons.

SEC. 2. That it shall be the duty of every police officer who sees any person or persons with, or knows of any person carrying, such deadly weapons, to immediately arrest every such person, that they may be dealt with according to the provisions of this act.

SEC. 3. That every police officer who may refuse or neglect to immediately arrest every such person seen with or known to be carrying such deadly weapons, shall be deemed guilty of dereliction of duty, and, upon conviction thereof, shall be dismissed from service, and any two respectable citizens shall be deemed competent to prefer charges to the proper authorities against such police officer for such dereliction of duty.

SEC. 4. To the end that the provisions of this act may be more fully carried out, the Police Commissioners be, and are hereby, instructed to increase the number of patrolmen to thirty-four, to be uniformed, paid and controlled in accordance with the present police law.

SEC. 5. It is expressly understood that the provisions of this act relating to carrying such deadly weapons as are mentioned in the preceding sections, do not extend to police or other officers, or persons that are entitled by law to carry

Case 1:18-cv-00134-BKS-ATB   Document 23-3   Filed 04/02/18   Page 172 of 186

such deadly weapons, nor does it extend to the act of handling or moving such deadly weapons in any ordinary business way.

Sec. 6. That all laws and parts of laws in conflict with this act are hereby repealed, and this act to take effect from and after its passage, the public welfare requiring it.

Approved December 26, 1873.

---

# CHAPTER 109.

### SABBATH.

| SECTION | SECTION |
|---|---|
| 1. No water-craft to unload on Sunday. | keepers and apothecaries excepted. |
| 2. No vehicle to be laden on Sunday. | 4. Vendors of ice, ice-cream, soda water, cigars and tobacco excepted. |
| 3. No grocery or other place of ordinary business to be kept open on the Sabbath; tavern- | 5. No games allowed on Sunday. |

SECTION 1. That if any owner or owners of any steamboat, keel-boat, barge or other water-craft, should load or unload, or cause to be laden or unladen, any such steamboat, keel-boat, barge or other water-craft, on the Sabbath day, within the limits of the corporation of Nashville, unless by the written permission of the Mayor, every person so offending shall forfeit and pay, on conviction thereof, not less than twenty-five nor more than fifty dollars for every such offense.

Sec. 2. That if any person or persons shall load, or cause to be laden, any wagon, cart or dray on the Sabbath day, with any article or package of merchandise, cotton, tobacco or any produce of the country, or unload, or cause to be unladen, any such wagon, cart or dray, or shall receive into his, her or their house, store or warehouse, any such article or package of merchandise, cotton, tobacco, or produce of the country, every person so offending shall forfeit and pay the sum of one dollar for each and every offense.

Sec. 3. That no person or persons shall be allowed to keep his, her or their grocery, dram-shop, confectionery or other place of ordinary business open on the Sabbath day, nor to sell any spirituous liquors on said day, or to deal out the same

the city limits for the purpose of seeing that said ordinance is not violated.  That before entering, said Marshal or police-man shall first inform the owner, or person having control of said back yard, the purpose of such entry, and any such owner or person having charge or control of the same, who shall refuse or resist such entry shall thereupon be arrested, and upon conviction thereof, shall be fined in a sum not more than twenty-five dollars, nor less than five, or imprisonment not more than ten days.  Approved Nov. 22, 1869.

34    Every owner or occupant of every store, hotel, bar-room, or public house of any kind, as also each and every person occupying a house having two rooms or more facing the street, shall hang a light outside of the door of his or their building, the first two and a half hours of every dark night, under a penalty of two dollars for the first offence and five dollars for each and every subsequent offence.

35    Every person who shall draw any species of fire-arms, or any sword or sword-cane, or knife, or dirk, or other deadly weapon upon the person of another within the limits of this city, unless in lawful defence of person or property, shall be fined not to exceed one hundred dollars, and imprisonment at the discretion of the Mayor, not to exceed ten days.

36    In future, no persons, except peace officers, and persons actually traveling, and immediately passing through Los Angeles city, shall wear or carry any dirk, pistol, sword in a cane, slung-shot, or other dangerous or deadly weapon, concealed or otherwise, within the corporate limits of said city, under a penalty of not more than one hundred dollars fine, and imprisonment at the discretion of the Mayor, not to exceed ten days.

It is hereby made the duty of each police officer of this city, when any stranger shall come within said corporate limits wearing or carrying weapons, to, as soon as possible, give them information and warning of this ordinance; and in case they refuse or decline to obey such warning by depos-iting their weapons in a place of safety, to complain of them immediately.

37    No person shall ride any mule, horse or other animals within the fire limits of this city, at a furious rate, or at a greater speed than eight miles per hour.  Nor shall any person drive any wagon, carriage, or other vehicle, at a greater speed than as above stated.  Nor shall any person leave any horse or mule, saddled or harnessed, loose in the aforesaid limits.

ORDINANCES OF THE CITY OF SALINA.        99

## ORDINANCE No. 268.

An Ordinance relating to the carrying of deadly weapons.

*Be it ordained by the Mayor and Councilmen of the city of Salina :*

SECTION 1.   That it shall be unlawful for any person to carry on or about his person any pistol, bowie knife, dirk, or other deadly or dangerous weapon, anywhere within the limits of the city of Salina, save and except as hereinafter provided.

SEC. 2.   This ordinance shall not apply to cases when any person carrying any weapon above mentioned is engaged in the pursuit of any lawful business, calling or employment and the circumstances in which such person is placed at the time aforesaid, are such as to justify a prudent man in carrying such weapon, for the defense of his person, property or family, nor to cases where any person shall carry such weapon openly in his hands, for the purpose of sale, barter, or for repairing the same, or for use in any lawful occupation requiring the use of the same.

SEC. 3.   Any person violating any of the provisions of this ordinance shall, upon conviction thereof before the police court, be fined in any sum not less that twenty-five nor more than one hundred dollars.

SEC. 4.   This ordinance shall take effect and be in force from and after its publication in pamphlet form.

Approved June 24th, 1879

WM. BERG, Mayor.

Attest:   E. E BOWEN, City Clerk.

I hereby certify the above and foregoing to be a true copy of an ordinance passed by the mayor and councilmen of the city of Salina on the 24th day of June, 1879.  See page 97 of the Journal B for the record of the final vote on its passage.

[CITY SEAL.]                 E. E. BOWEN, City Clerk.

176                              CITY ORDINANCES.

limits of the city of La Crosse shall be punished by a fine
not exceeding twenty-five dollars.

**Committing nuisance.** SECTION 13. Any person found committing any
nuisance upon any street, alley, vacant lot, or upon any
public ground, shall be punished by a fine not exceeding
five dollars.

SECTION 14. Every person who shall be found in a
**Penalty for intoxication, using indecent language or creating riots.** state of intoxication in any street, thoroughfare or public
place within the corporate limits of the city of La Crosse;
or who shall make use of any vulgar, indecent or ob-
scene language; or who shall make use of any loud,
boisterous, profane or insulting language, or of any lan-
guage tending to excite a breach of peace, or who shall
be engaged in fighting; or who shall make or assist in
making any riots, noise or disturbance in said city, or
shall aid or countenance any riotous or disorderly as-
semblage therein; or who shall be guilty of any disorderly
or improper conduct in said city of La Crosse, shall upon
conviction be punished by a fine of not less than one
dollar nor more than one hundred dollars.

SECTION 15. It shall be unlawful for any person other
than a policeman or other officer authorized to maintain
**Penalty for carrying concealed weapons** the peace and to serve process to carry or wear any pistol,
slungshot, knuckles, bowie knife, dirk or any other dan-
gerous weapon, and any person convicted of a violation
of this section shall be punished by a fine not exceeding
one hundred dollars. In all cases of conviction here-
under, any and all dangerous weapons found on the per-
son of the accused shall be confiscated and become the
property of the city of La Crosse, and may be sold for
the benefit thereof at such times and in such manner as
the common council may from time to time direct.

SECTION 16. Every person who shall wilfully, mali-
ciously or wantonly break the glass on any street lamp
**Penalty for interfering with street lamps, lamp posts, or injuring fences, trees, plants, buildings, sign-boards, etc.** post or in any window or sky light in the city of La
Crosse, or extinguish any lamp or climb upon any post,
or destroy, remove, throw down or injure any fence or
other enclosure on land belonging to or lawfully occu-
pied by another, or interfere with any gate or bars in any
such enclosure, or destroy, injure or carry away any
tree or plant, or tear down, mutilate, deface or injure any
building, signboard, fence or railing being the property
of another; or who shall wilfully, maliciously or wantonly
injure, destroy or remove any useful or ornamental tree
or plant of any kind, vase, statue, arbor, stand or any

Case 1:18-cv-00134-BKS-ATB   Document 23-3   Filed 04/02/18   Page 176 of 186

three months, or to both such fine and imprisonment.

§ 5. Any person who shall immoderately ride or *Immoderate driving and riding.* drive any horse or other animal whether attached to a private or public ambulance or other vehicle in any avenue, street, alley or lane in the city, shall be subject to a fine of not less than five nor more than fifty dollars, or to imprisonment in the peni- *Penalty.* tentiary of the county for not less than ten nor more than thirty days.

§ 6. Any person who shall solicit alms in the *Soliciting alms.* city for any purpose whatever, without permission from the mayor, shall be subject to a fine of two dollars or to imprisonment in the penitentiary of *Penalty.* the county for ten days for each offense.

§ 7. Any person who shall carry about his or her *Carrying of deadly weapons.* person any dirk, bowie knife, sword or spear cane, pistol, revolver, slung shot, jimmy, brass knuckles, or other deadly or unlawful weapon, or shall use any deadly or unlawful weapon, with intent to do bodily harm to any person, shall be subject to a fine of not less than twenty-five nor more than one *Penalty.* hundred dollars, or to imprisonment in the penitentiary of the county for not less than thirty days nor longer than three months, or to both such fine and imprisonment.

§ 8. Any person who shall ring any gong or bell *Ringing of gongs and bells.* or cry any auction in any street, lane [or alley, or upon any sidewalk, or upon any piazza, step or

80  ORDINANCES.

## UNLAWFUL CARRYING OF ARMS.

AN ORDINANCE Prohibiting and Punishing the Unlawful Carrying of
Arms.

SECTION 1.  Be it ordained by the City Council of
the City of Dallas, that if any person in the City of Dallas shall carry on or about his person, saddle, or in his
saddle-bags, any pistol, dirk, dagger, slungshot, sword-cane, spear, or knuckles made of any metal or hard substance, bowie knife, or any other kind of knife manufactured or sold for purposes of offense or defense, he shall
be punished by fine of not less than twenty-five nor more
than two hundred dollars and shall be confined in the
city prison not less than twenty nor more than sixty
days.

SEC. 2.  That the preceding section shall not apply
to a person in actual service as a militiaman, nor to a
peace officer, or policeman or person summoned to his
aid, nor to a revenue or other civil officer engaged in the
discharge of official duty, nor to the carrying of arms on
one's own premises or place of business, nor to persons
traveling, nor to one who has reasonable ground for fearing an unlawful attack upon his person, and the danger
is so imminent and threatening as not to admit of the
arrest of the party about to make such attack upon legal
process.

SEC. 3.  That all Ordinances or parts of Ordinances in conflict with this Ordinance be and the same
are hereby repealed.

SEC. 4.  That this Ordinance take effect from and
after its passage.

Approved July 18, 1887.

City for any such purpose, shall forfeit and pay a penalty of not less than ten, nor more than fifty dollars for every such offense.

SEC. 192.    Every person who shall carry in said City, any steel or brass knuckles, pistol, or any slung shot, stiletto or weapon of similar character, or shall carry any weapon concealed on his person without permission of the Mayor or Superintendent of Police in writing, shall, on conviction, pay a penalty of not less than five, nor more than fifty dollars for every such offense.

## JURORS OF THE CITY COURT.

Section.
193. Penalty for neglecting to serve as juror when summoned.

*Be it ordained by the Court of Common Council of the
    City of New Haven:*

SEC. 193.    If any person chosen, drawn and summoned to serve on a jury at any session of the City Court of said City, in accordance with the provisions of the Charter of said City, shall make default of appearance, according to the direction of the summons, which shall have been duly served upon him, and returned to Court, he shall forfeit and pay a penalty of five dollars, unless on cause shown, said City Court shall excuse him therefrom.

## LAMPS.

Section.
194. Court of Common Council may order lamps to be set up.

Section.
195. Unauthorized interference with lamps prohibited, etc.; penalty.

*Be it ordained by the Court of Common Council of the
    City of New Haven:*

SEC. 194.    The Court of Common Council is hereby authorized to cause to be set up such lamps in the streets and public places in said City, for the purpose of

## ORDINANCE NO. 11.

An ordinance relating to the public peace.

Be it ordained by the town council of the incorporated town of Checotah:

Section 1.   That it shall be a misdemeanor to do or cause to be done any of the following acts, and any person convicted thereof shall be fined not more than Twenty Five dollars.

Section 2.   To be connected with or participate in any masked ball not authorized by the mayor of the town.

Section 3.   To wear or carry any pistol of any kind whatever, or any dirk, butcher knife or bowie knife, or a sword, or a spear in a cane, brass or metal knuckles or a razor, slung shot, sand bag, or a knife with a blade over three inches long, with a spring handle, as a weapon.

Section 4.   To be drunk or in a state of intoxication in any public or private place within the town limits.

Section 5.   To use rude, boisterous, offensive, obscene or blasphemous language in any public place, or to make, aid, countenance, or assist in making any improper noise, disturbance, breach of the peace or diversion, or conduct one's self in a disorderly manner in any public place, or in any other place within the town limits.

Section 6.   To keep a disorderly house or place of public resort in the open air, or by making or causing to be made therein, loud or improper noises, or by collecting therein or permit the collection therein, or allow to remain therein, drunken, disorderly and noisy persons to the annoyance of others and the disturbance of the neighborhood, or to give admission, or cause to be given admission therein, to women of known ill repute or prostitutes, or fail to remove or expel such persons after being notified of their character.

Section 7.   To employ any device, noise or performance tending to the collection of persons on the streets or other places to the obstruction of the same, or to exhibit any tricks or legerdemain or other devices of like kind, or perform with bells, or-




CITY OF RAWLINS. 131

more than one hundred dollars for each and every offense.

SEC. 4.   If any person shall expose for sale in any market, house, shop or elsewhere in this city, any emaciated, tainted or putrid meat or provision, which from these or other causes may be deemed unwholesome, every such person, on conviction, shall forfeit and pay a penalty of five dollars for each offense.

SEC. 5.   No person shall steam, or boil, or in any way render any offal, tainted or damaged lard or tallow, or steam, boil or render any animal substance in such a manner as to occasion any offensive smell, or which by steaming, boiling or otherwise rendering will so taint the air so as to render it unwholesome to the smell within the limits of the city.   Any person who shall violate the provisions of this section, shall, on conviction, be fined in a sum not less than ten dollars nor more than one hundred dollars.

## ARTICLE VII.

### CARRYING FIRE ARMS AND LETHAL WEAPONS.

SECTION I.   It shall be unlawful for any person in said city to keep or bear upon the person any pistol, revolver, knife, slungshot, bludgeon or other lethal weapon, except the officers of the United States, of the State of Wyoming, of Carbon County and of the City of Rawlins.

SEC. 2.   Any person convicted of a violation of the preceding section shall be fined not exceeding one hundred dollars, or imprisoned in the city jail not exceeding thirty days.

SEC. 3.   Persons not residing in said city shall







132        REVISED ORDINANCES OF THE

be notified of this Ordinance by the police or any citizen, and after thirty minutes from the time of notification, shall be held liable to the penalties of this article, in case of its violation.

SEC. 4.   The city marshal and policemen of the city shall arrest, without warrant, all persons found violating the provisions of this article, and are hereby authorized to take any such weapon from the person of the offender and to imprison the offender for trial, as in case of violations of other Ordinances of said city.

SEC. 5.   This ordinance shall be in force and take effect from and after its passage.

Revised, passed and adopted March 3, 1893.

CHAS. E. BLYDENBURGH,
President of Board.

Approved,
JOHN C. DAVIS,
Mayor.






OF THE CITY OF WICHITA.                45

SECTION.
80. Selling Wearing Apparel by Club Drawing.
81. Stealing Parts of a House.
82. Moving Houses with Unpaid Tax.
83. Time for Hauling Slops Along Street.
84. Dead Animals, Disposition of.
85. Traction and Threshing Engine on Paved Streets.
86. Manure not to be Thrown in Streets or Alleys; Limits; Provisions to Make Pen for.
87. Privy Vaults to be Cleaned and not to be Transferred.
88. Stables and Water Closets to be on Line of Alley.
89. Secondhand and Junk Dealers; Buying from Minors; Description book; Night Purchases.
90. Leaving Holes for Stagnant Water.
91. Advertisement on Street Poles.
92. Bicycle Riding Regulated; Sidewalks, Speed, Dismounting, by Threes, Alarm Bell.
93. Obstructing Streets or Walks; How Used by Merchants and Builders; Gutters not to be Obstructed; Debris to be Cleared.
94. Red Night Lights on Building Material on Street.

SECTION.
95. Hitching to Fire Hydrant or Pole with Alarm Box.
96. Ball Playing in Streets.
97. Running Water into Streets.
98. Throwing Rubbish into the Street.
99. Projections Over the Sidewalks.
100. Stringing Banners Across Streets.
101. Crowds Upon Sidewalks, Streets and Crossings.
102. Obstructing Crossings with Engines or Cars.
103. Digging and Leaving Holes in the Street.
104. Breaking Horses Upon Streets.
105. Leaving Horse, Mule or Ox on Street After Midnight.
106. Auction Sales not on Certain Streets.
107. Height of Telegraph, Telephone and Light-Wires, (20 ft.)
108. Building Lines Located by Engineer; Cellar-way Excavation; Power of Mayor and Council to Permit or Remove; Nuisance Declared and Abated; Penalty; Proviso for Parking Fence.
109. Injuring Shade or Ornamental Trees.
110. Public Vehicles; Limits Prohibited.
111. Take Effect.

## ORDINANCE NO. 1641.

AN ORDINANCE relating to certain public offenses and fixing the penalty therefor.

*Be it ordained by the Mayor and Councilmen of the City of Wichita:*

### Drawing Deadly Weapons Upon Another.

SECTION 1. That any person, not an officer of the law in the execution of his duty, who shall in the city of Wichita, draw a pistol, revolver, knife or any other deadly weapon upon another person shall upon conviction, be fined not less than twenty-five dollars nor more than one hundred dollars.

### Carrying Unconcealed Deadly Weapons.

SEC. 2. Any person who shall in the city of Wichita carry unconcealed, any fire-arms, slungshot, sheath or dirk knife, or any other weapon, which when used is likely to produce

death or great bodily harm, shall upon conviction, be fined not less than one dollar nor more than twenty-five dollars.

**Using or Carrying Bean Snapper.** SEC. 3. Any person who shall, in the city of Wichita, use or carry concealed or unconcealed, any bean snapper or like articles shall upon conviction be fined in any sum not less than one dollar nor more than twenty-five dollars.

**Carrying Concealed Deadly Weapons.** SEC. 4. Any person who shall in the city of Wichita, carry concealed about his person any fire-arm, slungshot, sheath or dirk knife, brass knuckles, or any weapon, which when used is likely to produce death or great bodily harm, shall upon conviction, be fined in any sum not exceeding one hundred dollars.

**Disturbing the Peace.** SEC. 5. Any person who shall in the city of Wichita, disturb the peace of the city, or any lawful assembly of persons, or of any neighborhood, family, person, or persons, shall upon conviction, be fined in any sum not exceeding one hundred dollars.

**Cursing and Using Violent Language.** SEC. 6. Any person who shall in the city of Wichita, curse, swear, quarrel or use violent or threatening language, or make any great noise, so as to disturb the peace of any person or neighborhood shall, upon conviction be fined in any sum not exceeding twenty-five dollars.

**Assault and Battery.** SEC. 7. Any person who shall, in the city of Wichita, assault and beat or wound another, shall be deemed guilty of an assault and battery and shall, upon conviction, be fined in any sum not exceeding one hundred dollars, or imprisonment in the city jail not exceeding three months.

**Provoking Another to Breach of Peace.** SEC. 8. Any person who shall, in the city of Wichita, by signs, words or gestures, provoke or attempt to provoke another to commit assault and battery or other breach of the peace, shall, upon conviction, be fined in any sum not less than three dollars, nor more than twenty-five dollars.

**Aiding Resistance or Escape from Officer.** SEC 9. Any person who shall, in the city of Wichita, in any

REVISED CRIMINAL ORDINANCES. 183

some conspicuous place about his person, and said badge shall authorize the person holding the same to pursue such occupation only during good behavior, and at the pleasure of the mayor.

**Sec. 2.** The city marshal, on said person complying with Section 1 of this ordinance, shall designate a place or beat, on the public sidewalk or street, where the said person may pursue and follow his said occupation, *City marshal to designate place or stand.*

**Sec 3.** The badge provided for in Section 1 of this ordinance shall not be transferable. *Badge not transferable.*

**Sec. 4.** All persons permitted to pursue the occupation hereinbefore provided for shall be under the immediate supervision and control of the city marshal and police, and it shall be unlawful for any person to pursue and follow said occupation without first complying with Sections 1 and 2 of this ordinance; and it shall be unlawful to pursue said occupation at any other place or beat than that indicated by the city marshal. *Boot blacks under supervision of city marshal.*

**Sec. 5.** Any person violating any of the provisions of this ordinance shall be fined in any sum not exceeding five dollars ($5.00) for each offense. *Penalty affixed.*

-----

## CHAPTER TEN.

### CONCEALED WEAPONS.

**Section 1.** If any person, within the corporate limits of the city of San Antonio, shall carry on or about his or her person, saddle, or in his saddle bags, any pistol, dirk, dagger, sling shot, sword cane, spear, or knuckles made of any metal *Carrying concealed weapons. Penalty.*

184          REVISED CRIMINAV ORDINANCES.

or any hard substance, bowie knife, or any other kind of knife manufactured or sold for purposes of offense or defense, he or she shall be punished by a fine of not less than twenty-five dollars ($25.00) nor more than two hundred dollars ($200.00).

*What persons exempted.*    **Sec. 2.**   The preceding section shall not apply to a person in actual service as a soldier of the United States army or as a militia man, nor to a peace officer or policeman engaged in the discharge of official duty, or person summoned to his aid, or other person authorized or permitted by law to carry arms at the places therein designated, nor to a revenue or other civil officer engaged in the discharge of official duty, nor to the carrying of arms on one's own premises or place of business, nor to persons traveling, nor to one who has a reasonable ground for fearing an unlawful attack upon his person, where the danger is so imminent and threatening as not to admit of the arrest of the party about to make such attack, upon legal process.

## CHAPTER ELEVEN.

### DISORDERLY HOUSES.

*Disorderly house defined.*    **Section 1.**   A disorderly house is one kept for prostitution, or where prostitutes are permitted to resort or reside, for the purpose of plying their vocation, or any theatre, play house or house where spirituous, vinous, or malt liquors are kept for sale, and prostitutes, lewd women, or women of bad reputation for chastity, are employed, kept in service, permitted to display or conduct themselves in a lewd, lascivious, or indecent manner, or to which persons resort for the purpose of smoking or in any manner using opium.

**CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2018, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Northern District of New York by using the CM/ECF system. All participants are registered CM/ECF users, and will be served by the CM/ECF system.

_____*/s/*_____
Ilann M. Maazel