# STATE OF NEW YORK

---

1

Extraordinary Session

# IN SENATE

July 1, 2022

———————

Introduced  by  Sens. STEWART-COUSINS, MYRIE, KAVANAGH -- (at request of
the Governor) -- read twice and ordered printed, and when  printed  to
be committed to the Committee on Rules

AN  ACT  to amend the penal law, the general business law, the executive
law, the civil practice law and rules and the state  finance  law,  in
relation to licensing and other provisions relating to firearms

**The  People of the State of New York, represented in Senate and Assem-
bly, do enact as follows:**

```
 1    Section 1. The section heading and subdivisions 1,  1-a,  2,  4,  4-a,
 2  4-b, 10 and 11 of section 400.00 of the penal law, subdivisions 1 and 10
 3  as  amended  by chapter 1 of the laws of 2013, paragraph (c) of subdivi-
 4  sion 1 as amended by chapter 60 of the laws of 2018,  paragraph  (j)  of
 5  subdivision 1 as amended by chapter 208 of the laws of 2022, subdivision
 6  1-a  as  added by section 2 of part N of chapter 55 of the laws of 2020,
 7  subdivision 2 as amended by chapter 212 of the laws of 2022, subdivision
 8  4 as amended by chapter 242 of the laws  of  2019,  subdivision  4-a  as
 9  added  by  chapter  233 of the laws of 1980, subdivision 4-b as added by
10  chapter 446 of the laws of 1997, paragraph  (c)  of  subdivision  10  as
11  added  by  chapter 212 of the laws of 2022, subdivision 11 as amended by
12  chapter 207 of the laws of 2022, are amended and a new  subdivision  4-c
13  is added to read as follows:
14  [Licenses  to carry, possess, repair and dispose of] Licensing and other
15  provisions relating to firearms.
16    1. Eligibility. No license shall be issued or renewed pursuant to this
17  section except by the licensing officer, and then  only  after  investi-
18  gation  and  finding  that  all statements in a proper application for a
19  license are true. No license shall be issued or renewed  except  for  an
20  applicant  (a) twenty-one years of age or older, provided, however, that
21  where such applicant has  been  honorably  discharged  from  the  United
22  States  army,  navy,  marine  corps,  air  force  or coast guard, or the
23  national guard of the state of New York, no such age  restriction  shall
```

EXPLANATION--Matter in **italics** (underscored) is new; matter in brackets
[-] is old law to be omitted.

LBD12053-04-2

1  apply;  (b)  of  good  moral  character, which, for the purposes of this
2  article, shall mean having  the  essential  character,  temperament  and
3  judgement  necessary to be entrusted with a weapon and to use it only in
4  a  manner that does not endanger oneself or others; (c) who has not been
5  convicted anywhere of a felony or a serious offense or who  is  not  the
6  subject  of  an  outstanding  warrant  of arrest issued upon the alleged
7  commission of a felony or serious offense; (d) who  is  not  a  fugitive
8  from  justice;  (e)  who  is  not an unlawful user of or addicted to any
9  controlled substance as defined in section 21 U.S.C. 802; (f) who  being
10 an alien (i) is not illegally or unlawfully in the United States or (ii)
11 has  not  been  admitted  to the United States under a nonimmigrant visa
12 subject  to the exception in 18 U.S.C. 922(y)(2); (g) who has  not  been
13 discharged from the Armed Forces under dishonorable conditions; (h) who,
14 having  been a citizen of the United States, has not renounced his or her
15 citizenship;  (i) who has stated whether he or she has ever suffered any
16 mental illness; (j) who has not been involuntarily committed to a facil-
17 ity under the jurisdiction of an office  of  the  department  of  mental
18 hygiene  pursuant  to article nine or fifteen of the mental hygiene law,
19 article seven hundred thirty or section 330.20 of the criminal procedure
20 law or substantially similar laws of any other state,  section  four
21 hundred  two  or five hundred eight of the correction law, section 322.2
22 or 353.4 of the family court act, has not  been  civilly  confined  in  a
23 secure  treatment facility pursuant to article ten of the mental hygiene
24 law, or has not been the subject of a report made  pursuant  to  section
25 9.46 of the mental hygiene law; (k) who has not had a license revoked or
26 who  is not under a suspension or ineligibility order issued pursuant to
27 the provisions of section 530.14 of  the  criminal  procedure  law  or
28 section  eight  hundred  forty-two-a of the family court act; (l) in the
29 county of Westchester, who has successfully completed a firearms  safety
30 course  and  test  as evidenced by a certificate of completion issued in
31 his or her name and endorsed and affirmed under the penalties of perjury
32 by a duly authorized instructor, except that: (i) persons who are honor-
33 ably discharged from the United States army, navy, marine corps or coast
34 guard, or of the national guard of the state of New York,  and  produce
35 evidence  of  official  qualification  in firearms during the term of
36 service are not required to have completed those hours  of  a  firearms
37 safety  course pertaining to the safe use, carrying, possession, mainte-
38 nance and storage of a firearm; [~~and~~] (ii) persons who were licensed  to
39 possess  a  pistol or revolver prior to the effective date of this para-
40 graph are not required to have completed a firearms  safety  course  and
41 test, provided,  however,  persons with a license issued under paragraph
42 (f) of subdivision two of this section prior to the  effective  date  of
43 the  laws  of two thousand twenty-two which amended this paragraph shall
44 be required to complete the training required by subdivision nineteen of
45 this section prior to  the  recertification  of  such  license;  and  (iii)
46 persons applying for a license under paragraph (f) of subdivision two of
47 this  section  on or after the effective date of the chapter of the laws
48 of two thousand twenty-two which amended  this  paragraph  who  shall  be
49 required to complete the training required under subdivision nineteen of
50 this  section for such license; (m) who has not had a guardian appointed
51 for him or her pursuant to any provision of state law, based on a deter-
52 mination that as a  result  of  marked  subnormal  intelligence,  mental
53 illness, incompetency, incapacity, condition or disease, he or she lacks
54 the  mental  capacity to contract or manage his or her own affairs; [~~and~~
55 ~~(n) concerning whom no good cause exists for the denial of the license.~~]
56 (n) for a license issued under paragraph (f) of subdivision two of  this

1  section, that the applicant has not been convicted within five years of
2  the date of the application of any of the following: (i) assault in
3  the third degree, as defined in section 120.00 of this chapter; (ii)
4  misdemeanor driving while intoxicated, as defined in section eleven
5  hundred ninety-two of the vehicle and traffic law; or (iii) menacing, as
6  defined in section 120.15 of this chapter; and (o) for a license issued
7  under paragraph (f) of subdivision two of this section, the applicant
8  shall meet in person with the licensing officer for an interview and
9  shall, in addition to any other information or forms required by the
10 license application submit to the licensing officer the following infor-
11 mation: (i) names and contact information for the applicant's
12 current spouse, or domestic partner, any other adults residing in the
13 applicant's home, including any adult children of the applicant, and
14 whether or not there are minors residing, full time or part time, in the
15 applicant's home; (ii) names and contact information of no less than
16 four character references who can attest to the applicant's good
17 moral character and that such applicant has not engaged in any acts, or
18 made any statements that suggest they are likely to engage in conduct
19 that would result in harm to themselves or others; (iii) certification
20 of completion of the training required in subdivision nineteen of this
21 section; (iv) a list of former and current social media accounts of
22 the applicant from the past three years to confirm the information
23 regarding the applicants character and conduct as required in subpara-
24 graph (ii) of this paragraph; and (v) such other information required by
25 the licensing officer that is reasonably necessary and related to the
26 review of the licensing application.
27    1-a. No person shall engage in the business of gunsmith or dealer in
28 firearms unless licensed pursuant to this section. An applicant to
29 engage in such business shall also be a citizen of the United States,
30 more than twenty-one years of age and shall be required to maintain a
31 place of business in the city or county where the license is issued. For
32 such business, if the applicant is a firm or partnership, each member
33 thereof shall comply with all of the requirements set forth in this
34 subdivision and if the applicant is a corporation, each officer thereof
35 shall so comply.
36    [1-a.] 1-b. For purposes of subdivision one of this section, serious
37 offense shall include an offense in any jurisdiction or the former penal
38 law that includes all of the essential elements of a serious offense as
39 defined by subdivision seventeen of section 265.00 of this chapter.
40 Nothing in this subdivision shall preclude the denial of a license based
41 on the commission of, arrest for or conviction of an offense in any
42 other jurisdiction which does not include all of the essential elements
43 of a serious offense.
44    2. Types of licenses. A license for gunsmith or dealer in firearms
45 shall be issued to engage in such business. A license for a semiautomat-
46 ic rifle, other than an assault weapon or disguised gun, shall be issued
47 to purchase or take possession of such a [firearm] semiautomatic rifle
48 when such transfer of ownership occurs on or after the effective date of
49 [the] chapter two hundred twelve of the laws of two thousand twenty-two
50 that amended this subdivision. A license for a pistol or revolver, other
51 than an assault weapon or a disguised gun, shall be issued to (a) have
52 and possess in his dwelling by a householder; (b) have and possess in
53 his place of business by a merchant or storekeeper; (c) have and carry
54 concealed while so employed by a messenger employed by a banking insti-
55 tution or express company; (d) have and carry concealed by a justice of
56 the supreme court in the first or second judicial departments, or by a

1  judge of the New York city civil court or the  New  York  city  criminal
2  court;  (e)  have  and  carry  concealed  while so employed by a regular
3  employee of an institution of the state, or of any county, city, town or
4  village,  under  control  of a commissioner of correction of the city or
5  any warden, superintendent or head keeper of any state prison,  peniten-
6  tiary,  workhouse, county jail or other institution for the detention of
7  persons convicted or accused of crime or held as witnesses  in  criminal
8  cases,  provided that application is made therefor by such commissioner,
9  warden, superintendent or head keeper; (f)  have  and  carry  concealed,
10 without  regard  to  employment  or  place  of possession **subject to the**
11 **restrictions of state and federal law**, by any person [~~when proper cause~~
12 ~~exists for the issuance thereof~~]; and (g) have, possess, collect and
13 carry antique pistols which are defined as follows: (i) any single shot,
14 muzzle loading pistol with a matchlock, flintlock,  percussion  cap,  or
15 similar  type  of ignition system manufactured in or before [~~1898~~] 1898,
16 which is not designed for using rimfire or conventional centerfire fixed
17 ammunition; and (ii) any replica of any pistol described in  clause  (i)
18 hereof if such replica[~~—~~]:
19    (1)  is  not  designed or redesigned for using rimfire or conventional
20 centerfire fixed ammunition, or
21    (2) uses rimfire or conventional centerfire fixed ammunition which  is
22 no  longer  manufactured  in  the United States and which is not readily
23 available in the ordinary channels of commercial trade.
24    4. Investigation. Before a license is issued or renewed,  there  shall
25 be an investigation of all statements required in the application by the
26 duly  constituted police authorities of the locality where such applica-
27 tion is made, including but not limited to such records as may be acces-
28 sible to the division of state police or division  of  criminal  justice
29 services  pursuant  to section 400.02 of this article. For that purpose,
30 the records of the  appropriate  office  of  the  department  of  mental
31 hygiene  concerning  previous or present mental illness of the applicant
32 shall be available for inspection by the investigating  officer  of  the
33 police  authority.  Where the applicant is domiciled in a foreign state,
34 the investigation shall include inquiry of the foreign state for records
35 concerning the previous or present mental illness of the applicant, and,
36 to the extent necessary for inspection by the investigating officer, the
37 applicant shall execute a waiver of confidentiality of  such  record  in
38 such form as may be required by the foreign state. In order to ascertain
39 any  previous  criminal record, the investigating officer shall take the
40 fingerprints and physical descriptive data  in  quadruplicate  of  each
41 individual by whom the application is signed and verified. Two copies of
42 such  fingerprints  shall  be  taken on standard fingerprint cards eight
43 inches square, and one copy may be taken on a  card  supplied  for  that
44 purpose  by the federal bureau of investigation; provided, however, that
45 in the case of a corporate applicant that  has  already  been  issued  a
46 dealer  in firearms license and seeks to operate a firearm dealership in
47 a second or subsequent location, the original fingerprints on file  may
48 be  used  to  ascertain  any criminal record in the second or subsequent
49 application unless any of the corporate officers have changed since  the
50 prior  application, in which case the new corporate officer shall comply
51 with procedures governing an initial application for such license.  When
52 completed,  one  standard card shall be forwarded to and retained by the
53 division of criminal justice services in the  executive  department,  at
54 Albany.  A search of the files of such division and written notification
55 of the results of the search **shall be forwarded** to  the  investigating
56 officer  **and**  shall  be made without unnecessary delay. Thereafter, such

1 division shall notify the licensing officer and the executive depart-
2 ment, division of state police, Albany, of any criminal record of the
3 applicant filed therein subsequent to the search of its files. A second
4 standard card, or the one supplied by the federal bureau of investi-
5 gation, as the case may be, shall be forwarded to that bureau at Wash-
6 ington with a request that the files of the bureau be searched and
7 notification of the results of the search be made to the investigating
8 police authority. Of the remaining two fingerprint cards, one shall be
9 filed with the executive department, division of state police, Albany,
10 within ten days after issuance of the license, and the other **shall**
11 remain on file with the investigating police authority. No such finger-
12 prints may be inspected by any person other than a peace officer, who is
13 acting pursuant to his or her special duties, or a police officer,
14 except on order of a judge or justice of a court of record either upon
15 notice to the licensee or without notice, as the judge or justice may
16 deem appropriate. Upon completion of the investigation, the police
17 authority shall report the results to the licensing officer without
18 unnecessary delay.
19    4-a. **Appeals from denial of an application, renewal, recertification**
20 **or license revocation. If an application for a license is denied, not**
21 **renewed, not recertified, or revoked, the licensing officer shall issue**
22 **a written notice to the applicant setting forth the reasons for such**
23 **denial. An applicant may, within ninety days of receipt of such notice,**
24 **request a hearing to appeal the denial to the appeals board created by**
25 **the division of criminal justice services and the superintendent of**
26 **state police. An individual may be represented by counsel at any appear-**
27 **ance before the appeals board and shall be afforded an opportunity to**
28 **present additional evidence in support of their application. The**
29 **commissioner of criminal justice services and the superintendent of**
30 **state police shall promulgate rules and regulations governing such**
31 **appeals process.**
32    **4-b.** Processing of license applications. Applications for licenses
33 shall be accepted for processing by the licensing officer at the time of
34 presentment. Except upon written notice to the applicant specifically
35 stating the reasons for any delay, in each case the licensing officer
36 shall act upon any application for a license pursuant to this section
37 within six months of the date of presentment of such an application to
38 the appropriate authority. Such delay may only be for good cause and
39 with respect to the applicant. In acting upon an application, the
40 licensing officer shall either deny the application for reasons specif-
41 ically and concisely stated in writing or grant the application and
42 issue the license applied for.
43    [~~4-b.~~] **4-c.** Westchester county firearms safety course certificate. In
44 the county of Westchester, at the time of application, the licensing
45 officer to which the license application is made shall provide a copy of
46 the safety course booklet to each license applicant. Before such license
47 is issued, such licensing officer shall require that the applicant
48 submit a certificate of successful completion of a firearms safety
49 course and test issued in his or her name and endorsed and affirmed
50 under the penalties of perjury by a duly authorized instructor.
51    10. License: expiration, certification and renewal. (a) Any license
52 for gunsmith or dealer in firearms and, in the city of New York, any
53 license to carry or possess a pistol or revolver, issued at any time
54 pursuant to this section or prior to the first day of July, nineteen
55 hundred sixty-three and not limited to expire on an earlier date fixed
56 in the license, shall**, except as otherwise provided in paragraph (d) of**

1  **this subdivision,** expire not more than three years after the date of
2  issuance. In the counties of Nassau, Suffolk and Westchester, any
3  license to carry or possess a pistol or revolver, issued at any time
4  pursuant to this section or prior to the first day of July, nineteen
5  hundred sixty-three and not limited to expire on an earlier date fixed
6  in the license, shall expire not more than five years after the date of
7  issuance; however, in the county of Westchester, any such license shall
8  be certified prior to the first day of April, two thousand, in accord-
9  ance with a schedule to be contained in regulations promulgated by the
10 commissioner of the division of criminal justice services, and every
11 such license shall**, except as otherwise provided in paragraph (d) of**
12 **this subdivision,** be recertified every five years thereafter. For
13 purposes of this section certification shall mean that the licensee
14 shall provide to the licensing officer the following information only:
15 current name, date of birth, current address, and the make, model, cali-
16 ber and serial number of all firearms currently possessed. Such certif-
17 ication information shall be filed by the licensing officer in the same
18 manner as an amendment. Elsewhere than in the city of New York and the
19 counties of Nassau, Suffolk and Westchester, any license to carry or
20 possess a pistol or revolver, issued at any time pursuant to this
21 section or prior to the first day of July, nineteen hundred sixty-three
22 and not previously revoked or cancelled, shall be in force and effect
23 until revoked as herein provided. Any license not previously cancelled
24 or revoked shall remain in full force and effect for thirty days beyond
25 the stated expiration date on such license. Any application to renew a
26 license that has not previously expired, been revoked or cancelled shall
27 thereby extend the term of the license until disposition of the applica-
28 tion by the licensing officer. In the case of a license for gunsmith or
29 dealer in firearms, in counties having a population of less than two
30 hundred thousand inhabitants, photographs and fingerprints shall be
31 submitted on original applications and upon renewal thereafter [~~only~~] at
32 [~~six~~] **three** year intervals. Upon satisfactory proof that a currently
33 valid original license has been despoiled, lost or otherwise removed
34 from the possession of the licensee and upon application containing an
35 additional photograph of the licensee, the licensing officer shall issue
36 a duplicate license.
37   (b) All licensees shall be recertified to the division of state police
38 every five years thereafter**, except as otherwise provided in paragraph**
39 **(d) of this subdivision**. Any license issued before the effective date of
40 the chapter of the laws of two thousand thirteen which added this para-
41 graph shall be recertified by the licensee on or before January thirty-
42 first, two thousand eighteen, and not less than one year prior to such
43 date, the state police shall send a notice to all license holders who
44 have not recertified by such time. Such recertification shall be in a
45 form as approved by the superintendent of state police, which shall
46 request the license holder's name, date of birth, gender, race, residen-
47 tial address, social security number, firearms possessed by such license
48 holder, email address at the option of the license holder and an affir-
49 mation that such license holder is not prohibited from possessing
50 firearms. The form may be in an electronic form if so designated by the
51 superintendent of state police. Failure to recertify shall act as a
52 revocation of such license. If the New York state police discover as a
53 result of the recertification process that a licensee failed to provide
54 a change of address, the New York state police shall not require the
55 licensing officer to revoke such license.

1   (c) A license to purchase or take possession of a semiautomatic  rifle
2   as  defined  in  subdivision two of this section shall be recertified to
3   the applicable licensing officer every five years following the issuance
4   of such license. Failure to renew such a license shall  be  a  violation
5   punishable  by  a fine not to exceed two hundred fifty dollars, and such
6   failure to renew shall be  considered  by  the  licensing  officer  when
7   reviewing  future license applications by the license holder pursuant to
8   this chapter.
9   **(d) Licenses issued under paragraph (f) of  subdivision  two  of  this**
10  **section  shall  be recertified or renewed in the same form and manner as**
11  **otherwise required by this  subdivision,  provided  however,  that  such**
12  **licenses shall be recertified or renewed every three years following the**
13  **issuance  of  such  license.  For licenses issued prior to the effective**
14  **date of this paragraph that were issued more than three years  prior  to**
15  **such  date, or will expire in less than one year from such date shall be**
16  **recertified or renewed within one year of such date.**
17  11. License: revocation and suspension. (a) The conviction of a licen-
18  see anywhere of a felony or serious offense or a licensee  at  any  time
19  becoming  ineligible to obtain a license [~~under this section shall oper-~~
20  ~~ate as~~]**, including engaging in conduct that would have resulted  in  the**
21  **denial  of  a license, under this section shall operate as or be grounds**
22  **for,** a revocation of the license. A license may be revoked or  suspended
23  as  provided  for  in  section  530.14  of the criminal procedure law or
24  section eight hundred forty-two-a of the family court act. Except for  a
25  license issued pursuant to section 400.01 of this article, a license may
26  be revoked and cancelled at any time in the city of New York, and in the
27  counties  of Nassau and Suffolk, by the licensing officer, and elsewhere
28  than in the city of New York by any judge  or  justice  of  a  court  of
29  record;  a license issued pursuant to section 400.01 of this article may
30  be revoked and cancelled at any time by the  licensing  officer  or  any
31  judge  or justice of a court of record. A license to engage in the busi-
32  ness of dealer may be revoked or suspended  for  any  violation  of  the
33  provisions  of  article  thirty-nine-BB of the general business law. The
34  official revoking a license shall give written  notice  thereof  without
35  unnecessary delay to the executive department, division of state police,
36  Albany,  and  shall  also notify immediately the duly constituted police
37  authorities of the locality.  **The licensing officer  shall  revoke  any**
38  **license  issued  in  which  an applicant knowingly made a material false**
39  **statement on the application.  Notice of a revocation under this  subdi-**
40  **vision  shall  be  issued in writing and shall include the basis for the**
41  **determination, which shall  be  supported  by  a  preponderance  of  the**
42  **evidence. Such notice shall also include information regarding the abil-**
43  **ity  to  appeal  such  decision in accordance with subdivision four-a of**
44  **this section.**
45  (b) Whenever the director of community services or his or her designee
46  makes a report pursuant to section 9.46 of the mental hygiene  law,  the
47  division  of  criminal  justice  services shall convey such information,
48  whenever it determines that the person named in the report  possesses  a
49  license  issued  pursuant  to this section, to the appropriate licensing
50  official, who shall issue an order suspending or revoking such license.
51  (c) In any instance in  which  a  person's  license  is  suspended  or
52  revoked  under  paragraph  (a)  or  (b) of this subdivision, such person
53  shall surrender such license to the appropriate licensing  official  and
54  any  and  all firearms, rifles, or shotguns owned or possessed by such
55  person shall be surrendered to an appropriate law enforcement agency  as
56  provided  in  subparagraph  (f)  of  paragraph  one  of subdivision a of

1  section 265.20 of this chapter. In the event such license, firearm,
2  shotgun, or rifle is not surrendered, such items shall be removed and
3  declared a nuisance and any police officer or peace officer acting
4  pursuant to his or her special duties is authorized to remove any and
5  all such weapons.
6    § 2. Section 837 of the executive law is amended by adding a new
7  subdivision 23 to read as follows:
8    23. (a) In conjunction with the superintendent of the state police,
9  promulgate policies and procedures with regard to standardization of
10 firearms safety training required under subdivision nineteen of section
11 400.00 of the penal law, which shall include the approval of course
12 materials and promulgation of proficiency standards for live fire train-
13 ing; and
14   (b) In conjunction with the superintendent of state police, create an
15 appeals board for the purpose of hearing appeals as provided in subdivi-
16 sion four-a of section 400.00 of the penal law and promulgate rules and
17 regulations governing such appeals.
18   § 3. The executive law is amended by adding a new section 235 to read
19 as follows:
20   § 235. Firearms safety training, and licensing appeals. 1. The super-
21 intendent shall, in conjunction with the commissioner of the division of
22 criminal justice services, promulgate policies and procedures with
23 regard to standardization of firearms safety training required under
24 subdivision nineteen of section 400.00 of the penal law, which shall
25 include the approval of course materials and the promulgation of profi-
26 ciency standards for live fire training.
27   2. The superintendent, in conjunction with the commissioner of the
28 division of criminal justice services, shall create an appeals board for
29 the purpose of hearing appeals as provided in subdivision four-a of
30 section 400.00 of the penal law and promulgate rules and regulations
31 governing such appeals.
32   § 4. The penal law is amended by adding a new section 265.01-e to read
33 as follows:
34 § 265.01-e Criminal possession of a firearm, rifle or shotgun in a
35         sensitive location.
36   1. A person is guilty of criminal possession of a firearm, rifle or
37 shotgun in a sensitive location when such person possesses a firearm,
38 rifle or shotgun in or upon a sensitive location, and such person knows
39 or reasonably should know such location is a sensitive location.
40   2. For the purposes of this section, a sensitive location shall mean:
41   (a) any place owned or under the control of federal, state or local
42 government, for the purpose of government administration, including
43 courts;
44   (b) any location providing health, behavioral health, or chemical
45 dependance care or services;
46   (c) any place of worship or religious observation;
47   (d) libraries, public playgrounds, public parks, and zoos;
48   (e) the location of any program licensed, regulated, certified, fund-
49 ed, or approved by the office of children and family services that
50 provides services to children, youth, or young adults, any legally
51 exempt childcare provider; a childcare program for which a permit to
52 operate such program has been issued by the department of health and
53 mental hygiene pursuant to the health code of the city of New York;
54   (f) nursery schools, preschools, and summer camps;

1   (g) the location of any program licensed, regulated, certified, oper-
2   ated, or funded by the office for people with developmental disabili-
3   ties;
4   (h) the location of any program licensed, regulated, certified, oper-
5   ated, or funded by office of addiction services and supports;
6   (i) the location of any program licensed, regulated, certified, oper-
7   ated, or funded by the office of mental health;
8   (j) the location of any program licensed, regulated, certified, oper-
9   ated, or funded by the office of temporary and disability assistance;
10  (k) homeless shelters, runaway homeless youth shelters, family shel-
11  ters, shelters for adults, domestic violence shelters, and emergency
12  shelters, and residential programs for victims of domestic violence;
13  (l) residential settings licensed, certified, regulated, funded, or
14  operated by the department of health;
15  (m) in or upon any building or grounds, owned or leased, of any educa-
16  tional institutions, colleges and universities, licensed private career
17  schools, school districts, public schools, private schools licensed
18  under article one hundred one of the education law, charter schools,
19  non-public schools, board of cooperative educational services, special
20  act schools, preschool special education programs, private residential
21  or non-residential schools for the education of students with disabili-
22  ties, and any state-operated or state-supported schools;
23  (n) any place, conveyance, or vehicle used for public transportation
24  or public transit, subway cars, train cars, buses, ferries, railroad,
25  omnibus, marine or aviation transportation; or any facility used for or
26  in connection with service in the transportation of passengers,
27  airports, train stations, subway and rail stations, and bus terminals;
28  (o) any establishment issued a license for on-premise consumption
29  pursuant to article four, four-A, five, or six of the alcoholic beverage
30  control law where alcohol is consumed and any establishment licensed
31  under article four of the cannabis law for on-premise consumption;
32  (p) any place used for the performance, art entertainment, gaming, or
33  sporting events such as theaters, stadiums, racetracks, museums, amuse-
34  ment parks, performance venues, concerts, exhibits, conference centers,
35  banquet halls, and gaming facilities and video lottery terminal facili-
36  ties as licensed by the gaming commission;
37  (q) any location being used as a polling place;
38  (r) any public sidewalk or other public area restricted from general
39  public access for a limited time or special event that has been issued a
40  permit for such time or event by a governmental entity, or subject to
41  specific, heightened law enforcement protection, or has otherwise had
42  such access restricted by a governmental entity, provided such location
43  is identified as such by clear and conspicuous signage;
44  (s) any gathering of individuals to collectively express their consti-
45  tutional rights to protest or assemble;
46  (t) the area commonly known as Times Square, as such area is deter-
47  mined and identified by the city of New York; provided such area shall
48  be clearly and conspicuously identified with signage.
49  3. This section shall not apply to:
50  (a) consistent with federal law, law enforcement who qualify to carry
51  under the federal law enforcement officers safety act, 18 U.S.C. 926C;
52  (b) persons who are police officers as defined in subdivision thirty-
53  four of section 1.20 of the criminal procedure law;
54  (c) persons who are designated peace officers by section 2.10 of the
55  criminal procedure law;

1  (d) persons who were employed as police officers as defined in  subdi-
2  vision thirty-four of section 1.20 of the criminal procedure law but are
3  retired;
4  (e) security guards as defined by and registered under article seven-A
5  of the general business law, who have been granted a special armed
6  registration card, while at the location of their employment and during
7  their work hours as such a security guard;
8  (f) active-duty military personnel;
9  (g) persons licensed under paragraph (c), (d) or (e) of subdivision
10 two of section 400.00 of this chapter while in the course of his or  her
11 official duties;
12 (h) a government employee under the express written consent of such
13 employee's supervising government entity for the purposes of natural
14 resource protection and management;
15 (i) persons lawfully engaged  in hunting activity, including hunter
16 education training; or
17 (j) persons operating a program in a sensitive location out of their
18 residence, as defined by this section, which is licensed, certified,
19 authorized, or funded by the state or a municipality, so long as such
20 possession is in compliance with any rules or regulations applicable to
21 the operation of such program and use or storage of firearms.
22 Criminal possession of a firearm, rifle or shotgun in a sensitive
23 location is a class E felony.
24 § 5. The penal law is amended by adding a new section 265.01-d to read
25 as follows:
26 § 265.01-d Criminal possession of a weapon in a restricted location.
27 1. A person is guilty of criminal possession of a weapon in a
28 restricted location when such person possesses a firearm, rifle, or
29 shotgun and enters into or remains on or in private property where such
30 person knows or reasonably should know that the owner or lessee of such
31 property has not permitted such possession by clear and conspicuous
32 signage indicating that the carrying of firearms, rifles, or shotguns on
33 their property is permitted or has otherwise given express consent.
34 2. This section shall not apply to:
35 (a) police officers as defined in section 1.20 of the criminal  proce-
36 dure law;
37 (b) persons who are designated peace officers as defined in section
38 2.10 of the criminal procedure law;
39 (c) persons who were employed as police officers as defined in section
40 1.20 of the criminal procedure law, but are retired;
41 (d) security guards as defined by and registered under article seven-A
42 of the general business law who has been granted a special armed  regis-
43 tration card, while at the location of their employment and during their
44 work hours as such a security guard;
45 (e) active-duty military personnel;
46 (f) persons licensed under paragraph (c), (d) or (e) of subdivision
47 two of section 400.00 of this chapter while in the course of his or  her
48 official duties; or
49 (g) persons lawfully engaged in hunting activity.
50 Criminal possession of a weapon in a restricted location is a class E
51 felony.
52 § 6. Subdivision a of section 265.20 of the penal law  is  amended  by
53 adding a new paragraph 3-a to read as follows:
54 3-a. Possession of a pistol or revolver by a person undergoing live-
55 fire range training pursuant to section 400.00 of this chapter while

1  such person is undergoing such training and is supervised by a duly
2  authorized instructor.
3      § 7. Section 400.02 of the penal law, as amended by chapter 244 of the
4  laws of 2019, is amended to read as follows:
5  § 400.02 Statewide license and record database.
6      1. There shall be a statewide license and record database which shall
7  be created and maintained by the division of state police the cost of
8  which shall not be borne by any municipality. Records assembled or
9  collected for purposes of inclusion in such database shall not be
10 subject to disclosure pursuant to article six of the public officers
11 law. [Records] All records containing granted license applications from
12 all licensing authorities shall be [periodically] monthly checked by the
13 division of criminal justice services in conjunction with the division
14 of state police against criminal conviction, criminal indictment, mental
15 health, extreme risk protection orders, orders of protection, and all
16 other records as are necessary to determine their continued accuracy as
17 well as whether an individual is no longer a valid license holder. The
18 division of criminal justice services shall also check pending applica-
19 tions made pursuant to this article against such records to determine
20 whether a license may be granted. All state and local agencies shall
21 cooperate with the division of criminal justice services, as otherwise
22 authorized by law, in making their records available for such checks.
23 The division of criminal justice services, upon determining that an
24 individual is ineligible to possess a license, or is no longer a valid
25 license holder, shall notify the applicable licensing official of such
26 determination and such licensing official shall not issue a license or
27 shall revoke such license and any weapons owned or possessed by such
28 individual shall be removed consistent with the provisions of subdivi-
29 sion eleven of section 400.00 of this article. Local and state law
30 enforcement shall have access to such database in the performance of
31 their duties. Records assembled or collected for purposes of inclusion
32 in the database established by this section shall be released pursuant
33 to a court order.
34 2. There shall be a statewide license and record database specific for
35 ammunition sales which shall be created and maintained by the division
36 of state police the cost of which shall not be borne by any municipality
37 no later than thirty days upon designating the division of state police
38 as the point of contact to perform both firearm and ammunition back-
39 ground checks under federal and state law. Records assembled or
40 collected for purposes of inclusion in such database shall not be
41 subject to disclosure pursuant to article six of the public officers
42 law. All records containing granted license applications from all
43 licensing authorities shall be monthly checked by the division of crimi-
44 nal justice services in conjunction with the division of state police
45 against criminal conviction, criminal indictments, mental health,
46 extreme risk protection orders, orders of protection, and all other
47 records as are necessary to determine their continued accuracy as well
48 as whether an individual is no longer a valid license holder. The divi-
49 sion of criminal justice services shall also check pending applications
50 made pursuant to this article against such records to determine whether
51 a license may be granted. All state and local agencies shall cooperate
52 with the division of criminal justice services, as otherwise authorized
53 by law, in making their records available for such checks. No later than
54 thirty days after the superintendent of the state police certifies that
55 the statewide license and record database established pursuant to this
56 section and the statewide license and record database established for

1  ammunition sales are operational for the purposes of this section, a
2  dealer in firearms licensed pursuant to section 400.00 of this article,
3  a seller of ammunition as defined in subdivision twenty-four of section
4  265.00 of this chapter shall not transfer any ammunition to any other
5  person who is not a dealer in firearms as defined in subdivision nine of
6  such section 265.00 or a seller of ammunition as defined in subdivision
7  twenty-four of section 265.00 of this chapter, unless:
8    (a) before the completion of the transfer, the licensee or seller
9  contacts the statewide license and record database and provides the
10 database with information sufficient to identify such dealer or seller
11 transferee based on information on the transferee's identification docu-
12 ment as defined in paragraph (c) of this subdivision, as well as the
13 amount, caliber, manufacturer's name and serial number, if any, of such
14 ammunition;
15   (b) the licensee or seller is provided with a unique identification
16 number; and
17   (c) the transferor has verified the identity of the transferee by
18 examining a valid state identification document of the transferee issued
19 by the department of motor vehicles or if the transferee is not a resi-
20 dent of the state of New York, a valid identification document issued by
21 the transferee's state or country of residence containing a photograph
22 of the transferee.
23   § 8. Subdivisions 2 and 6 of section 400.03 of the penal law, as added
24 by chapter 1 of the laws of 2013, are amended to read as follows:
25   2. Any seller of ammunition or dealer in firearms shall keep [a record
26 book] either an electronic record, or dataset, or an organized
27 collection of structured information, or data, typically stored elec-
28 tronically in a computer system approved as to form by the superinten-
29 dent of state police. In the record [book] shall be entered at the time
30 of every transaction involving ammunition the date, name, age, occupa-
31 tion and residence of any person from whom ammunition is received or to
32 whom ammunition is delivered, and the amount, calibre, manufacturer's
33 name and serial number, or if none, any other distinguishing number or
34 identification mark on such ammunition. [The record book shall be main-
35 tained on the premises mentioned and described in the license and shall
36 be open at all reasonable hours for inspection by any peace officer,
37 acting pursuant to his or her special duties, or police officer. Any
38 record produced pursuant to this section and any transmission thereof to
39 any government agency shall not be considered a public record for
40 purposes of article six of the public officers law.]
41   6. If the superintendent of state police certifies that background
42 checks of ammunition purchasers may be conducted through the national
43 instant criminal background check system or through the division of
44 state police once the division has been designated point of contact, use
45 of that system by a dealer or seller shall be sufficient to satisfy
46 subdivisions four and five of this section and such checks shall be
47 conducted through such system, provided that a record of such trans-
48 action shall be forwarded to the state police in a form determined by
49 the superintendent.
50   § 9. Section 265.45 of the penal law, as amended by chapter 133 of the
51 laws of 2019, is amended to read as follows:
52 § 265.45 Failure to safely store rifles, shotguns, and firearms in the
53                first degree.
54   1. No person who owns or is custodian of a rifle, shotgun or firearm
55 who resides with an individual who: (i) is under [sixteen] eighteen
56 years of age; (ii) such person knows or has reason to know is prohibited

1  from possessing a rifle, shotgun or firearm pursuant to a temporary or
2  final extreme risk protection order issued under article sixty-three-A
3  of the civil practice law and rules or 18 U.S.C. § 922(g) (1), (4), (8)
4  or (9); or (iii) such person knows or has reason to know is prohibited
5  from possessing a rifle, shotgun or firearm based on a conviction for a
6  felony or a serious offense, shall store or otherwise leave such rifle,
7  shotgun or firearm out of his or her immediate possession or control
8  without having first securely locked such rifle, shotgun or firearm in
9  an appropriate safe storage depository or rendered it incapable of being
10 fired by use of a gun locking device appropriate to that weapon.
11   **2. No person shall store or otherwise leave a rifle, shotgun, or**
12 **firearm out of his or her immediate possession or control inside a vehi-**
13 **cle without first removing the ammunition from and securely locking such**
14 **rifle, shotgun, or firearm in an appropriate safe storage depository out**
15 **of sight from outside of the vehicle.**
16   **3.** For purposes of this section "safe storage depository" shall mean a
17 safe or other secure container which, when locked, is incapable of being
18 opened without the key, **keypad,** combination or other unlocking mechanism
19 and is capable of preventing an unauthorized person from obtaining
20 access to and possession of the weapon contained therein **and shall be**
21 **fire, impact, and tamper resistant.** Nothing in this section shall be
22 deemed to affect, impair or supersede any special or local act relating
23 to the safe storage of rifles, shotguns or firearms which impose addi-
24 tional requirements on the owner or custodian of such weapons. **For the**
25 **purposes of subdivision two of this section, a glove compartment or**
26 **glove box shall not be considered an appropriate safe storage deposito-**
27 **ry.**
28   **4.** It shall not be a violation of this section to allow a person less
29 than [~~sixteen~~] **eighteen** years of age access to: (i) a firearm, rifle or
30 shotgun for lawful use as authorized under paragraph seven or seven-e of
31 subdivision a of section 265.20 of this article, or (ii) a rifle or
32 shotgun for lawful use as authorized by article eleven of the environ-
33 mental conservation law when such person less than [~~sixteen~~] **eighteen**
34 years of age is the holder of a hunting license or permit and such rifle
35 or shotgun is used in accordance with such law.
36   Failure to safely store rifles, shotguns, and firearms in the first
37 degree is a class A misdemeanor.
38   § 10. The penal law is amended by adding a new section 400.30 to read
39 as follows:
40   **§ 400.30 Application.**
41   **Nothing in this article shall be construed to impair or in any way**
42 **prevent the enactment or application of any local law, code, ordinance,**
43 **rule or regulation that is more restrictive than any requirement set**
44 **forth in or established by this article.**
45   § 11. Section 270.20 of the penal law, as added by chapter 56 of the
46 laws of 1984, and subdivision 1 as amended by chapter 317 of the laws of
47 2001, is amended to read as follows:
48 § 270.20 Unlawful wearing of [~~a~~] body [~~vest~~] **armor**.
49   1. A person is guilty of the unlawful wearing of [~~a~~] body [~~vest~~] **armor**
50 when acting either alone or with one or more other persons he commits
51 any violent felony offense defined in section 70.02 while possessing a
52 firearm, rifle or shotgun and in the course of and in furtherance of
53 such crime he **or she** wears [~~a~~] body [~~vest~~] **armor**.
54   2. For the purposes of this section [~~a~~] "body [~~vest~~] **armor**" means [~~a~~
55 ~~bullet-resistant soft body armor providing, as a minimum standard, the~~
56 ~~level of protection known as threat level I which shall mean at least~~

S. 1                            14

1  ~~seven layers of bullet-resistant material providing protection from~~
2  ~~three shots of one hundred fifty-eight grain lead ammunition fired from~~
3  ~~a .38 calibre handgun at a velocity of eight hundred fifty feet per~~
4  ~~second~~] **any product that is a personal protective body covering intended**
5  **to protect against gunfire, regardless of whether such product is to be**
6  **worn alone or is sold as a complement to another product or garment**.
7      The unlawful wearing of [~~a~~] body [~~vest~~] **armor** is a class E felony.
8      § 12. Section 270.21 of the penal law, as added by chapter 210 of  the
9  laws of 2022, is amended to read as follows:
10 § 270.21 Unlawful purchase of [~~a~~] body [~~vest~~] **armor**.
11     A  person  is guilty of the unlawful purchase of [~~a~~] body [~~vest~~] **armor**
12 when, not being engaged or employed in  an  eligible  profession,  they
13 knowingly  purchase or take possession of [~~a~~] body [~~vest~~] **armor**, as such
14 term is defined in subdivision two of section 270.20  of  this  article.
15 This  section  shall  not  apply  to  individuals or entities engaged or
16 employed in eligible professions, which shall include police officers as
17 defined in section 1.20 of the criminal procedure law, peace officers as
18 defined in section 2.10 of the criminal procedure law, persons in  mili-
19 tary  service  in the state of New York or military or other service for
20 the United States, and such other professions designated by the  depart-
21 ment of state in accordance with section one hundred forty-four-a of the
22 executive law.
23     Unlawful  purchase  of  [~~a~~] body [~~vest~~] **armor** is a class A misdemeanor
24 for a first offense and a class E felony for any subsequent offense.
25     § 13. Section 270.22 of the penal law, as added by chapter 210 of  the
26 laws of 2022, is amended to read as follows:
27 § 270.22 Unlawful sale of [~~a~~] body [~~vest~~] **armor**.
28     A  person is guilty of the unlawful sale of [~~a~~] body [~~vest~~] **armor** when
29 they sell, exchange, give or dispose of [~~a~~] body [~~vest~~] **armor**,  as  such
30 term is defined in subdivision two of section 270.20 of this article, to
31 an  individual  whom  they  know  or reasonably should have known is not
32 engaged or employed in an eligible profession, as such  term  is  defined
33 in section 270.21 of this article.
34     Unlawful  sale  of  [~~a~~] body [~~vest~~] **armor** is a class A misdemeanor for
35 the first offense and a class E felony for any subsequent offense.
36     § 14. Section 396-eee of the general business law, as added by chapter
37 210 of the laws of 2022, is amended to read as follows:
38 § 396-eee. Unlawful sale or delivery of body [~~vests~~] **armor**.   1.  No
39 person,  firm or corporation shall sell or deliver body [~~vests~~] **armor** to
40 any individual or entity not engaged or employed in an eligible  profes-
41 sion, and except as provided in subdivision [~~three~~] **two** of this section,
42 no  such sale or delivery shall be permitted unless the transferee meets
43 in person with the transferor to accomplish such sale or delivery.
44     2. The provisions of subdivision one of  this  section  regarding  in
45 person  sale  or  delivery shall not apply to purchases made by **federal,**
46 state**,** or local government agencies for the purpose of  furnishing  such
47 body [~~vests~~] **armor** to employees in eligible professions.
48     3.  For  the  purposes of this section, "body [~~vest~~] **armor**" shall have
49 the same meaning as defined in subdivision two of section 270.20 of  the
50 penal law.
51     4. Any person, firm or corporation that violate the provisions of this
52 section shall be guilty of a violation punishable by a fine in an amount
53 not  to  exceed  five  thousand  dollars  for the first offense and in an
54 amount not to exceed ten thousand dollars for any subsequent offense.
55     § 15. Section 144-a of the executive law, as added by chapter  210  of
56 the laws of 2022, is amended to read as follows:

1    § 144-a. Eligible professions for the purchase, sale, and use of body
2    [~~vests~~] <u>armor</u>. The secretary of state in consultation with the  division
3    of  criminal  justice  services,  the  division of homeland security and
4    emergency  services, the department of corrections and  community  super-
5    vision,  the  division  of  the  state police, and the office of general
6    services shall promulgate rules and regulations  to  establish  criteria
7    for  eligible professions requiring the use of [~~a~~] body [~~vest~~] <u>armor</u>, as
8    such term is defined in subdivision two of section 270.20 of  the  penal
9    law. Such professions shall include those in which the duties may expose
10   the individual to serious physical injury that may be prevented or miti-
11   gated  by  the  wearing  of [~~a~~] body [~~vest~~] <u>armor</u>.  Such rules and regu-
12   lations shall also include a process by which an  individual  or  entity
13   may  request  that  the  profession in which they engage be added to the
14   list of eligible professions, a process by which  the  department  shall
15   approve  such  professions, and a process by which individuals and enti-
16   ties may present  proof  of  engagement  in eligible professions  when
17   purchasing [~~a~~] body [~~vest~~] <u>armor</u>.
18   § 16. The executive law is amended by adding a new section 228 to read
19   as follows:
20   <u>§ 228. National instant criminal background checks. 1.  (a) The divi-</u>
21   <u>sion is hereby authorized and directed to serve  as  a  state point of</u>
22   <u>contact  for implementation of 18 U.S.C. sec. 922 (t), all federal regu-</u>
23   <u>lations and applicable guidelines  adopted  pursuant  thereto,  and  the</u>
24   <u>national  instant  criminal  background check system for the purchase of</u>
25   <u>firearms and ammunition.</u>
26   <u>(b) Upon receiving a  request  from  a  licensed  dealer  pursuant  to</u>
27   <u>section  eight  hundred  ninety-six or eight hundred ninety-eight of the</u>
28   <u>general business law, the division shall initiate a background check  by</u>
29   <u>(i)  contacting  the  National  Instant Criminal Background Check System</u>
30   <u>(NICS) or its successor to initiate a national instant criminal  back-</u>
31   <u>ground  check,  and  (ii)  consulting the statewide firearms license and</u>
32   <u>records database established  pursuant  to  subdivision three of  this</u>
33   <u>section, in order to determine if the purchaser is a person described in</u>
34   <u>sections  400.00 and  400.03 of the penal law, or is prohibited by state</u>
35   <u>or federal law from possessing,  receiving,  owning,  or  purchasing  a</u>
36   <u>firearm or ammunition.</u>
37   <u>2.  (a) The division shall report the name, date of birth and physical</u>
38   <u>description of any person prohibited from possessing a firearm  pursuant</u>
39   <u>to  18  U.S.C. sec. 922(g) or (n) to the national instant criminal back-</u>
40   <u>ground check system index, denied persons files.</u>
41   <u>(b) Information provided pursuant to this section shall remain  privi-</u>
42   <u>leged  and  confidential,  and  shall  not  be disclosed, except for the</u>
43   <u>purpose of enforcing federal or state  law  regarding  the  purchase  of</u>
44   <u>firearms or ammunition.</u>
45   <u>(c)  Any  background  check  conducted  by  the  division, or delegated</u>
46   <u>authority, of any applicant for a permit, firearms  identification  card</u>
47   <u>license,  ammunition  sale,  or  registration,  in  accordance with the</u>
48   <u>requirements of section 400.00 of the penal law, shall not be considered</u>
49   <u>a public record and shall not be disclosed to any person not  authorized</u>
50   <u>by  law or this chapter to have access to such background check, includ-</u>
51   <u>ing the applicant. Any application for a permit, firearms identification</u>
52   <u>card, ammunition sale, or license, and any document reflecting the issu-</u>
53   <u>ance or denial of such permit, firearms identification card, or license,</u>
54   <u>and any permit, firearms identification  card,  license,  certification,</u>
55   <u>certificate,  form of register, or registration statement, maintained by</u>
56   <u>any state or municipal governmental agency, shall not  be  considered  a</u>

1 public record and shall not be disclosed to any person not authorized by
2 law to have access to such documentation, including the applicant,
3 except on the request of persons acting in their governmental capacities
4 for purposes of the administration of justice.
5   3. The division shall create and maintain a statewide firearms license
6 and records database which shall contain records held by the division
7 and any records that it is authorized to request from the division of
8 criminal justice services, office of court administration, New York
9 state department of health, New York state office of mental health, and
10 other local entities. Such database shall be used for the certification
11 and recertification of firearm permits under section 400.02 of the penal
12 law, assault weapon registration under subdivision sixteen-a of section
13 400.00 of the penal law, and ammunition sales under section 400.03 of
14 the penal law. Such database shall also be used to initiate a national
15 instant criminal background check pursuant to subdivision one of this
16 section upon request from a licensed dealer. The division may create and
17 maintain additional databases as needed to complete background checks
18 pursuant to the requirements of this section.
19   4. The superintendent shall promulgate a plan to coordinate background
20 checks for firearm and ammunition purchases pursuant to this section and
21 to require any person, firm or corporation that sells, delivers or
22 otherwise transfers any firearm or ammunition to submit a request to the
23 division in order to complete the background checks in compliance with
24 federal and state law, including the National Instant Criminal Back-
25 ground Check System (NICS), in New York state. Such plan shall include,
26 but shall not be limited to, the following features:
27   (a) The creation of a centralized bureau within the division to
28 receive and process all background check requests, which shall include a
29 contact center unit and an appeals unit. Staff may include but is not
30 limited to: bureau chief, supervisors, managers, different levels of
31 administrative analysts, appeals specialists and administrative person-
32 nel. The division shall employ and train such personnel to administer
33 the provisions of this section.
34   (b) Procedures for carrying out the duties under this section, includ-
35 ing hours of operation.
36   (c) An automated phone system and web-based application system,
37 including a toll-free telephone number and/or web-based application
38 option for any licensed dealer requesting a background check in order to
39 sell, deliver or otherwise transfer a firearm which shall be operational
40 every day that the bureau is open for business for the purpose of
41 responding to requests in accordance with this section.
42   5. (a) Each licensed dealer that submits a request for a national
43 instant criminal background check pursuant to this section shall pay a
44 fee imposed by the bureau for performing such background check. Such fee
45 shall be allocated to the background check fund established pursuant to
46 section ninety-nine-pp of the state finance law. The amount of the fee
47 shall not exceed the total amount of direct and indirect costs incurred
48 by the bureau in performing such background check.
49   (b) The bureau shall transmit all moneys collected pursuant to this
50 paragraph to the state comptroller, who shall credit the same to the
51 background check fund.
52   6. On January fifteenth of each calendar year, the bureau shall submit
53 a report to the governor, the temporary president of the senate, and the
54 speaker of the assembly concerning:

1   a.   the   number   of  employees  used  by the  bureau  in the preceding year
2   for  the   purpose   of   performing   background   checks   pursuant   to   this
3   section;
4   b.  the   number   of   background   check requests received and processed
5   during  the  preceding  calendar  year,  including  the   number   of   "proceed"
6   responses  and  the  number  and  reasons  for  denials;
7   c.  the   calculations   used to determine the amount of the fee imposed
8   pursuant  to this paragraph.
9   7. Within sixty days of the effective date of this section, the super-
10  intendent  shall  notify  each  licensed  dealer  holding  a  permit  to  sell
11  firearms   of   the   requirement   to   submit  a request to the division to
12  initiate  a  background  check  pursuant  to  this   section   as   well   as   the
13  following means to be used to apply for background checks:
14  i.  any  person, firm or corporation that sells, delivers or otherwise
15  transfers  firearms  shall  obtain  a  completed  ATF  4473  form  from  the
16  potential  buyer  or  transferee  including name, date of birth, gender,
17  race,  social  security  number,  or  other  identification   numbers   of   such
18  potential  buyer  or transferee and shall have inspected proper identifi-
19  cation  including an identification containing a photograph of the poten-
20  tial buyer or transferee.
21  ii. it shall be unlawful for any person, in connection with the sale,
22  acquisition   or   attempted  acquisition of a firearm from any transferor,
23  to  willfully  make  any  false,  fictitious oral or written statement or  to
24  furnish  or exhibit any false, fictitious, or misrepresented identifica-
25  tion  that  is intended or likely to deceive such transferor with respect
26  to  any  fact  material to the lawfulness of the sale or other disposition
27  of  such  firearm  under  federal  or  state law. Any person who violates  the
28  provisions   of   this subparagraph shall be guilty of a class A misdemea-
29  nor.
30  8. Any potential buyer or transferee shall have thirty days to  appeal
31  the  denial  of  a  background  check,  using a form established by the super-
32  intendent.   Upon  receipt  of  an  appeal,  the  division shall provide such
33  applicant  a  reason  for  a  denial  within  thirty  days.  Upon receipt of the
34  reason  for  denial,   the   appellant  may appeal to the attorney general.
35  § 17. Subdivision 2 of section 898 of the  general  business  law,  as
36  added by chapter 129 of the laws of 2019, is amended to read as follows:
37  2.  Before  any  sale, exchange or disposal pursuant to this article, a
38  national instant criminal background check must be completed by a dealer
39  who  [~~consents~~]  shall submit a request to the division of  state  police
40  pursuant  to  section  two hundred twenty-eight of the executive law  to
41  conduct such check[~~, and upon completion of such background check, shall~~
42  ~~complete a document, the form of which shall be approved by the  super-~~
43  ~~intendent  of state police, that identifies and confirms that such check~~
44  ~~was performed~~]. Before a dealer who [~~consents~~] has submitted a  request
45  to  the  division of state police to conduct a national instant criminal
46  background check delivers a firearm, rifle or  shotgun  to  any  person,
47  either  (a) NICS shall have issued a "proceed" response [~~to the dealer~~],
48  or (b) thirty calendar days shall have elapsed since the date the dealer
49  [~~contacted~~] submitted a request to the division of state police to
50  contact the  NICS  to  initiate  a national instant criminal background
51  check and NICS has not notified the [~~dealer~~] division of state police
52  that the transfer of the firearm, rifle or shotgun to such person should
53  be denied.
54  § 18.  Paragraph  (c)  of subdivision 1 of section 896 of the general
55  business law, as added by chapter 189 of the laws of 2000, is amended to
56  read as follows:

S. 1                                    18

1   (c) coordinate with the division of state police to provide access  at
2   the  gun  show  to  [a firearm dealer licensed under federal law who is
3   authorized to] perform a national instant criminal background check
4   [where the seller or transferor of a firearm, rifle or shotgun is not
5   authorized to conduct such a check by (i) requiring firearm exhibitors
6   who are firearm dealers licensed under federal law and who are author-
7   ized to conduct a national instant criminal background check to provide
8   such a check at cost or (ii) designating a specific location at the gun
9   show where a firearm dealer licensed under federal law who is authorized
10  to conduct a national instant criminal background check will be present
11  to perform such a check at cost] prior to any firearm sale or  transfer.
12  Any  firearm  dealer licensed under federal law who [performs] submits a
13  request to the division of state police to perform a national instant
14  criminal  background  check pursuant to this paragraph shall provide the
15  seller or transferor of the firearm, rifle or shotgun with a copy of the
16  United States Department of Treasury, Bureau  of  Alcohol,  Tobacco  and
17  Firearms  Form  ATF  F 4473 and such dealer shall maintain such form and
18  make such form available for inspection by law enforcement agencies  for
19  a period of ten years thereafter.
20      § 19.  Subdivision  6 of section 400.03 of the penal law, as added by
21  chapter 1 of the laws of 2013, is amended to read as follows:
22      6. If the superintendent of state  police  certifies  that  background
23  checks  of  ammunition  purchasers may be conducted through the national
24  instant criminal background check system, [use of that system by] a
25  dealer  or  seller shall contact the division of state police to conduct
26  such check which shall be sufficient to satisfy subdivisions four  and
27  five of this  section [and such checks shall be conducted through such
28  system, provided that a record of such transaction shall be forwarded to
29  the state police in a form determined by the superintendent].
30      § 20. The penal law is amended by adding a new section 400.06 to  read
31  as follows:
32      § 400.06 National instant criminal background checks.
33      1. Any dealer in firearms that sells, delivers or otherwise transfers
34  any firearm shall contact the division of  state  police  to  conduct  a
35  national  instant  criminal  background  check pursuant  to section two
36  hundred twenty-eight of the executive law.
37      2. Failure to comply with the requirements of this section is a  class
38  A misdemeanor.
39      § 21.  The state finance law is amended by adding a new section 99-pp
40  to read as follows:
41      § 99-pp. Background check fund. 1. There is hereby established in  the
42  joint  custody of the state comptroller and commissioner of taxation and
43  finance a special fund to be known as the "background check fund".
44      2. Such fund shall consist of all  revenues  received  by  the  comp-
45  troller,  pursuant to the provisions of section two hundred twenty-eight
46  of the executive law and all other moneys appropriated thereto from  any
47  other  fund or source pursuant to law. Nothing contained in this section
48  shall prevent the state from receiving grants, gifts or bequests for the
49  purposes of the fund as defined in this section and depositing them into
50  the fund according to law.
51      3. The moneys of the background check fund, following appropriation by
52  the legislature, shall be allocated for the direct costs associated with
53  performing background checks pursuant to  section  two  hundred  twenty-
54  eight of the executive law.
55      4. The state comptroller may invest any moneys in the background check
56  fund  not  expended  for the purpose of this section as provided by law.

1  **The state comptroller shall credit any interest and income derived  from**
2  **the deposit and investment of moneys in the background check fund to the**
3  **background check fund.**
4     **5.  (a)  Any unexpended and unencumbered moneys remaining in the back-**
5  **ground check fund at the end of a fiscal year shall remain in the  back-**
6  **ground check fund and shall not be credited to any other fund.**
7     **(b)  To the extent practicable, any such remaining funds shall be used**
8  **to reduce the amount of the fee described in subdivision two of  section**
9  **two hundred twenty-eight of the executive law.**
10    § 22. Subdivision 19 of section 265.00 of the penal law, as amended by
11 chapter 150 of the laws of 2020, is amended to read as follows:
12    19. "Duly authorized instructor" means (a) a duly commissioned officer
13 of  the  United States army, navy, marine corps or coast guard, or of the
14 national guard of the state of New York; or (b) a duly  qualified  adult
15 citizen  of  the  United States who has been granted a certificate as an
16 instructor in small arms practice issued by the United States army, navy
17 or marine corps, or by the adjutant general of this state, **or by  the**
18 **division of criminal justice services,** or by the national rifle associ-
19 ation of America, a not-for-profit corporation duly organized under  the
20 laws of this state; (c) by a person duly qualified and designated by the
21 department  of environmental conservation [~~under paragraph c of subdivi-~~
22 ~~sion three of section 11-0713 of the environmental conservation law~~]  as
23 its  agent in the giving of instruction and the making of certifications
24 of qualification in responsible hunting practices; or  (d)  a  New  York
25 state 4-H certified shooting sports instructor.
26    § 23.  Subdivision 18 of section 400.00 of the penal law, as added by
27 chapter 135 of the laws of 2019, is amended and a new subdivision 19  is
28 added to read as follows:
29    18.  Notice.  Upon  the  issuance  of a license, the licensing officer
30 shall issue therewith**, and such licensee shall attest to the receipt of,**
31 the following [~~notice~~] **information and notifications: (a)  the  grounds**
32 **for which the license issued may be revoked, which shall include but not**
33 **be  limited  to  the  areas  and locations for which the licenses issued**
34 **under paragraph (f) of subdivision two of  this  section  prohibits  the**
35 **possession  of  firearms,  rifles,  and shotguns, and that a conviction**
36 **under sections 265.01-d and 265.01-e of this chapter  are  felonies  for**
37 **which licensure will be revoked;**
38    **(b)  a  notification regarding the requirements for safe storage which**
39 **shall be** in conspicuous and legible twenty-four point type on eight  and
40 one-half inches by eleven inches paper stating in bold print the follow-
41 ing:
42    WARNING:  RESPONSIBLE  FIREARM  STORAGE  IS THE LAW IN NEW YORK STATE.
43 **WHEN STORED IN A HOME** FIREARMS**, RIFLES,  OR  SHOTGUNS**  MUST  EITHER  BE
44 STORED  WITH A GUN LOCKING DEVICE OR IN A SAFE STORAGE DEPOSITORY OR NOT
45 BE LEFT OUTSIDE THE IMMEDIATE POSSESSION AND CONTROL  OF  THE  OWNER  OR
46 OTHER  LAWFUL  POSSESSOR IF A CHILD **UNDER THE AGE OF EIGHTEEN** RESIDES IN
47 THE HOME OR IS PRESENT, OR IF THE OWNER  OR  POSSESSOR  RESIDES  WITH  A
48 PERSON  PROHIBITED FROM POSSESSING A FIREARM UNDER STATE OR FEDERAL LAW.
49 FIREARMS SHOULD BE STORED [~~UNLOADED AND LOCKED~~] **BY REMOVING THE AMMUNI-**
50 **TION  FROM AND SECURELY LOCKING SUCH FIREARM** IN A LOCATION SEPARATE FROM
51 AMMUNITION. LEAVING FIREARMS ACCESSIBLE TO A CHILD OR  OTHER  PROHIBITED
52 PERSON  MAY SUBJECT YOU TO IMPRISONMENT, FINE, OR BOTH. **WHEN STORED IN A**
53 **VEHICLE OUTSIDE THE OWNER'S IMMEDIATE POSSESSION OR  CONTROL,  FIREARMS,**
54 **RIFLES,  AND  SHOTGUNS  MUST  BE  STORED  IN AN APPROPRIATE SAFE STORAGE**
55 **DEPOSITORY AND OUT OF SIGHT FROM OUTSIDE OF THE VEHICLE.**

1  (c) any other information necessary to ensure such licensee is aware
2  of their responsibilities as a license holder.
3    Nothing in this subdivision shall be deemed to affect, impair or
4  supersede any special or local law relating to providing notice regard-
5  ing the safe storage of rifles, shotguns or firearms.
6    19. Prior to the issuance or renewal of a license under paragraph (f)
7  of subdivision two of this section, issued or renewed on or after the
8  effective date of this subdivision, an applicant shall complete an
9  in-person live firearms safety course conducted by a duly authorized
10  instructor with curriculum approved by the division of criminal justice
11  services and the superintendent of state police, and meeting the follow-
12  ing requirements: (a) a minimum of sixteen hours of in-person live
13  curriculum approved by the division of criminal justice services and the
14  superintendent of state police, conducted by a duly authorized instruc-
15  tor approved by the division of criminal justice services, and shall
16  include but not be limited to the following topics: (i) general firearm
17  safety; (ii) safe storage requirements and general secure storage best
18  practices; (iii) state and federal gun laws; (iv) situational awareness;
19  (v) conflict de-escalation; (vi) best practices when encountering law
20  enforcement; (vii) the statutorily defined sensitive places in subdivi-
21  sion two of section 265.01-e of this chapter and the restrictions on
22  possession on restricted places under section 265.01-d of this chapter;
23  (viii) conflict management; (ix) use of deadly force; (x) suicide
24  prevention; and (xi) the basic principles of marksmanship; and (b) a
25  minimum of two hours of a live-fire range training course. The applicant
26  shall be required to demonstrate proficiency by scoring a minimum of
27  eighty percent correct answers on a written test for the curriculum
28  under paragraph (a) of this subdivision and the proficiency level deter-
29  mined by the rules and regulations promulgated by the division of crimi-
30  nal justice services and the superintendent of state police for the
31  live-fire range training under paragraph (b) of this subdivision. Upon
32  demonstration of such proficiency, a certificate of completion shall be
33  issued to such applicant in the applicant's name and endorsed and
34  affirmed under the penalties of perjury by such duly authorized instruc-
35  tor. An applicant required to complete the training required herein
36  prior to renewal of a license issued prior to the effective date of this
37  subdivision shall only be required to complete such training for the
38  first renewal of such license after such effective date.
39    § 24. Subdivisions 11 and 12 of section 265.00 of the penal law are
40  amended to read as follows:
41    11. "Rifle" means a weapon designed or redesigned, made or remade, and
42  intended to be fired from the shoulder and designed or redesigned and
43  made or remade to use the energy of the explosive [in a fixed metallic
44  cartridge] to fire only a single projectile through a rifled bore for
45  each single pull of the trigger using either: (a) fixed metallic
46  cartridge; or (b) each projectile and explosive charge are loaded indi-
47  vidually for each shot discharged. In addition to common, modern usage,
48  rifles include those using obsolete ammunition not commonly available in
49  commercial trade, or that load through the muzzle and fire a single
50  projectile with each discharge, or loading, including muzzle loading
51  rifles, flintlock rifles, and black powder rifles.
52    12. "Shotgun" means a weapon designed or redesigned, made or remade,
53  and intended to be fired from the shoulder and designed or redesigned
54  and made or remade to use the energy of the explosive [in a fixed shot-
55  gun shell] to fire through a smooth or rifled bore either a number of
56  ball shot or a single projectile for each single pull of the trigger

1  **using either: (a) a fixed shotgun shell; or (b) a projectile or number**
2  **of ball shot and explosive charge are loaded individually for each shot**
3  **discharged. In addition to common, modern usage, shotguns include those**
4  **using obsolete ammunition not commonly available in commercial trade, or**
5  **that load through the muzzle and fires ball shot with each discharge, or**
6  **loading, including muzzle loading shotguns, flintlock shotguns, and**
7  **black powder shotguns.**
8      § 25. Severability. If any clause, sentence, paragraph or section of
9  this act shall be adjudged by any court of competent jurisdiction to be
10  invalid, the judgment shall not affect, impair or invalidate the remain-
11  der thereof, but shall be confined in its operation to the clause,
12  sentence, paragraph or section thereof directly involved in the contro-
13  versy in which the judgment shall have been rendered.
14      § 26. This act shall take effect on the first of September next
15  succeeding the date on which it shall have become a law; provided,
16  however:
17      (a) the amendments to subdivision 1 and subdivision 4-b of section
18  400.00 of the penal law made by section one of this act shall apply only
19  to licenses for which an application is made on or after the effective
20  date of this act;
21      (b) if chapter 208 of the laws of 2022 shall not have taken effect on
22  or before such date then the amendments made to paragraph (j) of subdi-
23  vision one of section 400.00 of the penal law made by section one of
24  this act shall take effect on the same date and in the same manner as
25  such chapter of the laws of 2022, takes effect;
26      (c) the amendments to sections 270.20, 270.21 and 270.22 of the penal
27  law made by sections eleven, twelve and thirteen of this act, the amend-
28  ments to section 396-eee of the general business law as amended by
29  section fourteen of this act, and the amendments to section 144-a of the
30  executive law as amended by section fifteen of this act, shall take
31  effect on the same date and in the same manner as chapter 210 of the
32  laws of 2022, takes effect;
33      (d) if chapter 207 of the laws of 2022 shall not have taken effect on
34  or before such date then the amendments to subdivision 11 of section
35  400.00 of the penal law made by section one of this act shall take
36  effect on the same date and in the same manner as such chapter of the
37  laws of 2022, takes effect;
38      (e) if chapter 212 of the laws of 2022 shall not have taken effect on
39  or before such date then the amendments to subdivision 2 of section
40  400.00 of the penal law made by section one of this act shall take
41  effect on the same date and in the same manner as such chapter of the
42  laws of 2022, takes effect;
43      (f) sections sixteen, seventeen, eighteen, nineteen, twenty, twenty-
44  one and twenty-two shall take effect July 15, 2023; and
45      (g) subdivision 4-a of section 400.00 of the penal law, as amended by
46  section one of this act, shall take effect April 1, 2023.