# STATE OF NEW YORK

_____

1

Extraordinary Session

# IN SENATE

July 1, 2022
_____

Introduced  by  Sens. STEWART-COUSINS, MYRIE, KAVANAGH -- (at request of
the Governor) -- read twice and ordered printed, and when  printed  to
be committed to the Committee on Rules

AN  ACT  to amend the penal law, the general business law, the executive
law, the civil practice law and rules and the state  finance  law,  in
relation to licensing and other provisions relating to firearms

*The  People of the State of New York, represented in Senate and Assem-
bly, do enact as follows:*

 1    Section 1. The section heading and subdivisions 1,  1-a,  2,  4,  4-a,
 2  4-b, 10 and 11 of section 400.00 of the penal law, subdivisions 1 and 10
 3  as  amended  by chapter 1 of the laws of 2013, paragraph (c) of subdivi-
 4  sion 1 as amended by chapter 60 of the laws of 2018,  paragraph  (j)  of
 5  subdivision 1 as amended by chapter 208 of the laws of 2022, subdivision
 6  1-a  as  added by section 2 of part N of chapter 55 of the laws of 2020,
 7  subdivision 2 as amended by chapter 212 of the laws of 2022, subdivision
 8  4 as amended by chapter 242 of the laws  of  2019,  subdivision  4-a  as
 9  added  by  chapter  233 of the laws of 1980, subdivision 4-b as added by
10  chapter 446 of the laws of 1997, paragraph  (c)  of  subdivision  10  as
11  added  by  chapter 212 of the laws of 2022, subdivision 11 as amended by
12  chapter 207 of the laws of 2022, are amended and a new  subdivision  4-c
13  is added to read as follows:
14  [~~Licenses  to carry, possess, repair and dispose of~~] *Licensing and other*
15  *provisions relating to* firearms.
16    1. Eligibility. No license shall be issued or renewed pursuant to this
17  section except by the licensing officer, and then  only  after  investi-
18  gation  and  finding  that  all statements in a proper application for a
19  license are true. No license shall be issued or renewed  except  for  an
20  applicant  (a)  twenty-one years of age or older, provided, however, that
21  where such applicant has  been  honorably  discharged  from  the  United
22  States  army,  navy,  marine  corps,  air  force  or coast guard, or the
23  national guard of the state of New York, no such age  restriction  shall

EXPLANATION--Matter in *italics* (underscored) is new; matter in brackets
[~~-~~] is old law to be omitted.

LBD12053-04-2

1  apply; (b) of good moral character**, which, for the purposes of this**
2  **article, shall mean having the essential character, temperament and**
3  **judgement necessary to be entrusted with a weapon and to use it only in**
4  **a manner that does not endanger oneself or others**; (c) who has not been
5  convicted anywhere of a felony or a serious offense or who is not the
6  subject of an outstanding warrant of arrest issued upon the alleged
7  commission of a felony or serious offense; (d) who is not a fugitive
8  from justice; (e) who is not an unlawful user of or addicted to any
9  controlled substance as defined in section 21 U.S.C. 802; (f) who being
10 an alien (i) is not illegally or unlawfully in the United States or (ii)
11 has not been admitted to the United States under a nonimmigrant visa
12 subject to the exception in 18 U.S.C. 922(y)(2); (g) who has not been
13 discharged from the Armed Forces under dishonorable conditions; (h) who,
14 having been a citizen of the United States, has not renounced his or her
15 citizenship; (i) who has stated whether he or she has ever suffered any
16 mental illness; (j) who has not been involuntarily committed to a facil-
17 ity under the jurisdiction of an office of the department of mental
18 hygiene pursuant to article nine or fifteen of the mental hygiene law,
19 article seven hundred thirty or section 330.20 of the criminal procedure
20 law **or substantially similar laws of any other state**, section four
21 hundred two or five hundred eight of the correction law, section 322.2
22 or 353.4 of the family court act, has not been civilly confined in a
23 secure treatment facility pursuant to article ten of the mental hygiene
24 law, or has not been the subject of a report made pursuant to section
25 9.46 of the mental hygiene law; (k) who has not had a license revoked or
26 who is not under a suspension or ineligibility order issued pursuant to
27 the provisions of section 530.14 of the criminal procedure law or
28 section eight hundred forty-two-a of the family court act; (l) in the
29 county of Westchester, who has successfully completed a firearms safety
30 course and test as evidenced by a certificate of completion issued in
31 his or her name and endorsed and affirmed under the penalties of perjury
32 by a duly authorized instructor, except that: (i) persons who are honor-
33 ably discharged from the United States army, navy, marine corps or coast
34 guard, or of the national guard of the state of New York, and produce
35 evidence of official qualification in firearms during the term of
36 service are not required to have completed those hours of a firearms
37 safety course pertaining to the safe use, carrying, possession, mainte-
38 nance and storage of a firearm; [~~and~~] (ii) persons who were licensed to
39 possess a pistol or revolver prior to the effective date of this para-
40 graph are not required to have completed a firearms safety course and
41 test**, provided, however, persons with a license issued under paragraph**
42 **(f) of subdivision two of this section prior to the effective date of**
43 **the laws of two thousand twenty-two which amended this paragraph shall**
44 **be required to complete the training required by subdivision nineteen of**
45 **this section prior to the recertification of such license; and (iii)**
46 **persons applying for a license under paragraph (f) of subdivision two of**
47 **this section on or after the effective date of the chapter of the laws**
48 **of two thousand twenty-two which amended this paragraph who shall be**
49 **required to complete the training required under subdivision nineteen of**
50 **this section for such license**; (m) who has not had a guardian appointed
51 for him or her pursuant to any provision of state law, based on a deter-
52 mination that as a result of marked subnormal intelligence, mental
53 illness, **incompetency,** incapacity, condition or disease, he or she lacks
54 the mental capacity to contract or manage his or her own affairs; [~~and~~
55 ~~(n) concerning whom no good cause exists for the denial of the license.~~]
56 **(n) for a license issued under paragraph (f) of subdivision two of this**

1  section, that the applicant has not been convicted within five years of
2  the date of the application of any of the following: (i)   assault   in
3  the   third  degree, as defined in section 120.00 of this chapter; (ii)
4  misdemeanor driving while intoxicated, as  defined  in  section  eleven
5  hundred ninety-two of the vehicle and traffic law; or (iii) menacing, as
6  defined  in section 120.15 of this chapter; and (o) for a license issued
7  under paragraph (f) of subdivision two of this  section,  the  applicant
8  shall  meet  in  person with the licensing officer for an interview and
9  shall, in addition to any other information or  forms  required  by  the
10 license application submit to the licensing officer the following infor-
11 mation:   (i)   names  and  contact  information  for   the  applicant's
12 current  spouse,  or  domestic  partner, any other adults residing in the
13 applicant's home, including any adult children  of  the  applicant,  and
14 whether or not there are minors residing, full time or part time, in the
15 applicant's home; (ii)  names  and contact information of no less than
16 four character references who  can attest to the    applicant's    good
17 moral  character and that such applicant has not engaged in any acts, or
18 made any statements  that suggest they are likely to engage  in  conduct
19 that  would result in harm to themselves or others; (iii) certification
20 of completion of the training required in subdivision nineteen  of  this
21 section; (iv) a  list  of former and current social media accounts  of
22 the applicant from the past three years to  confirm  the  information
23 regarding  the  applicants character and conduct as required in subpara-
24 graph (ii) of this paragraph; and (v) such other information required by
25 the  licensing  officer that is reasonably necessary and related to the
26 review of the licensing application.
27   **1-a.**  No  person shall engage in the business of gunsmith or dealer in
28 firearms unless licensed pursuant  to  this  section.  An  applicant  to
29 engage  in  such  business shall also be a citizen of the United States,
30 more than twenty-one years of age and **shall be required to**  maintain  a
31 place of business in the city or county where the license is issued. For
32 such  business,  if  the applicant is a firm or partnership, each member
33 thereof shall comply with all of  the  requirements  set  forth  in  this
34 subdivision  and if the applicant is a corporation, each officer thereof
35 shall so comply.
36   [~~1-a.~~] **1-b.** For purposes of subdivision one of this  section,  serious
37 offense shall include an offense in any jurisdiction or the former penal
38 law  that includes all of the essential elements of a serious offense as
39 defined by subdivision seventeen of  section  265.00  of  this  chapter.
40 Nothing in this subdivision shall preclude the denial of a license based
41 on  the  commission  of,  arrest  for or conviction of an offense in any
42 other jurisdiction which does not include all of the essential  elements
43 of a serious offense.
44   2.  Types  of  licenses.  A license for gunsmith or dealer in firearms
45 shall be issued to engage in such business. A license for a semiautomat-
46 ic rifle, other than an assault weapon or disguised gun, shall be issued
47 to purchase or take possession of such a [~~firearm~~] **semiautomatic  rifle**
48 when such transfer of ownership occurs on or after the effective date of
49 [~~the~~]  chapter **two hundred twelve** of the laws of two thousand twenty-two
50 that amended this subdivision. A license for a pistol or revolver, other
51 than an assault weapon or a disguised gun, shall be issued to  (a)  have
52 and  possess  in  his dwelling by a householder; (b) have and possess in
53 his place of business by a merchant or storekeeper; (c) have  and  carry
54 concealed  while so employed by a messenger employed by a banking insti-
55 tution or express company; (d) have and carry concealed by a justice  of
56 the  supreme  court in the first or second judicial departments, or by a

1  judge of the New York city civil court or the  New  York  city  criminal
2  court; (e) have  and  carry  concealed  while so employed by a regular
3  employee of an institution of the state, or of any county, city, town or
4  village,  under  control  of a commissioner of correction of the city or
5  any warden, superintendent or head keeper of any state prison,  peniten-
6  tiary,  workhouse, county jail or other institution for the detention of
7  persons convicted or accused of crime or held as witnesses  in  criminal
8  cases,  provided that application is made therefor by such commissioner,
9  warden, superintendent or head keeper; (f) have  and  carry  concealed,
10 without  regard  to  employment  or  place  of possession **subject to the**
11 **restrictions of state and federal law**, by any person [~~when proper  cause~~
12 ~~exists  for  the  issuance  thereof~~]; and (g) have, possess, collect and
13 carry antique pistols which are defined as follows: (i) any single shot,
14 muzzle loading pistol with a matchlock, flintlock,  percussion  cap,  or
15 similar  type  of ignition system manufactured in or before [~~1898~~] **1898**,
16 which is not designed for using rimfire or conventional centerfire fixed
17 ammunition; and (ii) any replica of any pistol described in  clause  (i)
18 hereof if such replica[~~--~~]**:**
19   (1)  is  not  designed or redesigned for using rimfire or conventional
20 centerfire fixed ammunition, or
21   (2) uses rimfire or conventional centerfire fixed ammunition which  is
22 no  longer  manufactured  in  the United States and which is not readily
23 available in the ordinary channels of commercial trade.
24   4. Investigation. Before a license is issued or renewed,  there  shall
25 be an investigation of all statements required in the application by the
26 duly  constituted police authorities of the locality where such applica-
27 tion is made, including but not limited to such records as may be acces-
28 sible to the division of state police or division  of  criminal  justice
29 services  pursuant  to section 400.02 of this article. For that purpose,
30 the records of the  appropriate  office  of  the  department  of  mental
31 hygiene  concerning  previous or present mental illness of the applicant
32 shall be available for inspection by the investigating  officer  of  the
33 police  authority.  Where the applicant is domiciled in a foreign state,
34 the investigation shall include inquiry of the foreign state for records
35 concerning the previous or present mental illness of the applicant, and,
36 to the extent necessary for inspection by the investigating officer, the
37 applicant shall execute a waiver of confidentiality of  such  record  in
38 such form as may be required by the foreign state. In order to ascertain
39 any  previous  criminal record, the investigating officer shall take the
40 fingerprints and physical descriptive data  in  quadruplicate  of  each
41 individual by whom the application is signed and verified. Two copies of
42 such  fingerprints  shall  be  taken on standard fingerprint cards eight
43 inches square, and one copy may be taken on a  card  supplied  for  that
44 purpose  by the federal bureau of investigation; provided, however, that
45 in the case of a corporate applicant that  has  already  been  issued  a
46 dealer  in firearms license and seeks to operate a firearm dealership at
47 a second or subsequent location, the original fingerprints on file  may
48 be  used  to  ascertain  any criminal record in the second or subsequent
49 application unless any of the corporate officers have changed since  the
50 prior  application, in which case the new corporate officer shall comply
51 with procedures governing an initial application for such license.  When
52 completed,  one  standard card shall be forwarded to and retained by the
53 division of criminal justice services in the  executive  department,  at
54 Albany.  A search of the files of such division and written notification
55 of the results of the search **shall be forwarded** to  the  investigating
56 officer  **and**  shall  be made without unnecessary delay. Thereafter, such

1 division shall notify the licensing officer and the executive depart-
2 ment, division of state police, Albany, of any criminal record of the
3 applicant filed therein subsequent to the search of its files. A second
4 standard card, or the one supplied by the federal bureau of investi-
5 gation, as the case may be, shall be forwarded to that bureau at Wash-
6 ington with a request that the files of the bureau be searched and
7 notification of the results of the search be made to the investigating
8 police authority. Of the remaining two fingerprint cards, one shall be
9 filed with the executive department, division of state police, Albany,
10 within ten days after issuance of the license, and the other **shall**
11 remain on file with the investigating police authority. No such finger-
12 prints may be inspected by any person other than a peace officer, who is
13 acting pursuant to his or her special duties, or a police officer,
14 except on order of a judge or justice of a court of record either upon
15 notice to the licensee or without notice, as the judge or justice may
16 deem appropriate. Upon completion of the investigation, the police
17 authority shall report the results to the licensing officer without
18 unnecessary delay.
19   4-a. **Appeals from denial of an application, renewal, recertification**
20 **or license revocation. If an application for a license is denied, not**
21 **renewed, not recertified, or revoked, the licensing officer shall issue**
22 **a written notice to the applicant setting forth the reasons for such**
23 **denial. An applicant may, within ninety days of receipt of such notice,**
24 **request a hearing to appeal the denial to the appeals board created by**
25 **the division of criminal justice services and the superintendent of**
26 **state police. An individual may be represented by counsel at any appear-**
27 **ance before the appeals board and shall be afforded an opportunity to**
28 **present additional evidence in support of their application. The**
29 **commissioner of criminal justice services and the superintendent of**
30 **state police shall promulgate rules and regulations governing such**
31 **appeals process.**
32   **4-b.** Processing of license applications. Applications for licenses
33 shall be accepted for processing by the licensing officer at the time of
34 presentment. Except upon written notice to the applicant specifically
35 stating the reasons for any delay, in each case the licensing officer
36 shall act upon any application for a license pursuant to this section
37 within six months of the date of presentment of such an application to
38 the appropriate authority. Such delay may only be for good cause and
39 with respect to the applicant. In acting upon an application, the
40 licensing officer shall either deny the application for reasons specif-
41 ically and concisely stated in writing or grant the application and
42 issue the license applied for.
43   [~~4-b.~~] **4-c.** Westchester county firearms safety course certificate. In
44 the county of Westchester, at the time of application, the licensing
45 officer to which the license application is made shall provide a copy of
46 the safety course booklet to each license applicant. Before such license
47 is issued, such licensing officer shall require that the applicant
48 submit a certificate of successful completion of a firearms safety
49 course and test issued in his or her name and endorsed and affirmed
50 under the penalties of perjury by a duly authorized instructor.
51   10. License: expiration, certification and renewal. (a) Any license
52 for gunsmith or dealer in firearms and, in the city of New York, any
53 license to carry or possess a pistol or revolver, issued at any time
54 pursuant to this section or prior to the first day of July, nineteen
55 hundred sixty-three and not limited to expire on an earlier date fixed
56 in the license, shall**, except as otherwise provided in paragraph (d) of**

1  **this subdivision,** expire  not  more than three years after the date of
2  issuance. In  the  counties  of  Nassau,  Suffolk  and  Westchester,  any
3  license  to  carry  or  possess a pistol or revolver, issued at any time
4  pursuant  to  this  section  or prior to the first day of July, nineteen
5  hundred sixty-three and not limited to expire on an earlier  date  fixed
6  in  the license, shall expire not more than five years after the date of
7  issuance; however, in the county of Westchester, any such license  shall
8  be  certified  prior  to the first day of April, two thousand, in accord-
9  ance with a schedule to be contained in regulations promulgated  by  the
10 commissioner  of  the  division  of criminal justice services, and every
11 such license shall**, except as otherwise provided  in  paragraph  (d)  of**
12 **this  subdivision,**  be  recertified  every  five  years  thereafter. For
13 purposes of this section certification  shall  mean  that  the  licensee
14 shall  provide  to the licensing officer the following information only:
15 current name, date of birth, current address, and the make, model, cali-
16 ber and serial number of all firearms currently possessed. Such  certif-
17 ication  information  shall be filed by the licensing officer in the same
18 manner as an amendment. Elsewhere than in the city of New York  and  the
19 counties  of  Nassau,  Suffolk  and Westchester, any license to carry or
20 possess a pistol or revolver,  issued  at  any  time  pursuant  to  this
21 section  or prior to the first day of July, nineteen hundred sixty-three
22 and not previously revoked or cancelled, shall be in  force  and  effect
23 until  revoked  as herein provided. Any license not previously cancelled
24 or revoked shall remain in full force and effect for thirty days  beyond
25 the  stated  expiration date on such license. Any application to renew a
26 license that has not previously expired, been revoked or cancelled shall
27 thereby extend the term of the license until disposition of the applica-
28 tion by the licensing officer. In the case of a license for gunsmith  or
29 dealer  in  firearms,  in  counties having a population of less than two
30 hundred thousand inhabitants,  photographs  and  fingerprints  shall  be
31 submitted on original applications and upon renewal thereafter [~~only~~] at
32 [~~six~~] **three**  year  intervals.  Upon satisfactory proof that a currently
33 valid original license has been despoiled,  lost  or  otherwise  removed
34 from  the  possession  of  the licensee and upon application containing an
35 additional photograph of the licensee, the licensing officer shall issue
36 a duplicate license.
37   (b) All licensees shall be recertified to the division of state police
38 every five years thereafter**, except as otherwise provided  in  paragraph**
39 **(d) of this subdivision**. Any license issued before the effective date of
40 the  chapter of the laws of two thousand thirteen which added this para-
41 graph shall be recertified by the licensee on or before January  thirty-
42 first,  two  thousand eighteen, and not less than one year prior to such
43 date, the state police shall send a notice to all  license  holders  who
44 have  not  recertified  by such time. Such recertification shall be in a
45 form as approved by the superintendent  of  state  police,  which  shall
46 request the license holder's name, date of birth, gender, race, residen-
47 tial address, social security number, firearms possessed by such license
48 holder,  email address at the option of the license holder and an affir-
49 mation that such  license  holder  is  not  prohibited  from  possessing
50 firearms.  The form may be in an electronic form if so designated by the
51 superintendent of state police. Failure to  recertify  shall  act  as  a
52 revocation  of  such license. If the New York state police discover as a
53 result of the recertification process that a licensee failed to  provide
54 a  change  of  address,  the New York state police shall not require the
55 licensing officer to revoke such license.

1   (c) A license to purchase or take possession of a semiautomatic rifle
2   as defined in subdivision two of this section shall be recertified to
3   the applicable licensing officer every five years following the issuance
4   of such license. Failure to renew such a license shall be a violation
5   punishable by a fine not to exceed two hundred fifty dollars, and such
6   failure to renew shall be considered by the licensing officer when
7   reviewing future license applications by the license holder pursuant to
8   this chapter.
9   **(d) Licenses issued under paragraph (f) of subdivision two of this**
10  **section shall be recertified or renewed in the same form and manner as**
11  **otherwise required by this subdivision, provided however, that such**
12  **licenses shall be recertified or renewed every three years following the**
13  **issuance of such license. For licenses issued prior to the effective**
14  **date of this paragraph that were issued more than three years prior to**
15  **such date, or will expire in less than one year from such date shall be**
16  **recertified or renewed within one year of such date.**
17  11. License: revocation and suspension. (a) The conviction of a licen-
18  see anywhere of a felony or serious offense or a licensee at any time
19  becoming ineligible to obtain a license [under this section shall oper-
20  ate as], **including engaging in conduct that would have resulted in the**
21  **denial of a license, under this section shall operate as or be grounds**
22  **for,** a revocation of the license. A license may be revoked or suspended
23  as provided for in section 530.14 of the criminal procedure law or
24  section eight hundred forty-two-a of the family court act. Except for a
25  license issued pursuant to section 400.01 of this article, a license may
26  be revoked and cancelled at any time in the city of New York, and in the
27  counties of Nassau and Suffolk, by the licensing officer, and elsewhere
28  than in the city of New York by any judge or justice of a court of
29  record; a license issued pursuant to section 400.01 of this article may
30  be revoked and cancelled at any time by the licensing officer or any
31  judge or justice of a court of record. A license to engage in the busi-
32  ness of dealer may be revoked or suspended for any violation of the
33  provisions of article thirty-nine-BB of the general business law. The
34  official revoking a license shall give written notice thereof without
35  unnecessary delay to the executive department, division of state police,
36  Albany, and shall also notify immediately the duly constituted police
37  authorities of the locality. **The licensing officer shall revoke any**
38  **license issued in which an applicant knowingly made a material false**
39  **statement on the application. Notice of a revocation under this subdi-**
40  **vision shall be issued in writing and shall include the basis for the**
41  **determination, which shall be supported by a preponderance of the**
42  **evidence. Such notice shall also include information regarding the abil-**
43  **ity to appeal such decision in accordance with subdivision four-a of**
44  **this section.**
45  (b) Whenever the director of community services or his or her designee
46  makes a report pursuant to section 9.46 of the mental hygiene law, the
47  division of criminal justice services shall convey such information,
48  whenever it determines that the person named in the report possesses a
49  license issued pursuant to this section, to the appropriate licensing
50  official, who shall issue an order suspending or revoking such license.
51  (c) In any instance in which a person's license is suspended or
52  revoked under paragraph (a) or (b) of this subdivision, such person
53  shall surrender such license to the appropriate licensing official and
54  any and all firearms, rifles, or shotguns owned or possessed by such
55  person shall be surrendered to an appropriate law enforcement agency as
56  provided in subparagraph (f) of paragraph one of subdivision a of

1  section 265.20 of this chapter. In  the  event  such  license,  firearm,
2  shotgun,  or  rifle  is not surrendered, such items shall be removed and
3  declared a nuisance and any  police  officer  or  peace  officer  acting
4  pursuant  to  his  or her special duties is authorized to remove any and
5  all such weapons.
6      § 2. Section 837 of the executive law  is  amended  by  adding  a  new
7  subdivision 23 to read as follows:
8      23.  (a)  In  conjunction with the superintendent of the state police,
9  promulgate policies and procedures with  regard  to  standardization  of
10  firearms  safety training required under subdivision nineteen of section
11  400.00 of the penal law, which shall  include  the  approval  of  course
12  materials and promulgation of proficiency standards for live fire train-
13  ing; and
14     (b)  In conjunction with the superintendent of state police, create an
15  appeals board for the purpose of hearing appeals as provided in subdivi-
16  sion four-a of section 400.00 of the penal law and promulgate rules  and
17  regulations governing such appeals.
18     § 3. The executive law is amended by adding a new section 235 to read
19  as follows:
20     § 235. Firearms safety training, and licensing appeals. 1. The  super-
21  intendent shall, in conjunction with the commissioner of the division of
22  criminal  justice  services,  promulgate  and  procedures  with
23  regard to standardization of firearms  safety  training  required  under
24  subdivision  nineteen  of  section  400.00 of the penal law, which shall
25  include the approval of course materials and the promulgation of  profi-
26  ciency standards for live fire training.
27     2.  The  superintendent,  in  conjunction with the commissioner of the
28  division of criminal justice services, shall create an appeals board for
29  the purpose of hearing appeals  as  provided  in  subdivision  four-a  of
30  section  400.00  of  the  penal law and promulgate rules and regulations
31  governing such appeals.
32     § 4. The penal law is amended by adding a new section 265.01-e to read
33  as follows:
34  § 265.01-e Criminal possession of a  firearm,  rifle  or  shotgun  in  a
35              sensitive location.
36     1.  A  person  is guilty of criminal possession of a firearm, rifle or
37  shotgun in a sensitive location when such person  possesses  a  firearm,
38  rifle  or shotgun in or upon a sensitive location, and such person knows
39  or reasonably should know such location is a sensitive location.
40     2. For the purposes of this section, a sensitive location shall mean:
41     (a) any place owned or under the control of federal, state  or  local
42  government,  for  the  purpose  of  government administration, including
43  courts;
44     (b) any location providing  health,  behavioral  health,  or  chemical
45  dependance care or services;
46     (c) any place of worship or religious observation;
47     (d) libraries, public playgrounds, public parks, and zoos;
48     (e)  the location of any program licensed, regulated, certified, fund-
49  ed, or approved by the office  of  children  and  family  services  that
50  provides  services  to  children,  youth,  or  young adults, any legally
51  exempt childcare provider; a childcare program for  which  a  permit  to
52  operate  such  program  has  been issued by the department of health and
53  mental hygiene pursuant to the health code of the city of New York;
54     (f) nursery schools, preschools, and summer camps;

1  (g) the location of any program licensed, regulated, certified, oper-
2  ated, or funded  by the office for people with developmental disabili-
3  ties;
4  (h)  the location of any program licensed, regulated, certified, oper-
5  ated, or funded by office of addiction services and supports;
6  (i) the location of any program licensed, regulated, certified, oper-
7  ated, or funded by the office of mental health;
8  (j)  the location of any program licensed, regulated, certified, oper-
9  ated, or funded by the office of temporary and disability assistance;
10  (k) homeless shelters, runaway homeless youth shelters, family shel-
11  ters, shelters for adults, domestic violence shelters, and emergency
12  shelters, and residential programs for victims of domestic violence;
13  (l) residential settings licensed, certified, regulated, funded, or
14  operated by the department of health;
15  (m) in or upon any building or grounds, owned or leased, of any educa-
16  tional institutions, colleges and universities, licensed private career
17  schools, school districts, public schools, private schools licensed
18  under article one hundred one of the education law, charter schools,
19  non-public schools, board of cooperative educational services, special
20  act schools, preschool special education programs, private residential
21  or non-residential schools for the education of students with disabili-
22  ties, and any state-operated or state-supported schools;
23  (n)  any place, conveyance, or vehicle used for public transportation
24  or public transit, subway cars, train cars, buses, ferries, railroad,
25  omnibus, marine or aviation transportation; or any facility used for or
26  in connection with service in the transportation of passengers,
27  airports, train stations, subway and rail stations, and bus terminals;
28  (o) any establishment issued a license for on-premise consumption
29  pursuant to article four, four-A, five, or six of the alcoholic beverage
30  control law where alcohol is consumed and any establishment licensed
31  under article four of the cannabis law for on-premise consumption;
32  (p) any place used for the performance, art entertainment, gaming, or
33  sporting events such as theaters, stadiums, racetracks, museums, amuse-
34  ment parks, performance venues, concerts, exhibits, conference centers,
35  banquet halls, and gaming facilities and video lottery terminal facili-
36  ties as licensed by the gaming commission;
37  (q) any location being used as a polling place;
38  (r) any public sidewalk or other public area restricted from general
39  public access for a limited time or special event that has been issued a
40  permit for such time or event by a governmental entity, or subject to
41  specific, heightened law enforcement protection, or has otherwise had
42  such access restricted by a governmental entity, provided such location
43  is identified as such by clear and conspicuous signage;
44  (s) any gathering of individuals to collectively express their consti-
45  tutional rights to protest or assemble;
46  (t) the area commonly known as Times Square, as such area is deter-
47  mined and identified by the city of New York; provided such area shall
48  be clearly and conspicuously identified with signage.
49  3. This section shall not apply to:
50  (a) consistent with federal law, law enforcement who qualify to carry
51  under the federal law enforcement officers safety act, 18 U.S.C. 926C;
52  (b) persons who are police officers as defined in subdivision thirty-
53  four of section 1.20 of the criminal procedure law;
54  (c) persons who are designated peace officers by section 2.10 of the
55  criminal procedure law;

S. 1                                    10

1  (d) persons who were employed as police officers as defined in  subdi-
2  vision thirty-four of section 1.20 of the criminal procedure law but are
3  retired;
4  (e) security guards as defined by and registered under article seven-A
5  of the  general  business  law,  who  have  been  granted  a  special  armed
6  registration card, while at the location of their employment and  during
7  their work hours as such a security guard;
8  (f) active-duty military personnel;
9  (g)  persons  licensed  under  paragraph  (c),  (d)  or  (e)  of  subdivision
10 two of section 400.00 of this chapter while in the course of his or  her
11 official duties;
12 (h)  a  government  employee under the express written consent of such
13 employee's supervising government entity for  the  purposes  of  natural
14 resource protection and management;
15 (i)  persons  lawfully  engaged  in hunting activity, including hunter
16 education training; or
17 (j) persons operating a program in a sensitive location out  of  their
18 residence,  as  defined  by  this section, which is licensed, certified,
19 authorized, or funded by the state or a municipality, so  long  as  such
20 possession  is in compliance with any rules or regulations applicable to
21 the operation of such program and use or storage of firearms.
22 Criminal possession of a firearm, rifle  or  shotgun  in  a  sensitive
23 location is a class E felony.
24 § 5. The penal law is amended by adding a new section 265.01-d to read
25 as follows:
26 § 265.01-d Criminal possession of a weapon in a restricted location.
27 1.  A  person  is  guilty  of  criminal  possession  of  a weapon in a
28 restricted location when such person  possesses  a  firearm,  rifle,  or
29 shotgun  and enters into or remains on or in private property where such
30 person knows or reasonably should know that the owner or lessee of  such
31 property  has  not  permitted  such  possession by clear and conspicuous
32 signage indicating that the carrying of firearms, rifles, or shotguns on
33 their property is permitted or has otherwise given express consent.
34 2. This section shall not apply to:
35 (a) police officers as defined in section 1.20 of the criminal  proce-
36 dure law;
37 (b)  persons  who  are designated peace officers as defined in section
38 2.10 of the criminal procedure law;
39 (c) persons who were employed as police officers as defined in section
40 1.20 of the criminal procedure law, but are retired;
41 (d) security guards as defined by and registered under article seven-A
42 of the general business law who has been granted a special armed  regis-
43 tration card, while at the location of their employment and during their
44 work hours as such a security guard;
45 (e) active-duty military personnel;
46 (f)  persons  licensed  under paragraph (c), (d) or (e) of subdivision
47 two of section 400.00 of this chapter while in the course of his or  her
48 official duties; or
49 (g) persons lawfully engaged in hunting activity.
50 Criminal  possession of a weapon in a restricted location is a class E
51 felony.
52 § 6. Subdivision a of section 265.20 of the penal law  is  amended  by
53 adding a new paragraph 3-a to read as follows:
54 3-a.  Possession  of a pistol or revolver by a person undergoing live-
55 fire range training pursuant to section 400.00  of  this  chapter  while

1  such person is undergoing such training and is supervised by a duly
2  authorized instructor.
3      § 7. Section 400.02 of the penal law, as amended by chapter 244 of the
4  laws of 2019, is amended to read as follows:
5  § 400.02 Statewide license and record database.
6      1. There shall be a statewide license and record database which shall
7  be created and maintained by the division of state police the cost of
8  which shall not be borne by any municipality. Records assembled or
9  collected for purposes of inclusion in such database shall not be
10 subject to disclosure pursuant to article six of the public officers
11 law. [Records] All records containing granted license applications from
12 all licensing authorities shall be [periodically] monthly checked by the
13 division of criminal justice services in conjunction with the division
14 of state police against criminal conviction, criminal indictment, mental
15 health, extreme risk protection orders, orders of protection, and all
16 other records as are necessary to determine their continued accuracy as
17 well as whether an individual is no longer a valid license holder. The
18 division of criminal justice services shall also check pending applica-
19 tions made pursuant to this article against such records to determine
20 whether a license may be granted. All state and local agencies shall
21 cooperate with the division of criminal justice services, as otherwise
22 authorized by law, in making their records available for such checks.
23 The division of criminal justice services, upon determining that an
24 individual is ineligible to possess a license, or is no longer a valid
25 license holder, shall notify the applicable licensing official of such
26 determination and such licensing official shall not issue a license or
27 shall revoke such license and any weapons owned or possessed by such
28 individual shall be removed consistent with the provisions of subdivi-
29 sion eleven of section 400.00 of this article. Local and state law
30 enforcement shall have access to such database in the performance of
31 their duties. Records assembled or collected for purposes of inclusion
32 in the database established by this section shall be released pursuant
33 to a court order.
34     2. There shall be a statewide license and record database specific for
35 ammunition sales which shall be created and maintained by the division
36 of state police the cost of which shall not be borne by any municipality
37 no later than thirty days upon designating the division of state police
38 as the point of contact to perform both firearm and ammunition back-
39 ground checks under federal and state law. Records assembled or
40 collected for purposes of inclusion in such database shall not be
41 subject to disclosure pursuant to article six of the public officers
42 law. All records containing granted license applications from all
43 licensing authorities shall be monthly checked by the division of crimi-
44 nal justice services in conjunction with the division of state police
45 against criminal conviction, criminal indictments, mental health,
46 extreme risk protection orders, orders of protection, and all other
47 records as are necessary to determine their continued accuracy as well
48 as whether an individual is no longer a valid license holder. The divi-
49 sion of criminal justice services shall also check pending applications
50 made pursuant to this article against such records to determine whether
51 a license may be granted. All state and local agencies shall cooperate
52 with the division of criminal justice services, as otherwise authorized
53 by law, in making their records available for such checks. No later than
54 thirty days after the superintendent of the state police certifies that
55 the statewide license and record database established pursuant to this
56 section and the statewide license and record database established for

1  ammunition sales are operational for the purposes of this section, a
2  dealer in firearms licensed pursuant to section 400.00 of this article,
3  a seller of ammunition as defined in subdivision twenty-four of section
4  265.00 of this chapter shall not transfer any ammunition to any other
5  person who is not a dealer in firearms as defined in subdivision nine of
6  such section 265.00 or a seller of ammunition as defined in subdivision
7  twenty-four of section 265.00 of this chapter, unless:
8     (a) before the completion of the transfer, the licensee or seller
9  contacts the statewide license and record database and provides the
10  database with information sufficient to identify such dealer or seller
11  transferee based on information on the transferee's identification docu-
12  ment as defined in paragraph (c) of this subdivision, as well as the
13  amount, caliber, manufacturer's name and serial number, if any, of such
14  ammunition;
15    (b) the licensee or seller is provided with a unique identification
16  number; and
17    (c) the transferor has verified the identity of the transferee by
18  examining a valid state identification document of the transferee issued
19  by the department of motor vehicles or if the transferee is not a resi-
20  dent of the state of New York, a valid identification document issued by
21  the transferee's state or country of residence containing a photograph
22  of the transferee.
23    § 8. Subdivisions 2 and 6 of section 400.03 of the penal law, as added
24  by chapter 1 of the laws of 2013, are amended to read as follows:
25    2. Any seller of ammunition or dealer in firearms shall keep [a record
26  book] either an electronic record, or dataset, or an organized
27  collection of structured information, or data, typically stored elec-
28  tronically in a computer system approved as to form by the superinten-
29  dent of state police. In the record [book] shall be entered at the time
30  of every transaction involving ammunition the date, name, age, occupa-
31  tion and residence of any person from whom ammunition is received or to
32  whom ammunition is delivered, and the amount, calibre, manufacturer's
33  name and serial number, or if none, any other distinguishing number or
34  identification mark on such ammunition. [The record book shall be main-
35  tained on the premises mentioned and described in the license and shall
36  be open at all reasonable hours for inspection by any peace officer,
37  acting pursuant to his or her special duties, or police officer. Any
38  record produced pursuant to this section and any transmission thereof to
39  any government agency shall not be considered a public record for
40  purposes of article six of the public officers law.]
41    6. If the superintendent of state police certifies that background
42  checks of ammunition purchasers may be conducted through the national
43  instant criminal background check system or through the division of
44  state police once the division has been designated point of contact, use
45  of that system by a dealer or seller shall be sufficient to satisfy
46  subdivisions four and five of this section and such checks shall be
47  conducted through such system, provided that a record of such trans-
48  action shall be forwarded to the state police in a form determined by
49  the superintendent.
50    § 9. Section 265.45 of the penal law, as amended by chapter 133 of the
51  laws of 2019, is amended to read as follows:
52  § 265.45 Failure to safely store rifles, shotguns, and firearms in the
53               first degree.
54    1. No person who owns or is custodian of a rifle, shotgun or firearm
55  who resides with an individual who: (i) is under [sixteen] eighteen
56  years of age; (ii) such person knows or has reason to know is prohibited

1 from  possessing  a  rifle,  shotgun  or  firearm  pursuant  to  a  temporary  or
2 final  extreme  risk  protection  order  issued  under   article   sixty-three-A
3 of  the  civil  practice  law  and  rules  or  18  U.S.C.  §  922(g)  (1),  (4),  (8)
4 or  (9);  or  (iii)  such  person  knows  or  has  reason  to  know  is  prohibited
5 from  possessing  a  rifle,  shotgun  or  firearm  based  on  a  conviction  for  a
6 felony  or  a  serious  offense,  shall  store  or  otherwise  leave  such  rifle,
7 shotgun  or  firearm  out  of  his  or  her  immediate  possession  or  control
8 without  having  first  securely  locked  such  rifle,  shotgun  or  firearm  in
9 an  appropriate  safe  storage  depository  or  rendered  it  incapable  of  being
10 fired  by  use  of  a  gun  locking  device  appropriate  to  that  weapon.
11 **2. No person shall store or  otherwise  leave  a  rifle,  shotgun,  or**
12 **firearm out of his or her immediate possession or control inside a vehi-**
13 **cle without first removing the ammunition from and securely locking such**
14 **rifle, shotgun, or firearm in an appropriate safe storage depository out**
15 **of sight from outside of the vehicle.**
16 **3.** For  purposes  of  this  section  "safe  storage  depository"  shall  mean  a
17 safe  or  other  secure  container  which,  when  locked,  is  incapable  of  being
18 opened  without  the  key,  **keypad,**  combination  or  other  unlocking  mechanism
19 and  is  capable  of  preventing  an  unauthorized  person  from  obtaining
20 access  to  and  possession  of  the  weapon  contained  therein  **and  shall  be**
21 **fire, impact, and tamper resistant.**  Nothing  in  this  section  shall  be
22 deemed  to  affect,  impair  or  supersede  any  special  or  local  act  relating
23 to  the  safe  storage  of  rifles,  shotguns  or  firearms  which  impose  addi-
24 tional  requirements  on  the  owner  or  custodian  of  such  weapons.  **For the**
25 **purposes  of  subdivision  two  of  this  section,  a  glove  compartment  or**
26 **glove box shall not be considered an appropriate safe storage  deposito-**
27 **ry.**
28 **4.**  It  shall  not  be  a  violation  of  this  section  to  allow  a  person  less
29 than  [~~sixteen~~]  **eighteen**  years  of  age  access  to:  (i)  a  firearm,  rifle  or
30 shotgun  for  lawful  use  as  authorized  under  paragraph  seven  or  seven-e  of
31 subdivision  a  of  section  265.20  of  this  article,  or  (ii)  a  rifle  or
32 shotgun  for  lawful  use  as  authorized  by  article  eleven  of  the  environ-
33 mental  conservation  law  when  such  person  less  than  [~~sixteen~~]  **eighteen**
34 years  of  age  is  the  holder  of  a  hunting  license  or  permit  and  such  rifle
35 or  shotgun  is  used  in  accordance  with  such  law.
36 Failure  to  safely  store  rifles,  shotguns,  and  firearms  in  the  first
37 degree  is  a  class  A  misdemeanor.
38 §  10.  The  penal  law  is  amended  by  adding  a  new  section  400.30  to  read
39 as  follows:
40 **§ 400.30 Application.**
41 **Nothing in this article shall be construed to impair  or  in  any  way**
42 **prevent  the  enactment  or  application  of  any  local  law,  code,  ordinance,**
43 **rule or regulation that is more restrictive  than  any  requirement  set**
44 **forth in or established by this article.**
45 §  11.  Section  270.20  of  the  penal  law,  as  added  by  chapter  56  of  the
46 laws  of  1984,  and  subdivision  1  as  amended  by  chapter  317  of  the  laws  of
47 2001,  is  amended  to  read  as  follows:
48 §  270.20  Unlawful  wearing  of  [~~a~~]  body  [~~vest~~]  **armor**.
49 1.  A  person  is  guilty  of  the  unlawful  wearing  of  [~~a~~]  body  [~~vest~~]  **armor**
50 when  acting  either  alone  or  with  one  or  more  other  persons  he  commits
51 any  violent  felony  offense  defined  in  section  70.02  while  possessing  a
52 firearm,  rifle  or  shotgun  and  in  the  course  of  and  in  furtherance  of
53 such  crime  he  **or  she**  wears  [~~a~~]  body  [~~vest~~]  **armor**.
54 2.  For  the  purposes  of  this  section  [~~a~~]  "body  [~~vest~~]  **armor**"  means  [~~a~~
55 ~~bullet-resistant soft body armor providing, as a minimum  standard,  the~~
56 ~~level  of  protection  known  as  threat  level  I  which  shall  mean  at  least~~

1  seven layers of bullet-resistant material providing protection from
2  three shots of one hundred fifty-eight grain lead ammunition fired from
3  a .38 calibre handgun at a velocity of eight hundred fifty feet per
4  second] any product that is a personal protective body covering intended
5  to protect against gunfire, regardless of whether such product is to be
6  worn alone or is sold as a complement to another product or garment.
7    The unlawful wearing of [a] body [vest] armor is a class E felony.
8    § 12. Section 270.21 of the penal law, as added by chapter 210 of  the
9  laws of 2022, is amended to read as follows:
10  § 270.21 Unlawful purchase of [a] body [vest] armor.
11    A  person  is guilty of the unlawful purchase of [a] body [vest] armor
12  when, not being engaged or employed in  an  eligible  profession,  they
13  knowingly  purchase or take possession of [a] body [vest] armor, as such
14  term is defined in subdivision two of section 270.20  of  this  article.
15  This  section  shall  not  apply  to  individuals or entities engaged or
16  employed in eligible professions, which shall include police officers as
17  defined in section 1.20 of the criminal procedure law, peace officers as
18  defined in section 2.10 of the criminal procedure law, persons in  mili-
19  tary  service  in the state of New York or military or other service for
20  the United States, and such other professions designated by the  depart-
21  ment of state in accordance with section one hundred forty-four-a of the
22  executive law.
23    Unlawful  purchase  of  [a] body [vest] armor is a class A misdemeanor
24  for a first offense and a class E felony for any subsequent offense.
25    § 13. Section 270.22 of the penal law, as added by chapter 210 of  the
26  laws of 2022, is amended to read as follows:
27  § 270.22 Unlawful sale of [a] body [vest] armor.
28    A  person is guilty of the unlawful sale of [a] body [vest] armor when
29  they sell, exchange, give or dispose of [a] body [vest] armor,  as  such
30  term is defined in subdivision two of section 270.20 of this article, to
31  an  individual  whom  they  know  or reasonably should have known is not
32  engaged or employed in an eligible profession, as such term  is  defined
33  in section 270.21 of this article.
34    Unlawful  sale  of  [a] body [vest] armor is a class A misdemeanor for
35  the first offense and a class E felony for any subsequent offense.
36    § 14. Section 396-eee of the general business law, as added by chapter
37  210 of the laws of 2022, is amended to read as follows:
38    § 396-eee. Unlawful sale or delivery of body [vests] armor.  1.  No
39  person,  firm or corporation shall sell or deliver body [vests] armor to
40  any individual or entity not engaged or employed in an eligible  profes-
41  sion, and except as provided in subdivision [three] two of this section,
42  no  such sale or delivery shall be permitted unless the transferee meets
43  in person with the transferor to accomplish such sale or delivery.
44    2. The provisions of subdivision one of  this  section  regarding  in
45  person  sale  or  delivery shall not apply to purchases made by federal,
46  state, or local government agencies for the purpose of  furnishing  such
47  body [vests] armor to employees in eligible professions.
48    3.  For  the  purposes of this section, "body [vest] armor" shall have
49  the same meaning as defined in subdivision two of section 270.20 of  the
50  penal law.
51    4. Any person, firm or corporation that violate the provisions of this
52  section shall be guilty of a violation punishable by a fine in an amount
53  not  to  exceed  five  thousand  dollars  for the first offense and in an
54  amount not to exceed ten thousand dollars for any subsequent offense.
55    § 15. Section 144-a of the executive law, as added by chapter  210  of
56  the laws of 2022, is amended to read as follows:

1    § 144-a. Eligible professions for the purchase, sale, and use of body
2    [vests] armor. The secretary of state in consultation with the division
3    of criminal justice services, the division of homeland security and
4    emergency services, the department of corrections and community super-
5    vision, the division of the state police, and the office of general
6    services shall promulgate rules and regulations to establish criteria
7    for eligible professions requiring the use of [a] body [vest] armor, as
8    such term is defined in subdivision two of section 270.20 of the penal
9    law. Such professions shall include those in which the duties may expose
10   the individual to serious physical injury that may be prevented or miti-
11   gated by the wearing of [a] body [vest] armor. Such rules and regu-
12   lations shall also include a process by which an individual or entity
13   may request that the profession in which they engage be added to the
14   list of eligible professions, a process by which the department shall
15   approve such professions, and a process by which individuals and enti-
16   ties may present proof of engagement in eligible professions when
17   purchasing [a] body [vest] armor.
18   § 16. The executive law is amended by adding a new section 228 to read
19   as follows:
20   § 228. National instant criminal background checks. 1. (a) The divi-
21   sion is hereby authorized and directed to serve as a state point of
22   contact for implementation of 18 U.S.C. sec. 922 (t), all federal regu-
23   lations and applicable guidelines adopted pursuant thereto, and the
24   national instant criminal background check system for the purchase of
25   firearms and ammunition.
26   (b) Upon receiving a request from a licensed dealer pursuant to
27   section eight hundred ninety-six or eight hundred ninety-eight of the
28   general business law, the division shall initiate a background check by
29   (i) contacting the National Instant Criminal Background Check System
30   (NICS) or its successor to initiate a national instant criminal back-
31   ground check, and (ii) consulting the statewide firearms license and
32   records database established pursuant to subdivision three of this
33   section, in order to determine if the purchaser is a person described in
34   sections 400.00 and 400.03 of the penal law, or is prohibited by state
35   or federal law from possessing, receiving, owning, or purchasing a
36   firearm or ammunition.
37   2. (a) The division shall report the name, date of birth and physical
38   description of any person prohibited from possessing a firearm pursuant
39   to 18 U.S.C. sec. 922(g) or (n) to the national instant criminal back-
40   ground check system index, denied persons files.
41   (b) Information provided pursuant to this section shall remain privi-
42   leged and confidential, and shall not be disclosed, except for the
43   purpose of enforcing federal or state law regarding the purchase of
44   firearms or ammunition.
45   (c) Any background check conducted by the division, or delegated
46   authority, of any applicant for a permit, firearms identification card
47   license, ammunition sale, or registration, in accordance with the
48   requirements of section 400.00 of the penal law, shall not be considered
49   a public record and shall not be disclosed to any person not authorized
50   by law or this chapter to have access to such background check, includ-
51   ing the applicant. Any application for a permit, firearms identification
52   card, ammunition sale, or license, and any document reflecting the issu-
53   ance or denial of such permit, firearms identification card, or license,
54   and any permit, firearms identification card, license, certification,
55   certificate, form of register, or registration statement, maintained by
56   any state or municipal governmental agency, shall not be considered a

1  public record and shall not be disclosed to any person not authorized by
2  law to have access to such documentation, including the applicant,
3  except on the request of persons acting in their governmental capacities
4  for purposes of the administration of justice.
5    3. The division shall create and maintain a statewide firearms license
6  and records database which shall contain records held by the division
7  and any records that it is authorized to request from the division of
8  criminal justice services, office of court administration, New York
9  state department of health, New York state office of mental health, and
10 other local entities. Such database shall be used for the certification
11 and recertification of firearm permits under section 400.02 of the penal
12 law, assault weapon registration under subdivision sixteen-a of section
13 400.00 of the penal law, and ammunition sales under section 400.03 of
14 the penal law. Such database shall also be used to initiate a national
15 instant criminal background check pursuant to subdivision one of this
16 section upon request from a licensed dealer. The division may create and
17 maintain additional databases as needed to complete background checks
18 pursuant to the requirements of this section.
19   4. The superintendent shall promulgate a plan to coordinate background
20 checks for firearm and ammunition purchases pursuant to this section and
21 to require any person, firm or corporation that sells, delivers or
22 otherwise transfers any firearm or ammunition to submit a request to the
23 division in order to complete the background checks in compliance with
24 federal and state law, including the National Instant Criminal Back-
25 ground Check System (NICS), in New York state. Such plan shall include,
26 but shall not be limited to, the following features:
27   (a) The creation of a centralized bureau within the division to
28 receive and process all background check requests, which shall include a
29 contact center unit and an appeals unit. Staff may include but is not
30 limited to: bureau chief, supervisors, managers, different levels of
31 administrative analysts, appeals specialists and administrative person-
32 nel. The division shall employ and train such personnel to administer
33 the provisions of this section.
34   (b) Procedures for carrying out the duties under this section, includ-
35 ing hours of operation.
36   (c) An automated phone system and web-based application system,
37 including a toll-free telephone number and/or web-based application
38 option for any licensed dealer requesting a background check in order to
39 sell, deliver or otherwise transfer a firearm which shall be operational
40 every day that the bureau is open for business for the purpose of
41 responding to requests in accordance with this section.
42   5. (a) Each licensed dealer that submits a request for a national
43 instant criminal background check pursuant to this section shall pay a
44 fee imposed by the bureau for performing such background check. Such fee
45 shall be allocated to the background check fund established pursuant to
46 section ninety-nine-pp of the state finance law. The amount of the fee
47 shall not exceed the total amount of direct and indirect costs incurred
48 by the bureau in performing such background check.
49   (b) The bureau shall transmit all moneys collected pursuant to this
50 paragraph to the state comptroller, who shall credit the same to the
51 background check fund.
52   6. On January fifteenth of each calendar year, the bureau shall submit
53 a report to the governor, the temporary president of the senate, and the
54 speaker of the assembly concerning:

1  a.  the  number  of employees used by the bureau in the preceding year
2  for the  purpose  of  performing  background  checks  pursuant  to  this
3  section;
4  b.  the  number  of  background  check requests received and processed
5  during  the  preceding calendar year, including  the  number  of  "proceed"
6  responses and the number and reasons for denials;
7  c.  the  calculations  used to determine the amount of the fee imposed
8  pursuant to this paragraph.
9  7. Within sixty days of the effective date of this section, the super-
10  intendent  shall notify each licensed dealer holding  a  permit  to  sell
11  firearms  of  the  requirement  to  submit  a request to the division to
12  initiate a background check pursuant to this  section  as  well  as  the
13  following means to be used to apply for background checks:
14  i.  any  person, firm or corporation that sells, delivers or otherwise
15  transfers firearms shall obtain  a  completed  ATF  4473  form  from  the
16  potential  buyer  or  transferee  including name, date of birth, gender,
17  race, social security number, or other identification  numbers  of  such
18  potential  buyer or transferee and shall have inspected proper identifi-
19  cation including an identification containing a photograph of the poten-
20  tial buyer or transferee.
21  ii. it shall be unlawful for any person, in connection with the  sale,
22  acquisition  or  attempted acquisition of a firearm from any transferor,
23  to willfully make any false, fictitious oral or written statement or  to
24  furnish  or exhibit any false, fictitious, or misrepresented identifica-
25  tion that is intended or likely to deceive such transferor with  respect
26  to  any fact material to the lawfulness of the sale or other disposition
27  of such firearm under federal or state law. Any person who violates  the
28  provisions  of  this subparagraph shall be guilty of a class A misdemea-
29  nor.
30  8. Any potential buyer or transferee shall have thirty days to  appeal
31  the denial of a background check, using a form established by the super-
32  intendent.  Upon receipt of an appeal, the division shall provide such
33  applicant a reason for a denial within thirty days.  Upon receipt of the
34  reason for denial,  the  appellant may appeal to the attorney general.
35  § 17. Subdivision 2 of section 898 of the  general  business  law,  as
36  added by chapter 129 of the laws of 2019, is amended to read as follows:
37  2.  Before  any sale, exchange or disposal pursuant to this article, a
38  national instant criminal background check must be completed by a dealer
39  who [consents] shall submit a request to the division of  state  police
40  pursuant  to  section two hundred twenty-eight of the executive law to
41  conduct such check[, and upon completion of such background check, shall
42  complete a document, the form of which shall be approved by  the  super-
43  intendent  of state police, that identifies and confirms that such check
44  was performed]. Before a dealer who [consents] has submitted  a  request
45  to  the  division of state police to conduct a national instant criminal
46  background check delivers a firearm, rifle or  shotgun  to  any  person,
47  either  (a) NICS shall have issued a "proceed" response [to the dealer],
48  or (b) thirty calendar days shall have elapsed since the date the dealer
49  [contacted] submitted a request to the  division  of  state  police  to
50  contact the  NICS  to  initiate  a national instant criminal background
51  check and NICS has not notified the [dealer] division of  state  police
52  that the transfer of the firearm, rifle or shotgun to such person should
53  be denied.
54  § 18.  Paragraph  (c)  of subdivision 1 of section 896 of the general
55  business law, as added by chapter 189 of the laws of 2000, is amended to
56  read as follows:

1    (c) coordinate with the division of state police to provide access  at
2  the  gun  show  to [a firearm dealer licensed under federal law who is
3  authorized to] perform a national instant criminal background check
4  [where the seller or transferor of a firearm, rifle or shotgun is not
5  authorized to conduct such a check by (i) requiring firearm exhibitors
6  who are firearm dealers licensed under federal law and who are author-
7  ized to conduct a national instant criminal background check to provide
8  such a check at cost or (ii) designating a specific location at the gun
9  show where a firearm dealer licensed under federal law who is authorized
10  to conduct a national instant criminal background check will be present
11  to perform such a check at cost] prior to any firearm sale or transfer.
12  Any  firearm  dealer licensed under federal law who [performs] submits a
13  request to the division of state police to perform a national instant
14  criminal  background  check pursuant to this paragraph shall provide the
15  seller or transferor of the firearm, rifle or shotgun with a copy of the
16  United States Department of Treasury, Bureau  of  Alcohol,  Tobacco  and
17  Firearms  Form  ATF  F 4473 and such dealer shall maintain such form and
18  make such form available for inspection by law enforcement agencies  for
19  a period of ten years thereafter.
20    § 19.  Subdivision  6 of section 400.03 of the penal law, as added by
21  chapter 1 of the laws of 2013, is amended to read as follows:
22    6. If the superintendent of state  police  certifies  that  background
23  checks  of  ammunition  purchasers may be conducted through the national
24  instant criminal background check system, [use of that system by] a
25  dealer  or  seller shall contact the division of state police to conduct
26  such check which shall be sufficient to satisfy subdivisions four  and
27  five  of  this  section [and such checks shall be conducted through such
28  system, provided that a record of such transaction shall be forwarded to
29  the state police in a form determined by the superintendent].
30    § 20. The penal law is amended by adding a new section 400.06 to  read
31  as follows:
32    § 400.06 National instant criminal background checks.
33    1. Any dealer in firearms that sells, delivers or otherwise transfers
34  any firearm shall contact the division of  state  police  to  conduct  a
35  national  instant  criminal  background  check  pursuant  to section two
36  hundred twenty-eight of the executive law.
37    2. Failure to comply with the requirements of this section is a  class
38  A misdemeanor.
39    § 21.  The state finance law is amended by adding a new section 99-pp
40  to read as follows:
41    § 99-pp. Background check fund. 1. There is hereby established in  the
42  joint  custody of the state comptroller and commissioner of taxation and
43  finance a special fund to be known as the "background check fund".
44    2. Such fund shall consist of all revenues received by the  comp-
45  troller,  pursuant to the provisions of section two hundred twenty-eight
46  of the executive law and all other moneys appropriated thereto from  any
47  other  fund or source pursuant to law. Nothing contained in this section
48  shall prevent the state from receiving grants, gifts or bequests for the
49  purposes of the fund as defined in this section and depositing them into
50  the fund according to law.
51    3. The moneys of the background check fund, following appropriation by
52  the legislature, shall be allocated for the direct costs associated with
53  performing background checks pursuant to  section  two  hundred  twenty-
54  eight of the executive law.
55    4. The state comptroller may invest any moneys in the background check
56  fund  not  expended  for the purpose of this section as provided by law.

1  The state comptroller shall credit any interest and income derived  from
2  the deposit and investment of moneys in the background check fund to the
3  background check fund.
4    5.  (a)  Any unexpended and unencumbered moneys remaining in the back-
5  ground check fund at the end of a fiscal year shall remain in the  back-
6  ground check fund and shall not be credited to any other fund.
7    (b)  To the extent practicable, any such remaining funds shall be used
8  to reduce the amount of the fee described in subdivision two of  section
9  two hundred twenty-eight of the executive law.
10   § 22. Subdivision 19 of section 265.00 of the penal law, as amended by
11 chapter 150 of the laws of 2020, is amended to read as follows:
12   19. "Duly authorized instructor" means (a) a duly commissioned officer
13 of  the United States army, navy, marine corps or coast guard, or of the
14 national guard of the state of New York; or (b) a duly  qualified  adult
15 citizen  of  the  United States who has been granted a certificate as an
16 instructor in small arms practice issued by the United States army, navy
17 or marine corps, or by the adjutant general of this state,  or by  the
18 division of criminal justice services, or by the national rifle associ-
19 ation of America, a not-for-profit corporation duly organized under  the
20 laws of this state; (c) by a person duly qualified and designated by the
21 department  of  environmental conservation [under paragraph c of subdivi-
22 sion three of section 11-0713 of the environmental conservation law]  as
23 its  agent in the giving of instruction and the making of certifications
24 of qualification in responsible hunting practices; or  (d)  a  New  York
25 state 4-H certified shooting sports instructor.
26   § 23.  Subdivision 18 of section 400.00 of the penal law, as added by
27 chapter 135 of the laws of 2019, is amended and a new subdivision 19  is
28 added to read as follows:
29   18.  Notice.  Upon  the  issuance of a license, the licensing officer
30 shall issue therewith, and such licensee shall attest to the receipt of,
31 the following [notice] information and notifications: (a)  the  grounds
32 for which the license issued may be revoked, which shall include but not
33 be  limited  to  the  areas  and locations for which the licenses issued
34 under paragraph (f) of subdivision two of  this  section  prohibits  the
35 possession  of  firearms,  rifles,  and shotguns, and that a conviction
36 under sections 265.01-d and 265.01-e of this chapter  are  felonies  for
37 which licensure will be revoked;
38   (b)  a  notification regarding the requirements for safe storage which
39 shall be in conspicuous and legible twenty-four point type on eight  and
40 one-half inches by eleven inches paper stating in bold print the follow-
41 ing:
42   WARNING:  RESPONSIBLE  FIREARM  STORAGE  IS THE LAW IN NEW YORK STATE.
43 WHEN STORED IN A HOME FIREARMS, RIFLES, OR SHOTGUNS  MUST  EITHER  BE
44 STORED  WITH A GUN LOCKING DEVICE OR IN A SAFE STORAGE DEPOSITORY OR NOT
45 BE LEFT OUTSIDE THE IMMEDIATE POSSESSION AND CONTROL  OF  THE  OWNER  OR
46 OTHER  LAWFUL  POSSESSOR IF A CHILD UNDER THE AGE OF EIGHTEEN RESIDES IN
47 THE HOME OR IS PRESENT, OR IF THE OWNER  OR  POSSESSOR  RESIDES  WITH  A
48 PERSON  PROHIBITED FROM POSSESSING A FIREARM UNDER STATE OR FEDERAL LAW.
49 FIREARMS SHOULD BE STORED [UNLOADED AND LOCKED] BY REMOVING THE AMMUNI-
50 TION  FROM AND SECURELY LOCKING SUCH FIREARM IN A LOCATION SEPARATE FROM
51 AMMUNITION. LEAVING FIREARMS ACCESSIBLE TO A CHILD OR  OTHER  PROHIBITED
52 PERSON  MAY SUBJECT YOU TO IMPRISONMENT, FINE, OR BOTH. WHEN STORED IN A
53 VEHICLE OUTSIDE THE OWNER'S IMMEDIATE POSSESSION OR  CONTROL,  FIREARMS,
54 RIFLES,  AND  SHOTGUNS  MUST  BE  STORED  IN AN APPROPRIATE SAFE STORAGE
55 DEPOSITORY AND OUT OF SIGHT FROM OUTSIDE OF THE VEHICLE.

1    (c) any other information necessary to ensure such licensee is aware
2  of their responsibilities as a license holder.
3    Nothing in this subdivision shall be deemed to affect, impair or
4  supersede any special or local law relating to providing notice regard-
5  ing the safe storage of rifles, shotguns or firearms.
6    19. Prior to the issuance or renewal of a license under paragraph (f)
7  of subdivision two of this section, issued or renewed on or after the
8  effective date of this subdivision, an applicant shall complete an
9  in-person live firearms safety course conducted by a duly authorized
10  instructor with curriculum approved by the division of criminal justice
11  services and the superintendent of state police, and meeting the follow-
12  ing requirements: (a) a minimum of sixteen hours of in-person live
13  curriculum approved by the division of criminal justice services and the
14  superintendent of state police, conducted by a duly authorized instruc-
15  tor approved by the division of criminal justice services, and shall
16  include but not be limited to the following topics: (i) general firearm
17  safety; (ii) safe storage requirements and general secure storage best
18  practices; (iii) state and federal gun laws; (iv) situational awareness;
19  (v) conflict de-escalation; (vi) best practices when encountering law
20  enforcement; (vii) the statutorily defined sensitive places in subdivi-
21  sion two of section 265.01-e of this chapter and the restrictions on
22  possession on restricted places under section 265.01-d of this chapter;
23  (viii) conflict management; (ix) use of deadly force; (x) suicide
24  prevention; and (xi) the basic principles of marksmanship; and (b) a
25  minimum of two hours of a live-fire range training course. The applicant
26  shall be required to demonstrate proficiency by scoring a minimum of
27  eighty percent correct answers on a written test for the curriculum
28  under paragraph (a) of this subdivision and the proficiency level deter-
29  mined by the rules and regulations promulgated by the division of crimi-
30  nal justice services and the superintendent of state police for the
31  live-fire range training under paragraph (b) of this subdivision. Upon
32  demonstration of such proficiency, a certificate of completion shall be
33  issued to such applicant in the applicant's name and endorsed and
34  affirmed under the penalties of perjury by such duly authorized instruc-
35  tor. An applicant required to complete the training required herein
36  prior to renewal of a license issued prior to the effective date of this
37  subdivision shall only be required to complete such training for the
38  first renewal of such license after such effective date.
39    § 24. Subdivisions 11 and 12 of section 265.00 of the penal law are
40  amended to read as follows:
41    11. "Rifle" means a weapon designed or redesigned, made or remade, and
42  intended to be fired from the shoulder and designed or redesigned and
43  made or remade to use the energy of the explosive [in a fixed metallic
44  cartridge] to fire only a single projectile through a rifled bore for
45  each single pull of the trigger using either: (a) fixed metallic
46  cartridge; or (b) each projectile and explosive charge are loaded indi-
47  vidually for each shot discharged. In addition to common, modern usage,
48  rifles include those using obsolete ammunition not commonly available in
49  commercial trade, or that load through the muzzle and fire a single
50  projectile with each discharge, or loading, including muzzle loading
51  rifles, flintlock rifles, and black powder rifles.
52    12. "Shotgun" means a weapon designed or redesigned, made or remade,
53  and intended to be fired from the shoulder and designed or redesigned
54  and made or remade to use the energy of the explosive [in a fixed shot-
55  gun shell] to fire through a smooth or rifled bore either a number of
56  ball shot or a single projectile for each single pull of the trigger

S. 1                                    21

1  **using either: (a) a fixed shotgun shell; or (b) a projectile or number**
2  **of ball shot and explosive charge are loaded individually for each  shot**
3  **discharged.  In addition to common, modern usage, shotguns include those**
4  **using obsolete ammunition not commonly available in commercial trade, or**
5  **that load through the muzzle and fires ball shot with each discharge, or**
6  **loading, including muzzle loading shotguns, flintlock shotguns, and**
7  **black powder shotguns.**
8    § 25. Severability. If any clause, sentence, paragraph or  section  of
9  this  act shall be adjudged by any court of competent jurisdiction to be
10 invalid, the judgment shall not affect, impair or invalidate the remain-
11 der thereof, but shall be confined  in  its  operation  to  the  clause,
12 sentence,  paragraph or section thereof directly involved in the contro-
13 versy in which the judgment shall have been rendered.
14   § 26. This act shall take effect on  the  first  of  September  next
15 succeeding  the  date  on  which  it  shall have become a law; provided,
16 however:
17   (a) the amendments to subdivision 1 and  subdivision  4-b  of  section
18 400.00 of the penal law made by section one of this act shall apply only
19 to  licenses  for which an application is made on or after the effective
20 date of this act;
21   (b) if chapter 208 of the laws of 2022 shall not have taken effect  on
22 or  before such date then the amendments made to paragraph (j) of subdi-
23 vision one of section 400.00 of the penal law made  by  section  one  of
24 this  act  shall  take effect on the same date and in the same manner as
25 such chapter of the laws of 2022, takes effect;
26   (c) the amendments to sections 270.20, 270.21 and 270.22 of the  penal
27 law made by sections eleven, twelve and thirteen of this act, the amend-
28 ments  to  section  396-eee  of  the  general business law as amended by
29 section fourteen of this act, and the amendments to section 144-a of the
30 executive law as amended by section fifteen  of  this  act,  shall  take
31 effect  on  the  same  date and in the same manner as chapter 210 of the
32 laws of 2022, takes effect;
33   (d) if chapter 207 of the laws of 2022 shall not have taken effect  on
34 or  before  such  date  then the amendments to subdivision 11 of section
35 400.00 of the penal law made by section  one  of  this  act  shall  take
36 effect  on  the  same date and in the same manner as such chapter of the
37 laws of 2022, takes effect;
38   (e) if chapter 212 of the laws of 2022 shall not have taken effect  on
39 or  before  such  date  then  the amendments to subdivision 2 of section
40 400.00 of the penal law made by section  one  of  this  act  shall  take
41 effect  on  the  same date and in the same manner as such chapter of the
42 laws of 2022, takes effect;
43   (f) sections sixteen, seventeen, eighteen, nineteen,  twenty,  twenty-
44 one and twenty-two shall take effect July 15, 2023; and
45   (g)  subdivision 4-a of section 400.00 of the penal law, as amended by
46 section one of this act, shall take effect April 1, 2023.