UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

NEW YORK STATE RIFLE & PISTOL ASSOCIATION,
*and* ROBERT NASH, *and* BRANDON KOCH,

                *Plaintiffs*,

      -against-                           Case No. 1:18-CV-00134
                                               (BKS/ATB)

STEVEN A. NIGRELLI, in his official capacity as
Acting Superintendent of the New York State Police, and
RICHARD J. MCNALLY, JR., in his official capacity
as Justice of the New York Supreme Court, Third Judicial
District, and Licensing Officer for Rensselaer County,

                *Defendants*.

------------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFFS'
## APPLICATION FOR ATTORNEYS' FEES

LETITIA JAMES
Attorney General
State of New York
The Capitol
Albany, New York 12224-0341
Attorney for Acting Superintendent Nigrelli
and Justice McNally

Michael G. McCartin, Bar Roll No. 511158
Assistant Attorney General | Special Counsel

March 16, 2023

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF RELEVANT FACTS AND LEGAL BACKGROUND ................................. 4

STANDARD OF REVIEW ....................................................................................................... 6

ARGUMENT ............................................................................................................................ 8

    POINT I

        PLAINTIFFS' FEE REQUEST IS EXCESSIVE AND IMPROPER AND
        THEREFORE SHOULD BE SUBJECT TO A SIGNIFICANT ACROSS-THE-
        BOARD REDUCTION. ............................................................................................... 8

    POINT II

        PLAINTIFFS' FEE REQUEST IS BASED ON IMPROPER HOURLY RATES ...... 15

CONCLUSION ....................................................................................................................... 19

## TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*Arbor Hill Concerns Citizens Neighborhood Ass'n v. County of Albany,*
    522 F.3d 182 (2d Cir. 2008)............................................................................16

*Burns v. Scott,*
    No. 20-cv-10518, 2022 WL 10118491 (S.D.N.Y. Oct. 17, 2022)............................................7

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona,*
    2021 U.S. Dist. LEXIS 62863, 2021 WL 1222159 (S.D.N.Y. Mar. 31, 2021) ......................6

*G.M. ex rel. R.F. v. New Britain Bd. of Educ.,*
    173 F.3d 77 (2d Cir. 1999)............................................................................7

*Grant v. Lockett,*
    2022 U.S. Dist. LEXIS 98312 (N.D.N.Y. June 2, 2022)........................................16

*Grant v. Lockett,*
    No. 15-CV-445, 2022 WL 1793142 (N.D.N.Y. June 2, 2022)..................................7

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983)....................................................................................6

*Kapoor v. Rosenthal,*
    269 F. Supp. 2d 408 (S.D.N.Y. 2003)............................................................15

*Lewis v. City of Albany Police Dep't,*
    554 F. Supp. 2d 297 (N.D.N.Y. 2008)............................................................14

*Lighthouse Baptist Church, Inc. v. Chemung Cty.,*
    2022 U.S. Dist. LEXIS 167797 (W.D.N.Y. Sep. 16, 2022) ....................................6

*Luessenhop v. Clinton Cty.,*
    558 F. Supp. 2d 247 (N.D.N.Y. 2008)............................................................16

*Millea v. Metro-North R.R.,*
    658 F.3d 154 (2d Cir. 2011)........................................................................15

*Moore v. Keller,*
    2021 WL 5493022 (N.D.N.Y. Nov. 22, 2021) ..............................................7, 16

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
    142 S. Ct. 2111 (2022)................................................................................5

*Osterweil v. Bartlett,*
    92 F. Supp. 3d 14 (N.D.N.Y. 2015) ........................................................ 16-18

*P.J. v. Conn. State Bd. of Educ.*,
    931 F.3d 156 (2d Cir. 2019).............................................................................7

*Upstate N.Y. Eng'rs Health Fund v. Pumpcrete Corp.*,
    No. 5:21-cv-00344 (BKS/ML), 2022 U.S. Dist. LEXIS 119936 (N.D.N.Y.
    July 7, 2022) ....................................................................................................18

*Young v. Cooper Cameron Corp.*,
    2009 U.S. Dist. LEXIS 133365 (S.D.N.Y. Mar. 18, 2009) ...................................14

## CONSTITUTIONS

Second Amendment ..........................................................................................17

Fourteenth Amendment ....................................................................................5

## FEDERAL STATUTES

42 U.S.C.
    § 1983 ...............................................................................................................6
    § 1988(b) ..........................................................................................................6

## STATE STATUTES

Concealed Carry Improvement Act ......................................................................5

N.Y. Penal Law
    § 400.00(2)(f) ................................................................................................4-5

## RULES

Fed. R. Civ. P.
    Rule 25(d) .........................................................................................................1

Defendants Steven A. Nigrelli[1] and Justice Richard J. McNally, Jr. (collectively, "Defendants"), sued in their official capacity as Acting Superintendent of the New York State Police and Justice of the New York State Supreme Court, Third Judicial District, and Licensing Officer for Rensselaer County, respectfully submit this memorandum of law in opposition to a supplemental application for attorneys' fees submitted by Plaintiffs New York State Rifle & Pistol Association, Robert Nash, and Brandon Koch (collectively, "Plaintiffs") on February 9, 2023.  *See* ECF Nos. 63-67.

## <u>PRELIMINARY STATEMENT</u>

Section 1988 states that, "*in its discretion*", a court "may" allow "a *reasonable* attorney's fee" to a "prevailing party."  42 U.S.C. § 1988(b) (emphasis added).  Applying this law, the Supreme Court has explained that the "determination of fees should not result in a second major litigation.  The fee applicant . . . must, of course, submit appropriate documentation to meet the burden of establishing entitlement to an award."  *Fox v. Vice*, 563 U.S. 826, 838 (2011).  "The essential goal in shifting fees (to either party) is to do "rough justice, not achieve auditing perfection."  *Id.*  Plaintiffs ask that their attorneys receive $1,269,232.13 in attorneys' fees and costs, but Plaintiffs have failed to meet their burden of establishing entitlement to an award in that amount.  The billing records that Plaintiffs have supplied to the Court do not justify this exorbitant fee.  Instead, those billing records reveal that "rough justice" will be done here only if Plaintiffs were to get somewhere in the range of $330,000 in attorney fees and costs.  Plaintiffs quite simply are not due anything more under the governing case law in the Northern District, since they are only entitled to reasonable attorneys' fees that would represent the *reasonable*

---

[1] Steven A. Nigrelli became the Acting Superintendent of the New York State Police on October 19, 2022.  Thus, he should be substituted in as a defendant in the place of former Superintendent Kevin P. Bruen in accordance with Fed. R. Civ. P. Rule 25(d).

value of the services they rendered.

Plaintiffs' billing records here prove that the number of hours claimed for most all of the attorneys who worked for Plaintiffs – including on non-legal, more frivolous matters like preparing for an *NPR* interview or checking the *Linkedin* page of their opposing counsel – are quite excessive, and, therefore, unreasonable.  For example, just five of the 22 attorneys seeking reimbursement on this case – *i.e.*, Paul D. Clement, Erin Murphy, Kasdin Miller Mitchell, Kevan M. Neylan, Jr., and Nicholas M. Gallagher – worked a total of 863 hours on this file, and they alone seek a total of $857,070.80.  Defendants respectfully assert that this disproportionate amount of work from just part of one of the four law firms was not needed in order to achieve the desired result that Plaintiffs sought.  And, as will be shown below, the requested hourly rates that Plaintiffs seek are exceedingly higher than the rates allowed in the Northern District of New York, which allows for a top hourly rate no more than $350 per hour for senior partners, while the top rate sought by Plaintiffs here is $1,895 per hour, over five times higher than the highest rate sustained in the Northern District.

Because this Court has the broad authority to craft a remedy using its wide discretion to assess the hours that should have *reasonably* been employed to litigate this case, Defendants will ask this Court to award reasonable fees using, as a guideline, a hypothetical law firm assigning six intelligent legal minds to this case.  If the Court were to assume that two senior partners, two skilled junior associates, and two able paralegals from that hypothetical law firm were to work only on this single case for 50 billable hours a week for five straight weeks, and that they were paid the maximum amount that the case law authorized for cases out of the Northern District, that would mean that the billing for attorneys' fee would top out at $320,000.  This would be $175,000 combined for the two senior partners, $100,000 combined for the two junior associates,

and $45,000 combined for the two paralegals.  Add to that $10,000 in costs, and a final entirely

reasonable figure would materialize – *i.e.*, $330,000 – less than a third of what Plaintiffs' counsel

seek here.  Certainly, no more than that was needed.

The exact type of crafting of an appropriate attorneys' fee and cost award that is called

for here has been done elsewhere, and can be replicated by this Court.  In other words, a court

faced, as this Court is, with an excessive number of lawyers working a case, billing at rates that

were significantly higher than was reasonable, *can impose reasonableness* by hypothetically

applying the correct number of lawyers and paralegals who should have been employed to

litigate the case.  With the numbers resulting from that court-imposed remedy, a court can then

apply the correct fee to each lawyer and paralegal and reach a dollar-figure outcome that is

reasonable and fair to all parties involved.  This remedy is premised on the idea that courts are

not authorized to be overly generous with the money of others, and that it is as much the duty of

courts to see that excessive fees and expenses are not awarded as it is to see that an adequate

amount is awarded.

So, the Defendants propose that the Court broadly assess this case, examine the billing

with common sense, and impose a fair discretionary result that is based upon the Court's broad

authority to do "rough justice."  If, on the other hand, though, the Court desires to examine the

facts and figures here and obtain a precise mathematical account of the attorneys' fees and costs,

Defendants have also conducted that type of more detailed analysis for the Court.  The results of

that in depth and detailed analysis yields a significant reduction, one that is entirely consistent

with case law within the Second Circuit.  In fact, when one applies the exact amounts for the

hourly rates permitted in the Northern District to all of the hours Plaintiffs' counsel claim, the

accounting outcome is precisely $458,022.20.  This exact figure is high, though, because it

assumes that each and every hour spent by each and every one of the lawyers and paralegals across four different law firms was appropriate.  It was not: there were no less than 22 attorneys billing on this file, alongside 13 paralegals.  That type of overstaffing led to the unnecessary duplication of work, which makes this case ripe for a further reduction on an across-the-board decrease of 30 precent, to $320,615.54.  Adding $10,000 in costs results in a payout to Plaintiffs' counsel of just around $330,000.  This figure is identical to the figure reached above.  Because these two methods of determining a proper and reasonable fee converge here and reinforce each other, this Court can find comfort that an award in the range of $330,000 is appropriate.

In sum, while Defendants do not oppose Plaintiffs' entitlement to an award of fees as the prevailing party, Plaintiffs unfortunately have taken this as an opportunity to submit an excessive bill, containing duplicative and unwarranted work at improperly inflated hourly rates.  The way to address Plaintiffs' overbilling, overstaffing, and duplication is for the Court to impose an across-the-board reduction to Plaintiffs' demand, in light of Plaintiffs' needless duplication of work, improper hourly rates for a case in the Northern District, and its requests to be reimbursed for non-legal work (*i.e.*, preparation for a radio interview and activity on social media).

For the reasons detailed below, Plaintiffs' application for attorney's fees should be denied, in part, and modified to represent an across-the-board decrease in compensable fees and costs.

## STATEMENT OF RELEVANT FACTS AND LEGAL BACKGROUND

The relevant factual background is generally not in dispute in this fee application.  On February 1, 2018, Plaintiffs filed this action challenging the constitutionality of N.Y. Penal Law § 400.00(2)(f), which restricted the right to carry firearms outside the home to those with "proper cause" to exercise that right.  *See* ECF Nos. 1 and 31.  Plaintiffs sought a declaration that N.Y. Penal Law § 400.00(2)(f) was unconstitutional and an injunction against Defendants'

enforcement of it.  *Id.*  On December 17, 2018, the District Court granted Defendants' Motion to Dismiss and entered judgment for Defendants.  *See* ECF Nos. 32 and 33.  Notably, the work needed at the District Court level was minimal: indeed, according to the billing records of Plaintiffs' counsel, only 54.2 hours were expended at that level.  *See* ECF No. 64, ¶ 17.  That's essentially one full week of one attorney's labor.  There was no Rule 26 disclosure; no paper discovery; and no depositions.  So the labor intensive things of litigation did not take place in this action.

The actual reasonable amount of work that was required at the level of the Second Circuit was also quite minimal since, at that time, there was controlling precedent in *Kachalsky v. County of Westchester*, 701 F.3d 81, 83, 100-01 (2d Cir. 2012), that dictated the assured adverse outcome.  Because of that controlling precedent, on September 17, 2020, the Second Circuit affirmed the District Court's judgment, *see* ECF No. 37, and it did so in short order in a terse decision, relying upon *Kachalsky*.  *See N.Y. State Rifle & Pistol Ass'n v. Beach*, 818 F. App'x 99, 100 (2d Cir. 2020).

Then, in April 2021, the Supreme Court granted certiorari in this case.  After hearing oral argument later that year in November 2021, the Supreme Court ruled, on June 23, 2022, that "New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2156 (2022).  Thus, the Supreme Court "reverse[d] the judgment of the Court of Appeals and remand[ed] the case for further proceedings consistent with this opinion.  *It is so ordered.*"  *Id.* (italics in original).

On July 1, 2022, New York repealed N.Y. Penal Law § 400.00(2)(f) as part of the Concealed Carry Improvement Act ("CCIA").  Then, on remand of Plaintiffs' claim to the

Second Circuit, that Court "vacate[d] the judgment of the district court and remand[ed] this case for further proceedings consistent with the Supreme Court's decision." *See* ECF No. 42. On November 17, 2022, this Court then entered judgment in favor of Plaintiffs. *See* ECF No. 54.

The present application for attorneys' fees followed on December 1, 2022. *See* ECF Nos. 55 and 56. Plaintiffs initially asked the Court to grant them over $1.26 million without submitting any billing records or other facts that would support their demand. After the Court ordered them to document the request, ECF No. 62, Plaintiffs supplemented their papers on February 9, 2023 with the billing records of four different law firms. *See* ECF Nos. 63 through 67. Between the 22 attorneys and 13 paralegals that Plaintiffs seek to support with a fee and cost award of $1,269,232.13, there were over 1,600 hours identified as being expended. For the reasons stated below, however, the sought-after attorneys' fees and costs should be reduced to no more than $330,000, which is more than a reasonable fee.

## STANDARD OF REVIEW

Where, as here, an action is brought pursuant to 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs," subject to certain exceptions not relevant here. 42 U.S.C. § 1988(b). "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See also Lighthouse Baptist Church, Inc. v. Chemung Cty.*, 2022 U.S. Dist. LEXIS 167797, at *26 (W.D.N.Y. Sep. 16, 2022).

So "[d]etermining whether an award of attorney's fees is appropriate requires a two-step inquiry. First, the party must be a 'prevailing party' in order to recover. If [the party] is, then the requested fee must also be reasonable." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill.*

*of Pomona*, 2021 U.S. Dist. LEXIS 62863, 2021 WL 1222159, at \*5-6 (S.D.N.Y. Mar. 31, 2021) (quoting *Pino v. Locascio*, 101 F.3d 235, 237 (2d Cir. 1996)).  District courts calculate fees pursuant to these provisions using the "lodestar" approach, "whereby an attorney fee award is derived by multiplying the number of hours *reasonably* expended on the litigation times a *reasonable* hourly rate."  *G.M. ex rel. R.F. v. New Britain Bd. of Educ.*, 173 F.3d 77, 84 (2d Cir. 1999) (internal quotation marks omitted) (emphasis added).  "There is . . . a 'strong presumption' that the lodestar figure represents a reasonable fee."  *P.J. v. Conn. State Bd. of Educ.*, 931 F.3d 156, 169 (2d Cir. 2019) (omits internal quotations and citations).

Importantly here, the appropriate hourly rate "depends on the hourly rates employed in the district in which the reviewing court sits."  *Grant v. Lockett*, No. 15-CV-445, 2022 WL 1793142, at \*2 (N.D.N.Y. June 2, 2022) (citing *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009).  "As the Second Circuit has explained, 'the reasonable, paying client' is one 'who wishes to pay the least amount necessary to litigate the case effectively.'"  *Moore v. Keller*, 2021 WL 5493022, at \*2 (N.D.N.Y. Nov. 22, 2021) (quoting *Arbor Hill Concerns Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184 (2d Cir. 2008)).  As to hours, the Second Circuit has instructed that courts "must perform 'a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended.'"  *Burns v. Scott*, No. 20-cv-10518, 2022 WL 10118491, at \*15 (S.D.N.Y. Oct. 17, 2022) (quoting *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994)).

**ARGUMENT**

**POINT I**

**PLAINTIFFS' FEE REQUEST IS EXCESSIVE AND IMPROPER AND THEREFORE SHOULD BE SUBJECT TO A SIGNIFICANT ACROSS-THE-BOARD REDUCTION.**

As the Supreme Court has explained, a court's overall objective in granting a fee award is to make Plaintiffs whole, not to cause a wild windfall for attorneys. *Fox*, 563 U.S. at 838. "In cases where a windfall would result, a downward adjustment of the requested amount is warranted." *Torres v. Colvin*, 2014 U.S. Dist. LEXIS 29239, at *7 (S.D.N.Y. Feb. 4, 2014). This means that if a group of lawyers and paralegals decide to work a case to death when that would not be reasonable nor necessary, those lawyers and paralegals are simply not entitled to the full fee that they seek. Here, that 35-person group consisted of 22 different lawyers and at least 13 paralegals[2] from four different law firms. Of course, Defendants do not call upon this Court to "question the congressional wisdom behind the[] [fee] statutes," but rather Defendants assert that the lawyers in this case have "chosen to hijack these statutes for their own selfish ends." *Spegon v. Catholic Bishop*, 989 F. Supp. 984, 987 (N.D. Ill. 1998). This case simply did *not* require 22 lawyers and 13 paralegals to litigate within four different law firms – even to and through the Supreme Court. And this Court can use its own common sense to make that determination without taking a fine-tooth comb to the four law firms' legal invoices. *See Campbell v. Mark Hotel Sponsor, LLC*, 2012 U.S. Dist. LEXIS 138443, at *8 (S.D.N.Y. Sep. 13, 2012) ("Considering the totality of the circumstances, this Court exercises its informed discretion and common sense to trim the considerable fat from Sponsor's application. Accordingly, this Court awards Sponsor a total of $475,000 in legal fees and expenses", rather than the $3,164,828

---

[2] Defendants have equated "library" staff members doing "factual" checks with paralegals.

demanded, awarding only 15 percent of the amount sought.).

District courts have "ample discretion" in "assessing the extent of staffing" that is "appropriate for a given case." *New York State Ass'n Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983). "On a fee-shifting application, however, the governing test of reasonableness is objective; it is not dictated by a particular client's subjective desires or tolerance for spending. The test is whether the plaintiff 'spen[t] the minimum necessary to litigate the case effectively.'" *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 52 (S.D.N.Y. 2015) (citation omitted).

This Court does not have to take a deep dive into hundreds of pages of billing records from four different law firms. It can take a broad view of this case and apply an across-the-board reduction. *Cf. Nat'l Helicopter Corp. of Am. v. City of N.Y.*, No. 96 Civ. 3574, 1999 WL 562031, at *7 (S.D.N.Y. July 30, 1999) (Sotomayor, J.) (reducing lodestar 30% overall for overstaffing and duplicative efforts as "this matter was staffed with more attorneys, at higher rates, than necessary and that in certain respects, these attorneys either duplicated each other's efforts or performed services unnecessary to this litigation"). In evaluating an application for attorneys' fees, district courts "need not, and indeed should not, become green-eyeshade accountants." *Fox*, 563 U.S. at 838. Stated differently, "the determination of fees should not result in a second major litigation." *Fox*, at 838 (omits internal quotations). Instead, as was noted at the outset above, the "essential goal" in awarding fees "is to do *rough justice*, not to achieve auditing perfection." *Id.* (emphasis added). So, district courts "may take into account their *overall sense of a suit*, and may use *estimates* in calculating and allocating an attorney's time." *Id.* (emphasis added).

9

An across-the-board reduction is entirely consistent with the case law in this circuit, since courts will often impose across-the-board, percentage reductions to fee demands to combat excessive billing and overstaffing.  *See, e.g., Mazzei v. Money Store*, 2015 U.S. Dist. LEXIS 59397, at \*10 (S.D.N.Y. May 6, 2015) ("The Second Circuit has held that across-the-board percentage reductions are appropriate where a case is overstaffed, resulting in needless duplication of work and retention of unnecessary personnel."); *Daiwa Special Asset Corp. v. Desnick*, 2002 WL 31767817, at \*5 (S.D.N.Y. Dec. 3, 2002) (50% across-the-board reduction due to "duplication of attorney efforts, the overstaffing of meetings and depositions, and the inefficient allocation of human resources"); *Matusick v. Erie County Water Authority*, 757 F.3d 31, 64 (2d Cir. 2014) (upholding a district court's 50 percent across-the-board reduction of hours in light of "concerns regarding unspecified conferences, telephone calls, email correspondence, and reviews"); *Francois v. Mazer*, 523 Fed.Appx. 28, 29 (2d Cir. 2013) (upholding 40 percent across-the-board reduction in hours).

In this case, Plaintiffs' counsel seek 1,437.35 hours of attorneys' time, and they also seek 205.65 hours of paralegal time.  As demonstrated in the breakdown below, these figures – totaling 1,643 hours – are surely excessive, especially at the rates sought in this application.

### A.   KATHLEEN MCCAFFREY BAYNES, ESQ. PLLC

\*   $14,905 in attorney's fees, and $1,122 in costs sought  [Defendants assert the total amount sought here is quite reasonable, that being $16,027]

\*   Hourly fee $275 for 54.2 hours of work

B.    **COOPER & KIRK PLLC**

\*    $95,147.77 in attorney's fees sought  [Total under proper rates: $43,906]

\*    David Thompson – 5.9 hrs at $895 - $1095 = $5,412.77  [@ $350[3] = $2,065]

\*    Charles Cooper – 1.9 hrs at $1125 = $2,137.50  [@ $350 = $665]

\*    Howard C. Nielson, Jr. – 0.5 hrs at $715 = $357.50  [@ $350 = $175]

\*    John D. Ohlendorf – 132 hrs at $525-$575 = $69,508.25  [@ $250 = $33,000]

\*    Nicole Jo Moss – 7.2 hrs at $625-$628.16 = $4,512  [@ $300 = $2,160]

\*    Peter A. Patterson - 12.6 hrs at $645-$745 = $8,454.60  [@ $250 = $3,150]

\*    Flannery Lawrence (paralegal) – 17 hrs at $185 = $2,745.40  [@ $90 = $1,530]

\*    Caleb Theriot (paralegal) – 9 hrs at $185 = $1,415.25  [@ $90 = $810]

\*    Elizabeth Barton (paralegal) – 2.2 hrs at $155 = $341  [@ $90 = $198]

\*    Erin Brainard (paralegal) – 1.7 hrs at $155 = $263.50  [@ $90 = $153]

C.    **KIRKLAND & ELLIS LLP]**

\*    $985,279 in fees sought  [Total under proper rates: $300,397]

\*    Paul D. Clement – 113.75 hrs at $1,609.18 = $183,044.29  [@ $350 = $39,813]

\*    Erin Murphy – 122 hrs at $1,268.04 = $154,702.07  [@ $350 = $47,700]

\*    Kasdin Miller Mitchell – 129 hrs at $973.09 = $125,529.03  [@ $350 = $45,150]

\*    Kevan M. Neylan, Jr. – 185.5 hrs at $924.78 = $171,547  [@ $ 350 = $64,925]

---

[3] When the figure $350 is used here, that means that the individual is a senior partner.  When the figure $250 is used here, that means that the individual is a junior partner or senior associate. When the figure $200 is used here, that means that the individual is a newer associate.  These amounts are established by the most recent controlling precedent in the Northern District.  *See Grant*, 2022 U.S. Dist. LEXIS 98312, at \*4-5.  The court held there that "[c]ourts in this district have recently determined hourly rates of: between $250 and $350 for partners; between $165 and $200 for associates; and between $80 and $90 for paralegals, to be reasonable." *Id.*, 2022 U.S. Dist. LEXIS 98312, at \*4-5 (citing *Deferio v. City of Syracuse*, 2018 U.S. Dist. LEXIS 103596, 2018 WL 3069200, at \*3 (N.D.N.Y. June 21, 2018)).

&ast; Nicholas Gallagher – 312.75 hrs at $710.62 = $222,248.41  [@$200 = $62,550]

&ast; H. Bartow Farr – 24.75 hrs at $1,270.75 = $31,451.06  [@ $350 = $8,662.50]

&ast; George W. Hicks, Jr. – 14 hrs at $1,168.75 = $16,362.50  [@ $350 = $4,900]

&ast; Matthew D. Rowen – 10.75 hrs at $930.74 = $10,005.55  [@ $350 = $3,763]

&ast; Harker Rhodes – 13.5 hrs at $973.25 = $13,138.87  [@ $350 = $4,725]

&ast; Mariel Brookins – 15.25 hrs at $845.75 = $12,897.68  [@ $350 = $5,337.50]

&ast; Ashley Britton (paralegal) – 26.25 hrs at $363.0 = $9,530.62  [@ $90 = $2,363]

&ast; Aviana Vergnetti (paralegal) – 76.75 hrs at $297.50 = $22,833 [@ $90 = $6,908]

&ast; Harry Wild (paralegal) – 1.5 hrs at $274.83 = $412.25  [@ $90 = $135]

&ast; Kiran Mehta – 9.75 hrs at $229.50 = $2,237.62   [@ $90 = $877.50]

&ast; Library Research – 18.25 hrs at $331.50 = $6,049.87  [@ $90 = $1,642.50]

&ast; Library Research – 8.25 hrs at $331.50 = $2,734.87 [@ $90 = $742.50]

&ast; Library Research – 2.25 hrs at $246.49 = $554.62  [@ $90 = $202.50]

Notably, Kirkland & Ellis billed $20,225 solely for sending emails.  This is excessive.
*See Solomon v. Allied Interstate, LLC*, 2013 U.S. Dist. LEXIS 145071, 2013 WL 5629640, at \*1-2 (S.D.N.Y. Oct. 7, 2013) (finding that "excessive internal emails" provided ground to reduce attorneys' fees).  And $23,367.50 was billed on inter-firm discussions between attorneys.  This too is excessive.  *See Brooks v. Roberts*, 501 F. Supp. 3d 103, 115 (N.D.N.Y. 2020) ("[A]n independent review of the billing records does show that some of the entries may fairly be characterized as devoting excessive time to certain tasks or duplicative in the sense that a team of lawyers were involved in an activity that could have been accomplished just as well with leaner staffing.").  Additionally, $3,790 was billed for preparation for a media interview with *NPR*.  However, "[r]eported federal cases are unanimous in denying awards of attorneys' fees for

media-related time . . . ." *Parker v. Town of Swansea*, 310 F. Supp. 2d 376, 393 (D. Mass. 2004)

(quoting *McLaughlin v. Boston School Committee*, 976 F. Supp. 53, 72 (D. Mass. 1997)).  There

were also multiple instances of duplicative billing, including on April 28, 2021, April 29, 2021,

May 10, 2021, May 17, 2021, September 9, 2021, October 6, 2021, and October 12, 2021.  *See*

ECF No. 66-1, Kirland & Ellis billing records at pages 18, 19, 42, 49, and 50.

      **D.**      **BRADLEY ARANT BOULT CUMMINGS LLP**

\*     $147,479 in fees, and $2,977.20 in costs sought  [Total under proper rates:

      $94,715 + $2,977.20 in costs = $97,692.20]

\*     John Parker Sweeney – 104 hrs at $597.61 = $62,152.35  [@ $350 = $36,400]

\*     T. Sky Woodward – 4.7 hrs at $481.05 = $2,260.92  [@ $350 = $1,645]

\*     James W. Porter III – 82.5 hrs at $457.75 = $37,764.45  [@ $350 = $28,875]

\*     Marc A. Nardone – 13.3 hrs at $440.29 = $5,855.84  [@ $350 = $4,655]

\*     Connor M. Blair – 77.1 hrs at $378.22 = $29,161.10  [@ $250 = $19,275]

\*     Daniel L. Lawrence – 0.2 hrs at $315 = $63  [@ $200 = $40]

\*     Kristine Martinez (paralegal) – 25.2 hrs at $270-$270 = $5,724 [@ $90 = $2,268]

\*     Emerson K. Krause (paralegal) – 17.3 hrs at $260 = $4,498  [@ $90 = $1,557]

Furthermore, Paralegal Kristine Martinez's billing record is littered with descriptions of

hours doing basic clerical work, despite the fact that "clerical and secretarial services are part of

overhead and are not generally charged to clients . . . [and] clerical tasks such as organizing case

files and preparing documents for mailing are not compensable." *Grant v. City of Syracuse*, 357

F. Supp. 3d 180, 203 (N.D.N.Y. 2019) (Hurd, J.).  There was also duplicative billing, including

on April 28, 2020, June 30, 2020, August 12, 2020, August 17, 2020, September 2, 2020, and

November 29, 2020.  *See* ECF No. 67-1, Bradley billing records at pages 14, 30-31, 32, 83, 89,

and 101.  And, on October 17, 2022, as is shown at page 94 of those same billing records, this firm appears to have billed $438 for reviewing a simple scheduling order along with the undersigned's *Linkedin* profile.  This is surely excessive.

Furthermore, it seems that Plaintiffs' counsel at each of the four firms charge their full hourly rate for travel, which would be unjustified.  *See Lewis v. City of Albany Police Dep't*, 554 F. Supp. 2d 297, 300 (N.D.N.Y. 2008) (hourly rate for travel time is one-half the regular hourly rate).  Although this appears to be the case, it cannot be fully ascertained for sure based upon the records submitted to the Court.

That leaves the Court with the following chart below that shows what each law firm would be entitled to if the Court were to assume that each and every hour was warranted under the proper rates for attorneys' fees in the Northern District.  This chart includes both fees and costs:

| Law Firms | Total Hours Under Proper Rates |
|-----------|-------------------------------|
| KATHLEEN MCCAFFREY BAYNES, ESQ. PLLC | $16,027 |
| COOPER & KIRK PLLC | $43,906 |
| KIRKLAND & ELLIS LLP | $300,397 |
| BRADLEY ARANT BOULT CUMMINGS LLP | $97,692.20 |
| Total: | $458,022.20 |

However, after reviewing all of the issues identified above, a significant reduction in the number of hours billed in this matter is appropriate.  In fact, for these reasons as well, at the very least, a thirty percent across-the-board reduction to Plaintiffs' requested billable hours would be suitable for this case, since other comparable cases have previously cut even more.  *See, e.g., Young v. Cooper Cameron Corp.*, 2009 U.S. Dist. LEXIS 133365, at *20 (S.D.N.Y. Mar. 18,

2009) ("upon review of all of the submitted billing records . . . a 50% reduction in the number of hours billed is justified").

So, the figure determined in the chart above to be appropriate is $458,022.20. And seventy percent of $458,022.20 is easily determined: it's $320,615.54. If the Court awarded that figure, combined with approximately $10,000 in costs, "rough justice" will be done at about $330,000. Thus, $330,000 is the figure that emerges no matter if the Court were to take the long ariel view of this case by imagining a team of lawyers at a single hypothetical law firm, or if the Court were to adopt the more microscopic view with the "green eyeshades of an accountant." Consequently, the Court should award to Plaintiffs' counsel no more than $330,000.

## POINT II

## PLAINTIFFS' FEE REQUEST IS BASED ON IMPROPER HOURLY RATES.

The hourly rate that Plaintiffs seek here stretches as high as "$1,895.00 per hour." ECF No. 56-1 at 7. This must be reduced, as Defendants have done above, to the rates that courts have held appropriate for civil rights cases in the Northern District. In assessing whether a request for attorney's fees is reasonable, "[b]oth [the Second Circuit] and the Supreme Court have held that ... the product of a *reasonable* hourly rate and the *reasonable* number of hours required by the case ... creates a 'presumptively reasonable fee.'" *Millea v. Metro-North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill*, 522 F.3d at 183) (emphasis added). The resulting product "should be in line with the rates prevailing in the community for similar services by attorneys of comparable skill, experience, and reputation." *Kapoor v. Rosenthal*, 269 F. Supp. 2d 408, 412 (S.D.N.Y. 2003) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983); *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997)). *See also MAKS v. EODT*, 2014 U.S. Dist. LEXIS 48100 (E.D. Tenn. Feb. 11, 2014)

(recommending that a Washington D.C. litigator's request for $600 per hour because of his claims of possessing special skills be reduced to $300 per hour).

"Naturally, this calculation depends on the hourly rates employed in the district in which the reviewing court sits." *Grant*, 2022 U.S. Dist. LEXIS 98312, at *4-5 (citing *Simmons*, 575 F.3d at 174. These amounts are established by the most recent controlling precedent: "[c]ourts in this district have recently determined hourly rates of: between $250 and $350 for partners; between $165 and $200 for associates; and between $80 and $90 for paralegals, to be reasonable." *Grant*, 2022 U.S. Dist. LEXIS 98312, at *4-5 (citing *Deferio v. City of Syracuse*, 2018 U.S. Dist. LEXIS 103596, 2018 WL 3069200, at *3 (N.D.N.Y. June 21, 2018)); *accord Moore*, 2021 WL 5493022 at *3-4.

According to a case decided in this District just last year, *i.e.*, *Grant*, 2022 U.S. Dist. LEXIS 98312, at *6-7, which is cited directly above, an appropriate hourly rate for an experienced partner who successfully argued an appeal before the Second Circuit is $350. *Id.* That should be the limit here, too, even with regard to advocacy before the Supreme Court. *See Luessenhop v. Clinton Cty.*, 558 F. Supp. 2d 247, 258 (N.D.N.Y. 2008) ("the court must set a fee, which is adequate to attract competent counsel but not produce a windfall"). This goes along with what the Second Circuit stated in *Arbor Hill*: "Indeed, the district court (unfortunately) bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Arbor Hill*, 493 F.3d at 112.

On this point, *Osterweil v. Bartlett*, 92 F. Supp. 3d 14 (N.D.N.Y. 2015) is instructive here because, in that case, the court in this District "disciplined" the precise "market" at issue here – the very same lawyers in this matter. In *Osterweil*, the plaintiff challenged a New York gun

16

statute asserting that it violated the Second Amendment.  After success in the litigation, that plaintiff sought exorbitant attorney fees of up to $1,100 per hour for Paul D. Clement and $575 per hour for his partner Erin Murphy, as well as $185 per hour for paralegal work (among other fees sought).  (Mr. Clement and Ms. Murphy have increased their rates here: Mr. Clement now seeks over $1,600 per hour, up $500 an hour from eight years ago, and Ms. Murphy now seeks over $1,200 per hour, an $625 increase, while one of their paralegals now seeks $363 per hour, which is more than this Court has awarded to experienced senior partners.).

Yet, the court previously rejected these excessive types of fees, holding that although these attorneys "were well qualified to handle this action," and while that plaintiff "'cannot be faulted for wanting to retain counsel with the best possible reputation, it is not [Defendant]'s responsibility to compensate for such counsel based on higher out-of-district rates where [Plaintiff] has not shown that they were likely to produce a substantially better result than competent counsel in [this district] would produce for less – in this case, substantially less – money.'"  *Osterweil*, 92 F. Supp. 3d at 27 (quoting *Simmons*, 575 F.3d at 177).  Judge D'Agostino distinguished between "limousine" lawyering and "sedan" lawyering, by citing a Seventh Circuit case quoted in *Simmons*:

> As the Second Circuit has explained, "[i]f a high priced, out of town attorney renders services which local attorneys could do as well, and there is no other reason to have them performed by the former, then the judge ... m[ay] allow only an hourly rate which local attorneys would have charged for the same service." *Id.* (quoting *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 (7th Cir. 1982)). "The [non-prevailing party] should not be required to pay for a limousine when a sedan could have done the job." *Id.* at 177.

*Osterweil*, 92 F. Supp. 3d at 26 (quoting *Simmons*, 575 F.3d at 177).  In other words, because both "limousine" lawyering and "sedan" lawyering can get you where you want and need to go, the taxpayers should not be required to pay for the trip and the tip for the limo.

17

Thus, Judge D'Agostino held that "the prevailing hourly rates for the Northern District of New York are the appropriate guide for reasonable hourly fees in this case." *Osterweil*, 92 F. Supp. 3d at 27.  After stating that "Mr. Clement has unique expertise in federal appellate litigation of constitutional issues and more than twenty years of experience, including three years as the forty-third Solicitor General of the United States," in 2015, Judge D'Agostino awarded him $300 per hour for his work, and $200 for his partner Ms. Murphy, who at that time had approximately "nine years of legal experience." *Id*. at 28.  The paralegals were awarded $80 per hour.  *Id*.

Here, although Plaintiffs' counsel seek excessively high hourly rates for their work, they should be limited to a maximum of $350 per hour.  *See Upstate N.Y. Eng'rs Health Fund v. Pumpcrete Corp*., No. 5:21-cv-00344 (BKS/ML), 2022 U.S. Dist. LEXIS 119936, at *2-3 (N.D.N.Y. July 7, 2022) (approving Plaintiffs requests for reimbursement at the following rates: $328.00 per hour for work by counsel in 2021; $346 per hour for work by counsel in 2022).[4]

To summarize, if Mr. Clement and Ms. Murphy worked this case alongside two junior associates of their choice, as well as two of their paralegals, and if they did nothing but bill on this case working 50 hours a week for five straight weeks, and if they were paid the maximum permitted in the Northern District, they would only be due about $330,000.  This broad-based discretionary analysis is further corroborated by a line-by-line, in-the-weeds, green-eye-shade mathematical analysis of the billing records.  In fact, once the proper hourly rates were applied to

---

[4] On average, these local Northern District attorney's fees are quite reasonable when compared with the hourly rate of lawyers in general around the Nation.  For instance, in 2020, the District of Columbia had the highest lawyer hourly rate, an average of $380.  After D.C., the top jurisdictions in the country were, in order, New York at $357, California at $338, Delaware at $333, Nevada at $312, New Jersey at $316, Connecticut at $311, Maryland at $306, Illinois at $298, and Florida at $294. *See* https://www.attorneyatwork.com/solo-and-small-firm-lawyer-hourly-rates/

Plaintiffs' counsel records, and once a 30 percent across-the-board reduction was properly imposed by the Court due to significant overlapping between the work done by 22 lawyers and 13 paralegals, a $330,000 figure also simultaneously emerged.

Because that $330,000 figure represents rough justice in this case, Plaintiffs' counsel are not due anything more from the treasury of New York State.

## CONCLUSION

For the foregoing reasons, Plaintiffs' request for attorneys' fees should be denied or, in the alternative, any attorneys' fees awarded should be drastically lower than the amount requested as is set forth above.

Dated:  Albany, New York
  March 16, 2023

LETITIA JAMES
Attorney General
State of New York
*Attorney for Acting Superintendent Nigrelli and Justice McNally*

By: **_Michael McCartin_**
Michael G. McCartin, Of Counsel
Assistant Attorney General | Special Counsel
Bar Roll No. 511158
The Capitol
Albany, New York 12224
Tel.: (518) 776-2620
Michael.McCartin@ag.ny.gov

TO:  All counsel of record (via ECF)