IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW YORK STATE RIFLE AND PISTOL ASSOCIATION, INC., *et al.*, )<br>)<br>*Plaintiffs*, )<br>v. )<br>)<br>STEVEN NIGRELLI, *et al.*, )<br>)<br>*Defendants*. ) | Civil Action No.<br>1:18-cv-00134-BKS-ATB |

**PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES**

Plaintiffs respectfully file this Reply to Defendants' Memorandum of Law in Opposition to Plaintiffs' Application for Attorneys' Fees. (ECF No. 70).

**INTRODUCTION**

Defendants populate their Opposition with straw-men fallacies, fictional law firms, and absurd suggestions that this case was unsophisticated and unworthy of expertise. But Defendants offer no legitimate reason to significantly reduce Plaintiffs' award. They also ignore entirely the three dispositive issues: First, in-district rates do not apply in this "case requiring special expertise" because "no in-district counsel possessed such expertise." *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 176 (2d Cir. 2009). Second, 1,621.95 hours was a reasonable number of hours to bill for this complex, groundbreaking, almost-five-year-long constitutional case. *See N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1142, 1146 (2d Cir. 1983) (upholding fee award based on 11,034 hours over life of five-year case). Third, Plaintiffs' few specific objections do not warrant an across-the-board reduction. They instead warrant the few specific reductions detailed below. For the reasons demonstrated below, this Court should award Plaintiffs $1,235,567.34 in attorney's fees and taxable costs under 42 U.S.C. § 1988.

1

**ARGUMENT**

I.  **The "forum rule" does not apply.**

Defendants premise their entire argument on the unsubstantiated and incorrect assumption that in-district rates "must" apply. (*See* ECF No. 70 at 15). That premise is wrong because Plaintiffs have made a particularized showing that Plaintiffs' attorneys were necessary to their success in this case, which Defendants did not address let alone refute. *See Carlisle Ventures, Inc v. Banco Espanol de Credito, S.A.*, 176 F.3d 601, 609 (2d Cir. 1993) (declining to consider appellant's argument where the appellant "d[id] not respond to [the appellee's] waiver argument in its [r]eply [b]rief" or "point to any evidence in the record to prove that it did raise th[e] argument below").

The "forum rule" creates a rebuttable presumption that in-district rates apply. *Simmons*, 575 F.3d at 172. This presumption is rebutted when an applicant "persuasively establish[es] that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Id.* In other words, the applicant "must make a particularized showing" that (1) "the selection of out-of-district counsel was predicated on experience-based, objective factors" and (2) "use of in-district counsel would produce a substantially inferior result." *Id.* at 176. It is enough "in a case requiring special expertise" that "that no in-district counsel possessed such expertise." *Id.* That is exactly the case here.

A.  **Plaintiffs have satisfied all components of the exception to the forum rule.**

The undisputed constitutional complexity of this case demonstrates the reasonableness (*i.e.*, necessity) of Plaintiffs' choice of counsel. This case necessitated arguments about the scope of the Second Amendment, the history and tradition of firearms regulation dating back to pre-colonial America and early England, and the analytical framework for resolving Second Amendment claims. (ECF No. 66 at 15). Binding precedent of this circuit and persuasive-but-

2

incorrect precedents from almost every other circuit stood between Plaintiffs and the relief they sought: a groundbreaking decision from the Supreme Court. (ECF No. 67 at 4–5). This case was anything but simple. And the result speaks for itself. Against that backdrop, this Court should have no trouble concluding that Plaintiffs justifiably retained out-of-district counsel with unique Second Amendment expertise. *Simmons*, 575 F.3d at 172.

First, Plaintiffs have shown that their "selection of out-of-district counsel was predicated on experience-based, objective factors." *Id.* With the exception of local counsel, the three firms representing Plaintiffs have uniquely extensive experience litigating Second Amendment claims in federal trial and appellate courts. (ECF Nos. 65–67). Second, Plaintiffs have shown that "use of in-district counsel would [have] produce[d] a substantially inferior result." *Simmons*, 575 F.3d at 176. Nearly unanimous incorrect precedents throughout the country for the past ten-plus years, which necessitated the Supreme Court's intervention, demonstrate that few (if any) attorneys in the country, let alone this district, could have "produce[d] a substantially better net result." *Id.* In fact, others tried and failed to challenge New York's licensing scheme. *See Libertarian Party of Erie Cnty. v. Cuomo*, 300 F. Supp. 3d 424 (W.D.N.Y. 2018), *appeal dismissed in part, aff'd in part*, 970 F.3d 106 (2d Cir. 2020), *cert denied*, 141 S. Ct. 2797 (2021). Plaintiffs' attorneys secured *certiorari* despite the historic rarity of grants in the Second Amendment area. The result was a landmark Supreme Court decision confirming the fundamental right to keep and bears arms outside of the home, and conclusively establishing the analytical framework for all Second Amendment challenges going forward. Plaintiffs' only viable option was to employ these out-of-district attorneys who possessed the "special expertise" necessary to obtain that result. *Simmons*, 575 F.3d at 176.

### B. Defendants ignore controlling law and the complexities of this case.

Defendants say that any award "must be reduced" to in-district rates. (ECF No. 70 at 15). They do not attempt to explain why, and they ignore the *Simmons* exception. Defendants similarly sprinkle their opposition with conclusory suggestions that "[t]his case simply did *not*" require Plaintiffs' staffing choices, (*id.* at 8), and that Plaintiffs' "lawyers and paralegal are simply not entitled to the full fee that they seek," (*id.*). They make no effort to support these assertions.

Defendants' abject failure to address Plaintiffs' arguments and evidence rebutting the application of in-district rates is sufficient reason to find that Defendants concede the issue. *See Carlisle Ventures, Inc.*, 176 F.3d at 609; *Simmons v. Nat'l R.R. Passenger Corp.*, No. 19 Civ. 6986 (LGS), 2020 WL 2904847, at *4 (S.D.N.Y. June 3, 2020) ("Plaintiff has waived reliance on these other provisions, as she did not respond to Amtrak's arguments that they are inapplicable."); *Kao v. British Airways, PLC*, No. 17 Civ. 0232 (LGS), 2018 WL 501609, at *5 (S.D.N.Y. Jan. 18, 2018) ("Plaintiffs' failure to oppose Defendants' specific argument in a motion to dismiss is deemed waiver of that issue."). Plaintiffs have argued consistently that the forum rule does not require in-district rates in this case. (ECF Nos. 56-1 at 4, 61-1 at 7). Defendants elected to ignore those arguments and the evidence despite notice and an opportunity to respond. (ECF No. 70).

In any event, the cases Defendants cite support Plaintiffs' fee application, not Defendants' opposition. Defendants quote *Grant v. Lockett* for the proposition that in-district rates control. 605 F. Supp. 3d 399, 404 (N.D.N.Y. 2022). But the *Grant* court had already held in a prior opinion that the plaintiffs "failed to make a particularized showing to rebut the presumptive forum rule." *Grant v. City Syracuse*, 357 F. Supp. 3d 180, 202 (N.D.N.Y. 2019). Here, Plaintiffs showed that no in-district counsel possessed the requisite expertise to litigate this case and that their choice of counsel was a justified necessity. Plaintiffs have done what the *Grant* plaintiffs did not.

4

This court's decision in *Osterweil* helps Plaintiffs for the same reason. In that case, a single plaintiff brought an as-applied challenge to a state statute's domiciliary requirement. *Osterweil v. Bartlett*, 92 F. Supp. 3d at 21. The case was resolved on statutory-interpretation grounds, *id.* at 22, and the Supreme Court did not review the case. The *Osterweil* court applied in-district rates because plaintiff failed to show that local attorneys could not have prevailed. *Id.* at 27. This case is different in every regard. Plaintiffs have satisfied each of the critical shortcomings the *Osterweil* court identified, *i.e.*, "what specific expertise or skills his attorneys possessed that attorneys within the Northern District of New York do not possess," their attorneys' "specific experience litigating Second Amendment claims," and "that attorneys within this district are not competent to handle federal appellate litigation of a civil rights claim akin to [their] claim." *Id.* at 27 (detailing the plaintiffs' shortcomings). *Osterweil* confirms the sufficiency of Plaintiffs' evidence here.

### C. This Court should base its award on Plaintiffs' attorneys' actual rates.

This Court should base its award on Plaintiffs' attorneys' actual rates, which represent "the prevailing market rates for counsel of similar experience and skill" in complex Second Amendment litigation. *Farbotko v. Clinton Cnty.*, 433 F.3d 204, 209 (2d Cir. 2005). The need to hire counsel with extensive experience litigating Second Amendment claims—including before the Supreme Court—justifies finding that these attorneys' actual rates are what "a reasonable, paying client would be willing to pay," *Bergerson v. N.Y. State Office of Mental Health*, 652 F.3d 277, 289 (2d Cir. 2011), rather than rates of another jurisdiction.[1] The decision to hire Mr. Clement, for example, came on the heels of his obtaining *certiorari*, briefing, and arguing another Second Amendment case. *N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 140 S. Ct. 1515 (2020).

---

[1] Kirkland & Ellis attorneys were granted Special Litigation Counsel status in NRA's bankruptcy proceedings at similar rates. ECF Nos. 173, 362 at 2, *In re Nat'l Rifle Ass'n of Am., et al.*, No. 21-30085-hdh11 (N.D. Tex. Bank. Mar. 15, 2021).

5

Defendants' opposition hinges entirely on their incorrect argument that in-district rates must apply here. (ECF No. 70 at 15–19). They make no alternative argument as to what rates should apply if the in-district-rate argument fails. Plaintiffs have made clear that they seek actual rates, (ECF Nos. 56-1, 61-1, 64–67), and this Court should find that Defendants waived any argument that some other jurisdiction's rates (rather than the attorneys' actual rates) should apply. *See Carlisle Ventures, Inc.*, 176 F.3d at 609; *Simmons*, 2020 WL 2904847, at *4; *Kao, PLC*, 2018 WL 501609, at *5. This Court should issue an award based on the attorneys' actual rates.

**II.     Plaintiffs' attorneys billed a reasonable number of hours.**

Defendants next make an unsubstantiated assertion that Plaintiffs' attorneys billed "surely excessive" amounts of time. (ECF No. 70 at 10). After discounts and reductions set out in Section III, *infra*, Plaintiffs' attorneys and professionals billed a total of 1,621.95 hours on this case over almost five years, litigating this case up to the Supreme Court and back. That amount is surely reasonable under applicable caselaw, and Defendants offer no reason (or contrary caselaw) to depart from Plaintiffs' billing records.

Defendants attempt to muddy the waters by pointing out that "22 lawyers and at least 13 paralegals" worked on this case. (ECF No. 70 at 8). But that is not a fair characterization. Kathleen M. Baynes served as local counsel. (ECF No. 64 at 4). Six Cooper & Kirk attorneys handled briefing in the district and circuit courts, and some of these attorneys billed as few as .5 and 1.9 hours. (ECF No. 65 at 5–9). Six Bradley attorneys handled argument in the Second Circuit, a few tasks during Supreme Court proceedings, and represent Plaintiffs on remand; some Bradley attorneys billed as few as .2 and 4.7 hours. (ECF No. 67 at 6–9). Ten Kirkland & Ellis attorneys handled briefing and argument at the Supreme Court; four of which only provided moot assistance—a task which reasonably demands fresh minds. (ECF No. 66 at 6–12). In addition,

6

Bradley and Kirkland & Ellis provided substantial discounts (in rates or hours) at least in part for the purpose of getting up to speed as each stepped into the case. (*Id.* at 15; ECF No. 67 at 11). Only a handful of attorneys simultaneously worked the case at any given time. This Court should reject Defendants' straw-man argument that it was unreasonable to use a "35-person group [that] consisted of 22 different lawyers and at least 13 paralegals from four different law firms." (ECF No. 70 at 8). No such group ever existed except in Defendants' minds.

Defendants' unsubstantiated assertion that "[t]his case simply did *not* require 22 lawyers and 13 paralegals" also fails when the rather modest total number of hours is considered. Those attorneys and professionals billed, in total, 1,621.95 hours. The Second Circuit has upheld an award based on 11,034 hours of legal work over the course of a five-and-a-half-year case. *Carey*, 711 F.2d at 1146–47. This court has similarly issued an award based on more than 8,097 hours in a four-year case. *See Pope v. Cnty. of Albany*, No. 1:11-cv-0736 (LEK/CFH), 2015 WL 5510944, at *3, 16 (N.D.N.Y. Sept. 16, 2015). Plaintiffs' request here is a fraction of the hours involved in *Carey* and *Pope*. And Defendants offer no caselaw to support their conclusory argument that Plaintiffs spent an unreasonable amount of time litigating this case.

It makes no sense for Defendants to suggest that Plaintiffs have been unreasonable. New York enacted an unconstitutional licensing scheme, not Plaintiffs. New York defended that scheme tooth and nail, not Plaintiffs. Now Defendants want this Court to penalize Plaintiffs for retaining attorneys necessary to overcome means-end-scrutiny precedents from this and almost every other circuit, "may issue" precedents from this and a handful of other circuits, and the robust defense that these Defendants provided. Defendants repeatedly increased Plaintiffs' litigation costs, for example, by trying to change the question presented during Supreme Court briefing. Brief for

7

Respondents at 15, *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) (No. 20-843). This Court should find that Plaintiffs' request is based on a reasonable number of hours.

### III.     An across-the-board reduction is improper.

This Court has "ample discretion" to assess whether Plaintiffs' billing records are appropriately tailored to the needs and complexities, *Carey*, 711 F.2d at 1146, and it may use "percentage cuts as a practical means of trimming fat from a fee application," *id.* Although Defendants raise a few well-taken objections, they have not demonstrated any circumstances warranting the "30 percent across-the-board reduction" they seek. (ECF No. 70 at 19). Rather, Plaintiffs' well-taken objections warrant specific reductions detailed below.

Several of Defendants' abstract, conclusory objections do not warrant redress. They object that Kirkland & Ellis attorneys "billed $20,225 solely for sending emails," which they conclude is "excessive." (*Id.* at 12). But they make no effort to explain why such communications are excessive or unreasonable over the course of Kirkland & Ellis's year-long representation that heavily involved strategic development, briefing, and coordination with *amici* at the Supreme Court. Defendants also object to Kirkland & Ellis billing $23,367.50 "on inter-firm discussions between attorneys" and label this, again without explanation, as "excessive." (*Id.*). Such self-serving conclusions cannot overcome Plaintiffs' demonstration of reasonableness. Defendants' objections to "duplicative billing" are similarly unsupported by the record except as detailed below. (*Id.* at 13).[2] Finally, Defendants assert "that Plaintiffs' counsel at each of the four firms charge[d] their

---

[2] Defendants' objections appear to confuse duplicative billing with collaboration, (ECF No. 66-1 at 19 (billing entries for strategic discussions); ECF No. 67-1 at 14 (same)), and the unsurprising fact that multiple attorneys could edit a brief on the same day, (ECF No. 66-1 at 50). *See Carey*, 711 F.2d at 1146 ("[P]revailing parties are not barred as a matter of law from receiving fees for sending a second attorney to depositions or an extra lawyer into court to observe and assist.").

8

full hourly rate for travel." (*Id.* at 14). Plaintiffs have not requested any award based on attorney travel time; Defendants' objection is entirely irrelevant.

Plaintiffs agree with a few of Defendants' specific objections. (*Id.* at 12–13). Plaintiffs will voluntarily forgo fees for Bradley's non-arguing attorneys (Mr. Porter, Mr. Nardone, and Mr. Blair) attending, watching, or listening to Second Circuit argument: 3 hours and $939.76. (ECF No. 67-1 at 32). Plaintiffs will also forgo paralegal Ms. Martinez's time in its entirety: 25.2 hours and $5,723.29. (*See generally id.*). Plaintiffs will also forgo Mr. Sweeney's entry that included *LinkedIn* review: .6 hours and $438. (ECF No. 67-1 at 94). Plaintiffs will also forgo Mr. Clement's entry that included participation in an *NPR* interview: 2 hours and $3,221.50. (ECF No. 66-1 at 94).[3] Defendants raise no other plausible objections, so no further reduction is warranted.

An across-the-board reduction is unjustified. Beyond conclusory labels, Defendants have not demonstrated any excessive, duplicative, vague, overstaffed, or otherwise objectionable billing records that suggest unnecessary expenditure of time and effort. Rather, this Court should conclude that Plaintiffs utilized the resources reasonably necessary to prosecute and win this lawsuit.

Accounting for voluntary reductions and discounts, the table below breaks down an approximate award based on each lawyer's and professional's actual effective rate:

| Name | Total Hours | Award (Actual Effective Rate) |
|---|---|---|
| Kathleen M. Baynes | 54.2 | $14,905 ($275) |
| David H. Thompson | 5.9 | $5,412.77 ($917.42) |
| Charles J. Cooper | 1.9 | $2,137.50 ($1125) |
| Howard C. Nielson, Jr. | 0.5 | $357.50 ($715) |
| John D. Ohlendorf | 132 | $69,508.56 ($526.58) |
| Nicole J. Moss | 7.2 | $4,512 ($625–628.16) |
| Peter A. Patterson | 12.6 | $8,454.60 ($671) |
| Flannery Lawrence | 17 | $2,745.33 ($161.49) |
| Caleb Theriot | 9 | $1415.25 ($157.25) |

---

[3] Defendants say "$3,790 was billed for preparation for a media interview with *NPR*," (ECF No. 70 at 12), ignoring the 15% discount Kirkland & Ellis applied to each bill. (ECF No. 66-1 at 48).

9

| Elizabeth Barton | 2.2 | $341 ($155) |
| --- | --- | --- |
| Erin Brainard | 1.7 | $263.50 ($155) |
| Paul D. Clement | 111.75 (reduced) | $179,822.51 ($1609.15) |
| Erin E. Murphy | 122 | $153,702.07 ($1,268.04) |
| Kasdin M. Miller | 129 | $125,529.03 ($973.09) |
| Kevin M. Neylan, Jr. | 185.5 | $171,547 ($924.78) |
| Nicholas M. Gallagher | 312.75 | $222,248.41 ($710.62) |
| H. Bartow Farr | 24.75 | $31,451.06 ($1270.75) |
| George W. Hicks, Jr. | 14 | $16,362.50 ($1,168.75) |
| Matthew D. Rowen | 10.75 | $10,005.55 ($930.74) |
| Harker Rhodes | 13.5 | $13,138.85 ($973.25) |
| Mariel Brookins | 15.25 | $12,897.68 ($845.75) |
| Ashley Britton | 26.25 | $9,530.62 ($363.07) |
| Aviana Vergnetti | 76.75 | $22,833.11 ($297.50) |
| Harry W. Wild | 1.5 | $412.25 ($274.83) |
| Kiran Mehta | 9.75 | $2,237.62 ($229.50) |
| Library Factual Res. | 18.25 | $6,049.87 ($331.50) |
| Library Legis. Res. | 8.25 | $2,734.87 ($331.50) |
| Library Doc. Retrieval | 2.25 | $554.62 ($246.49) |
| John P. Sweeney | 103.4 (reduced) | $61,714.35 ($596.85) |
| T. Sky Woodward | 4.7 | $2,260.92 ($481.05) |
| James W. Porter III | 81.4 (reduced) | $37,381.32 ($459.23) |
| Marc A. Nardone | 12.4 (reduced) | $5,567.41 ($440.98) |
| Connor M. Blair | 76.1 (reduced) | $28,872.51 ($379.40) |
| Daniel L. Lawrence | 0.2 | $63 ($315) |
| Kristine A. Martinez | 0 (reduced) | $0 |
| Emerson K. Krause | 17.3 | $4,498 ($260) |
| **Total Hours & Fees** | 1,621.95 | $1,231,468.14 |
| **Taxable Costs:** | | $4,099.20 |
| **Total Award:** | | $1,235,567.34 |

## CONCLUSION

For the reasons above, Plaintiffs respectfully request an award of $1,235,567.34 in attorney's fees and costs.

*/s/ John Parker Sweeney*
John Parker Sweeney
Bradley Arant Boult Cummings LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
Phone: (202) 393-7150
jsweeney@bradley.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby that on March 23, 2023, I electronically filed the foregoing with the Clerk of the Count using the CM/ECF system, and I hereby certify that service will be accomplished by the CM/ECF system on all parties or their counsel. I further certify that a copy of the foregoing was served via email to the following:

Kelly L. Munkwitz
Michael G. McCartin
OFFICE OF NEW YORK STATE
ATTORNEY GENERAL – ALBANY
The Capitol
Albany, NY 12224
Telephone: (518) 776-2626
Kelly.munkwitz@ag.ny.gov
Michael.mccartin@ag.ny.gov

*Counsel for Defendants*


Dated: March 23, 2023                                            */s/ John Parker Sweeney*
                                                                John Parker Sweeney

                                                                *Counsel for Plaintiffs*