**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

NEW YORK STATE RIFLE & PISTOL ASSOCIATION,
INC., ROBERT NASH, and BRANDON KOCH,

                                  Plaintiffs,

v.

STEPHEN NIGRELLI,[1] in his official capacity as Acting
Superintendent of the New York State Police, and
RICHARD J. MCNALLY, JR., in his official capacity as
Justice of the New York Supreme Court, Third Judicial
District, and Licensing Officer for Rensselaer County,

                                  Defendants.

1:18-cv-134 (BKS/ATB)

**Appearances:**

*For Plaintiffs:*
John Parker Sweeney
James W. Porter, III
Marc A. Nardone
Connor M. Blair
Bradley Arant Boult Cummings LLP
1615 L Street N.W., Suite 1350
Washington, DC 20036

*For Defendants:*
Letitia James
Attorney General of the State of New York
Michael G. McCartin
Assistant Attorney General, of counsel
The Capitol
Albany, NY 12224

---

[1] Pursuant to Rule 25(d) of the Federal Rule of Civil Procedure, Stephen Nigrelli, as Acting Superintendent of the New York State Police, is substituted for Kevin P. Bruen, who was the Superintendent of the New York State Police at the time of the Supreme Court's ruling in this case, *see N.Y. State Rifle & Pistol Ass'n, v. Bruen*, 142 S. Ct. 2111 (2022).

Hon. Brenda K. Sannes, Chief United States District Judge:

## MEMORANDUM-DECISION AND ORDER

## I.     BACKGROUND

Plaintiffs Robert Nash, Brandon Koch, and the New York State Pistol & Rifle

Association, Inc. brought this action under 42 U.S.C. § 1983 against Defendants George P.

Beach, II, in his official capacity as the Superintendent of the New York State Police, and

Richard J. McNally, Jr., in his official capacity as Justice of the New York Supreme Court, Third

Judicial District, and Licensing Officer for Rensselaer County, alleging that Defendants violated

Plaintiffs Nash and Koch's Second and Fourteenth Amendment rights by refusing to grant them

licenses to carry a firearm outside the home for self-defense. *See N.Y. State Rifle & Pistol Ass'n*

*v. Beach*, 354 F. Supp. 3d 143, 145 (N.D.N.Y. 2018) ("*NYSRPA I*"), *aff'd*, 818 F. App'x 99 (2d

Cir. 2020) (summary order) ("*NYSRPA II*"), *rev'd and remanded sub nom. N.Y. State Rifle &*

*Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) ("*NYSRPA III*"). Defendants moved to dismiss

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that Plaintiffs' claim

failed as a matter of law because this Court was bound by *Kachalsky v. County of Westchester*,

701 F.3d 81, 83 (2d Cir. 2012), *abrogated by NYSRPA III*, 142 S. Ct. 2111. *See NYSRPA I*, 354

F. Supp. 3d at 145. Plaintiffs conceded that this Court was bound by *Kachalsky*. *See id.*

This Court granted Defendants' motion and dismissed Plaintiffs' amended complaint

with prejudice. *See id.* at 149. Plaintiffs appealed, and the Second Circuit affirmed the judgment,

finding that it was bound to follow its precedent in *Kachalsky*. *See NYSRPA II*, 818 F. App'x at

100. Plaintiffs appealed to the Supreme Court, which reversed the judgment of the Second

Circuit and remanded the case to this Court. *See NYSRPA III*, 142 S. Ct. at 2156. This Court

granted the parties' motion for entry of judgment under Rule 58(d) of the Federal Rules of Civil

Procedure and ordered that the Clerk enter judgment in favor of Plaintiffs. (Dkt. No. 53.)

Presently before the Court is Plaintiffs' motion for attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and Rule 54(d) of the Federal Rules of Civil Procedure. (Dkt. No. 56.) Plaintiffs initially sought a total of $1,269,232.13, including $14,329.51 in costs, for 1,745.75 hours worked. (Dkt. No. 56-1, at 1.) This total included hours worked by attorneys at four different law firms: Kathleen McCaffrey Baynes, Esq., PLLC, which has served as local counsel throughout the course of the litigation; Cooper & Kirk PLLC, which litigated the case before this Court and briefed the matter before the Second Circuit; Bradley Arant Boult Cummings LLP, which argued the matter before the Second Circuit and is litigating the matter upon remand before this Court; and Kirkland & Ellis LLP, which briefed and argued the matter before the Supreme Court. (*Id.* at 6–7.) In response to Defendants' opposition, which noted that Plaintiffs had failed to provide any billing documentation supporting their application, (Dkt. No. 60), Plaintiffs submitted declarations from representatives from each of the four law firms providing billing information. (Dkt. Nos. 61-1, 64, 65, 66, 67.) Defendants again filed a memorandum in opposition, arguing that Plaintiffs' award should be limited to $330,000. (Dkt. No. 70, at 19, 23.) Plaintiffs conceded a small number of Defendants' points and lowered their request to a total of $1,235,567.34 in fees and costs. (Dkt. No. 71-1, at 10.)

For the reasons that follow, Plaintiffs' motion for attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and Rule 54(d) is granted in part and denied in part.

## II.     DISCUSSION

### A.     Attorneys' Fees Pursuant to § 1988(b)

#### 1.     Prevailing Party

To "ensure effective access to the judicial process for persons with civil rights grievances," *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), § 1988(b) empowers the Court to award reasonable attorney fees to the "prevailing party" in a § 1983 action. 42 U.S.C. § 1988(b).

To "qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of [the] claim." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992). This includes either "an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement." *Id.* (citations omitted). Plaintiffs litigated this case through a motion to dismiss before this Court, appealed this Court's dismissal to the Second Circuit, and appealed the Second Circuit's affirmance to the Supreme Court. The Supreme Court reversed the judgment of the Second Circuit and remanded the case to this Court. *See NYSRPA III*, 142 S. Ct. at 2156. This Court granted the parties' motion for entry of judgment, and judgment was entered in favor of Plaintiffs. (Dkt. No. 53.) Thus, the Court finds, and Defendants do not dispute, that Plaintiffs are the prevailing party under § 1988 and are entitled to recover attorneys' fees under that statute. The Court must therefore determine the "reasonable attorney's fee" in this case. *See Lilly v. City of New York*, 934 F.3d 222, 228 (2d Cir. 2019).

## 2.      Presumptively Reasonable Fee

District courts have "considerable discretion in determining what constitutes reasonable attorney's fees in a given case." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008). "The reasonable hourly rate should be what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Bergerson v. N.Y. State Off. of Mental Health*, 652 F.3d 277, 289–90 (2d Cir. 2011). Courts in the Second Circuit generally use the lodestar, or "presumptively reasonable fee," approach to calculate reasonable attorneys' fees. *See Lilly*, 934 F.3d at 229. This approach requires a district court to set a "reasonable hourly rate, taking account of all case-specific variables," and determine "the appropriate billable hours expended." *Lilly*, 934 F.3d at 230 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 189–90 (2d Cir. 2008)); *see also Grant v. Martinez*, 973 F.2d 96,

99 (2d Cir. 1992) ("Under this approach, the number of hours reasonably expended on the

litigation is multiplied by a reasonable hourly rate for attorneys and paraprofessionals.");

*DiFilippo v. Morizio*, 759 F.2d 231, 234 (2d Cir. 1985) ("[W]here . . . the party achieves success

on the merits, an award of all reasonable hours at a reasonable hourly rate, i.e., the lodestar

figure, is presumptively appropriate."). "[T]he district court . . . bears the burden of disciplining

the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least

amount necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 184. "[T]he essential

goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Kyros L. P.C.*

*v. World Wrestling Ent., Inc.*, --- F.4th ----, No. 21-3127, 2023 WL 5519149, at *8, 2023 U.S.

App. LEXIS 22597, at *27 (2d Cir. Aug. 28, 2023) (quoting *Fox v. Vice*, 563 U.S. 826, 838

(2011)). The prevailing party is also entitled to attorneys' fees for hours expended in bringing its

§ 1988 application. *See Restivo v. Nassau County*, No. 06-cv-6720, 2015 WL 7734100, at *2 n.3,

2015 U.S. Dist. LEXIS 160336, at *5 n.3 (E.D.N.Y. Nov. 30, 2015) (citing *Valley Disposal, Inc.*

*v. Cent. Vt. Solid Waste Mgmt. Dist.*, 71 F.3d 1053, 1060 (2d Cir. 1995)), *aff'd sub nom. Restivo*

*v. Hessemann*, 846 F.3d 547 (2d Cir. 2017).

### a.        Reasonable Hourly Rates

The Supreme Court has explained that district courts should generally use the "prevailing

market rates in the relevant community" in determining the reasonable hourly rate. *See Blum v.*

*Stenson*, 465 U.S. 886, 895 (1984). The Second Circuit has interpreted the "community" to mean

"the district where the district court sits." *See Arbor Hill*, 522 F.3d at 190 (citing *Polk v. N.Y.*

*State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)); *see also Grant v. City of Syracuse*,

357 F. Supp. 3d 180, 200–01 (N.D.N.Y. 2019). The Court notes that the legal work performed in

this case, aside from the instant motion, occurred between 2018, when Plaintiffs filed their

complaint, (Dkt. No. 1), and 2021, when the parties argued before the Supreme Court, *see*

*NYSRPA III*, 142 S. Ct. 2111. A review of cases in this District indicates that the following hourly rates (or rate ranges) are reasonable: $250–$350 for partners;[2] $165–$200 for associates;[3] and $80–$90 for paralegals, legal assistants, and other paraprofessionals.[4]

Here, Plaintiffs seek hourly rates greater than reasonable in-district rates, ranging from $315.00 to $1,270.75 for associates and from $440.29 to $1,609.18 for partners, for twenty-two of the twenty-three attorneys who worked on the matter and hourly rates greater than reasonable in-district rates, ranging from $155.00 to $363.07, for all thirteen paraprofessionals, including paralegals, librarians, and legal assistants, who worked on the matter. (Dkt. Nos. 64, 65, 66, 67; Dkt. No. 71-1, at 9–10.)[5]

"[W]hen faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule." *Simmons*, 575 F.3d at 175. To "overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just

---

[2] *See Sadowski v. Urbanspotlite LLC*, No. 22-cv-887, 2023 WL 2838376, at *6, 2023 U.S. Dist. LEXIS 61259, at *15 (N.D.N.Y. Apr. 7, 2023); *see also Grant v. Lockett*, 605 F. Supp. 3d 399, 404 (N.D.N.Y. 2022); *Doe v. Cornell Univ.*, No. 17-cv-402, 2019 WL 1567535, at *7, 2019 U.S. Dist. LEXIS 62986, at *18 (N.D.N.Y. Apr. 11, 2019); *Cruz v. Sal-Mark Rest. Corp.*, No. 17-cv-815, 2019 WL 355334, at *7, 2019 U.S. Dist. LEXIS 13529, at *20 (N.D.N.Y. Jan. 28, 2019); *Parish v. Kosinski*, 17-cv-344, 2018 WL 1475222, at *5, 2018 U.S. Dist. LEXIS 20134, at *16–17 (N.D.N.Y. Feb. 5, 2018); *Pope v. County of Albany*, No. 11-cv-736, 2015 WL 5510944, at *10, 2015 U.S. Dist. LEXIS 123379, at *27 (N.D.N.Y. Sept. 16, 2015).

[3] *See Sadowski*, 2023 WL 2838376, at *6, 2023 U.S. Dist. LEXIS 61259, at *15; *see also Grant*, 605 F. Supp. 3d at 404; *Daniel E.W. v. Berryhill*, No. 17-cv-271, 2019 WL 1986538, at *5, 2019 U.S. Dist. LEXIS 75781, at *14 (N.D.N.Y. May 6, 2019); *Curves Int'l, Inc. v. Nash*, No. 11-cv-425, 2013 WL 3872832, at *5, 2013 U.S. Dist. LEXIS 104095, at *15 (N.D.N.Y. July 25, 2013); *Zalewski v. T.P. Builders, Inc.*, Nos. 10-cv-876, 2012 WL 5880327, at *3, 2012 U.S. Dist. LEXIS 166263, at *13 (N.D.N.Y. Nov. 21, 2012).

[4] *See Sadowski*, 2023 WL 2838376, at *6, 2023 U.S. Dist. LEXIS 61259, at *15; *see also Grant*, 605 F. Supp. 3d at 404; *Deferio v. City of Syracuse*, No. 16-cv-361, 2018 WL 3069200, at *6, 2018 U.S. Dist. LEXIS 103596, at *17 (N.D.N.Y. June 21, 2018); *Johnson v. Mauro*, No. 16-cv-622, 2019 WL 5842765, at *10, 2019 U.S. Dist. LEXIS 193661, at *26 (N.D.N.Y. Nov. 7, 2019).

[5] These rates are effective hourly rates inclusive of certain discounts applied by the law firms. For example, Paul Clement billed at hourly rates of $1,825 and $1,895, (Dkt. No. 66-1, at 9), which, upon application of a fifteen percent discount, yielded an effective hourly rate of $1,609.18, (Dkt. No. 66, at 6). Cooper & Kirk and Bradley Arant similarly applied certain discounts and provided certain rates in terms of effective hourly rates. (Dkt. Nos. 65, 67.)

possibly) produce a substantially better net result." *Id.* The party "seeking the award must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result." *Id.* at 176. "Among the objective factors that may be pertinent is counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise" or by showing that "local counsel possessing requisite experience were unwilling or unable to take the case . . . [or] no in-district counsel possessed such expertise." *Id.* at 175–76 (citing *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987)). "A litigant cannot overcome the presumption in favor of in-district rates 'by relying on the prestige or "brand name" of her selected counsel.'" *Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 26 (N.D.N.Y. 2015) (quoting *Simmons*, 575 F.3d at 176).

Plaintiffs assert that their requested hourly rates, all but one of which are substantially above presumptively reasonable in-district rates, are justified because this case involved a "sophisticated constitutional-law action . . . [that] required litigation before the Supreme Court of the United States for the reversal of binding Second Circuit precedent" by "counsel experienced in the litigation of Second Amendment matters and Supreme Court litigation" and resulted in "Plaintiffs obtain[ing] a groundbreaking decision from the Supreme Court in an area of Second Amendment jurisprudence on which that Court had not yet opined." (Dkt. No. 56-1, at 4–5.) Plaintiffs argue that the Court should deviate from the forum rule because they have made a particularized showing that the "selection of out-of-district counsel was predicated on experience-based, objective factors" and of "the likelihood that use of in-district counsel would [have] produc[ed] a substantially inferior result." (Dkt. No. 61-1, at 5 (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 176 (2d Cir. 2009)).) In support of their motion for fees and

costs, Plaintiffs submitted declarations from representatives of each of the four law firms that worked on the matter providing the qualifications of and billing information for each attorney and paraprofessional who rendered relevant services. (Dkt. Nos. 61-1, 64, 65, 66, 67.) Defendants, meanwhile, argue that the Court should set rates consistent with those reasonable in the Northern District of New York or otherwise apply an "across-the-board reduction" to account for Plaintiffs' excessive and improper fee request. (Dkt. No. 70, at 12–23.)

Here, the Court finds that Plaintiffs have "failed to make a particularized showing to rebut the presumptive forum rule," *see Grant*, 357 F. Supp. 3d at 202; *see also Simmons*, 575 F.3d at 176, with respect to two of the three firms at issue: Bradlay Arant and Cooper & Kirk.[6] Plaintiffs failed to show that this was "a case requiring special expertise [and] that no in-district counsel possessed such expertise," or that local counsel "were unwilling or unable to take the case," *Simmons*, 575 F.3d 175–76, with specific regard to litigating the matter at the district- and circuit-court levels, where controlling precedent—namely, *Kachalsky*—dictated the outcome. *See NYSRPA II*, 818 F. App'x at 100 (affirming dismissal because "this Court has recently reaffirmed . . . [that] New York's proper cause requirement does not violate the Second Amendment" (citing *Kachalsky*, 701 F.3d at 83, 100–01; *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 126–127 (2d Cir. 2020), *abrogated by NYSRPA III*, 142 S. Ct. 2111)); *see also Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 405 (2d Cir. 2014) ("In general, a panel of this Court is 'bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of our Court or by the Supreme Court.'" (quoting *In re Zarnel*, 619 F.3d 156, 168 (2d Cir. 2010))). Plaintiffs' arguments in support of out-of-district

---

[6] Plaintiffs do not seek out-of-district rates for their in-district local counsel, Kathleen McCaffrey Baynes, (Dkt. No. 64, at 5; Dkt. No. 71-1, at 9), and, as discussed below, the Court finds the fees of Ms. Baynes reasonable.

rates are limited to pointing to Plaintiffs' success at the Supreme Court and the conclusory statements that "few in-district attorneys regularly practice Second Amendment litigation and even fewer practice this constitutional litigation on behalf of plaintiffs against government entities; . . . even fewer in-district attorneys have briefed or argued Second Amendment cases before the Second Circuit and the Supreme Court, like the attorneys Plaintiff selected; and . . . no in-district attorneys have the experience necessary for Plaintiffs' challenge." (Dkt. No. 61-1, at 5–6.)

Nor have Plaintiffs shown that out-of-district counsel "would likely (not just possibly) produce a substantially better net result" at the district- and circuit-court levels. *See Simmons*, 575 F.3d at 175. Plaintiffs achieved the same result—a result dictated by *Kachalsky*, *see NYSRPA I*, 354 F. Supp. 3d at 145; *NYSRPA II*, 818 F. App'x at 100—as the "[n]early unanimous incorrect precedents through the country for the past ten-plus years," (Dkt. No. 71-1, at 3), namely, dismissal and affirmance. Plaintiffs have not shown that at the district- and circuit-court levels, use of in-district counsel was likely to have produced a substantially inferior result, *see Simmons*, 575 F.3d at 176. Plaintiffs have not overcome the presumption in favor of application of the forum rule, and the Court, accordingly, will look to hourly rates reasonable within the Northern District of New York to determine the reasonable hourly rates for the attorneys and paraprofessionals who worked on this case before this Court and the Second Circuit. *See Bergerson*, 652 F.3d at 290; *see also Nat'l Rifle Ass'n v. Vill. of Oak Park*, 871 F. Supp. 2d 781, 785–89 (N.D. Ill. 2012) (analyzing individually the rate of each attorney who worked on a matter before a district court, a circuit court, and the Supreme Court).

Similarly, Plaintiffs have not demonstrated that certain members of the Kirkland & Ellis team, including some attorneys and all paralegals and librarians (as described in detail below),

possessed special expertise demonstrated by experience-based, objective factors that made their services subject of rates substantially higher than in-district rates. *See Simmons*, 575 F.3d at 176. Plaintiffs have not demonstrated that these services were "likely . . . [to] produce a substantially better net result" than the same services performed at in-district rates. *See id.* at 175. Accordingly, the Court will apply hourly rates reasonable within the Northern District of New York to the services performed by these attorneys and paraprofessionals. *See Bergerson*, 652 F.3d at 290.

The Court's analysis differs, however, for certain legal work that directly resulted in Plaintiffs' success—that is, the Supreme Court litigation—which, as Plaintiffs argue, resulted in "a groundbreaking decision from the Supreme Court in an area of Second Amendment jurisprudence on which that Court had not yet opined." (Dkt. No. 61-1, at 6); *see also Restivo*, 846 F.3d at 591. Plaintiffs' lead counsel before the Supreme Court, Paul D. Clement, has submitted an affidavit stating that the success in the Supreme Court required "(1) textual arguments related to the scope of Second Amendment protection; [] (2) arguments related to the history and tradition of firearms regulation, dating as far back as pre-colonial America and early England, and (3) legal arguments regarding the proper way to interpret the Constitution and analyze constitutional claims." (Dkt. No. 66, ¶ 39.) Mr. Clement states that this litigation required "counsel with special expertise in the complex field of Second Amendment litigation before the Supreme Court" and that "[t]here are very few attorneys who regularly practice Second Amendment litigation[,] [e]ven fewer regularly do so against governmental entities[,] [e]ven fewer have experience doing so before the Supreme Court of the United States[,] [and] [n]o in-district counsel possessed the experience that Plaintiffs' constitutional challenge required." (Dkt. No. 66, ¶¶ 39–40.) The Court finds that Plaintiffs have shown that the special

expertise of the two senior partners primarily responsible for Plaintiffs' matter at Kirkland &

Ellis was likely to produce a substantially better result than could in-district counsel. *See*

*Simmons*, 575 F.3d at 175. The senior partners primarily responsible for Plaintiffs' case at

Kirkland & Ellis—Mr. Clement and Erin E. Murphy—were, as detailed below, eminently

qualified and highly experienced, and they have recently succeeded in other high-profile Second

Amendment matters before the Supreme Court, including *McDonald v. City of Chicago*, 561

U.S. 742 (2010), and *District of Columbia v. Heller*, 554 U.S. 570 (2008). *See Frommert v.*

*Conkright*, 223 F. Supp. 3d 140, 151–52 (W.D.N.Y. 2016) (awarding "premium rates" that were

"considerably higher" than in-district rates for specialized Supreme Court counsel where both

parties employed experienced Supreme Court litigators), *order amended on reconsideration*,

No. 00-cv-6311, 2017 WL 3867795, 2017 U.S. Dist. LEXIS 222442 (W.D.N.Y. May 4, 2017);

*see also Restivo*, 846 F.3d at 591("[I]n applying higher out-of-district rates in the lodestar

calculation[,] . . . [t]he district court properly considered the relevant factors, which can include

litigation results where 'they are a direct result of the quality of the attorney's performance,' and

where litigation results can inform whether obtaining out-of-district counsel was likely to

produce a substantially better net result." (quoting *Millea v. Metro–North R.R.*, 658 F.3d 154,

168 (2d Cir. 2011))).[7] Furthermore, as described in detail below, certain other members of the

---

[7] Defendants rely heavily on *Osterweil v. Bartlett* in arguing that reasonable in-district rates are appropriate here. (Dkt. No. 60, at 15–16; Dkt. No. 70, at 20–23.) *Osterweil* dealt specifically with fees for Mr. Clement and Ms. Murphy in connection with Second Amendment litigation. *See* 92 F. Supp. 3d at 26. For work in that case, which was undertaken between 2008 and 2014, the plaintiff sought recovery of fees at an hourly rate of $1,100 for Mr. Clement and $575 for Ms. Murphy. *Id.* Judge D'Agostino concluded that in-district hourly rates of $300 for Mr. Clement and $200 for Ms. Murphy were appropriate. *See id.* at 28. But, as Plaintiffs correctly point out, that case never reached the Supreme Court; its resolution at the Second Circuit involved a comparatively straightforward question of statutory interpretation, not constitutional analysis; and it "did not raise any novel legal issues." *See id.* at 32. Here, the case was resolved by the Supreme Court, which undertook a fulsome Second Amendment analysis that resulted in "a groundbreaking opinion on both the scope of the Second Amendment's protections and the analytical framework for challenges to laws infringing conduct protected by the Second Amendment." (Dkt. No. 61-1, at 7–8.) Thus, though the case provides helpful guidance, the Court finds the result reached in *Osterweil* inapposite.

Kirkland & Ellis team possessed other special expertise and experience for specific tasks, such as moot court preparation, warranting a rate higher than a reasonable in-district rate.

Determination of hourly rates reasonable for these attorneys "'contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel,' an inquiry that may 'include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district.'" *See Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012) (quoting *Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir. 2005)). Here, however, Plaintiffs have not provided any basis for the high rates sought for work performed by Kirkland & Ellis in caselaw, in prevailing market rates, or in market-based evidence demonstrating that such a rate is actually charged to other paying clients. The Court notes that Mr. Clement states that "Kirkland & Ellis' fees in this action are consistent with the rates in the national appellate market for the price of legal services of comparable quality rendered in cases demanding similar skill, judgment, time, and performance," (Dkt. No. 66, ¶ 41), and that "Kirkland & Ellis' rates reflect those that a reasonable, paying client would be willing to pay," (*id.*).[8] But Plaintiffs point to no caselaw from the District Court for the District of Columbia that demonstrate rates in the forum where the Kirkland & Ellis team was based, (Dkt. No. 66-1, at 2),[9] nor from any other district that would support an award of such rates. Nor

---

[8] The Court also notes, however, that it appears that it was not Plaintiffs themselves who were billed by Kirkland & Ellis. Rather, Kirkland & Ellis (and the other three law firms) billed the National Rifle Association. (Dkt. No. 66-1, at 2, 7.) There is no indication in the record of what role the National Rifle Association had in this matter. "Evidence that the client 'actually paid' the fees requested is 'compelling evidence of a reasonable market rate.'" *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, No. 18-cv-4437, 2021 WL 1549916, at *2, 2021 U.S. Dist. LEXIS 75671, at *5–6 (S.D.N.Y. Apr. 20, 2021) (quoting *Danaher Corp. v. Travelers Indem. Co.*, No. 10-cv-121, 2014 WL 4898754, at *2, 2014 U.S. Dist. LEXIS 140779, at *7 (S.D.N.Y. Sept. 30, 2014)). Here, there is no evidence that Plaintiffs or the National Rifle Association actually paid the bills furnished by Kirkland & Ellis. (Dkt. No. 66-1.) Thus, there is no evidence before the Court that any reasonable, paying client actually paid the requested rates.

[9] Plaintiffs do not address, for instance, the "Laffey matrix," a schedule of prevailing rates that is routinely used in the District Court for the District of Columbia in assessing reasonable fees. *See, e.g., Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015).

do Plaintiffs provide evidence of reasonable rates "in the national appellate market for the price of legal services of comparable quality rendered in cases demanding similar skill, judgment, time, and performance." (Dkt. No. 66, ¶ 41.) In fact, the Court has found no relevant case in which fees approximating those requested here were awarded.[10] The few cases Plaintiffs do cite, from the Southern and Eastern Districts of New York, award fees at a rate of, at most, $603 per hour. *See Nautilus Neuroscis., Inc. v. Fares*, No. 13-cv-1078, 2014 WL 1492481, at *3, 2014 U.S. Dist. LEXIS 52850, at *11–12 (S.D.N.Y. Apr. 16, 2014) (awarding fees at a rate of $603 per hour for work performed by the lead litigating partner, who had nearly thirty years of experience); *see also Schwartz v. DEA.*, No. 13-cv-5004, 2019 WL 1299192, at *9, 2019 U.S. Dist. LEXIS 34165, at *26 (E.D.N.Y. Mar. 1, 2019) (awarding fees at a rate of "approximately $500" per hour for work performed by a supervising partner, who had over fifteen years of experience), *report and recommendation adopted*, 2019 WL 1299660, 2019 U.S. Dist. LEXIS 47168 (E.D.N.Y. Mar. 21, 2019).[11]

Nevertheless, the Court will undertake a case-specific inquiry to determine reasonable hourly rates. Such an inquiry includes examination of case-specific factors, including "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability

---

[10] Though Plaintiffs do not cite it, the Court has found a case in which Mr. Clement was awarded his requested hourly rate for work in the Supreme Court (which in that case was $1,020). *See Oak Park*, 871 F. Supp. 2d at 788. But that case did not employ the more robust analysis used in the Second Circuit. *See Lilly*, 934 F.3d at 228–31.

[11] Plaintiffs also point to a bankruptcy case from the Northern District of Texas, (Dkt. No. 71-1, at 5 n.1), which is plainly inapposite.

of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Lilly*, 934 F.3d at 228, 232–33 (quoting *Arbor Hill*, 522 F.3d at 186 n.3 (2d Cir. 2008)). It may also include "whether a lawyer is willing to offer his services in whole or in part *pro bono*, or to promote the lawyer's own reputational or societal goals." *Arbor Hill*, 522 F.3d at 192.

As already noted, the novelty and difficulty of the questions presented by this litigation were significant, as were the level of skill required to perform the legal service at the Supreme Court and the experience, reputation, and ability of certain attorneys who worked on the matter at that stage. Mr. Clement also noted, in a conclusory fashion, that "[b]y accepting this action, Kirkland & Ellis' attorneys were precluded from taking on other representation" and that "[t]his action . . . imposed time constraints on those attorneys' schedules." (Dkt. No. 66, ¶ 43.) And Plaintiffs' counsel at the Supreme Court obtained an excellent result for Plaintiffs. But Plaintiffs have provided little else as regards other relevant factors. Although Plaintiffs have shown that certain attorneys are entitled to out-of-district rates, they have not established that the rates they seek are reasonable.

Accordingly, the Court will rely on the in-circuit cases cited by Plaintiffs in attempting to support their requested award, which establish reasonable rates awarded to "civil rights attorneys in New York's various federal judicial districts." (Dkt. No. 61-1, at 7.) The cases Plaintiffs cite demonstrate that rates ranging from $500 to $655 per hour are appropriate for "experienced, national experts" in specialized areas of law, *see Schwartz*, 2019 WL 1299192, at *9, 2019 U.S. Dist. LEXIS 34165, at *26–28 (collecting cases); *see also Nautilus Neuroscis.*, 2014 WL 1492481, at *3, 2014 U.S. Dist. LEXIS 52850, at *11–12 (awarding $603 to an experienced

commercial litigator),[12] and that the "highest rates" are reserved for "attorneys with extensive experience before the federal bar, who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in their fields," *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 300 (E.D.N.Y. 2012); *see also Mendoza v. A.P.P.I. Mgmt. Corp.*, No. 22-cv-2179, 2023 WL 4471944, at *4, 2023 U.S. Dist. LEXIS 119279, at *11 (E.D.N.Y. July 11, 2023) (noting that the highest rates are awarded to "extraordinary attorneys held in unusually high regard by the legal community" (quoting *Torres v. Gristedes Operating Corp.*, No. 04-cv-3316, 2012 WL 3878144, at *3, 2012 U.S. Dist. LEXIS 127890 at *11 (S.D.N.Y. Aug. 6, 2012))). The Court will apply this analysis to the relevant attorneys, as discussed in detail below.

## b. Reasonable Rates for the District-Court and Circuit-Court Litigation

Given the above analysis, the Court will determine the reasonable hourly rate to apply to each of the attorneys or paraprofessionals who worked on the matter.

### i. Kathleen McCaffrey Baynes, Esq., PLLC

Kathleen McCaffrey Baynes is a member of Kathleen McCaffrey Baynes, Esq., PLLC, which is based in Albany, New York, and served as local counsel throughout Plaintiffs' action. (Dkt. No. 64, ¶¶ 4, 14.) Ms. Baynes graduated from law school in 1993, has "successfully tried cases and handled appeals in state and federal courts throughout New York," and spent "more than 20 years at a large litigation firm" before founding her own practice. (*Id.* ¶ 5.) Ms. Baynes

---

[12] *See also Agudath Isr. of Am. v. Hochul*, No. 20-cv-4834, 2021 WL 5771841, at *5, 2021 U.S. Dist. LEXIS 233088, at *13 (E.D.N.Y. Dec. 6, 2021) (finding fees ranging from $400 to $600 reasonable for partners in complex cases), *aff'd*, No. 22-38, 2023 WL 2637344, 2023 U.S. App. LEXIS 7199 (2d Cir. Mar. 27, 2023); *HomeAway.com, Inc. v. City of New York*, 523 F. Supp. 3d 573, 597 (S.D.N.Y. Mar. 1, 2021) (awarding a rate of $650 per hour for lead counsel with "significant experience in complex business and appellate litigation").

charged an hourly rate of $275. (*Id.* ¶¶ 16–17.) Given her qualifications, experience, and reasonable in-district rate, Plaintiffs may recover for Ms. Baynes's services at that rate.[13]

### ii.    Cooper & Kirk PLLC

As previously noted, the Court will apply reasonable in-district rates based on individual qualifications and experience to the work performed by Cooper & Kirk.

### (i)    Six Partners

### 1.    David H. Thompson

David H. Thompson is the Managing Partner of Cooper & Kirk. (Dkt. No. 65, ¶ 1.) Mr. Thompson graduated from law school in 1994. (*Id.* ¶ 4.) He has "extensive trial and appellate experience in a wide range of matters . . . [including] Second Amendment civil rights matters in cases before the United States Courts of Appeals for the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, Tenth, Eleventh, and D.C. Circuits, in related District Courts, and in numerous state courts." (*Id.* ¶ 5.) He has argued "before the United States Supreme Court, each of the 13 federal courts of appeals, many federal district courts, and in many state courts." (*Id.*) Mr. Thompson's work in this action included "strategic development" as well as organization and review of briefs and other papers in the District Court and the Second Circuit. (*Id.* ¶ 17.) Plaintiffs seek an effective hourly rate of $917.42 for Mr. Thompson's services. (*Id.*) Given his qualifications and experience, Plaintiffs may recover for Mr. Thompson's services at the rate of $350 per hour, a reasonable in-district rate for an experienced partner.

### 2.    Charles J. Cooper

Charles J. Cooper is a founding member and chairman of Cooper & Kirk. (*Id.* ¶ 20.) Mr. Cooper graduated from law school in 1977 and clerked for Judge Paul Roney of the Fifth Circuit

---

[13] Defendants agree that "the total amount sought" by Ms. Baynes's based on her hourly rate and hours billed is "quite reasonable." (Dkt. No. 70, at 14.)

Court of Appeals and Justice William H. Rehnquist. (*Id.*) He "has over 40 years of experience in government service and private practice." (*Id.*) Mr. Cooper has also served as the Assistant Attorney General for the Office of Legal Counsel. (*Id.*) "He has argued nine cases before the United States Supreme Court and scores of appeals before each of the 13 federal courts of appeals and several state supreme courts [and] . . . has been lead trial counsel in numerous complex, weeks-long trials in federal courts throughout the country." (*Id.*) Mr. Cooper's work in this action included review of Second Amendment caselaw and "strategic development." Plaintiffs seek an hourly rate of $1,125 for Mr. Cooper's services. (*Id.*) Given his qualifications and experience, Plaintiffs may recover for Mr. Cooper's services at the rate of $350 per hour, a reasonable in-district rate for an experienced partner.

### 3. Howard C. Nielson, Jr.

Howard C. Nielson, Jr., who is now a judge for the United States District Court for the District of Utah, graduated from law school in 1997. (*Id.* ¶ 21.) Judge Nielson clerked for Judge J. Michael Luttig of the United States Court of Appeals for the Fourth Circuit and Justice Anthony Kennedy. (*Id.*) Judge Nielson previously served in the United States Department of Justice as counsel to the Attorney General and as Deputy Assistant Attorney General in the Office of Legal Counsel. (*Id.*) Judge Nielson has also taught courses in constitutional litigation, national security law, foreign relations law, and federal courts at J. Reuven Clark Law School at Brigham Young University. (*Id.*) Judge Nielson's work in this action included "strategic development." (*Id.*) Plaintiffs do not identify what position Judge Nielson held while he worked at Cooper & Kirk. Plaintiffs seek an hourly rate of $715 for Judge Nielson's services. (*Id.*) Given his qualifications and experience, Plaintiffs may recover for Judge Nielson's services at the rate of $350 per hour, a reasonable in-district rate for an experienced partner.

### 4. John D. Ohlendorf

John D. Ohlendorf graduated from law school in 2010 before clerking for Judge

Raymond Gruender of the United States Court of Appeals for the Eighth Circuit. (*Id.* ¶ 22.) Mr.

Ohlendorf "has litigated multiple claims involving the separation of powers, the Appointments

Clause, freedom of speech, the Second Amendment, the Due Process Clause, the Equal

Protection Clause, and the Takings Clause [and] . . . has been heavily involved in over thirty

matters defending the right to keep and bear arms." (*Id.*) "Mr. Ohlendorf has written dozens of

briefs in the United States Supreme Court and has argued numerous cases, including appeals in

both state and federal court," and he also has "experience litigating at the trial-court level from

the filing of the complaint to proceedings in the Supreme Court." (*Id.*) Mr. Ohlendorf has also

taught at Northwestern University School of Law and Georgetown Law Center. (*Id.*) Plaintiffs

do not identify what position Mr. Ohlendorf held while he worked at Cooper & Kirk. Mr.

Ohlendorf's work in this action included "strategic development"; legal research; and extensive

drafting and review of pleadings, briefs, and other papers. (*Id.*) Plaintiffs seek an effective hourly

rate of $526.58 for Mr. Ohlendorf's services. (*Id.*) Given his qualifications and experience,

Plaintiffs may recover for Mr. Ohlendorf's services at the rate of $275 per hour, a reasonable in-

district rate for a junior partner.

### 5. Nicole Jo Moss

Plaintiffs do not indicate when Nicole Jo Moss graduated from law school or include any

biographical information other than noting that Ms. Moss has "extensive civil litigation

experience representing a wide variety of clients before federal and state trial courts on a variety

of constitutional, statutory, administrative, contractual, tort, and complex commercial matters[,]

. . . has tried cases to both judges and juries, has worked with and deposed numerous experts,

public and private senior executives, . . . has spearheaded several extremely complex privilege

and discovery disputes[,] . . . has worked on several class action lawsuits on both the plaintiff

and defense side, and has particular expertise in complex e-discovery matters and the use of

multiple e-discovery platforms." (*Id.* ¶ 23.) Plaintiffs do not identify what position Ms. Moss

held at Cooper & Kirk. Ms. Moss's work in this action included "strategic development" and

coordination with potential plaintiffs. (*Id.*) Plaintiffs seek an effective hourly rate of $626.67 for

Ms. Moss's services. (*Id.*) Given the lack of information provided by Plaintiffs about Ms. Moss's

qualifications and experience, and given that her billed hourly rate is between those of Mr.

Patterson and Mr. Ohlendorf, Plaintiffs may recover for Ms. Moss's services at the rate of $275

per hour, a reasonable in-district rate for a junior partner.

### 6. Peter A. Patterson

Peter A. Patterson graduated from law school in 2006 and clerked for Judge Jeffrey S.

Sutton of the United States Court of Appeals for the Sixth Circuit. (*Id.* ¶ 24.) Mr. Patterson "has

extensive experience in complex matters involving important questions of constitutional,

statutory, and administrative law[,] . . . frequently has represented plaintiffs in cases alleging

constitutional or statutory violations by federal, state, and local government officials[,] [and] . . .

has represented plaintiffs in class action litigation against corporations and the federal

government." (*Id.*) Mr. Patterson previously served as Associate Counsel to the President in the

White House Counsel's Office and has taught at University of Cincinnati College of Law. (*Id.*)

Plaintiffs do not identify what position Mr. Patterson held at Cooper & Kirk. Mr. Patterson's

work in this action included "strategic development," legal research, and drafting and review of

pleadings, briefs, and other papers. (*Id.*) Plaintiffs seek an effective hourly rate of $671 for Mr.

Patterson's services. (*Id.*) Given his qualifications and experience, Plaintiffs may recover for Mr.

Patterson's services at the rate of $275 per hour, a reasonable in-district rate for a junior partner.

### (ii)   Four Legal Assistants

Flannery Lawrence was a legal assistant with Cooper & Kirk who graduated from college in 2018. (*Id.* ¶ 26.) Caleb Theriot was a legal assistant with Cooper & Kirk who graduated from college in 2016. (*Id.* ¶ 27.) Elizabeth Barton was a legal assistant with Cooper & Kirk who graduated from college in 2017. (*Id.* ¶ 28.) Erin Brainard was a legal assistant with Cooper & Kirk who graduated from college in 2015. (*Id.* ¶ 29.) Plaintiff's may recover for each of the legal assistants' services at an in-district legal-assistant rate of $80 per hour.

### iii.   Bradley Arant Boult Cummings, LLP

As with Cooper & Kirk, the Court will apply reasonable in-district rates based on individual qualifications and experience to the work performed by Bradley Arant.

### (i)   Four Partners

#### 1.   John Parker Sweeney

John Parker Sweeney is a partner at Bradley Arant. (Dkt. No. 67, ¶ 1.) Mr. Sweeney graduated from law school in 1975. (*Id.* ¶ 4.) Mr. Sweeney has "more than four decades of experience litigating complex commercial disputes, including major class actions, mass torts, and products-liability actions . . . [and] ha[s] significant experience over the past ten years representing plaintiffs in Second Amendment civil rights matters before federal trial and appellate courts" and "drafting and filing *amicus* briefs in many Second Amendment matters in the United States Courts of Appeals." (*Id.* ¶ 5.) Mr. Sweeney's work in this action included "strategic development"; organization and review of motions, notices, and other papers; oral argument presentation; and representation of Plaintiffs in motions practice following remand. (*Id.* ¶ 17.) Plaintiffs seek an effective hourly rate of $597.61 for Mr. Sweeney's services. (*Id.*) Given his qualifications and experience, Plaintiffs may recover for Mr. Sweeney's services at the rate of $350 per hour, a reasonable in-district rate for an experienced partner.

### 2.   T. Sky Woodward

T. Sky Woodward was a partner in Bradley Arant's litigation and appellate practice groups. (*Id.* ¶ 20.) Ms. Woodward graduated from law school in 1992 and "has more than 30 years of experience handling complex commercial litigation[,] . . . [including] ten years of experience representing clients in Second Amendment litigation." (*Id.*) Ms. Woodward's work in this action included "strategic development"; review of papers for submission to the Second Circuit; and oral argument preparation. (*Id.*) Plaintiffs seek an effective hourly rate of $481.05 for Ms. Woodward' services. (*Id.*) Given her qualifications and experience, Plaintiffs may recover for Ms. Woodward's services at the rate of $350 per hour, a reasonable in-district rate for an experienced partner.

### 3.   James W. Porter III

James W. Porter III is a partner in Bradley Arant's litigation and appellate practice groups. (*Id.* ¶ 21.) Mr. Porter graduated from law school in 2005 before clerking for Judge Robert B. Propst of the United States District Court for the Northern District of Alabama. (*Id.*) Mr. Porter "has more than 16 years of experience handling complex commercial litigation . . . [and] has ten years of experience representing clients in Second Amendment litigation." (*Id.*) Mr. Porter's work in this action included "strategic development"; drafting and review of papers; oral argument preparation; amicus coordination; and representation of Plaintiffs in motion practice following remand to this court. Plaintiffs seek an effective hourly rate of $457.75 for Mr. Porter's services. (*Id.*) Given his qualifications and experience, Plaintiffs may recover for Mr. Porter's services at the rate of $350 per hour, a reasonable in-district rate for an experienced partner.

#### 4.   Marc A. Nardone

Marc A. Nardone is a partner in Bradley Arant's litigation practice group. (*Id.* ¶ 22.) Mr. Nardone graduated from law school in 2011 before clerking for Judge Lynne A. Battaglia of the Maryland Court of Appeals. (*Id.*) Mr. Nardone "has ten years of experience representing clients in both complex commercial litigation and in Second Amendment litigation." (*Id.*) Mr. Nardone's work in this action included "strategic development"; oral argument preparation; and review of papers. Plaintiffs seek an effective hourly rate of $440.29 for Mr. Nardone's services. (*Id.*) Given his qualifications and experience, Plaintiffs may recover for Mr. Nardone's services at the rate of $275 per hour, a reasonable in-district rate for a junior partner.

#### (ii)   Two Associates

#### 1.   Connor M. Blair

Connor M. Blair, at the relevant time, was an associate in Bradly Arant's litigation practice group. (*Id.* ¶ 23.) Mr. Blair graduated from law school in 2013 and "has nine years of experience handling complex commercial litigation and approximately five years of experience representing clients in Second Amendment litigation." (*Id.*) Mr. Blair's work in this action included "strategic development"; legal research; drafting and review of papers; oral argument preparation; and representation of Plaintiffs following remand. (*Id.*) Plaintiffs seek an effective hourly rate of $378.22 for Mr. Blair's services. (*Id.*) Given his qualifications and experience, Plaintiffs may recover for Mr. Blair's services at the rate of $200 per hour, a reasonable in-district rate for a senior associate.

#### 2.   Daniel L. Lawrence

Daniel L. Lawrence is an associate in Bradley Arant's litigation practice group. (*Id.* ¶ 24.) Mr. Lawrence graduated from law school in 2019 and has "three years of experience representing clients in commercial litigation." (*Id.*) Mr. Lawrence's work in this action consisted

of legal research related to Plaintiffs' motion for attorneys' fees and costs. (*Id.*) Plaintiffs seek an hourly rate of $315 for Mr. Lawrence's services. (*Id.*) Given his qualifications and experience, Plaintiffs may recover for Mr. Lawrence's services at the rate of $165 per hour, a reasonable in-district rate for a junior associate.

### (iii)   One Paralegal

Emerson K. Krause was a paralegal at Bradley Arant. (Dkt. No. 67, ¶ 25.) Ms. Krause has one and a half years of paralegal experience. (*Id.*) Plaintiffs seek an hourly rate of $260 for Ms. Krause's services. (*Id.*) Plaintiffs may recover for Ms. Krause's services at an in-district paralegal rate of $90 per hour.[14]

### c.      Reasonable Rates for the Supreme Court Litigation

### i.      Kirkland & Ellis LLP

As discussed above, the Court will allow out-of-district rates for the work performed by some attorneys from Kirkland & Ellis to the extent they have demonstrated their special expertise with experience-based, objective factors that allow the Court to conclude their services were likely to produce a substantially better net result than could in-district counsel. *See Simmons*, 575 F.3d at 175–76. Otherwise, the Court will apply in-district rates, as set forth below.

### (i)   Three Supervising Partners

### 1.   Paul D. Clement

Paul D. Clement was the leader of the appellate and Supreme Court practice at Kirkland & Ellis. (Dkt. No. 66, ¶ 17.) Mr. Clement graduated from law school in 1992 before clerking for

---

[14] Kristine A. Martinez, who was a paralegal at Bradley Arant, also worked on the matter. (*Id.* ¶ 25.) Plaintiffs have forgone recovering for Ms. Martinez's time. (Dkt. No. 71-1, at 9.) Thus, the Court need not address Defendants' arguments about Ms. Martinez's time, and Ms. Martinez's time is not included in the Court's final calculation.

Judge Laurence H. Silberman of the United States Court of Appeals for the District of Columbia Circuit and Justice Antonin Scalia. (*Id.* ¶ 4.) Mr. Clement previously served as Solicitor General of the United States and now devotes his practice substantially to appellate and Supreme Court litigation. (*Id.* ¶¶ 5–6.) Mr. Clement has argued more than one hundred cases before the Supreme Court, including other recent Second Amendment cases such as *New York State Rifle & Pistol Ass'n v. City of New York*, 140 S. Ct. 1525 (2020), *McDonald*, 561 U.S. 742, and *Heller*, 554 U.S. 570. Mr. Clement's work in this action included "strategic development"; drafting, editing, and review of the petition for certiorari, briefs, and other papers; amici coordination; oral argument preparation; and oral argument presentation. (*Id.* ¶ 19.) Plaintiffs seek an effective hourly rate of $1,609.18 for Mr. Clement's services. (*Id*). Given Mr. Clement's extensive experience and special expertise, which are demonstrated by experience-based, objective factors, and in light of the success achieved, Plaintiffs may recover for Mr. Clement's services at an out-of-district rate. Based on the range of reasonable hourly rates established by the cases cited by Plaintiffs, Plaintiffs may recover for Mr. Clement's services at a rate of $675 per hour, which represents a slight increase over the high end of that range.[15]

### 2.  Erin E. Murphy

Erin E. Murphy was a partner at Kirkland & Ellis. (Dkt. No. 66, ¶ 22.) Ms. Murphy graduated from law school in 2006 before clerking for Judge Diane S. Sykes of the United States Court of Appeals for the Seventh Circuit and Chief Justice John Roberts and serving as a Bristow Fellow at the United States Department of Justice Office of the Solicitor General. (*Id.*) Ms.

---

[15] The Court will employ the ratio of the rate awarded for Mr. Clement's services to his requested rate in calculating rates for other Kirkland & Ellis attorneys who are entitled to out-of-district rates. That is, dividing the rate awarded for services performed by Mr. Clement, $675, by his requested rate, $1,609.18, yields 0.419468. Multiplying that number by the rate requested for work performed by, for example, Ms. Murphy, $1,268.04, yields 531.90. Thus, the Court will allow recovery for work performed by Ms. Murphy at a rate of $531.90 per hour, and will repeat this process for each attorney entitled to an out-of-district rate.

Murphy now devotes her law practice substantially to appellate and Supreme Court litigation and has argued cases before the Supreme Court and appellate and trial courts throughout the country, including multiple Second Amendment cases at the Ninth Circuit. (*Id.*) Ms. Murphy's work in this action included work on the petition for a writ of certiorari and work during the merits stage, including overseeing all briefing and assisting with preparation for oral argument. (*Id.*) Plaintiffs seek an effective hourly rate of $1,268.04 for Ms. Murphy's services. (*Id.*) Given her extensive experience and special expertise, which are demonstrated by experience-based, objective factors, and in light the success achieved, Plaintiffs may recover for Ms. Murphy's services at the out-of-district rate, based on the rate awarded for work performed by Mr. Clement, of $531.90 per hour.

### 3. Kasdin Miller Mitchell

Kasdin Miller Mitchell is a partner at Kirland & Ellis. (*Id.* ¶ 23.) Ms. Mitchell graduated from law school in 2012 before clerking for Judge William H. Pryor of the United States Court of Appeals for the Eleventh Circuit and Justice Clarence Thomas. (*Id.*) Ms. Mitchell also served as Assistant Solicitor General for the State of Alabama. (*Id.*) Ms. Mitchell "has argued in multiple courts of appeals, as well as numerous federal district and state courts, and she has filed briefs in every federal court of appeals except two." (*Id.*) Ms. Mitchell's experience includes one Second Amendment matter before the Ninth Circuit. (*Id.*) Ms. Mitchell's work in this action included leading Supreme Court briefing at all stages and assisting in preparation for oral argument. (*Id.*) Plaintiffs seek an effective hourly rate of $973.09 for Ms. Mitchell's services. (*Id.*) Given her extensive experience and special expertise, which are demonstrated by experience-based, objective factors, and in light the success achieved, Plaintiffs may recover for Ms. Mitchell's services at the out-of-district rate, based on the rate awarded for work performed by Mr. Clement, of $408.18 per hour.

### (ii)   Two Associates

#### 1.   Kevan M. Neylan, Jr.

Kevan M. Neylan, Jr., was, at the relevant time, an associate at Kirkland & Ellis. (*Id.* ¶ 24.) Mr. Neylan graduated from law school in 2015 before clerking for Judge Diarmuid F. O'Scannlain of the United States Court of Appeals for the Ninth Circuit and Justice Samuel Alito. (*Id.*) Mr. Neylan "has maintained a mixed appellate and trial practice that includes extensive litigation in front of the courts of appeals and federal district courts." (*Id.*) Mr. Neylan's work in this action included drafting briefs at the petition and merits stages and assisting in preparation for oral argument. (*Id.*) Plaintiffs seek an effective hourly rate of $924.78 for Mr. Neylan's services. (*Id.*) There is no indication that Mr. Neylan possessed any experience litigating before the Supreme Court or litigating Second Amendment cases. (*Id.*) Despite Mr. Neylan's pedigree, Plaintiffs have not shown that experience-based, objective factors justify an out-of-district rate for his services. Given his qualifications, Plaintiffs may recover for Mr. Neylan's services at a rate of $200 per hour, a reasonable in-district rate for a senior associate.

#### 2.   Nicholas M. Gallagher

Nicholas M. Gallagher was, at the relevant time, an associate at Kirkland & Ellis. (*Id.* ¶ 25.) Mr. Gallagher graduated from law school in 2019 before clerking for Judge Danny J. Boggs of the United States Court of Appeals for the Sixth Circuit. (*Id.*) Mr. Gallagher has since devoted his practice "substantially to appellate and Supreme Court litigation," he has "drafted briefs before the Supreme Court, the federal courts of appeals, and federal district and state courts," and he has worked on one Second Amendment matter before the Ninth Circuit. (*Id.*) Mr. Gallagher's work in this action included substantial historical research, drafting briefs at the merits stage, and assisting in preparation for oral argument. (*Id.*) Plaintiffs seek an effective hourly rate of $710.62 for Mr. Gallagher's services. (*Id.*) There is no indication that Mr.

Gallagher possessed any unique historical research ability, and at the relevant time, Mr.

Gallagher could only have possessed, at most, one year of litigation experience. (*Id.*) Plaintiffs

have not shown that experience-based, objective factors justify an out-of-district rate for Mr.

Gallagher's services. Given his qualifications, Plaintiffs may recover for Mr. Gallagher's

services at a rate of $190 per hour, a reasonable in-district rate for a well-qualified junior

associate with his experience.

### (iii)   Four Moot Court Partners

#### 1.   H. Bartow Farr

H. Bartow Farr was, at the relevant time, a partner at Kirkland & Ellis. (*Id.* ¶ 26.) Mr.

Farr graduated from law school in 1973 before clerking for Justice William H. Rhenquist and

serving as Assistant to the Solicitor General of the United States. (*Id.*) Mr. Farr has argued thirty-

two cases before the Supreme Court. (*Id.*) Mr. Farr's work in this action included moot court

assistance for oral argument and general counsel in preparing the case. (*Id.*) Plaintiffs seek an

effective hourly rate of $1,270.75 for Mr. Farr's services. (*Id.*) Though there is no indication that

Mr. Farr possessed special expertise with regard to Second Amendment matters, his Supreme

Court experience made him well qualified to provide moot court assistance. Thus, Plaintiffs may

recover for Mr. Farr's services at an out-of-district rate, based on the rate awarded for work

performed by Mr. Clement, of $533.04 per hour.

#### 2.   George W. Hicks, Jr.

George W. Hicks, Jr. is a partner at Kirkland & Ellis. (*Id.* ¶ 27.) Mr. Hicks graduated

from law school in 2012 before clerking for Judge Janice Rogers Brown of the United States

Court of Appeals for the District of Columbia Circuit and Chief Justice John Roberts. (*Id.*) Mr.

Hicks "has successfully argued before the Supreme Court, written successful merits briefs in

eleven cases before the Court, and argued nearly thirty appeals across the U.S. Courts of Appeals

for the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits, as well as before federal district and bankruptcy courts." (*Id.*) Mr. Hicks's work in this action included providing moot court assistance in preparation for oral argument. (*Id.*) Plaintiffs seek an effective hourly rate of $1,168.75 for Mr. Hicks's services. (*Id.*) Though there is no indication that Mr. Hicks possessed special expertise with regard to Second Amendment matters, his Supreme Court and federal appellate experience made him well qualified to provide moot court assistance. Thus, Plaintiffs may recover for Mr. Hicks's services at an out-of-district rate, based on the rate awarded for work performed by Mr. Clement, of $490.25 per hour.

### 3.  Matthew D. Rowen

Matthew D. Rowen was a partner at Kirkland & Ellis. (*Id.* ¶ 28.) Mr. Rowen graduated from law school in 2013 before clerking for Judge Paul J. Watford of the United States Court of Appeals for the Ninth Circuit and Judge David J. Barron of the United States Court of Appeals for the First Circuit. (*Id.*) Mr. Rowen "has drafted multiple certiorari- and merits-stages briefs before the Supreme Court, including in *New York State Rifle & Pistol Ass'n, Inc. v. City of New York*, 140 S. Ct. 1525 (2020)." (*Id.*) Mr. Rowen has also "written dozens of briefs before the federal courts of appeals, as well as numerous federal district and state courts." (*Id.*) Mr. Rowen's work in this action included providing moot court assistance in preparation for oral argument. (*Id.*) Plaintiffs seek an effective hourly rate of $930.74 for Mr. Rowen's services. (*Id.*) Given Mr. Rowen's prior experience with Second Amendment litigation at the Supreme Court and general appellate experience, he was well qualified to provide moot court assistance. Thus, Plaintiffs may recover for Mr. Rowen's services at an out-of-district rate, based on the rate awarded for work performed by Mr. Clement, of $390.42 per hour.

#### 4.   Harker Rhodes

Harker Rhodes was a partner at Kirkland & Ellis. (*Id.* ¶ 29.) Mr. Rhodes graduated from law school in 2012 before clerking for Judge Robert A. Katzmann of the United States Court of Appeals for the Second Circuit, Judge Rya W. Zobel of the United States District Court for the District of Massachusetts, and Justice Anthony Kennedy. (*Id.*) Mr. Rhodes "has argued in front of multiple federal courts of appeals, drafted certiorari- and merits-stages briefs before the Supreme Court, and written dozens of briefs before the federal courts of appeals, as well as numerous federal district and state courts." (*Id.*) Mr. Rhodes's work in this action included providing moot court assistance in preparations for oral argument. (*Id.*) Plaintiffs seek an effective hourly rate of $973.25 for Mr. Rhodes's services. (*Id.*) Despite Mr. Rhodes's lack of special expertise with regard to Second Amendment matters, his experience with Supreme Court and federal appellate litigation made him well qualified to provide moot court assistance. Thus, Plaintiffs may recover for Mr. Rhodes's services at an out-of-district rate, based on the rate awarded for work performed by Mr. Clement, of $408.25 per hour.

#### (iv)   One Moot Court Associate

#### 1.   Mariel Brookins

Mariel Brookins was an associate at Kirkland & Ellis. (*Id.* ¶ 30.) Ms. Brookins graduated from law school in 2017 before clerking for then-Judge Amy Coney Barrett of the United States Court of Appeals for the Seventh Circuit and Judge Kevin C. Newsom of the United States Court of Appeals for the Eleventh Circuit. (*Id.*) Ms. Brookins "has drafted multiple certiorari- and merits-stages briefs before the Supreme Court and written briefs before the federal courts of appeals, as well as federal district and state courts." (*Id.*) Ms. Brookins's work in this action included providing moot court assistance in preparations for oral argument. (*Id.*) Plaintiffs seek an effective hourly rate of $845.75 for Ms. Brookins's services. (*Id.*) Ms. Brookins lacks special

expertise with regard to Second Amendment litigation, though her experience with Supreme Court and federal appellate experience made her qualified to provide moot court assistance. Nevertheless, Plaintiffs may recover for Ms. Brookins's services at the rate of $200 per hour, a reasonable in-district rate for a mid-level associate with her experience.

### (v)   Four Paralegals

Ashley Britton was a paralegal at Kirkland & Ellis. (*Id.* ¶ 32.) Ms. Britton graduated from law school in 2015 and has "extensive experience specific to the Supreme Court and the federal courts of appeals." (*Id.*) Ms. Britton was the "principal paralegal" in this matter at the certiorari stage and assisted in preparing the briefs and appendices before the Supreme Court. (*Id.*) Aviana Vergnetti was a paralegal at Kirkland & Ellis. (*Id.* ¶ 33.) Ms. Vergnetti graduated from law school in 2017 and has "extensive experience specific to the Supreme Court and the Courts of Appeals." (*Id.*) Ms. Vergnetti was the "principal paralegal" in this matter at the merits stage and assisted in preparing the briefs and appendices before the Supreme Court. (*Id.*) Harry W. Hild was a paralegal at Kirkland & Ellis. (*Id.* ¶ 34.) Mr. Hild graduated from college in 2016. (*Id.*) Mr. Hild assisted in preparing the briefs and appendices before the Supreme Court. (*Id.*) Kiran Mehta was a paralegal at Kirkland & Ellis. (*Id.* ¶ 35.) Ms. Mehta graduated from college in 2019. (*Id.*) Ms. Mehta assisted in preparing the briefs and appendices before the Supreme Court. (*Id.*)

Plaintiffs have not shown that experience-based, objective factors justify an out-of-district rates for paralegals. Plaintiffs may recover for each paralegal's services at a reasonable in-district paralegal rate of $90 per hour.

### (vi)   Librarians

Kirkland & Ellis's dedicated Library Factual Research team assisted with obtaining factual materials utilized in briefing and arguing the case. (*Id.* ¶ 36.) Kirkland & Ellis's dedicated Library Legislative Research team assisted with obtaining legislative materials utilized in

briefing and arguing the case. (*Id.* ¶ 37.) Kirkland & Ellis's dedicated Library Document Retrieval team assisted with obtaining various documents utilized in briefing and arguing the case. (*Id.* ¶ 38.)

Plaintiffs have not shown that experience-based, objective factors justify out-of-district rates for librarian services. Plaintiffs may recover for each library team's services at a reasonable in-district paralegal rate of $90 per hour.

### 3.    Reasonable Number of Hours

Having determined the rates to be applied to services performed by Plaintiffs' counsel, the Court must next determine "the appropriate billable hours expended" to calculate the overall fee award. *See Lilly*, 934 F.3d at 230 (quoting *Arbor Hill*, 522 F.3d at 189–90).

After conceding a small number of Defendants' points, (Dkt. No. 71-1, at 9), Plaintiffs seek an award of attorneys' fees for 1,621.95 hours of attorney and paraprofessional work in this action. (*Id.* at 10.) Defendants, meanwhile, contend that a "significant across-the-board reduction" is warranted due to excessive billing, duplication, and overstaffing. (Dkt. No. 70, at 12–19.) Defendants suggest that, "at the very least, a thirty percent across-the-board reduction to Plaintiffs' requested billable hours would be suitable for this case." (Dkt. No. 70, at 18.) Plaintiffs argue that Defendants "have not demonstrated any circumstances warranting" such a reduction and that no reduction, other than the concessions made by Plaintiffs, are warranted. (Dkt. No. 71-1, at 8–9.)

A fee applicant "bears the burden of documenting the hours spent by counsel, and the reasonableness thereof." *Brooks v. Roberts*, 501 F. Supp. 3d 103, 114 (N.D.N.Y. 2020). "Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998).

a.      **Excessive or Duplicative Billing Entries and Overstaffing**

Defendants argue that "the number of hours claimed for most all of the attorneys who worked for Plaintiffs . . . are quite excessive, and, therefore, unreasonable." (Dkt. No. 70, at 6.) Plaintiffs argue, as with Defendants' other objections, that Defendants have not demonstrated any "excessive, duplicative, . . . overstaffed, or otherwise objectionable billing records that suggest unnecessary expenditure of time and effort." (Dkt. No. 71-1, at 9.)

"In determining a reasonable fee, the district court 'should exclude . . . hours that were not "reasonably expended,"' including 'hours that are excessive, redundant, or otherwise unnecessary.'" *Osterweil*, 92 F. Supp. 3d at 28 (quoting *Hensley*, 461 U.S. at 434). "The relevant inquiry for the court 'is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Id.* (quoting Grant, 973 F.2d at 99). "[T]he court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application'" where hours are excessive. *See id.* (quoting *Kirsch*, 148 F.3d at 173). Similarly, the court is "'accorded ample discretion' in assessing whether the extent of staffing was appropriate in a given case in light of the complexity of the litigation." *Id.* (quoting *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)). "On a fee-shifting application, . . . the governing test of reasonableness is objective; it is not dictated by a particular client's subjective desires or tolerance for spending." *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 52 (S.D.N.Y. 2015). Rather, "[t]he test is whether the plaintiff 'spen[t] the minimum necessary to litigate the case effectively.'" *Id.* (second alteration in original) (quoting *Simmons*, 575 F.3d at 174).

As an initial matter, the Court notes that a large number of individuals worked on this case for Plaintiffs: twenty-three attorneys and at least thirteen paraprofessionals across four law

firms for a total of thirty-six individuals. (Dkt. No. 70, at 14–17; Dkt. No. 71-1, at 9–10.) While this large number alone is not sufficient to reduce Plaintiffs' award, a reduction in a fee award is appropriate where overstaffing of a case results "in needless duplication of work and retention of unnecessary personnel." *See Mazzei v. Money Store*, No. 01-cv-5694, 2015 WL 2129675, at *4, 2015 U.S. Dist. LEXIS 59397, at *10 (S.D.N.Y. May 6, 2015) (quoting *Lochren v. County of Suffolk*, 344 F. App'x 706, 709 (2d Cir. 2009) (summary order)); *Osterweil*, 92 F. Supp. 3d at 32–33 (determining that a reduction of a fee award was appropriate where overstaffing resulted in unnecessary or otherwise excessive hours). First, the Court will consider the number of hours worked and the types of tasks performed to determine whether it appears counsel for Plaintiffs engaged in duplicative or excessive billing.

Defendants suggest that the billing records of Bradley Arant demonstrate duplicative billing on April 28, 2020, August 12, 2020, August 17, 2020, April 28, 2021, June 30, 2022, September 2, 2022, and November 29, 2022.[16] But, as Defendants point out, (Dkt. No. 71-1, at 8 n.2), entries on these days generally demonstrate collaboration, not duplication, which the Court does not find unreasonable. Additionally, the Court notes that Plaintiffs indicate they will forgo fees for Bradley Arant's "non-arguing attorneys . . . attending, watching, or listening to Second Circuit argument." (Dkt. No. 71-1, at 9.)[17] Fees for these tasks are not included in the Court's calculation.

Defendants similarly suggest that the billing records of Kirkland & Ellis demonstrate duplicative billing on April 28, 2021, April 29, 2021, May 10, 2021, May 17, 2021, September 9,

---

[16] Defendants appear to have mistakenly changed the years of some of these dates, (Dkt. No. 70, at 17), but based on the Court's independent review of the billing records, the Court presumes that the above dates are the dates on which Defendants contend duplicative entries are present.

[17] Plaintiffs also indicate they will forgo "Mr. Sweeney's entry that included *LinkedIn* review . . . [and] Mr. Clement's entry that included participation in an *NPR* interview." (*Id.*) Fees for these tasks are not included in the Court's calculation.

2021, October 6, 2021, and October 12, 2021. (Dkt. No. 70, at 17.) These instances also generally demonstrate collaboration, not duplication, which the Court does not find unreasonable. To the extent Defendants object to Plaintiffs use of multiple attorneys to work on a brief on the same day, the Court agrees with Plaintiffs that this is not unreasonable. (Dkt. No. 71-1, at 8 n.2.)

Defendants next suggest that Kirkland & Ellis's billing for "sending emails"—$20,225— and "inter-firm discussions between attorneys"—$23,367.50—is excessive. (Dkt. No. 70, at 16.) Plaintiffs suggest that these amounts are reasonable based on "Kirkland & Ellis's year-long representation that heavily involved "strategic development," briefing, and coordination with amici at the Supreme Court." (Dkt. No. 71-1, at 8.) The Court agrees with Plaintiffs that, given the complexity of the case, the hours for this work are reasonable.

However, the Court finds the overall time billed by Cooper & Kirk and Bradley Arant excessive based on the work performed. Cooper & Kirk spent over 100 hours on briefing at the district-court level. (Dkt. No. 65-1, at 2–26.) Cooper & Kirk also spent over eighty hours preparing briefing for the Second Circuit, (*id.* at 27–54), though the Court notes the extreme similarity between Plaintiffs' opposition to Defendants' motion to dismiss, (Dkt. No. 26), and Plaintiffs' opening brief before the Second Circuit, (Case No. 19-156, Dkt. No. 38 (2d Cir.)). Bradley Arant, meanwhile, spent nearly 150 hours on Second Circuit oral argument preparation and delivery alone, (Dkt. No. 67-1, at 2–35), and nearly 100 hours on what Plaintiffs describe as "a few tasks during Supreme Court proceedings," (Dkt. No. 71-1, at 6), much of which, the Court notes, consisted of vaguely billed "Amicus coordination." (Dkt. No. 67-1, at 36–85.)[18] The

---

[18] The remainder of Bradley Arant's time was spent on the instant fee application. (*Id.* at 85–107.)

Court finds the time spent by Cooper & Kirk before this Court and by Cooper & Kirk and Bradley Arant before the Second Circuit excessive, and a significant reduction is appropriate.

As to Cooper & Kirk's work before this Court, spending over 100 hours is clearly excessive for a relatively straightforward complaint and an opposition to Defendants' motion to dismiss when the outcome of that motion was dictated by *Kachalsky*. *See Brooks*, 501 F. Supp. 3d at 114 ("[C]ourts in this district and circuit have . . . found billings for motion practice in excess of one hundred hours to be excessive." (citation omitted)); *cf. Montanez v. City of Syracuse*, No. 16-cv-550, 2020 WL 5123134, at *12, 2020 U.S. Dist. LEXIS 157224, at *33–34 (N.D.N.Y. Aug. 31, 2020) (collecting cases finding that spending in excess of 100 hours opposing a motion for summary judgment is excessive). Cooper & Kirk's work on briefing for the Second Circuit is similarly excessive, especially given the similarities between the opposition submitted to this Court and the brief submitted to the Second Circuit and the inevitable outcome of the appeal at the Second Circuit. *See Osterweil*, 92 F. Supp. 3d at 34 ("Plaintiff has provided no explanation as to why nearly sixty hours of work was required to prepare a brief that contained the same arguments that Plaintiff had twice argued before . . . ."). Finally, the Court finds Bradley Arant's time spent preparing for and delivering the Second Circuit oral argument in this case excessive. *See id.* at 35 (collecting cases and finding approximately sixty hours preparing for and presenting oral argument before the Second Circuit excessive). The Court will consider this excessive billing in determining an appropriate reduction.

### b.      Vague or Block-Billed Entries

Defendants initially suggested, before Plaintiffs submitted billing records, that a reduction for vagueness or for block billing may be appropriate. (Dkt. No. 60, at 11–13.) But, as Plaintiffs note, (Dkt. No. 71-1, at 9), since Defendants received the billing records, they have not pointed to any specific instances of vague or block-billed entries. (Dkt. No. 70.)

Nevertheless, "the fee applicant [] bears the burden of documenting the hours spent by counsel, and the reasonableness thereof," *Brooks*, 501 F. Supp. 3d at 114, and "[c]ourts must perform 'a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended,'" *Burns v. Scott*, 635 F. Supp. 3d 258, 284 (S.D.N.Y. 2022) (quoting *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994)). Thus, in light of the large fee awarded requested by Plaintiffs, the Court has undertaken review of the billing records and determined that Bradley Arant's billing records include more than forty hours for "Amicus coordination" without further explanation and several more instances of "Amicus coordination" combined with other tasks. (Dkt. No. 67-1, at 47–49, 52, 56.) These entries are too vague. Vague entries that "do not indicate the nature or subject matter of the work being performed . . . do not enable a court to determine whether the hours are duplicative or excessive." *See Shannon v. Fireman's Fund Ins. Co.*, 156 F. Supp. 2d 279, 301 (S.D.N.Y. 2001). Accordingly, courts have applied reductions where billing entries are vague. *See, e.g., Sheet Metal Workers' Nat. Pension Fund v. Coverex Corp. Risk Sols.*, No. 09-cv-121, 2015 WL 3444896, at *17, 2015 U.S. Dist. LEXIS 69146, at *42–46 (E.D.N.Y. May 28, 2015) (reducing hours by thirty percent after finding billing entries "such as 'prepare for trial'" vague); *Kirsch*, 148 F.3d at 172 (finding no abuse of discretion where the district court reduced a fee award by twenty percent for vague entries such as "staff conference" and "work on motion"). The Court will consider these vague entries in determining an appropriate reduction.[19]

---

[19] Defendants also argue that "Plaintiffs' counsel at each of the four firms charge their full hourly rate for travel." (Dkt. No. 70, at 18.) Plaintiffs note, however, that they "have not requested any award based on attorney travel time." (Dkt. No. 71-1, at 9.) Declarations from Plaintiffs' counsel support Plaintiffs' contention. (Dkt. Nos. 64, 65, 66, 67.) Thus, the Court need not address Defendants' argument and travel time is not included in the Court's final calculation.

### c.      Fee Application

"If the original award is warranted, . . . a reasonable amount should be granted for time spent in applying for the award," *Nat. Res. Def. Council, Inc. v. Fox*, 129 F. Supp. 2d 666, 675 (S.D.N.Y. 2001) (alteration in original) (quoting *Donovan v. CSEA Loc. Union 1000, Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO*, 784 F.2d 98, 106 (2d Cir. 1986)). Defendants do not argue that the fees associated with the filing of the instant motion are unreasonable. In any case, the Court finds Plaintiffs' hours expended on this motion to be reasonable, and the fees associated with the instant motion are included in the Court's final calculation.

### 4.      Fee Award

Having carefully reviewed the billing records, and based on the Court's familiarity with this case, the Court finds that Plaintiffs are entitled to a substantial attorneys' fee award in light of the complexity and success of their action. However, the above-identified issues in billing records, including significantly excessive hours at the district- and circuit-court levels and some vague billing, warrant a percentage reduction. Accordingly, based on these factors, the Court applies a thirty-percent reduction to the hours billed by Cooper & Kirk and a thirty-percent reduction to the hours billed by Bradley Arant. *See Lilly*, 934 F.3d at 234 (affirming district court's reduction of fee award, noting that it was "confident that the district court achieved 'rough justice,' if not 'auditing perfection,' in its calculation of the appropriate fee award"); *see also Osterweil*, 92 F. Supp. 3d at 33–35 (reducing certain billing by thirty-three percent for excessive time spent preparing briefing and reducing by sixty-six percent briefing that contained the same arguments as prior briefing); *Brooks*, 501 F. Supp. 3d at 114–15 (imposing an across-the-board reduction of thirty-percent for excessive billing on preliminary briefing, including a motion to dismiss). The Court has not applied any reduction to the hours billed by Kirkland & Ellis.

The Court finds that the final attorneys' fee award of $443,601.62, as itemized below, is fair and consistent with the complexities of the case, which varied at each level of litigation, and that the reduction from Plaintiffs' requested award is consistent with certain inadequacies of the billing records and excessive billing by Plaintiffs' counsel.

### B.    Costs

Plaintiffs request reimbursement for costs in the amount of $4,099.20. (Dkt. No. 71-1, at 10.) "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54. "[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (quoting *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989)). Attorneys' expenditures on litigation are unnecessary and non-compensable when "they exceed the minimum that a reasonable paying client would pay absent a fee-shifting arrangement." *Grant*, 357 F. Supp. 3d at 208 (quoting *Amerisource Corp. v. Rx USA Int'l Inc.*, 2010 WL 2160017, at *15, 2010 U.S. Dist. LEXIS 52424, at *46 (E.D.N.Y. 2010)). The Second Circuit has identified that "out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable under § 1988 and are often distinguished from nonrecoverable routine office overhead, which must normally be absorbed within the attorney's hourly rate." *Id*. (quoting *Kuzma v. Internal Revenue Service*, 821 F.2d 930, 933–34 (2d Cir. 1987)). Courts have construed these categories of expenses as "non-exhaustive." *Deferio*, 2018 WL 3069200, at *9, 2018 U.S. Dist. LEXIS 103596, at *26–27.

Here, the Court finds that the supporting documentation supplied by Plaintiffs' counsel "evidences reasonable out-of-pocket expenses recoverable pursuant to 42 U.S.C. § 1988." *See Grant*, 357 F. Supp. 3d at 208. The requested expenses include filing fees, service of process

fees, and Supreme Court "Clerk's costs" and "Printing of record" costs. (Dkt. No. 64-2, at 2–9; Dkt. No. 67-2, at 2–9.) The Court finds that Plaintiff's requested expenses are the kind a "reasonable paying client would pay absent a fee-shifting arrangement." *See Grant*, 357 F. Supp. 3d at 208. Defendants do not specifically argue that the costs sought by Plaintiffs' counsel are unreasonable or otherwise inappropriate. In fact, Defendants suggest that up to $10,000 in costs would not be objectionable. (Dkt. No. 70, at 3, 8, 19.) Accordingly, the Court grants Plaintiffs' request for $4,099.20 in costs.

### C.    Final Calculation

In sum, after carefully considering all the relevant factors and adjusting the requested rates and the requested hours as discussed above, the Court finds Plaintiffs are entitled to attorneys' fees in the total amount of $443,601.62, as itemized below:

**Table 1:   Kathleen McCaffrey Baynes, Esq., PLLC**

| Attorney/Paraprofessional | Adjusted Rate | Hours | Total Fees |
|---|---|---|---|
| Kathleen McCaffrey Baynes | $275.00 | 54.2 | $14,905.00 |
| **Firm Subtotal** | — | 54.2 | $14,905.00 |
| **Reduction** | — | — | 0% |
| **Final Firm Fee** | — | 54.2 | $14,905.00 |

**Table 2:   Cooper & Kirk PLLC**

| Attorney/Paraprofessional | Adjusted Rate | Hours | Total Fees |
|---|---|---|---|
| David Thompson (Partner) | $350.00 | 5.9 | $2,065.00 |
| Charles Cooper (Partner) | $350.00 | 1.9 | $665.00 |
| Howard Nielson (Partner) | $350.00 | 0.5 | $175.00 |
| John Ohlendorf (Partner) | $275.00 | 132.0 | $36,300.00 |
| Nicole Jo Moss (Partner) | $275.00 | 7.2 | $1,980.00 |
| Peter Patterson (Partner) | $275.00 | 12.6 | $3,465.00 |
| Flannery Lawrence (Assistant) | $80.00 | 17.0 | $1,360.00 |
| Caleb Theriot (Assistant) | $80.00 | 9.0 | $720.00 |
| Elizabeth Barton (Assistant) | $80.00 | 2.2 | $176.00 |
| Erin Brainard (Assistant) | $80.00 | 1.7 | $136.00 |
| **Firm Subtotal** | — | 190.0 | $47,042.00 |
| **Reduction** | — | — | 30% |
| **Final Firm Fee** | — | — | $32,929.40 |

**Table 3:   Bradley Arant Boult Cummings LLP**

| Attorney/Paraprofessional | Adjusted Rate | Hours | Total Fees |
|---|---|---|---|
| John Parker Sweeney (Partner) | $350.00 | 103.4 | $36,190.00 |
| T. Sky Woodward (Partner) | $350.00 | 4.7 | $1,645.00 |
| James Porter III (Partner) | $350.00 | 81.4 | $28,490.00 |
| Marc Nardone (Partner) | $275.00 | 12.4 | $3,410.00 |
| Connor Blair (Associate) | $200.00 | 76.1 | $15,220.00 |
| Daniel Lawrence (Associate) | $165.00 | 0.2 | $33.00 |
| Kristine Martinez (Paralegal) | — | 0.0 | $0.00 |
| Emerson Krause (Paralegal) | $90.00 | 17.3 | $1,557.00 |
| **Firm Subtotal** | — | 295.5 | $86,545.00 |
| **Reduction** | — | — | 30% |
| **Final Firm Fee** | — | — | $60,581.50 |

**Table 4:   Kirkland & Ellis LLP**

| Attorney/Paraprofessional | Adjusted Rate | Hours | Total Fees |
|---|---|---|---|
| Paul Clement (Partner) | $675.00 | 111.75 | $75,431.25 |
| Erin Murphy (Partner) | $531.90 | 122.00 | $64,892.12 |
| Kasdin Miller Mitchell (Partner) | $408.18 | 129.00 | $52,655.27 |
| Kevan M. Neylan, Jr. (Associate) | $200.00 | 185.50 | $37,100.00 |
| Nicholas Gallagher (Associate) | $190.00 | 312.75 | $59,422.50 |
| H. Bartow Farr (Partner) | $533.04 | 24.75 | $13,192.72 |
| George Hicks, Jr. (Partner) | $490.25 | 14.00 | $6,863.55 |
| Matthew Rowen (Partner) | $390.42 | 10.75 | $4,196.97 |
| Harker Rhodes (Partner) | $408.25 | 13.50 | $5,511.34 |
| Mariel Brookins (Associate) | $200.00 | 15.25 | $3,050.00 |
| Ashley Britton (Paralegal) | $90.00 | 26.25 | $2,362.50 |
| Aviana Vergnetti (Paralegal) | $90.00 | 76.75 | $6,907.50 |
| Harry Hild (Paralegal) | $90.00 | 1.50 | $135.00 |
| Kiran Mehta (Paralegal) | $90.00 | 9.75 | $877.50 |
| Library Factual Research | $90.00 | 18.25 | $1,642.50 |
| Library Legislative Research | $90.00 | 8.25 | $742.50 |
| Library Document Retrieval | $90.00 | 2.25 | $202.50 |
| **Firm Subtotal** | — | 1082.25 | $335,185.72 |
| **Reduction** | — | — | 0% |
| **Final Firm Fee** | — | — | $335,185.72 |

**Table 5:   Total Award**

| Firm | Hours | Amount |
|---|---|---|
| Kathleen McCaffrey Baynes, Esq., PLLC | 54.2 | $14,905.00 |
| Cooper & Kirk PLLC | 190.0 | $32,929.40 |
| Bradley Arant Boult Cummings LLP | 295.5 | $60,581.50 |
| Kirkland & Ellis LLP | 1082.25 | $335,185.72 |
| **Subtotal** | 1621.95 | $443,601.62 |
| **Costs** | — | $4,099.20 |
| **Final Award** | — | $447,700.82 |

In sum, Plaintiffs are awarded $443,601.62 in fees and $4,099.20 in costs and expenses for a total award of $447,700.82.

## III.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiffs' motion for attorneys' fees and costs, (Dkt. No. 56), is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Plaintiffs are awarded a total of $443,601.62 in fees and $4,099.20 in costs and expenses for a total award of $447,700.82.

**IT IS SO ORDERED.**

Dated: <u>September 22, 2023</u>
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge